**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T** |
| | ) | **(Judge Block)** |
| **v.** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**UNITED STATES' MOTION**
**TO ENLARGE THE DISCOVERY SCHEDULE**
**AND REQUEST FOR EXPEDITED BRIEFING**

**Introduction**

For the past several months, the United States has diligently investigated the facts relevant to plaintiff's claims in this case by obtaining document discovery from plaintiff and numerous third-parties. Because of the volume of documents the United States has received – totaling more than 3/4 of a million pages – and the time it has taken to obtain, organize, and review the information, document discovery has taken longer than anticipated. The discovery to date also has revealed the need for approximately twenty-five depositions of fact witnesses – including those participants in Stobie Creek who obtained the tax benefits at issue in this case – and additional document discovery. The United States believes that this additional, necessary document and deposition discovery cannot be completed by October 31, 2006, the deadline for fact discovery under the current scheduling order.

Plaintiff has agreed that the current schedule's deadlines should be extended by 30 days. For the reasons set forth below, the United States believes this additional 30 days is not sufficient, and requests that this Court extend the schedule's deadlines by 120 days.

**Background**

**I. PLAINTIFF'S CLAIMS**

In this case, plaintiff asks this Court to redetermine (in effect, void) the adjustments to the partnership items of Stobie Creek LLC (Stobie) that the IRS made in its Notice of Final Partnership Adjustments (FPAA) issued in March 2005. *See* 26 U.S.C. § 6221 *et seq*. In brief, the IRS determined that certain foreign currency digital option transactions allegedly engaged in by Stobie's members, at a purported cost of $2 million in net premiums, did not increase by $200 million the tax basis of the stock of Therma Tru Corp. held by Stobie. Accordingly, Stobie and its members could not avoid recognizing, and paying tax on, the capital gain of approximately $200 million that they realized on the sale of the Therma Tru stock in 2000.[1] Plaintiff asserts that the IRS made fifteen separate errors of law or fact in making these determinations. (*See* Complaint, ¶ 13).

The United States intends to demonstrate that the foreign currency option transactions, and other paper transactions engaged in by Stobie's purported members, in fact constituted a prepackaged, abusive tax shelter that lacked any economic substance or business purpose. The transactions are, therefore, not recognized for tax purposes. Specific provisions of the Internal Revenue Code also preclude the fictitious increase in basis that Stobie has claimed. In order to

[1] By referring to "members" of Stobie, the United States does not intend to concede that Stobie is a valid partnership that should be recognized for tax purposes.

adequately present these defenses, and demonstrate the real substance of the transactions, the United States needs to obtain discovery from plaintiff and its members, as well as the numerous third-parties that helped organize the tax shelter or purportedly participated in the transactions.[2]

## II. DISCOVERY STATUS

The Scheduling Order in this case currently provides for the completion of factual discovery by October 31, 2006, and the completion of expert discovery by February 15, 2007.

### A. Discovery by the United States

To date, the United States has obtained discovery from several third-parties that were involved in the creation of Stobie and the transactions in which it allegedly engaged. This discovery includes the following:

- approximately 700,000 pages of documents produced by Jenkens & Gilchrist, the law firm that designed, promoted and sold the tax shelter, and provided Stobie's members with a prepackaged, boilerplate "legal opinion" as to the tax effects;

- approximately 34,000 pages of documents produced by Deutsche Bank A.G., the bank that was apparently involved in designing the tax shelter and that was the counter-party to the purported foreign currency option transactions entered into by Stobie's members, and hundreds of other taxpayers in similarly structured deals;

- approximately 9,700 pages of documents from Shumaker, Loop & Kendrick, another law firm that purportedly marketed the tax shelter to Stobie's members;

- approximately 5,000 pages of documents from Robert Floyd, an accountant for Stobie and its partners;

- approximately 500 pages of documents from John Ivsan, the Shumaker attorney that sold the tax shelter to Stobie and its partners; and

---

[2] The parties' contentions are more fully set out in the Joint Preliminary Status Report filed on February 2, 2006.

- approximately 4,000 pages of documents from Kenner & Co., the company that facilitated the sale or redemption of the Therma -Tru stock.

Deutsche Bank is still in the process of reviewing its records and expects to produce additional documents to the United States soon. Additional documents obtained by subpoena from other third-parties also were delayed because of the large volume of documents. The United States is reviewing the documents produced by these third-parties to determine if they have produced all the documents requested, and whether any documents were withheld under an improper claim of privilege.[3]

The United States also has received hundreds of pages of documents from plaintiff that Stobie and its members provided to the IRS pursuant to Information Document Requests. This production is ongoing, and the United States expects to receive additional materials from plaintiff soon. The United States also expects to receive later this month responses to interrogatories and document requests it served on plaintiff.

**B. Discovery by Plaintiff**

Plaintiff issued document requests and interrogatories to the United States in May 2006, and the United States has responded to that discovery. Plaintiff has not attempted to take any other discovery of which the United States is aware.

---

[3] Not all the documents produced by the third-parties directly concern the transactions engaged in by Stobie and its members. Some documents concern the development and design of the digital option tax shelter that Stobie employed, and some concern the use of the shelter by other taxpayers. The United States will likely present, in summary form, evidence of these other shelter transactions to rebut certain of the plaintiff's arguments. Recognizing the relevance of documents concerning the development of the shelter and use of the shelter by other taxpayers, the third-parties are producing those documents, in addition to documents reflecting Stobie's participation in this tax shelter.

## III. MORE TIME IS NEEDED TO COMPLETE THE ADDITIONAL, NECESSARY DISCOVERY

### A. Document Discovery

As contemplated in this Court's current scheduling order, the parties first engaged in written and document discovery before taking depositions. (*See* Scheduling Order, dated February 10, 2006). For a variety of reasons, this document discovery has taken several months, and will take some additional time.

1. As described above, there is an enormous volume of relevant and potentially relevant documents, including documents that may lead to other admissible evidence. Just reviewing the documents produced to date has required, and will continue to require, substantial time and resources.

2. Before the United States was able to obtain any documents from Robert Floyd and Shumaker, Loop & Kendrick pursuant to the subpoenas it issued, the parties had to negotiate and agree to a protective order. Although they did so, the process necessarily delayed production. (*See* Protective Orders entered June 29, 2006).

3. Much of the document production has been in paper form or an electronic form that is not readily searchable or compatible with an electronic document database. It has taken time to convert these documents to a searchable form and load them into a database where they can be reviewed and organized.

4. Document production is ongoing and not yet finished. For example, although Deutsche Bank was served with a subpoena on April 3, 2006, it is still producing documents to the United States. Kenner & Company, which was served with a subpoena on April 4, 2006, also

produced additional boxes of documents to the United States just within the past two weeks. Even though these third-parties are cooperating in discovery, it has taken several months for them to produce all the relevant documents.

Plaintiff also will be producing additional documents to the United States later this month. The United States needs additional time to adequately review the documents already produced, and those yet to be produced.

**B. Depositions**

The United States intends to begin taking depositions later this month, and has already served the first deponent with a subpoena. Currently, the United States has identified approximately 25 witnesses it needs to depose. (This does not include any witnesses plaintiff intends to depose). Beyond the six members of the Welles family (who were members of Stobie), these witnesses include current or former employees of Deutsche Bank; Jenkens & Gilchrist; Shumaker, Loop & Kendrick; and others. Of course, these depositions may reveal additional witnesses that should also be deposed. Because of the number of witnesses and the need to coordinate the schedules of numerous third-parties and counsel, the United States does not believe that all these depositions can reasonably be completed by October 31, 2006.

The United States intends to take these depositions not only to discover relevant facts, but also to provide a basis for the parties to authenticate documents, prepare summary exhibits pursuant to Rule 1006 of the Federal Rules of Evidence, and, potentially, stipulate to facts and narrow the issues for trial. The United States also may present the videotaped depositions of some third-party witnesses at trial, rather than seek their appearances in person. Allowing the

parties additional time now to complete all these necessary depositions, therefore, may permit a more efficient trial and fewer burdens on third-parties later.[4]

## III. THE UNITED STATES' LEAD COUNSEL IS INVOLVED IN A TRIAL STARTING ON OCTOBER 3, 2006

The United States also requests an extension of the schedule in this case because just last week the undersigned lead counsel was assigned to assist in the trial of two consolidated tax shelter cases – *Klamath Strategic Investment Fund LLC v. United States*, (No. 5:04-cv-00278-TJW) and *Kinabalu Strategic Investment Fund LLC v. United States* (No. 5:04-cv-00279-TJW) – pending in the United States District Court for the Eastern District of Texas. The court has set these cases for trial in Texarkana, Texas beginning October 3, 2006, and both sides have estimated that trial would last approximately one week. For the next month, at least, the undersigned lead counsel will be occupied preparing for and participating in that trial.

---

[4] Because of the ongoing criminal investigation by the Office of the United States Attorney for the Southern District of New York, and the pending criminal tax case, *United States v. Stein et al.* (No. 1:05 CR 0888), some of the witnesses the United States needs to depose in this case may refuse to testify, relying upon their Fifth Amendment privilege against self-incrimination. If so, the United States will likely move to stay this case. *See, e.g., Ampetrol v. United States*, 30 Fed.Cl. 320 (1994).

**Conclusion**

For all the above reasons, the current discovery schedule should be enlarged. The United States requests that all current deadlines be extended by 120 days. Alternatively, the deadlines should be extended by some lesser amount, or the 30 days agreed to by plaintiff. The United States also requests that the Court consider this motion on an expedited basis so that the parties can plan to complete the necessary discovery under whatever schedule the Court sets.

Respectfully submitted,

*s/ Stuart D. Gibson*

Stuart D. Gibson
Attorney of Record
U.S. Department of Justice
Tax Division
Office of Civil Litigation
Post Office Box 403
Ben Franklin Station
Washington D.C. 20044
(202) 307-6586

Eileen J. O'Connor
Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section
Cory A. Johnson
Trial Attorney, Court of Federal
Claims Section

*s/ Cory A. Johnson*
Of Counsel

Dated: September 12, 2006