**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T** |
| | ) | **(Judge Block)** |
| **v.** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**


EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
Chief, Court of Federal Claims Section

STUART D. GIBSON
Senior Litigation Counsel
U.S. Department of Justice
Tax Division, Office of Civil Litigation
Post Office Box 403
Ben Franklin Station
Washington D.C. 20044
(202) 307-6586 (Phone)
(202) 307-2504 (Fax)

CORY A. JOHNSON
Trial Attorney, Court of Federal Claims Section

**TABLE OF CONTENTS**

Page(s):

Introduction. . . . . . . . . . 1

Background. . . . . . . . . . 2

I. In This Case, Plaintiff Seeks the Alleged Tax Benefits of an Abusive Tax Shelter.. . . . . . . . . . 2

II. The United States Has Produced Voluminous Documents in Response to the Plaintiff's Discovery Requests. . . . . . . . . . 3

A. Production of Documents from the IRS Administrative File. . . . . . . . . . 4

B. Production of Documents Obtained by Subpoena in this Case.. . . . . . . . . . 5

Argument. . . . . . . . . . 7

I. Plaintiff's Requests for Documents Concerning the Reasons Behind the FPAA are Moot or Exceed the Scope of Permitted Discovery. . . . . . . . . . 7

II. Plaintiff's Requests for Internal, Unpublished IRS Documents Cannot Lead to Admissible Evidence. . . . . . . . . . 9

A. A "Reasonable Cause" Defense to the Payment of Penalties Cannot Support the Discovery Requests. . . . . . . . . . 10

1. This Court Does Not Have Jurisdiction to Consider a Reasonable Cause Defense. . . . . . . . . . 11

2. Plaintiff and Its Partners Could Not Have Relied Upon Internal, Unpublished IRS Documents. . . . . . . . . . 12

3. Internal, Unpublished IRS Documents Will Not Determine the Meaning of "Liability". . . . . . . . . . 12

B. The Issue of Whether Treas. Reg. §1.752-6 is Valid Does Not Justify the Requested Discovery. . . . . . . . . . 14

Page(s):

C. Plaintiff's Requests Are Overly Broad, Vague and Burdensome. . . . . 15

D. Privilege Issues Should be Addressed Only if Plaintiff Can Make a Threshold Showing of Relevance. . . . . 16

III. Plaintiff's Second Set of Interrogatories Are Improper and Premature. . . . . 18

A. Discovery From Third-Parties Who Promoted the Son of Boss Tax Shelter. . . . . 18

B. The Interrogatories are Fatally Vague and Premature. . . . . 20

C. Plaintiff Has Not Objected to Any Discovery. . . . . 21

Conclusion. . . . . 21

## TABLE OF AUTHORITIES

CASES

Abbott v. United States, 177 F.R.D. 92 (N.D.N.Y. 1997). . . . . 20

American Electric Power Co. v. United States, 191 F.R.D. 132 (S.D.Oh. 1999). . . . . 19

Brown v. Commissioner, 85 T.C. 968 (U.S.T.C. 1985). . . . . 19

In re Convergent Technologies Securities Litigation, 108 F.R.D. 328 (N.D.Cal. 1985). . . . . 21

Cook v. United States, 46 Fed. Cl. 110 (Fed. Cl. 2000). . . . . 8, 9

Deluxe Check Printers, Inc. v. United States, 5 Cl.Ct. 498 (Cl. Ct. 1984). . . . . 13, 14, 15

Detroit Screwmatic Co. v. United States, 49 F.R.D. 77 (S.D. N.Y. 1970). . . . . 8

Douglas v. United States, , 410 F. Supp. 2d 292 (S.D.N.Y. 2006). . . . . 19

Flamingo Fishing Corp. v. United States, 31 Fed. Cl. 655 (Fed. Cl. 1994). . . . . 8

Page(s):

Fowler v. United States, 2002 WL 1310286 (Fed. Cl. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Freeman v. Seligson, 405 F.2d 11326 (D.C. Cir. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Furman v. United States, 1983 WL 1687 (D.S.C. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Garity v. United States, 1980 WL 1765 (E.D. Mich. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (Tax Ct. 1974). . . . . . . . . . . . . . . . . . . . . 8

Jade Trading LLC v. United States, 65 Fed. Cl. 188 ( 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Jade Trading LLC v. United States, 65 Fed. Cl. 487 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Karme v. Commissioner, 673 F.2d 1062 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Klamath Strategic Investment Fund LLC v. United States,
440 F. Supp. 608 (E.D.Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Marriott International Resorts, L.P. v. United States, 61 Fed. Cl. 411 (2004),
*rev'd in part*, 437 F.3d 1302 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Marriott International Resorts, L.P. v. United States, 437 F.3d 1302 (Fed. Cir. 2006). . . . . . . . . 18

Sochin v. Commissioner, 843 F.2d 351 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Sidell v. Commissioner. 225 F.3d 103 (1st Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TIFD III-E Inc. v. United States, 342 F. Supp. 94 (D. Conn. 2004),
*rev'd on other grounds*, 459 F.3d 220 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. American Telephone and Telegraph Co.,
524 F. Supp. 1381 (D.D.C. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Jenkens & Gilchrist, 2005 WL 1300768 (N.D.Ill. 2005). . . . . . . . . . . . . . . . . . . . 4

STATUTES & REGULATIONS

Administrative Procedures Act (5 U.S.C.)
§ 701.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Page(s):

Assumption of Partner Liabilities, 68 Fed. Reg. 37434 (June 24, 2003). . . . . . . . . . . . . . . . . . 13, 15

Internal Revenue Code of 1986 (26 U.S.C):

§ 752. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12, 13, 15
§ 6221. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
§ 6226. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
§ 6230. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
§ 6664. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
§ 7805. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IRS Notice 2000-44, 2000-2 C.B. 255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Treas. Reg. (26 C.F.R.)

§ 1.6664-4(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
§ 1.6664-(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
§ 1.701-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
§ 1.752-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
§ 1.752-6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 14, 15
§ 301.6221-1(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
§ 301.6221-1T(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
§ 301.6226(f)-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11
§§ 601.601(b) and (e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
§ 601.601(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## MISCELLANEOUS

Federal Rules of Civil Procedure:

R. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21
R. 33, Advisory Committee Notes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Rules of the Court of Federal Claims

Appendix A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19, 20
R. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 9, 16, 21
R. 37. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T** |
| | ) | **(Judge Block)** |
| **v.** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**UNITED STATES' RESPONSE**
**TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

**Introduction**

Plaintiff's motion to compel is based on a series of fundamental misunderstandings – or misrepresentations – of the issues in this case, and the substantial discovery already conducted. Plaintiff's claim that the United States has refused to provide any documents to support its defenses in this case is simply wrong. The United States has provided thousands of pages of documents, including documents from the IRS. What the plaintiff wants now, however, is not the documents that reflect the facts or support the United States' defenses – the United States has already produced those documents. Instead, plaintiff seeks documents that reflect the views of individual IRS and Treasury Department employees – some of whom have not worked for the Government in over 15 years – on what the law was or should have been over the past 30-odd

years. For the reasons discussed in greater detail below, that is, quite simply, not the proper subject for fact discovery under RCFC 26.

Additionally, notwithstanding plaintiff's apparent desire to convert the case into some sort of administrative review process, this lawsuit is a *de novo* proceeding in which the Court will apply Code provisions enacted by Congress, regulations promulgated by the Treasury Department, and well-established case law to determine the correct tax treatment of the transactions at issue. Internal, unpublished discussions or writings of IRS employees cannot change this governing law, nor should they even guide this Court's application of the law to the facts. Plaintiff's requests for such internal, deliberative materials constitute an irrelevant and wasteful diversion from the issues in this case, as well as an intrusion on applicable executive privileges.

## Background

### I. IN THIS CASE, PLAINTIFF SEEKS THE ALLEGED TAX BENEFITS OF AN ABUSIVE TAX SHELTER

In early 2000, plaintiff and its purported members engaged in a Son of Boss tax shelter transaction in an effort to avoid paying capital gains taxes on several thousand shares of Therma-Tru Corporation that were to be redeemed in May 2000.[1] (See, e.g., Exhibits 1 and 2, p. 2.)[2] Briefly, the shelter transaction involved the purported purchase and sale of foreign currency options (at a cost of $2 million), the creation of various shell corporations and other entities, and

[1] The individuals involved with Stobie Creek at that time were David Welles Sr., Georgia Welles, David Welles Jr., Virginia Welles Jordan, Jeffrey Welles, Peter Welles, and Christopher Welles

[2] Exhibit 1 is a summary description of the Son of Boss shelter obtained in discovery in this case. Exhibit 2 is an affidavit submitted by one of the Welles' attorneys in a separate IRS summons enforcement case against Jenkens & Gilchrist.

certain paper transactions and transfers between these entities and Stobie Creek. (See e.g., Exhibit 1). *See also* IRS Notice 2000-44, 2000-2 C.B. 255. Through these transactions, completed according to a prepackaged integrated plan in only a few weeks, plaintiff claims that the tax basis in the Therma-Tru stock was increased by approximately $205 million, and that the gain realized on the redemption of stock was, therefore, not $210 million, but only $5 million. Plaintiff is asking this Court to determine that this hundred-fold increase in basis is justified.[3]

The United States believes that the Internal Revenue Code and well-established judicial doctrines interpreting the Code do not permit plaintiff to deliberately generate this claimed artificial basis. In particular, plaintiff may not reap these artificially generated tax benefits because, among other reasons, (a) the transactions lacked economic substance and a business purpose; (b) the step transaction doctrine requires the Court to treat the seemingly-separate steps as one fully-integrated transaction, negating the claimed tax benefits; and (c) the $2 million cost of the options cannot result in a $205 million increase in basis. The United States discussed these defenses, and others, in the Joint Preliminary Status Report, filed February 2, 2006.

## II. THE UNITED STATES HAS PRODUCED VOLUMINOUS DOCUMENTS IN RESPONSE TO THE PLAINTIFF'S DISCOVERY REQUESTS.

In its motion, plaintiff provides a misleading description of the discovery that has occurred in this case. Contrary to plaintiff's claims, the United States has not "objected to providing any [] information" about its defenses or asserted that it is enjoys an "immunity from discovery." (See Plaintiff's Motion to Compel, pp. 4, 7). In fact, the United States has produced not only all the

[3] By referring to Stobie Creek as a partnership and its purported members as partners, the United States does not intend to concede that Stobie Creek is a valid partnership for federal tax purposes.

documents sought from it concerning the facts in dispute, but also all the documents its has obtained through third-party subpoenas.

### A. Production of Documents from the IRS Administrative File

In its RCFC 26(a) initial disclosures, dated February 24, 2006, the United States first identified the documents from the IRS administrative file relating to this case that it believed would support its defenses in this case. The United States identified over 10,000 pages of documents that the IRS had originally obtained from Jenkens & Gilchrist, Shumaker, Loop & Kendrick, and Deutsche Bank. (Exhibit 3, pp. 2 - 3). The Jenkens and Shumaker law firms were promoters of the Son of Boss tax shelter purchased and used by plaintiff and its purported partners. (Exhibits 1 and 2, p. 2). Deutsche Bank was the counter-party in the foreign currency option transactions that the plaintiff's partners purportedly entered into as part of the Son of Boss tax shelter. (Exhibit 1, ¶ 1).[4]

On July 31, August 10 and August 11, 2006, the United States produced all the documents listed above from the IRS administrative file. (See Exhibits. 4, 5 and 6, cover letters to plaintiff's counsel sent with documents produced by the United States.). The documents were produced in response to plaintiff's Document Requests No. 4 and 5, which requested all documents identified in the United States' RCFC 26(a) disclosures and all documents reviewed or

---

[4] Jenkens & Gilchrist and the Welles family resisted the IRS's efforts to obtain information regarding the tax shelter transactions, and asserted privilege claims as to certain documents. The privilege claims were rejected in an IRS summons enforcement case filed in the United States District Court for the Northern District of Illinois. *See, United States v. Jenkens & Gilchrist*, 2005 WL 1300768 (N.D.Ill. 2005).

relied upon in preparing the FPAA, respectively. (See Exhibit D to Plaintiff's Motion to Compel, p. 4)

Included in the thousands of pages of documents from the IRS administrative file produced in July and August 2006 were: (a) purported formation, organizational and transactional documents for the seven limited liability companies (LLCs) and seven Subchapter S corporations formed by the purported partners of Stobie Creek as part of the Son of Boss shelter; (b) purported formation, organizational and transactional documents for Stobie Creek Investments LLC; (c) purported option confirmations for fourteen foreign currency options allegedly entered into by the partners of Stobie Creek; (d) correspondence and memoranda of Jenkens & Gilchrist and Shumaker, Loop & Kendrick; and (e) tax returns for various entities and individuals. After producing these documents, counsel for the United States twice confirmed to plaintiff's counsel – once during the October 12th discovery teleconference and again in a follow-up letter of October 30th – that these documents were produced from the IRS administrative file, and that the United States' counsel was not aware of any additional documents from the underlying transactions in the IRS file. (Exhibit 7, p. 2, the United State's counsel's letter of October 30).

### B. Production of Documents Obtained by Subpoena in this Case

Because the United States was not a participant in the transactions that comprised the Son of Boss tax shelter at issue here, it could only obtain the relevant documents from the participants. In this case, the United States has subpoenaed documents from Jenkens & Gilchrist, Shumaker, Loop & Kendrick, Deutsche Bank, Robert Floyd, Stephen Bores, North Channel LLC, McDermott, Will & Emery, John Ivsan, Kenner & Company, and each member of the Welles family involved in the Son of Boss transaction. In all, it has received hundreds of thousands of

pages of documents concerning plaintiff's tax shelter transactions and the substantially similar shelters sold to other taxpayers by the common promoters Jenkens & Gilchrist, Shumaker, Loop & Kendrick and Deutsche Bank.

The United States has, in turn, produced to the plaintiff all the documents it obtained by subpoena – except for documents plaintiff already possesses – in response to plaintiff's Document Requests Nos. 6 - 11. Aside from Request No. 6, which sought all documents obtained by subpoena, these requests sought documents that would support various defenses to the tax benefits claimed by plaintiff in this case such as lack of economic substance and business purpose, among others. In response to each request, the United States stated, in part, that "as it identifies such documents, the United States will produce documents that support such determinations in this *de novo* proceeding." (See Exhibit D to Plaintiff's Motion to Compel, pp. 2 - 5). Throughout this case, the United States has done exactly that. (See Exhibit 8). Simply put, the United States has not withheld from production any document concerning a matter of fact upon which it relies to defend this case.

## Argument

### I. PLAINTIFF'S REQUESTS FOR DOCUMENTS CONCERNING THE REASONS BEHIND THE FPAA ARE MOOT OR EXCEED THE SCOPE OF PERMITTED DISCOVERY

The first part of plaintiff's motion to compel seeks documents responsive to Interrogatory No. 4 and Document Requests Nos. 5, 7 and 11. (See Motion to Compel, p. 9). In sum, these requests seek documents reviewed or relied upon by the IRS in issuing the FPAA.[5]

As detailed above, the United States has already produced all factual documents in the IRS administrative file concerning the underlying transactions. These are the thousands of pages of documents concerning plaintiff's Son of Boss transaction that the IRS originally obtained from the tax shelter promoters Jenkens & Gilchrist, Shumaker, Loop & Kendrick and Deutsche Bank. Plaintiff's motion with regard to these documents is, therefore, moot.

At the same time it produced all these responsive documents, the United States objected to plaintiff's requests. (See Exhibit D to Motion to Compel, ¶¶ 5, 7 and 11). It did so because this is a *de novo* proceeding, and plaintiff appeared to be requesting documents well beyond the factual documents that the IRS had gathered concerning the underlying events and transactions. If plaintiff seeks such documents, it misunderstands this Court's jurisdiction. In this case, the Court has jurisdiction to "determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates." 26 U.S.C. §

[5]Interrogatory No. 4 and Document Request No. 5 explicitly seek documents relied upon by the IRS in issuing the FPAA. Document Requests Nos. 7 and 11 ask for documents relied upon by the IRS for certain determinations in the FPAA, without expressly mentioning the FPAA.

6226(f). The Court does not "review" the IRS's determinations under the Administrative Procedures Act, 5 U.S.C. § 701, *et. seq*.

As a *de novo* proceeding, the conclusions or analyses of the IRS behind the issuance of the FPAA are utterly irrelevant to this Court's independent determination of plaintiff's claims in this case. *See e.g., TIFD III-E Inc. v. United States*, 342 F.Supp. 94, 108 (D. Conn. 2004) (The court is to review plaintiff's "tax liability *de novo*, ignoring the factual finding and legal analysis of the Commissioner of Internal Revenue");[6] *Cook v. United States*, 46 Fed. Cl. 110, 113 (Fed. Cl. 2000) ("factual issues are tried *de novo* in this court, with no weight given to subsidiary factual finding made by the Service in its internal administrative proceedings."); and *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 328 (Tax Ct. 1974) (this "proceeding is *de novo;* our determination as to a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level.") And, because this Court determines the facts and applicable law *de novo,* discovery concerning the process behind the FPAA (other than production of the underlying factual documents) could not possibly lead to admissible evidence. Not only would such discovery exceed the scope of Rule 26(c), it would also be a wasteful and burdensome diversion. For these reasons, courts have denied requests for discovery of the administrative process leading to the issuance of a notice of deficiency or FPAA. *See e.g., Detroit Screwmatic Co. v. United States*, 49 F.R.D. 77 (S.D. N.Y. 1970); *Flamingo Fishing Corp. v. United States*, 31 Fed. Cl. 655 (Fed. Cl. 1994); *Garity v. United States,* 1980 WL 1765 (E.D. Mich. 1980); and *Greenberg's Express, supra*. To the extent plaintiff seeks to compel such discovery here, this Court should deny it as well.

[6] *Reversed on other grounds,* 459 F.3d 220 (Fed. Cir. 2006).

Plaintiff's claim that they are entitled to discovery regarding the IRS's reasoning behind the FPAA, so that it is not "surprised" at trial by the bases of the United States' defenses, is also nonsensical. The FPAA does not limit or determine the United States' defenses in this case, and the United States can – and intends to – defend this case on all available grounds, not just those that may have been set forth in the FPAA. *See e.g.,* 26 U.S.C. 6226(f); Treas. Reg. § 301.6226(f)-1; *Fowler v. United States*, 2002 WL 1310286 (Fed. Cl. 2002); and *Cook*, 46 Fed. Cl. at 114 - 15. Accordingly, discovering the IRS's reasoning behind the FPAA would not advance the plaintiff's proffered goal of preventing "surprise" at trial. More importantly, as outlined above, the United States has not objected to producing in discovery the evidence supporting its defenses in this case, including the factual documents in the IRS file, and it will continue to produce all such evidence, either in response to plaintiff's requests or pursuant to RCFC 26(e). Of course, this Court's pretrial procedures also require the parties to disclose the evidence they intend to rely upon long before trial. *See* RCFC, Appendix A, ¶¶ 13 - 16.

## II. PLAINTIFF'S REQUESTS FOR INTERNAL, UNPUBLISHED IRS DOCUMENTS CANNOT LEAD TO ADMISSIBLE EVIDENCE

The second part of plaintiff's motion to compel seeks the production of documents responsive to its Document Requests Nos. 12 - 16. These expansive requests seek:

- all documents interpreting or relied upon by the IRS in interpreting the term "liability" in all Treasury Regulations issued under § 752 of the Code;[7]

- all documents relating to the interpretation and application of § 752 of the Code to

[7] Section 752 of the Code concerns the tax treatment of partnership and partner "liabilities." *See* 26 U.S.C. § 752.

options to deliver property in the case of *Helmer v. United States* (decided in 1975) and all subsequent litigation involving the United States;

- all documents relied upon by the IRS in formulating Notice 2000-44 (issued in 2000);

- all documents produced in *Jade Trading LLC v. U.S.* relating to the interpretation and application of the term "liability" under § 752 of the Code;

- all documents produced in *Jade Trading* relating to Treasury Regulation § 1.701-2. (See Exhibit D to Motion to Compel, ¶¶ 12 - 16.)

At the outset, these requests are clearly overly broad, unduly burdensome and too vague to permit a definite response. Beyond these obvious problems, however, is the fact that none of the requests can lead to admissible evidence relevant to issues in this case.

Plaintiff claims the discovery is relevant to two issues. The first – plaintiff's partner's alleged "reasonable cause" defense to penalties – is not even an issue over which this Court has jurisdiction in this partnership proceeding. The second – the validity of Treas. Reg. §1.752-6 – will be decided according to the relevant Code provisions and case law, not the unpublished writings, or impromptu views, of current and former individual employees of the IRS and Treasury Department.

### A. A "Reasonable Cause" Defense to the Payment of Penalties Cannot Support the Discovery Requests

According to plaintiff, the above requests seek information about the internal "interpretations that the IRS has given to particular terms within the Internal Revenue Code

("Code"), regulations and Revenue Notices."[8] (See Motion to Compel, p. 4.) Plaintiff claims this information is relevant to a "reasonable cause" defense to penalties because its members, when they participated in the Son of Boss shelter, claim to have reasonably relied upon "interpretations that the IRS had given to such terms [*i.e.*, liability] over the course of decades." (See Motion to Compel, p. 4.) There are several problems with this alleged justification for the discovery.

**1. This Court Does Not Have Jurisdiction to Consider a Reasonable Cause Defense**

The first problem with plaintiff's reliance on a "reasonable cause" defense to penalties as support for the above discovery is that the Court does not have jurisdiction over the issue. Although the Court has jurisdiction in this partnership proceeding to determine the initial applicability of penalties which relate to partnership items, the defense of reasonable cause under §6664(c) of the Code is a "partner level defense" that can be raised only in a separate refund action filed by a partner after this case is decided, and taxes and penalties have been assessed and paid. *See* 26 U.S.C. §§6221 and 6230(c)(4); and Treas. Regs. §§ 301.6221-1T(d) (effective for tax year 2000), 301.6221-1(d) and 301.6226(f)-1. Plaintiff's argument that its partners should not have to file separate refund actions to present this defense cannot trump the Congressionally-mandated statutory scheme, or void this black-letter law.[9]

---

[8] Although plaintiff refers to the interpretation of "terms," the only one identified is "liability," as used in § 752 of the Code and its accompanying regulations.

[9] Contrary to plaintiff's argument, Treas. Reg. § 1.6664-4(d) does not support its claim that this Court has jurisdiction to address a reasonable cause defense. That regulation merely provides that when a reasonable cause defense is considered, in a separate refund action filed by a partner, the court can consider both the partner's actions and those of the partnership.

### 2. Plaintiff and Its Partners Could Not Have Relied Upon Internal, Unpublished IRS Documents

The second problem with plaintiff's claim that a reasonable cause defense supports its discovery requests is that internal, unpublished documents created by IRS employees could not have been relied upon at all by plaintiff, or its partners. They could have relied only on information actually available to them – the Code, case law, Treasury Regulations and certain official interpretations published by the Treasury Department. *See* 26 U.S.C. § 7805; and Treas. Reg. §601.601(b) and (e). If plaintiff wants to establish the interpretation of "liability" it relied upon (and that more recent interpretations are allegedly a change from this interpretation), it can do so only through the Code, case law, regulations and official guidance of the IRS. (See Motion to Compel, p. 9.) There is no, and could be no, claim that plaintiff reasonably relied upon unpublished IRS employee interpretations of the term "liability" as used in § 752 of the Code.

In fact, the Jenkens & Gilchrist opinion letters that plaintiff's partners allegedly relied upon as support for the shelter's tax benefits cite only Code provisions, Treasury Regulations, case law and published Revenue Rulings and IRS Notices. (See Exhibit 9, pp. E-1 - E-25, the opinion letter allegedly provided to Jeffrey Welles) Plaintiff's partners' alleged reliance on these opinion letters, in the context of the other factual circumstances surrounding their shelter transactions, is the only relevant focus for discovery relating to any alleged reasonable cause defense. *See, e.g.*, Treas. Reg. § 1.6664-(c).

### 3. Internal, Unpublished IRS Documents Will Not Determine the Meaning of "Liability"

The third problem with plaintiff's argument that a reasonable cause defense justifies discovery of internal documents of the IRS is that the court – in which a refund action is filed –

will not determine the meaning of "liability," as used in § 752 of the Code, by reference to any internal IRS documents. To the extent any judicial interpretation of that statutory term is necessary, "internal administrative documents" are irrelevant. *See Deluxe Check Printers, Inc. v. United States*, 5 Cl.Ct. 498, 500 - 01 (Cl. Ct. 1984) (internal administrative documents have no bearing on the purpose of Congress in enacting statutory language). Instead, the court will look to the statute, legislative history (if necessary) and existing case law. *Id.*

Internal deliberative documents are also irrelevant to establish any interpretation that the IRS had given to the term "liability" in 2000, or previously. Before the Secretary of the Treasury promulgated new regulations under §752 in 2003, the IRS' interpretation of that term was contained only in revenue rulings. *See, e.g.*, *Assumption of Partner Liabilities*, 68 Fed. Reg. 37434, 37435, ("There is no statutory or regulatory definition of liabilities for purposes of section 752.") Such published, official interpretations of the IRS cannot be contradicted or bolstered by internal documents authored by individual IRS employees. *See, e.g.,* Treas. Reg. §601.601(c)(2) ("A Revenue Ruling is an official interpretation by the Service that has ben published in the Internal Revenue Bulletin. Revenue Rulings are issued only by the National Office and are published for the information and guidance of taxpayers, Internal Revenue Service officials and others concerned.); *Sidell v. Commissioner*, 225 F.3d 103, 111 (1st Cir. 2000) (The "IRS must speak with a single voice, that is, through formal statements of policy such as regulations or revenue rulings.... Because these internal memoranda represent the personal views of the authors, not the official positions of the agency, they do not figure in our decisional calculus."); *United States v. American Telephone and Telegraph Co.,* 524 F.Supp. 1381, 1387 (D.D.C. 1981) ("Extrinsic evidence as to how and why the FCC reached its decisions and what it intended

thereby – either by Commissioners speaking in their individual capacities or by employees of the FCC – are irrelevant to the question whether defendant's compliance was reasonable."); and *Deluxe Check Printers, Inc*., *supra.* For all the above reasons, plaintiff's requests for internal IRS documents cannot lead to admissible evidence supporting any purported reasonable cause defense.

**B. The Issue of Whether Treas. Reg. §1.752-6 Is Valid Does Not Justify the Requested Discovery**

The plaintiff also argues that the requested discovery is relevant to its claim that Treas. Reg. §1.752-6 (issued in 2003) is invalid if retroactively applied to its transactions in 2000. According to plaintiff, a key factor in deciding this issue is whether the regulation changed "settled prior law or policy." Plaintiff claims that it needs the requested discovery to show "what was the settled prior law or policy at the time of the transaction addressed by the FPAA." (See Motion to Compel, p. 12.)

As noted above, internal deliberative IRS documents are not, and cannot be used as, evidence of the law, or the official, published guidance of the IRS. The "settled" law, or policy of the IRS, can be established only through the Code, case law, regulations promulgated by the IRS and guidance and revenue rulings officially issued by the IRS. The documents the plaintiff seeks here could show only what individual IRS employees may have thought about the law during their internal deliberations. Those individual views are no more relevant to the resolution of this lawsuit than are the views of the hypothetical "man in the street."

Of course, the 2003 regulations expressly define "liability," and describe the proper tax treatment of a partnership's assumption of liabilities. *See* Treas. Reg. §§ 1.752-1 and 1.752-6;

and *Assumption of Partner Liabilities*, 68 Fed. Reg. 37434 (June 24, 2003). There is no claim that these regulations are ambiguous. Nor could there be – they clearly address the situation presented here (the purported contribution of foreign currency options to plaintiff by its partners), and disallow the tax treatment claimed by plaintiff. *See, e.g.*, Treas. Reg. § 1.752-6(c); and *Assumption of Partner Liabilities*, 68 Fed. Reg. 37434, 37436 (June 24, 2003). In fact, plaintiff's only claim regarding this regulation is that it is invalid if applied to transactions in 2000. The Court must decide this issue of validity, however, without recourse to or consideration of any internal deliberative IRS documents. *See Deluxe Check Printers, Inc., supra*; and *Furman v. United States*, 1983 WL 1687 (D.S.C. 1983) (the issue of invalidity is "one which this Court must decide based on legal authorities.") Accordingly, plaintiff's discovery requests seek documents beyond the scope of Rule 26(c).[10]

### C. Plaintiff's Requests Are Overly Broad, Vague and Burdensome

In addition to not meeting the required threshold of leading to the discovery of admissible evidence, plaintiff's requests for internal IRS documents are overly broad, vague and burdensome. For example, plaintiff requests all documents relating to the development or application of § 752 of the Code to options to deliver property in *Helmer v. United States* (decided in 1975) and all subsequent litigation involving the United States. (See Exhibit D to Motion to Compel, ¶ 13.) Plaintiff also seeks all documents interpreting or relied upon by the IRS in interpreting the term "liability" in all regulations issued under §752 of the Code. (See

---

[10] Plaintiff's citation of *Klamath Strategic Investment Fund LLC v. United States* does not support its discovery requests. The factors listed by that court as relevant to its determination of whether Treas. Reg. § 1.752-6 could be retroactively applied do not include the internal views of IRS employees. *See Klamath*, 440 F.Supp. 608, 623 (E.D.Tex. 2006). The United States also disagrees with the ruling in *Klamath* striking down the regulation as applied to those plaintiffs.

Exhibit D to Motion to Compel, ¶ 12.) Considering the fact that the underlying information is not even close to being tangentially relevant, and is cannot lead to the discovery of any admissible evidence, the Court should not permit such broad and burdensome discovery. *See,* RCFC 26(b)(2). If the Court determines, however, that the plaintiff is entitled to some of the internal IRS files it seeks, the United States asks the Court to severely limit the scope of the discovery, or order plaintiff to narrow its discovery requests. [11]

### D. Privilege Issues Should Be Addressed Only if the Plaintiff Can Make a Threshold Showing of Relevance

As explained above, plaintiff's discovery requests for internal IRS documents fall well outside the scope of permissible fact discovery in this case. Therefore, the Court should address privilege issues concerning these documents only if it first determines that plaintiff has met its initial burden of demonstrating that these documents are relevant – or reasonably calculated to lead to the discovery of admissible evidence – and established good cause for their production. The court in *Freeman v. Seligson*, 405 F.2d 11326 (D.C. Cir. 1968), described this practical two-step procedure, and its rationale as follows:

---

[11] For all the reasons above, the United States disagrees with the discovery rulings in *Marriott International Resorts*, *L.P. v. United States*, 61 Fed.Cl. 411 (2004), *rev'd in part*, 437 F.3d 1302 (Fed. Cir. 2006), and *Jade Trading L.L.C. v. United States*, 65 Fed. Cl. 487 (2005), cited by plaintiff. In particular, the internal deliberative documents of the IRS cannot provide legislative history for statutory provisions of the Code. And the published regulations and revenue rulings of the IRS are what they are, and cannot be altered or impeached by the internal writings of IRS employees. Moreover, plaintiff does not claim that there is any ambiguity in the published interpretations of liability that would require further explanation. To the contrary, plaintiff claims that such interpretations were clear and settled, but changed with the issuance of the new regulations in 2003. Justifications for the discovery in *Marriott* and *Jade*, based on a need to explain ambiguous law or regulations, therefore, are not applicable here, as well as wrong. In any event, the discovery rulings in *Marriott* and *Jade* do not bind this Court, and the mere fact that documents may have been produced in those cases is not a reason they should also be produced in this case.

> We agree, however, with the Secretary that matters of privilege can appropriately be deferred for definitive ruling until after the production demand has been adequately bolstered by a general showing of relevance and good cause, and at least the rough dimensions of the Secretary's burden have been set. This technique may, as to particular items, eliminate the 'showdown' on privilege. Perhaps also the frequently, and in this case almost certain, laborious page-by-page examination which assertions of privilege will require, certainly of the Secretary and perhaps also of the court, may be avoided or curtailed.
>
> We are, however, on notice that privileges of certain types will be asserted, and it is evident that the rulings to be made could drastically affect the size and nature of any productions to be made. We think that, in the circumstances of this case, we should lay down general guidelines in this regard, leaving determinations as to specific documents for such time as the issue develops precisely.

*Freeman,* 405 F.2d at 1338 - 39. In light of plaintiff's extremely broad and, the United States believes, irrelevant document requests, this approach is particularly sensible and efficient here.

In its responses to plaintiff's requests for internal IRS documents, the United States indicated that many of the documents are likely subject to the attorney-client or executive (deliberative process) privileges. (See Exhibit D to Motion to Compel, ¶¶ 12 - 16.) Citing *Freeman v. Seligson*, 405 F.2d 11326 (D.C. Cir. 1968), the United States also stated that it would provide a privilege log, detailing the documents and applicable privileges, if its other, more comprehensive objections to production of the documents were rejected. The United States has not, therefore, waived any privilege claims. The United States will provide a privilege log to plaintiff, with privilege claims asserted by the appropriate official, should the Court overrule the United States' other objections, and determine the appropriate scope of any required document

production. *See Marriott International Resorts L.P. v. United States,* 437 F.3d 1302 (Fed. Cir. 2006). [12]

## III. PLAINTIFF'S SECOND SET OF INTERROGATORIES ARE IMPROPER AND PREMATURE

In the third, and final, part of its motion, plaintiff asks this Court to compel the United States to "justify its massive non-party discovery," by providing answers to its second set of interrogatories. (Motion to Compel, p. 15.) The Court should deny plaintiff's motion for several reasons.[13]

### A. Discovery From Third-Parties Who Promoted the Son of Boss Tax Shelter

As noted above, the United States has sought discovery from several third-parties, including Jenkens & Gilchrist, Shumaker, Loop & Kendrick and Deutsche Bank, the promoters of the Son of Boss tax shelter at issue here. The United States has subpoenaed documents about not only the plaintiff's tax shelter transactions, but also the development of the shelter and its sale, by these same promoters, to other taxpayers. None of the third-parties has objected or refused to produce the requested information. The third-parties have produced such a large volume of material because they sold hundreds of these cookie-cutter shelters to other taxpayers.

---

[12] Plaintiff never objected to this two-step approach. It did not object when it received the United States' responses, citing *Freeman v. Seligson*, and did not voice any disagreement during the parties' discovery conferences. (See Motion to Compel, Exhibit I.) In fact, plaintiff does not even address the applicability of this procedure in its motion to compel. With regard to this issue, therefore, plaintiff has not complied with the requirement that the parties confer about any discovery disputes before bringing them to this Court. *See* RCFC 37(a)(2)(B).

[13] Plaintiff's counsel implicitly concedes in his affidavit that he filed the motion to compel regarding plaintiff's second set of interrogatories without first conferring with the United States' counsel, as required. *See* RCFC 37(a)(2)(B). (See Exhibits F, I and J to Motion to Compel.)

Courts have repeatedly upheld this type of factual discovery about substantially similar tax shelter transactions. It can produce evidence relevant to application of the economic substance, business purpose and step transaction doctrines, among other defenses. *See, e.g., Sochin v. Commissioner*, 843 F.2d 351 (9th Cir. 1988); *Karme v. Commissioner*, 673 F.2d 1062 (9th Cir. 1982), *Jade Trading LLC v. United States*, 65 Fed. Cl. 188 (Fed. Cl. 2005); *American Electric Power Co. v. United States* 191 F.R.D. 132 (S.D.Oh. 1999) *Douglas v. United States*, 410 F.Supp.2d 292 (S.D.N.Y. 2006); and *Brown v. Commissioner* 85 T.C. 968. (U.S.T.C. 1985). At the parties' initial meeting of counsel, pursuant to RCFC Appendix A, ¶ 3, the United States advised plaintiff that it would pursue such discovery, and explained why. The United States must be able to pursue this discovery to prove, contrary to plaintiff's claims, that the transactions at issue were not designed as an investment – with a reasonable possibility for profit – but were, instead, sold as a prepackaged scheme to generate artificial tax benefits.

To date, the United States has taken depositions of seven individuals. These include the depositions of the five members of the Welles family who participated in the Son of Boss shelter at issue here, one attorney who advised the Welles on the creation of Stobie Creek Investments LLC, and one former employee of the Welles' company (Therma-Tru Corporation) who also engaged in a Son of Boss shelter at the same time, upon the advice of the same promoters. The remaining depositions that the United States has advised plaintiff it may take are of employees of Deutsche Bank, Jenkens & Gilchrist and Shumaker, Loop & Kendrick who were involved in the design and sale of the shelter at issue

## B. The Interrogatories are Fatally Vague and Premature

The proper purpose of interrogatories is to discover facts, or contentions about the application of law to the facts. Plaintiff's second set of interrogatories do not do this. Instead, they seek the United States' legal theory about the potential admissibility at trial of vague categories of "communications" or "transactions." (See Exhibit G to Motion to Compel.) For example, plaintiff asks "Do you contend that evidence of a disagreement between the United States of America and any person or entity other than the plaintiff would be admissible at trial with respect to any issue raised by the pleadings herein?" (See Exhibit G to Motion to Compel, ¶ 8.) Such hypothetical questions, that fail to include a citation of any specific facts, about which a party is seeking the other party's contention, are improper. *See, e.g.*, FRCP 33, Advisory Committee Notes; and *Abbott v. United States*, 177 F.R.D. 92 (N.D.N.Y. 1997). Here, the lack of specific facts in plaintiff's interrogatories means that, in response, the United States would essentially have to write a brief for plaintiff regarding the standards for the admissibility of evidence at trial.

Not only do these questions lack a valid basis as contention interrogatories, they are also premature. The United States is still reviewing the substantial discovery provided by the promoters of the Son of Boss tax shelter. It is not a proper use of interrogatories to request that the United States describe for plaintiff its counsel's strategy in reviewing this potential evidence, while that review is ongoing. Indeed, this Court's rules provide that the evidence that the parties intend to submit at trial, the issues to which that evidence relates, and any questions as to the admissibility of the evidence are disclosed and addressed at the end of discovery. *See* RCFC, Appendix A, ¶¶ 13(a), (c). Proper contention interrogatories also can, and should, be deferred

until after factual discovery is completed. *See* FRCP 33(c) and FRCP 33, Advisory Committee Notes. *See also, In re Convergent Technologies Securities Litigation,* 108 F.R.D. 328 (N.D.Cal. 1985). Accordingly, the United States' objections to plaintiff's second set of interrogatories, including its response that it will identify the evidence it intends to rely upon in this case pursuant to the Court's pretrial procedures, were appropriate. The Court should deny the plaintiff's motion to compel any further response.

### C. Plaintiff Has Not Objected to Any Discovery

Finally, plaintiff's general complaint that the United States is seeking, or may, in the future, seek "too much" discovery, in order to defend plaintiff's claims, does not save its improper second set of interrogatories. The appropriate method to object to a specific discovery request by the United States is to move for a protective order. *See* RCFC 26(c). Plaintiff has never done so. Nor, as noted above, has any third-party from which the United States has sought discovery.

## Conclusion

For all the above reasons, the Court should deny plaintiff's motion to compel.

Respectfully submitted,

*/s/ Stuart D. Gibson*

Stuart D. Gibson
Attorney of Record
U.S. Department of Justice
Tax Division
Office of Civil Litigation
Post Office Box 403
Ben Franklin Station
Washington D.C. 20044
(202) 307-6586

Eileen J. O'Connor
Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section
Cory A. Johnson
Trial Attorney, Court of Federal
Claims Section

/s/ *Cory A. Johnson*
Of Counsel

Dated: December 29, 2006