**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T** |
| | ) | **(Judge Christine O. C. Miller)** |
| **v.** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**UNOPPOSED MOTION OF THE UNITED STATES TO CONDUCT PROMPT PRE-TRIAL CONFERENCE UNDER RCFC 16(c)(6)**

**Introduction**

In this case, plaintiff asks the Court to find that a tax shelter, designed by the law firm Jenkens & Gilchrist and Deutsche Bank, that plaintiff implemented in 2000, allows it to avoid paying any capital gains tax on approximately $200 million dollars of gain earned on the sale of Therma-Tru Corporation stock in that year. In brief, the shelter involved the creation of certain partnerships and other entities, and the purported purchase and sale of foreign currency options. The plaintiff claims that it entered into the transactions for a business purpose. The United States contends that – like hundreds of other taxpayers who participated in substantially identical, and similarly structured, transactions in 1999, 2000 and 2001 – these transactions were a prepackaged scheme designed and implemented for the purpose of artificially inflating the tax basis of the Therma-Tru stock owned by members of the Welles family, in advance of the anticipated sale of that stock. The United States further asserts that not only did the plaintiff lack a valid, non-tax

business purpose for engaging in these transactions, the foreign currency option transactions in which the plaintiff allegedly engaged were structured in such a way as to assure that the plaintiff could not realize a gain on the foreign currency transactions, in excess of the transactional costs.

## I. GENESIS OF THIS MOTION

The United States files this motion to bring to the Court's attention a number of issues and disputes that have arisen during the discovery process. Cumulatively, these disputes and issues have significantly impeded the parties' ability to pursue and complete discovery, and develop the case for trial. The United States therefore asks the Court to convene an in-court discovery conference, as promptly as possible, so that the parties can advise the Court of these disputes and issues, and discuss with the Court a comprehensive schedule and plan for resolving them that will allow the parties to complete discovery within a reasonable time.[1]

## II. DISCOVERY CONDUCTED BY THE UNITED STATES

The United States has been engaged in substantial discovery ever since the Court entered the initial scheduling order. The United States served interrogatories and document requests on plaintiff, and document subpoenas on the following third parties, all of whom were identified as having discoverable information:

1. Deutsche Bank (which helped create the tax shelter and was the counterparty in the foreign currency option contracts at issue in this case, and in hundreds of other similarly-structured transactions);

[1] The United States drafted and decided to file this motion prior to the recent reassignment of this case.

2. McDermott, Will & Emery (which helped create plaintiff, Stobie Creek Investments LLC);

3. The Jenkens & Gilchrist (J&G) and Shumaker, Loop & Kendrick (SLK) law firms, and former SLK attorney John Ivsan, (all of which helped create the tax shelter and acted as tax shelter promoters for these transactions, and, with respect to J&G, provided an opinion letter purporting to justify the claimed tax benefits of the transactions);

4. David K. Welles, Sr., David K .Welles, Jr., Christopher S. Welles, Jeffrey F. Welles, Peter C. Welles, Virginia Welles Jordan (the individuals behind plaintiff);

5. Robert Floyd (the plaintiff's accountant);

6. Steven Bores (former co-owner of Therma-Tru, and participant in a nearly identical tax shelter);

7. Kenner & Co. (the company that facilitated the sale of the Welles' Therma-Tru stock); and

8. North Channel, LLC (manager of plaintiff Stobie Creek Investments LLC).

### A. Third-Party Discovery Has Taken Significantly Longer Than Expected

It has taken the better part of the last 11 months to obtain compliance with all the document subpoenas issued in this case, and efforts to obtain full compliance continue. For example, the United States served a document subpoena on Deutsche Bank on April 3, 2006. The Bank has produced hundreds of thousands of pages of documents concerning the specific transactions at issue in this case, and similarly structured transactions. The documents were

produced on the following dates: September 14, 2006, November 16, 2006, November 21, 2006, and, just last month, January 18, 2007. The last two productions include documents that purport to reflect how Deutsche Bank accounted for the particular transactions at issue in this case, as well as how Deutsche Bank managed any perceived trading risks associated with its position as counterparty to those transactions. Other third parties have also taken substantial time to fully comply with the subpoenas, though not as long as Deutsche Bank. The United States continues to pursue compliance with its subpoenas to make sure that all the third parties have produced all responsive documents.

**B. Plaintiff's Response to Discovery Have Been Delayed**

The plaintiff has drawn out its response to the document requests served upon it by the United States, as well. Although the plaintiff was required to serve its initial response by October 31, 2006, it actually produced documents in seven batches, over a 2-½ month period, between November 2, 2006 and January 16, 2007. And, although the plaintiff withheld documents on claims of privilege, and directed third parties to withhold allegedly privileged documents as well, the plaintiff did not actually produce a privilege log until 3 weeks ago, on February 5, 2007, despite the United States' repeated, earlier requests for a privilege log. Only last week did the parties resolve the plaintiff's privilege claims – plaintiff has agreed to withdraw substantially all of its privilege claims. Plaintiff has yet to produce the documents it had withheld, nor has it yet directed all the third parties to produce documents initially withheld on claims of privilege.

The drawn out nature of the plaintiff's and others' compliance with discovery requests has hampered the United States' ability to complete discovery, and particularly to take

depositions. For example, the plaintiff did not produce all documents responsive to the United States' September 2006 document request until the end of December, after the United States had taken the depositions of the members of the Welles family who participated in the transactions at issue here.[2] Additionally, during depositions of the Welles family members, privilege claims were asserted, and plaintiff's counsel directed witnesses not to answer. Because the parties have now resolved the privilege claims, the United States will have to resume five of the seven depositions already taken, to ask questions previously objected to, and to ask about documents that the plaintiff produced after the depositions.

### C. Plaintiff Has Objected to the United States Taking More than the Ten Depositions Provided for in the Presumptive Rule of RCFC 30

Not only has the United States been hampered by the inability of plaintiff, members of the Welles family, and other third parties to timely comply with document requests and subpoenas, the United States has been hamstrung by plaintiff's recent insistence that we limit the number of depositions to ten, under RCFC 30(a)(2)(A). In its initial disclosures, the plaintiff identified twelve witnesses whom it believes may have relevant evidence upon which it may rely to support its case. Although plaintiff identified two organizations, Deutsche Bank and J&G, it did not identify the individuals from these organizations upon whom it would rely to support of its claims at trial. In the United States' initial disclosures, it identified sixteen individual witnesses

---

[2]Counsel for the United States asked for and received express assurance from plaintiff's counsel that all the documents had been produced before proceeding with the depositions of the Welles family members. (One previously noticed deposition had been rescheduled to a later date to allow plaintiff to produce all requested documents ahead of time.) But it was not until after all those depositions had been taken in mid-December that plaintiff's counsel disclosed that the plaintiff had not, in fact, produced all the documents.

and four entities as having relevant, discoverable information, twelve of which overlap with the plaintiff's list. As a result of information developed during discovery – including review of the documents recently produced by the plaintiff and third-parties – on February 23, 2007, the United States served a supplement to its initial disclosures, and identified an additional 26 additional witnesses whom it believes may have relevant evidence upon which it may rely to support its case. A copy of a further supplement served February 27, 2007 – which includes descriptions of the information that expected to be obtained from each newly-identified witness – is attached as Appendix A.

Thus far, the United States has taken seven depositions, all of individuals identified by the parties in their initial disclosures.[3] It has also noticed an eighth deposition, that of Lawrence Goldstein, a lawyer with North Channel, LLC, the manager of Stobie Creek Investments LLC.[4] Thus, absent stipulation or leave of court, the United States can take only two more depositions under RCFC 30(a)(2)(A).

Until recently, the United States did not anticipate any problem obtaining a stipulation. In the Joint Motion to Revise Scheduling Order, filed January 4, 2007, the parties indicated that the United States had taken seven depositions, and anticipated taking twenty additional depositions.[5] The plaintiff drafted, signed and filed the motion without expressing any objection to the United States taking twenty additional depositions.

---

[3]The United States has taken depositions of five of the six members of the Welles family, Steven Bores, and David Herpe.

[4]The parties had scheduled this deposition for early January 2007, but agreed to postpone it until after resolution – by agreement or motion – of the plaintiff's privilege claims.

[5]Joint Motion to Revise Scheduling Order, ¶3.

Last week the situation changed. As part of the process of scheduling additional depositions, counsel for the United States asked plaintiff's counsel to stipulate that it could take more than ten depositions under RCFC 30(a)(2)(A). Plaintiff's counsel initially balked at allowing more than ten depositions. He then suggested allowing two more depositions, for a total of twelve (not coincidentally, the number of witnesses contained in the plaintiff's initial disclosures). Finally, plaintiff's counsel agreed to allow five more depositions for a total of fifteen, subject to revisiting the limit after the United States had taken fifteen depositions.[6] The United States' counsel responded that they did not believe fifteen depositions would be sufficient, and that the United States could not wait to see if plaintiff's counsel would agree to more, sometime in the future, as plaintiff's plan contemplated. The United States' counsel informed plaintiff that they would, therefore, also need to ask the Court for relief now. Plaintiff's counsel then returned to his initial position, refusing to stipulate that the United States could take more than ten depositions.[7]

---

[6]This plan would have put the United States in the untenable position of taking the five additional depositions, needing more, and then having the plaintiff unreasonably withhold agreement to allow more. Given this dilemma, the United States decided to present the issue to the Court before taking any additional depositions.

[7]At one point, plaintiff's counsel suggested that the United States did not need to take the depositions of all six members of the Welles family who participated in these transactions. The plaintiff had identified, however, all six members of the Welles family in its initial disclosures as persons having information upon which the plaintiff may rely to support its claims in this case. And, in its initial disclosures the plaintiff identified hundreds of pages of documents relating to each of these family members, as supporting its claims in this case. It seems disingenuous for the plaintiff to identify witnesses and documents that it will rely upon to prove its case, and then argue that the defendant need not take the depositions of those same witnesses, and ask them about those documents.

The United States cannot complete discovery in this $200 million tax shelter case – involving three large organizations that designed and promoted the shelter and numerous other individuals who participated in the transactions at issue – by adhering to the presumptive limit of ten depositions. It is unreasonable for the plaintiff to insist that the defendant limit its discovery to the witnesses whom the plaintiff has identified. Certainly a party may take the deposition of any witness who has or may have information discoverable under RCFC 26, whether or not the plaintiff has identified that witness in its initial disclosures. But even more importantly, the parties are aware (through information developed in discovery) that there are witnesses whom the plaintiff has not disclosed, and who have first-hand knowledge about the transactions at issue here. Many of these people, though not all of them, are former employees of the entities that both parties have identified has having discoverable information – Deutsche Bank, J&G, and SLK, the designers and promoters of the tax shelter at issue here. In its initial and supplemental disclosures – and during conversations with plaintiff's counsel – the United States has identified precisely whom it seeks to depose. Other than chanting the mantra of the presumptive limit in RCFC 30, the plaintiff has offered no good reason why the United States should not be allowed to depose these witnesses who have discoverable information that falls within the scope of RCFC 26. Because the United States was not a party to any of the events or transactions at issue here, it must seek evidence from these third-parties through the formal discovery process. And the United States should not be forced to agree to a deposition plan under which each deposition may be its last, depending on whether the plaintiff will agree to any additional depositions.

Recently a federal district court managing three tax shelter cases involving transactions similar to the transactions at issue in this case granted the United States' motion for leave to take

99 depositions for use in those cases and four similar tax shelter cases pending in this Court.[8] That multi-district litigation involves offsetting digital foreign currency option transactions similar to those at issue in this case, and even involves some of the same witnesses now or formerly employed at Deutsche Bank and J&G. While the United States does not anticipate requiring 99 depositions here, it is certainly unreasonable to limit the United States to 10, 12 or 15 depositions. It is even more unreasonable to require the United States to obtain the plaintiff's permission for each deposition more than 10 it seeks to take.

## II. DISCOVERY CONDUCTED OR SOUGHT BY PLAINTIFF

As the Court is aware, on November 28, 2006, the plaintiff filed a motion to compel the defendant to produce certain documents and respond to interrogatories. The final brief on that motion was filed on January 11, 2007.

Among the issues presented in the plaintiff's motion to compel is whether the plaintiff may properly take discovery of the IRS's internal deliberations, unrelated to this case, concerning the issuance of official revenue rulings, regulations and notices, including IRS Notice 2000-44, published in September 2000, and concerning a case (Helmer v. United States) decided in 1975. Notice 2000-44 officially "listed" the digital option transactions at issue in this and other cases as "tax shelters" subject to the registration and list-maintenance requirements of the Internal

[8] In re COBRA Tax Shelter Litigation, Cause No. 1:05-ML-9727 (S.D. Ind.), Order of April 20, 2006 (copy attached as Exhibit B). COBRA, an acronym for "currency options bring reward alternatives," was a tax shelter marketed by Ernst & Young that employed digital option transactions similar to the transactions at issue in this case, as part of a tax shelter also described in IRS Notice 2000-44. The cases pending in this court are JZ Buckingham Investments LLC v. United States (No. 05-231), MURFAM Farms LLC v. United States, (No. 06-245), PSM Farms LLC v. United States, (No. 06-246) and Murphy Pork Partners LLC v. United States (No. 06-247).

Revenue Code. Since it filed that motion, the plaintiff has issued subpoenas to take the depositions of one current and one former IRS official, Richard Starke and Monte Jackel, respectively. In statements submitted to the IRS with those notices, the plaintiff indicated that it seeks testimony about meetings that took place in 1995, and about the witnesses' personal views – and the views expressed by other IRS officials at that time – on what the law is, was, and should be concerning the meaning of the word "liability" for purposes of the provisions of the Internal Revenue Code relating to partnerships.[9]

The plaintiff initially scheduled the Starke deposition for February 1, 2007, and reset it at defendant's counsel's request for February 15, 2007. Shortly before the scheduled deposition, the IRS advised the witness and counsel that it would not authorize Starke to testify on the matters listed in the notice.[10] Previously, the United States had offered to stipulate that, if called upon to testify in this case, Starke would testify consistently with his prior testimony in Jade Trading (without, of course, agreeing that any such testimony is admissible). The parties agreed to postpone the deposition, pending a decision by plaintiff's counsel as to how it wanted to

---

[9]Starke testified in deposition and at trial in the pending case Jade Trading LLC v. United States, Case No. 03-2164 T, that he had no present recollection of any of the matters discussed in 1995 (and that reviewing contemporaneously created documents did not refresh his recollection). Counsel for Jackel advises that, like Starke, Jackel has no present recollection of any of the factual matters on which he has been subpoenaed to give deposition testimony. It remains to be seen whether a party can compel a non-retained third-party attorney to give testimony about what the law is, or to testify about his views on what the law is or should be.

[10]Discovery of current and former IRS employees is governed by the "Touhy" regulations adopted by the Secretary of the Treasury at 26 CFR §301.9000-1, *et. seq.* Those regulations prohibit any current or former IRS employee from testifying about any "IRS matter" – such as the matters on which plaintiff seeks their depositions – without prior authorization from the IRS.

proceed in light of the IRS' refusal to authorize any testimony. Counsel for the plaintiff has not yet informed the United States' counsel of its intentions.

The plaintiff has also recently issued a subpoena to take the deposition of Monte Jackel on March 8, 2007. The IRS has also advised that it has decided not to authorize Mr. Jackel to testify. The IRS concluded that none of the matters on which testimony was sought were relevant, or likely to lead to the discovery of admissible evidence, and that all of the matters on which testimony was sought would require Jackel to reveal pre-decisional deliberations of the Internal Revenue Service which are protected by the governmental deliberative process privilege. Counsel for the United States has not yet discussed with plaintiff's counsel how to address this issue.

On February 23, 2007, plaintiff's counsel contacted counsel about taking the deposition of the IRS agent who conducted audits of plaintiff and related taxpayers. If the matters at issue in the motion to compel are any indication, plaintiff will likely seek – impermissibly – to ask the revenue agent, Patricia Ugorowski, about matters that "go behind" the notice of final partnership administrative adjustments (FPAA) that triggered the filing of this lawsuit.

## III. THE CURRENT SCHEDULE WILL NOT PERMIT RESOLUTION OF THE OUTSTANDING ISSUES AND COMPLETION OF ALL NECESSARY DISCOVERY

On January 4, 2007, the plaintiff filed – and on January 8, the Court granted – the parties' Joint Motion to Revise Scheduling Order. In their motion, the parties asked the Court to extend the discovery period by six weeks, from March 3 to April 13, 2007. Since January 4, 2007, the issues noted above have delayed and impeded the defendant's efforts to complete discovery by April 13, 2007. In particular, plaintiff's delayed production of documents and (now withdrawn)

privilege claims have delayed discovery, and made necessary the resumption of depositions of five witnesses originally deposed in December 2006, and the postponement of another. Additionally, because the parties have not been able to agree on a stipulation to increase the number of depositions that the United States may take in this case, the United States must obtain relief under RCFC 30(a)(2)(A), before scheduling any more depositions. The United States has recently supplemented its initial disclosures, listing many individuals with knowledge of the specific transactions at issue in this case and the design and intent of the tax shelter at issue. As noted above, it is unreasonable to require the United States to schedule depositions up to the limit, without any agreement or assurance that the next two depositions it takes will not be the last. At the conference requested in this motion (and in a motion to enlarge the deposition limit, if necessary), the United States expects to ask the Court for leave to take up to an additional 30 depositions, and to extend the discovery period by an appropriate period of time to enable the parties to take the depositions in an orderly, and still prompt, fashion.

## Conclusion

For all the above reasons, the United States respectfully asks the Court to grant this motion and convene within the next 10 days an in-court Rule 16(c)(6) pre-trial discovery conference, for the purpose of addressing the outstanding discovery issues, scheduling further argument and briefing on the issues (as necessary), and deciding the matters listed in this motion. Counsel for the United States certifies that they have discussed with plaintiff's counsel the relief sought in this motion, and that plaintiff's counsel has no objection to the Court holding a pre-trial discovery conference.

Respectfully submitted,

*s/ Stuart D. Gibson*
Stuart D. Gibson
Attorney of Record
U.S. Department of Justice
Tax Division
Office of Civil Litigation
Post Office Box 403
Ben Franklin Station
Washington D.C. 20044
(202) 307-6586

Eileen J. O'Connor
Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section
Cory A. Johnson
Trial Attorney, Court of Federal
Claims Section
*s/ Cory A. Johnson*
Of Counsel

Dated: February 28, 2007