**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T** |
| | ) | **(Judge Christine O. C. Miller)** |
| **v.** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**THE UNITED STATES' REPLY IN SUPPORT OF ITS UNOPPOSED MOTION TO CONVENE PRETRIAL DISCOVERY CONFERENCE**

Plaintiff's response to the United States' motion for a RCFC 16 pre-trial discovery conference confirms the very real impasse that the parties have reached, over the most fundamental aspects of the discovery process. The United States submits this reply not to rebut plaintiff's (erroneous) assertions point-by-point, but simply to illustrate the ongoing nature and scope of the problems, and the importance of convening a conference to address this impasse, so that the parties can move forward with discovery.

**The First Problem – Amount and Type of Discovery**

Counsel for plaintiff has said, both in pleadings filed in court and to the United States' counsel, that they view this case as involving only one set of unique transactions – the "digital option" transactions engaged in by the Welles family during March and April 2000. The United States, to the contrary, views this case as involving a series of related transactions specifically designed to artificially inflate the basis of the stock of Therma-Tru Corporation owned by the

Welles family. This basis inflation, in turn, would enable the members of the Welles family to sell that stock without having to pay capital gains taxes on the more than $200 million in gain they realized on the sale of the stock. In the United States' view, the transactions at issue implemented a "cookie cutter" tax shelter, designed and sold to the Welles family by Jenkens & Gilchrist; Shumaker, Loop & Kendrick; and Deutsche Bank, the tax shelter promoters.[1]

Because the parties view the transactions so differently, they also view their respective discovery needs differently. The plaintiff wants the United States, and the Court, to focus only on the specific option transactions engaged in by the Welles family, and their documentation of it, and nothing else. The United States, on the other hand, seeks discovery not only from on these transactions, but also on how the transactions were designed and structured, and how the people and entities that designed, packaged, promoted, executed and participated in these transactions, and hundreds of transactions identical to them, viewed and actually accounted for the transactions at issue. For example, plaintiff alleges that the Welles family believed that a substantial profit could be made from the options. Certainly, the United States should be able to discover whether this was objectively true, and how the designers and counter-party in the option transactions treated and accounted for the transactions. There should be no dispute about the United States' right to pursue discovery into these matters, especially insofar as they relate to the particular transactions that these taxpayers engaged in.

But there is considerable dispute. This is because plaintiff characterizes the United States' discovery as an attempt solely to obtain evidence of other similarly-designed transactions,

---

[1] See, for example, Exhibit 1 to The United States' Response to Plaintiff's Motion to Compel Discovery, filed January 5, 2007.

developed by the same people and entities that designed and executed the plaintiff's tax shelter. This "pattern evidence" discovery is undoubtedly an important part, albeit a small one, of the United States' intended discovery.[2]

Yet plaintiff has elevated its objection to such evidence to the forefront and used it as a pretext to thwart any cooperation or progress on the pursuit of other discovery within the broad limits of RCFC 26(b)(1), including the ability of the United States to take more than the ten depositions provided for in the presumptive rule of RCFC 30. In fact, almost all of the individuals identified in the United States disclosures, and whom it seeks to depose, had a direct role in designing, selling, implementing or accounting for the *transactions at issue in this case, and in which the Welles family engaged as part of the tax shelter*. The United States learned of these individuals after reviewing the documents produced by plaintiff and third parties over the past few months. And, among other things, their testimony concerns the very transactions that lie at the heart of the dispute in this case.[3] Absent a stipulation or order from this Court allowing the United States to take more than 10 depositions, however, the United States will not be able to now take deposition discovery that is not only relevant, but extremely likely to lead to the development of critical evidence that the United States would offer at trial.

**<u>The Second Problem – Timing of Discovery</u>**

The plaintiff seems to suggest in its response that the United States should have taken more depositions earlier in this case, notwithstanding the fact that neither the plaintiff, the Welles

---

[2] Courts have repeatedly upheld the relevance of this discovery. See, for example, the cases cited in The United States' Corrected Response to Plaintiff's Motion to Compel Discovery, p. 19.

[3] Plaintiff did not identify any of the individuals in its disclosures under RCFC 26(a).

family, or the people and entities who put together the deals at issue here had yet fully complied with timely-served, legitimate document requests and subpoenas. It is also strange to hear the plaintiff complain of any delay in depositions in light of the fact that the plaintiff, admittedly, *still* has not complied in full with document requests served on it last September – thus requiring the United States to now reconvene (as soon as plaintiff's document production is completed) the depositions of five members of the Welles family that were taken in mid-December 2006, *three months ago.* Plaintiff's claim that the defendant has dragged its feet in discovery is even stranger in light of the fact that *only last week* the plaintiff produced additional documents that had first been requested nearly 6 months ago – and the plaintiff has yet to produce or identify its books and records for the early part of 2000, when the transactions at issue supposedly occurred.[4] And the plaintiff has not indicated when it expects to finish searching for and producing all the documents that the United States had first requested six months ago.

It is the history of plaintiff's (groundless) privilege claims, however, that contradicts most vividly its allegation that the United States has not been diligent in pursuing discovery. On October 31, 2006, the plaintiff served its written response to the United States' document requests, and later began producing documents. In its response, the plaintiff said it was withholding an unspecified number of documents in reliance on privilege claims. Despite repeated requests, however, plaintiff did not produce a privilege log until last month, 4 months late.

These delayed privilege claims by plaintiff, and resolution of those claims, has delayed discovery by months. For example, the United States had noticed the deposition of Larry

---

[4]These records are required to be maintained. *See*, Treas. Reg. § 1.6001-1.

Goldstein (an employee of North Channel, the manager of plaintiff) for January 4, 2007. But at the plaintiff's suggestion, the United States agreed to continue the deposition indefinitely, to enable the parties to resolve the dispute over plaintiff's privilege claims. After the United States told plaintiff that it would file a motion to compel if necessary, on February 5, 2007 – more than three months after it served its response to the defendant's document request – plaintiff finally agreed in principle to waive its privilege claims as to almost all the disputed documents and communications. Two weeks later, February 21, 2007, the parties signed a letter in which plaintiff waived certain privilege claims.[5] As of March 7th, however, plaintiff has still not produced the documents. Indeed, on March 5, 2007, the attorney for Shumaker, Loop & Kendrick – which is withholding 21 documents based on the privilege claims that the plaintiff had asserted and has since waived – advised counsel for the United States that he had not yet produced the withheld documents *because he was waiting to hear from plaintiff's counsel*.

The plaintiff's groundless privilege claims – and the plaintiff's delay in raising them – have delayed depositions by at least three, and possibly four, months. The withheld documents are very likely relevant to not only the deposition of Mr. Goldstein but also to many other witnesses as well – including the witnesses first deposed last December. But the United States can not determine this for certain *until* plaintiff actually produces the documents, which it still has not done, even two weeks after it waived the only basis for not producing them last October. It is certainly reasonable for the United States to obtain and review these documents before scheduling depositions of individuals of whom it may want to ask questions about them.

[5] The intervening time was spent, in part, working out the specifics of the letter containing the waiver, which also included an acknowledgment of the position of the United States, which did not agree that there ever were any valid privileges.

**Conclusion**

The parties have reached an impasse that makes it impossible to complete discovery within the time now allotted. For this reason, and for the reasons discussed in the motion, the Court should grant the motion and promptly convene a discovery conference.

Respectfully submitted,

*/s/ Stuart D. Gibson*

Stuart D. Gibson
Attorney of Record
U.S. Department of Justice
Tax Division
Office of Civil Litigation
Post Office Box 403
Ben Franklin Station
Washington D.C. 20044
(202) 307-6586

Eileen J. O'Connor
Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section
Cory A. Johnson
Trial Attorney, Court of Federal
Claims Section

/s/ *Cory A. Johnson*

Of Counsel

Dated: March 7, 2007