IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JADE TRADING, LLC, by and )
through ROBERT W. ERVIN AND )
LAURA KAVANAUGH ERVIN on )
behalf of ERVIN CAPITAL, LLC, )
Partners Other Than the )
Tax Matters Partner, )
Plaintiffs, )
)
) Docket No.: 03-2164T
v. )
UNITED STATES, )
Defendant. )

Courtroom 2306
Russell Federal Building
75 Spring Street N.W.
Atlanta, Georgia
Monday,
September 12, 2005

The parties met, pursuant to adjournment, at 9:37 a.m.

BEFORE: HONORABLE MARY ELLEN COSTER WILLIAMS
Judge

APPEARANCES:
For the Plaintiffs:
DAVID D. AUGHTRY, Esquire
LINDA S. PAINE, Esquire
NICOLAS F. KORY, Esquire
Chamberlain, Hrdlicka, White, Williams & Martin
191 Peachtree Street, N.E., 9th Floor
Atlanta, Georgia 30303-1747
(404) 659-1401



APPEARANCES: (Continued)
For the Defendant:
STUART J. BASSIN, Esquire
MATTHEW C. HICKS, Esquire
MICHAEL S. RAUM, Esquire
JENNIFER P. WILSON, Esquire
U.S. Department of Justice
Tax Division
P.O. Box 55
Washington, D.C. 20044

(202) 307-6542



C O N T E N T S

| WITNESSES: For the Plaintiff: | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|
| Ari Bergmann | 1068<br>1183 | 1227<br>1244<br>1255<br>1279<br>1300<br>1351<br>1353 | 1361<br>1387 | 1374<br>1388 | 1239<br>1253<br>1269<br>1283<br>1350<br>1352 |



E X H I B I T S

| PLAINTIFF'S EXHIBITS: | IDENTIFIED | RECEIVED | DESCRIPTION |
|---|---|---|---|
| 245 | 1188 | -- | AIG Margin Account Statement for Jade Trading |



E X H I B I T S

| DEFENDANT'S EXHIBITS: | IDENTIFIED | RECEIVED | DESCRIPTION |
|---|---|---|---|
| 546 | 1256 | -- | Sentinel presentation to investors, 6-16-99 |

| | | | |
|---|---|---|---|
| 548 | 1255 | -- | Sentinel Advisors Power Point |
| 552 | 1238 | 1249 | 46-15-99 memo from Bergmann to Bee |
| 553 | 1251 | 1254 | 5-5-99 fax from Bergman to Bee |
| 565 | 1348 | 1351 | Opinion letter from Bee to Bergman of 7-28-99 |
| 566 | 1350 | 1360 | 7-20-99 opinion letter by BDO Seidman |
| 697 | 1344 | -- | List of investors |
| 757 | 1317 | -- | BDO bills table and bills |
| 763 | 1067 | -- | 7-26-05 computer printout, Starke |
| 764 | 1067 | -- | Declaration of Margo L. Stevens |
| 765 | 1303 | -- | Demonstrative, "Terms of the Knockout" |



P R O C E E D I N G S

(9:37 a.m.)

THE COURT: On the record.

MR. AUGHTRY: Last week we had tendered to the Court our excerpts from the Sheldon Pang deposition, and I was under the impression that the included not only our excerpts, but the excerpts designated by the Defendant so we would have one complete group.

Yesterday, I discovered that the Defendant's excerpts were not in there, and I would like to tender to the Court a copy of what has been given to the Court an amended designation by Plaintiffs that incorporate both ours and Defendant's.

THE COURT: You may.

MR. AUGHTRY: Thank you.

That's the only preliminary matter for Plaintiffs before they move to their next witness.

THE COURT: And for Defendant?

MR. BASSIN: Your Honor, just to complete the record on the Sheldon Pang matter, we would like to tender a copy of our deposition designations on Sheldon Pang that we provided to Plaintiffs on September 8.

MR. AUGHTRY: And we did receive those and



hopefully have been precise this time and incorporating them.

THE COURT: All right. Thank you both.

Did I understand you correctly to say that you have already incorporated Defendant's designations in on place?

MR. AUGHTRY: Yes.

THE COURT: Thank you so much. That's terrific.

MR. AUGHTRY: If there is anything else preliminarily.

THE COURT: I think we might.

MR. AUGHTRY: Please.

MR. BASSIN: Your Honor, we have a couple of things.

First, we wanted to advise you that the BDO documents under seal issue where we have moved to

unseal the documents, that issue will specifically come up this morning, okay.

THE COURT: I thought that issue was resolved.

MR. BASSIN: And our motion to unseal was granted.

THE COURT: No, I thought that there was no longer any problem with the motion because BDO had no



objection.

MR. BASSIN: That's correct. That is correct. We just wanted to make sure that the Court had ruled.

MR. AUGHTRY: And our only reservation was not preliminary to trial, so we really don't have a dog in that fight.

THE COURT: I didn't think so. Okay.

MR. BASSIN: Okay. Second thing, and this is --

THE COURT: So that motion is granted.

MR. BASSIN: Thank you.

The second thing, and this is something that I've just had a chance to read the transcript from Thursday afternoon from MR. Starke's testimony, and at that point the Court expressed, as I understood it, expressed concern that the government had not dealt properly with regard to the documents that were on Mr.

Starke's computer, and you had asked for a report on Monday morning.

THE COURT: Asked for a list.

MR. BASSIN: Okay. Your Honor, I have a couple of things here that I think will help explain it. May I approach?

THE COURT: You may.



Well, it's hard to read.

MR. BASSIN: But I will explain it to you.

THE COURT: Okay.

MR. BASSIN: Okay?

THE COURT: You have given a copy of this to Mr. Aughtry?

MR. BASSIN: Yes, we have.

Your Honor, it's very important to us that you understand that we have dealt with -- we have dealt forthrightly on this matter. But what we have gone and done is provided you with two documents this morning. The first is a printout of the file, of the file index for Mr. Starke's computer listing each of the documents that were on his computer related to this issue.

THE COURT: And when was this done?

MR. BASSIN: This was done Friday morning, and it had been done previously, but we repeated the process on Friday morning.

THE COURT: And were you able to assure

yourself that these were the same documents that appeared right after his deposition?

MR. BASSIN: Right.

THE COURT: And how did you do that?

MR. BASSIN: They went back to the same



computer, and printed it off.

What we had told Plaintiffs back in August was that we had gone back to Mr. Starke's computer and confirmed that all of the documents on his computer had either (a) been produced, or (b) were duplicates of documents upon which privilege had already been asserted.

What you have in handwriting on the right-hand side of the document are two columns of numbers. One is page numbers beginning with 107 and 108. Okay, those are the Bates numbers that were assigned to those documents.

The second column on the right-hand side that has numbers 42 up through 50 are references to the Margo Stevens declaration in the Marriott case, and we've provided you excerpts from that declaration.

The important thing here is that you can tie each and every page that is on -- that was Mr. Starke's computer to the documents for which privilege was claimed in the Margo Stevens declaration. And I went back and spent and hour and a half yesterday

afternoon repeating that exercise for myself and being sure that that was correct.

So the statement that we made on August 2nd to Mr. Aughtry that with one exception we have



determined that all of the files on Mr. Starke's computer were included in the Revenue Ruling 95-45 file and were either produced or subject to a privilege claim. That statement was correct then and it is correct now.

I don't know why the charge was made Thursday afternoon that we had not accounted for the materials on Mr. Starke's computer. We did then. We've repeated it now. But there is no basis for a charge that we have dealt improperly here, and it's important for us to resolve any issues of that to the Court's satisfaction.

In fact, if the Court so desires, we can bring the person from the IRS Disclosure and Privacy Law Section who took the stuff off the computer, and prepared this index. We can bring that person down here. I don't think it's necessary, but if the Court has any doubts that the government has acted improperly here, we are prepared and willing to do that.

THE COURT: It was the witness's testimony that confused things, I believe. He said that there were five documents and only one had been produced.

No one was accusing anyone of doing anything improper. These things happen. And in fact, there are not five



documents on this list. There are more.

MR. BASSIN: Okay. But in any case, all of the documents on his computer have been accounted for.

THE COURT: Anything further from the Plaintiffs on this score?

MR. AUGHTRY: Just two points, Your Honor.

One, what we were told was that there was only one document on his computer; that he would go back and check his computer. There is only one document. It was a drafting of a ruling, and on that we said -- it was a phone message or phone conversation between Mr. Bassin and myself -- that's fine.

Now apparently there are a number of documents, and I'll accept Mr. Bassin's representation that he has accurately correlated this to the earlier list. That's not what we understood, but we now understand it, and we're prepared to move on.

THE COURT: Very well.

MR. BASSIN: Your Honor, one final clarification. My letter said, "With one exception, we have determined that all of the files on Mr. Starke's computer were included in the file, and either produced or subject to a privilege claim."

I have no idea why Mr. Aughtry misunderstood



that to suggest that there was only one document that we made reference to, but that is a misunderstanding on Plaintiffs' part.

MR. AUGHTRY: Had the telephone conversation. If it's a misunderstand, it's a misunderstanding. We do raise the question as to, given the witness's testimony, given the production of the Helmer/Cram memo, why in their waiver of executive privilege as to all these items.

MR. BASSIN: We've had that discussion before, and the Court has ruled on it.

MR. AUGHTRY: No, I don't believe so.

THE COURT: I haven't ruled on subject matter waiver. It hasn't really been presented to me.

MR. AUGHTRY: We now have --

THE COURT: Other than in my own mind.

MR. AUGHTRY: Right. We now have however many this is, 10 or so -- actually, one, two, three, four, five, six, seven, eight, nine, 10, 11, 12, 13, 14 documents from the gentleman who testified the other day.

You will recall that one of the points of interest was there is a briefing memo, and he was taking excerpts from the briefing memo about existing law, and there appears to be a reference here to chief

counsel briefing summary. It seems to me it's all the same subject matter, and there is a subject matter waiver.

THE COURT: Which privilege attached here?

MR. BASSIN: Executive privilege, deliberative process. These are all documents that are preliminary to issuance of a revenue ruling.

THE COURT: Not attorney/client privilege? Not work product? There is a difference in the law --

MR. BASSIN: Right.

THE COURT: -- among the privilege, and at least in some jurisdictions the deliberative privilege waiver is limited to the document itself. Not so with attorney/client privilege. I will let you bring other precedent to my attention, but that's my recollection.

MR. BASSIN: We can brief that. My recollection was that the Court's order on executive privilege at one point addressed subject matter waiver.

THE COURT: I have had, unfortunately, several issues regarding subject matter waiver in various cases in the last couple of months, so forgive me if I am not recalling this properly.

MR. BASSIN: And unfortunately, we have been

THE COURT: On that issue, yes.
MR. BASSIN: Yes, we have --
THE COURT: Not subject matter.
MR. BASSIN: Okay.
THE COURT: I ruled on that issue, not subject matter.
MR. BASSIN: Okay. And unfortunately, we've generated enough disputes that you have had written enough that I can't remember it all myself. Okay.
THE COURT: I'm glad you're the one that said that.
MR. BASSIN: Okay, Your Honor.
THE COURT: What's your pleasure? Do you want to see if my recollection of the law in this circuit is correct on the scope of a subject matter waiver in the context of the deliberative process privilege? And if it's limited to one document, we're done. And if it's not, then we can look at them.
MR. BASSIN: And if you recall, Your Honor, the "Helmer document" was the product of an inadvertent disclosure in another matter.
THE COURT: No, it was -- was it inadvertent?
MR. BASSIN: Yes.
THE COURT: It was inadvertent. Okay.

MR. BASSIN: Okay. But those kind of internal deliberations are exactly the kind of thing for which we always claim deliberative process. The problem was that the first 10 pages of the document were pretty innocuous recitations of cases, and what happened was that somebody didn't read far enough into the document in that case to see that there was some truly deliberatively stuff further in.

Your Honor, the other issue --

MR. AUGHTRY: Excuse me.

THE COURT: But it's only the deliberative process privilege that's been claimed for that document.

MR. BASSIN: We have to go back and look. We'd have to go back and look at it.

MR. AUGHTRY: Your Honor, this is a significant case for us. We don't want to pass on any available evidence. We will look at it over the evening.

I will tell you from our perspective we feel like we have made our point that in '95, Helmer was focused, Helmer was accepted as favoring the government, and not altered until 2003. We will look at it over the evening, but we're not waiving the -- I don't want to waive the rights to any documents that