**From:** Brubaker, R Craig
**Sent:** Thursday, November 4, 1999 9:15 AM
**To:** GALLINEK, ERIC
**Cc:** Brooks, Daniel; Rupp, Jeffrey; Parse, David
**Subject:** FW: Transaction Overview

---

Eric:

David Parse and I (Chicago and Dallas respectively, for DB Alex. Brown) are working with Dan Brooks on this transaction for the US law firm of Jenkens and Gilchrist, who asked us if we could assist in delivering a financial transaction for their clients who are undertaking under Jenkens' direction some sophisticated tax planning. We had previously sent this overview so that all could have an understanding of what we were being asked to do and so that we could provide input regarding procedures and steps we'd need from Jenkens to assist them.

Dan suggested we might call you and walk you through. Due diligence regarding clients and suitability has already been undertaken at the Alex Brown level. Jenkens needs execution of these trades by November 15. Perhaps this overview could bring you up to speed for this call.

Dan will initiate the call shortly.

Thanks,

Craig

*R. Craig Brubaker*
*Deutsche Banc Alex. Brown*
*Private Client Services*
*214-740-7765 (voice)*
*214-740-7780 (fax)*
*200 Crescent Court, Suite 500*
*Dallas, TX 75201*

-----Original Message-----
**From:** Brubaker, R Craig
**Sent:** Wednesday, October 27, 1999 1:44 PM
**To:** CRAWFORD, ROSS
**Cc:** HANEY, ANDREW; ALEXANDER, ALEX; Clendening, Todd; Rupp, Jeffrey; Parse, David; Brooks, Daniel
**Subject:** Transaction Overview

To all:

Regarding our conference call this morning, Ross suggested that it might be beneficial to provide you all with as many details of the transaction as possible so that required steps for DB and Alex Brown purposes can be identified in advance. The ideal scenario is to streamline the account opening and documentation process to the extent possible in view of the anticipated volume of transactions in a short timeframe.

The Transaction:

PENGAD-Bayonne, N. J.
EXHIBIT C

We understand from our client's legal counsel that the format will be virtually identical in all of the 100+ cases. We are dealing with wealthy individuals who are entering into a tax planning transaction created and advised on by the US law firm, Jenkens & Gilchrist. A component part of their transaction requires our implementation of a financial transaction, namely the digital swap, as a prerequisite step. We understand from Jenkens that they contemplate the transaction steps to be as follows:

Step 1:

Individual client creates two new entities, both of which will be substantially owned by the client and his/her family members. One entity is a US limited liability company (LLC) and the other is a US limited partnership. Client capitalizes the LLC with cash in an amount necessary to fund the purchase of the digital option. This is the only asset in the LLC.

In the limited partnership, client will have contributed an asset with a large fair market value and little or no tax basis. There is generally no other asset in the partnership. There are no audited financials for either the LLC or partnership, nor any assets in these entities other than those mentioned. As the client will have transferred cash sufficient to fund the purchase of the option in advance, we should be comforted that full payment will not be a concern, and that issues of suitability have been handled by the Alex Brown account reps.

Step 2:

Client opens one Alex Brown retail account for the LLC and one for the partnership. The cash used to fund the digital option is initially contributed into the Alex Brown LLC account. Our purpose is to provide an account documentation for the transaction that would not otherwise exist, by having a CUSIP # assigned to the swap at its inception. Our account statements will then show the existence of the position, described as an option with expiration date, etc. Client will instruct us with a letter of authorization to transfer funds to DB NY to enter into the digital option purchase. Alex. Brown will wire funds to DB in NY, Dan Brooks will do the trade, Ross will send the confirmation agreement for client's signature and return to Ross. The options must expire before yearend, 1999, probably having a maturity date of 12/15/99.

Step 3:

Within a few days of opening the digital option trade, an authorized signatory of the LLC will send an assignment letter to DB advising DB that it is their intent to convey legal ownership of the digital option positions from the LLC to the partnership. Settlement proceeds, if the position pays off, would also be paid to the assignee partnership. This is an extremely critical step for their tax transaction to accomplish its purpose. It would be helpful to Jenkens if their assignment letter could have an acknowledgement blank that DB could sign and return to Jenkens formally accepting the assignment. The Alex Brown account statements will reflect the assignment of the digital option positions from the LLC to the partnership.

Account opening and documentation:

Here's what we understand the setup and approval process to be--

1. Prepare an account opening form-institutional- for both the LLC and partnership. It would be helpful if a sample filled in form could be provided to us, as Jenkens generally handles all paperwork, including filling in Alex Brown and DB forms. This goes to Andrew, correct?

2. We will provide a list of names and addresses of the individuals who are the shareholders of the entities involved with the transaction to Andrew so that he may do some advance due diligence, given that there are no audited financials.

3. We will wire funds to DB NY to initiate the option purchase for each transaction. Dan has provided us wiring instructions for this purpose.

4. DB London will assign a CUSIP # to the digital option, which will be shared with Alex Brown for purposes of tracking through our account statements.

5. Dave Parse has faxed to Ross the Alex Brown forms entitled a) partnership account authorization and indemnity, b) non-corporate resolution and c) corporate account authorization for DB London review as to whether these documents (as is or modified to your liking) would suffice in lieu of sending you copies of the actual agreements, which can be quite voluminous. If these won't work, we would get Jenkens to commit reasonable efforts to deliver these documents as quickly as possible. It is likely that it would not happen before the digitial option trade was initiated.

6. We understand that there is no credit involved with this transaction, therefore, credit approval procedures will not be required.

7. Jenkens & Gilchrist have a standard lawyer rep letter that I've run by Alex Alexander. They are representing that they are the tax advisors and will issue a tax opinion that they believe there to be substantial authority for the transaction we are being asked to assist in with the purchase of the digital option. Jenkens will redirect this letter to Alex Alexander.

It is likely that we could be ready to start trades as early as Friday October 29, as most of the backlogged clients already have Alex Brown accounts with money ready to be wired to Dan Brooks to put on the trades. It is anticipated that approximately 100 separate client trades will be entered into before November 15, 1999.

Thank you for your prompt input. When responding, use "reply to all" so that everyone will be in the loop for relevant input. Please feel free to call Craig Brubaker at the number below or Dave Parse in Chicago, 312-424-6020 with additional questions.

*R. Craig Brubaker*
*Deutsche Banc Alex. Brown*
*Private Client Services*
*214-740-7765 (voice)*
*214-740-7780 (fax)*
*200 Crescent Court, Suite 500*
*Dallas, TX 75201*