**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STOBIE CREEK INVESTMENTS LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 05-748 T<br><br>Judge Christine O.C. Miller |

**PLAINTIFFS' RESPONSE TO THE UNITED STATES' MOTION FOR LEAVE TO ENLARGE THE NUMBER OF DEPOSITIONS AND EXTEND DISCOVERY SCHEDULE**

Robert E. Kolek
Thomas R. Wechter
John A. Bannon
Colleen M. Feeney

SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Phone: 312-258-5500
Fax: 312-258-5600

# TABLE OF CONTENTS

Page

INTRODUCTION .......... 2

ARGUMENT .......... 3

I. THE REQUIREMENTS OF RCFC 26(B)(2) ARE NOT MET HERE .......... 3

A. Discovery Sought by Defendant is Oppressive and Unduly Burdensome .......... 3

B. Timing of Motion is Harassment .......... 6

C. Discovery Sought is Not Relevant to This Matter .......... 7

II. PLAINTIFFS' AGREE TO A REASONABLE EXTENSION OF THE DISCOVERY SCHEDULE .......... 11

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

## CASES

*Coltec Indus. Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006) .......... 11

*Drobny v. United State,s* 1996 WL 170445 (Fed. Cir. 1996) .......... 11

*Herbert v. Lando*, 441 U.S. 153, 177 (1979) .......... 4

*In re Cobra Tax Shelters*, 1:05-ml-9727 .......... 6

*In re Sulfuric Acid AntiTrust Litig.*, 231 F.R.D. 320, 327-28 (N.D. Ill. 2005) .......... 7

*Int'l Graphics Div. of Moore Business Forms Inc. v. United States,* 3 Cl. Ct. 715, 717 (1983) .......... 3

*Pierson v. United States*, 428 F. Supp. 384 (DC Del 1977), rev'd on other grounds 621 F.2d 1227 .......... 7

*Rice's Toyota World Inc. v. Comm.*, 752 F.2d 89 (4th Cir. 1985)) .......... 11

*Sys. Fuels, Inc. v. United States*, 73 Fed. Cl. 206 (2006) .......... 4

*Ultratech Inc. v. Tamarack Scientific Co.*, No. 03-3235, 2005 WL 696979, at *1 (N.D. Cal. Mar. 17, 2005) .......... 7

*United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996) .......... 5

*W.V. Realty Inc. v. Northern Ins. Co. of NY*, 334 F.3d 306 (3d Cir. 2003) .......... 8

## STATUTES

I.R.C. §6226(b) .......... 2

I.R.C. §6664(c) .......... 2

## RULES

RCFC 26(b)(1) .......... 10

RCFC 26(b)(2) .......... 3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STOBIE CREEK INVESTMENTS LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,<br>Plaintiff<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | Case No. 05-00748 |

**PLAINTIFFS' RESPONSE TO THE UNITED STATES' MOTION FOR LEAVE TO ENLARGE THE NUMBER OF DEPOSITIONS AND EXTEND DISCOVERY SCHEDULE**

Defendant has asked for leave to enlarge the number of depositions to a total of 40 depositions, including 22 people from Deutsche Bank, 2 current or former attorneys at Shumaker Loop and Kendrick ("SLK"), 4 attorneys from Jenkins & Gilchrist, 4 other individuals and one additional Welles family member. Plaintiffs do not object to the proposed depositions of SLK attorneys or the proposed depositions of the 4 other individuals. [1] Plaintiffs do not even object to taking 2 depositions of Jenkins & Gilchrist attorneys or a few depositions of *key, relevant* individuals at Deutsche Bank. However, Defendant should not be permitted to take cumulative, redundant testimony of individuals who had no meaningful relationship to the transactions entered into by the Welles family.

---

[1] As noted in Defendant's Exhibit F, Plaintiffs have informed Defendant of David Welles Sr.'s ailing health. Plaintiffs have no intention of calling on David Welles Sr. to provide testimony in this matter. See Exhibit A, a statement from David Welles Sr.'s physician. Plaintiffs oppose a deposition of David Welles Sr. as it appears the stress of testimony would aggravate his medical condition.

## INTRODUCTION

This matter is based upon Plaintiffs' petition for readjustment of partnership items for the tax year ended December 31, 2000, brought pursuant to Section 6226(b) of the Internal Revenue Code of 1986, as amended (the "Code"), to contest the Notice of Final Partnership Administrative Adjustment dated March 9, 2005 that was issued for Stobie Creek's taxable year ended December 31, 2000 (the "FPAA"). *See* Complaint, ¶¶1, 4.

The complaint seeks a redetermination of the FPAA to remove all adjustments to income, losses, distributions, basis, and penalties. *Id*, Prayer for Relief, ¶1. The complaint also seeks recovery of taxes that have been deposited with the United States in escrow (plus any interest permitted by law). *Id.* ¶2; *see also* Complaint ¶12. The complaint alleges that "[i]n all events, no penalty can or should be applied against Stobie Creek, as an entity or against its member partners, since all concerned proceeded in good faith based upon reasonable cause within the meaning of Code Section 6664(c). Complaint ¶14(gg).

This case is about one taxpayer, Stobie Creek, and its partners who relied in good faith, upon legal advice provided by their advisors. It is not about hundreds of other taxpayers, nor is it about a "prepackaged scheme." Rather, this case involves the tax consequences of various transactions in which Plaintiffs legitimately engaged concurrently with the formalization, extension and expansion of their family's joint investment pursuits. Contrary to the defendants' assertions, the currency option transactions involved in this case each possessed the real opportunity for substantial profit and all transactions were conducted for valid business reasons.

## ARGUMENT

## I. THE REQUIREMENTS OF RCFC 26(B)(2) ARE NOT MET HERE

The discovery provisions should "be construed to secure the just, *speedy* and *inexpensive* determination of every action." *Int'l Graphics Div. of Moore Business Forms Inc. v. United States*, 3 Cl. Ct. 715, 717 (1983) (citation omitted). Thus, the material sought in discovery should be relevant and "courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .'" *Id.* (citing Rule 26(c)). The requisite standard to grant leave to exceed the presumptively appropriate number of depositions beyond ten includes determination of whether: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs the likely benefit, taking into account the needs of the case and the importance of the proposed discovery in resolving the issues. RCFC 26(b)(2).

### A. <u>Discovery Sought by Defendant is Oppressive and Unduly Burdensome</u>

Defendant has not shown how the information it seeks is remotely relevant to any claim or defense in this case. Furthermore, Defendant has not shown that the anticipated testimony from the twenty-two individuals at Deutsche Bank would not be cumulative or that the information cannot be obtained in a more cost efficient manner, even if relevant. The court has discretion to limit the number of cumulative depositions, particularly when the information sought is obtainable from other less burdensome sources. *See Sys. Fuels, Inc. v. United States*, 73 Fed. Cl. 206 (2006). A careful examination of Defendant's proposed list shows there are

multiple people who allegedly possess the same information from Deutsche Bank. For example, Defendant identifies:

- ten individuals who it believes were involved in the development and design of the "digital option": Craig Brubaker, William Boyle, Todd Clendening, Jeffrey Rupp, Nancy Donohue, Perry Parker, Tom Tahl, Ross Crawford, Jason Shih, and Kevin Lynch.
- three individuals who it believes have "assisted in the processing and booking of the 'digital option' transaction used by the Welles family members": Christopher Chilcoat, Carrie Yackee, and William Heaney.
- two individuals who it believes to have been "involved in discussions about whether the shelter transactions involved two 'options' or only one trade": David Parse and William Heaney.
- three individuals who it believes to be involved in determining risk posed by the transactions: William Boyle, Chuck Binder, and Jason Shih.
- two individuals who it believes to have been involved in the execution and settlement of the trades: Tom Tahl and Jeannette Kwong.

To allow Defendant to cover the same ground over and over and over again with these proposed deponents would be nothing less than harassment, even assuming that these individuals have relevant information. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979) (discovery rules should be "construed to secure the just, *speedy*, and *inexpensive* determination of every determination of every action' and therefore "judges should not hesitate to exercise appropriate control over the discovery process). Defendant should not be allowed to subpoena twenty-two individuals to testify about the same information. Defendant argues, "each person may only be able to offer testimony about a small aspect of the transactions. . ." (Def. Motion, at p. 7). Even from their explanation of the testimony sought, however, it is clear that Defendant anticipates covering the same topics multiple times. The topics as outlined for many of the twenty-two witnesses suggested by Defendant are more properly answered by a Rule 30(b)(6) corporate designee witness. A Rule 30(b)(6) witness testifies as a representative of the entity; his answers bind the entity. *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). The designated

witness is "speaking for the corporation," and this testimony is distinguishable from that of a mere corporate employee. *Id.* These corporate employees cannot bind Deutsche Bank.

It is clearly more efficient and less burdensome to all parties to have Deutsche Bank determine the proper person or persons to answer questions on the proposed topics. Deutsche Bank will produce a person or persons with knowledge of the subjects such as how transactions are booked, recorded, processed. Furthermore, Deutsche Bank "knows" how the investment strategy was developed and designed because it was the entity which implemented it. Issuing a Rule 30(b)(6) notice provides for the ability to obtain the same knowledge with fewer witnesses, instead of Defendant's proposed twenty-two.

Similarly, the attorneys identified by Defendant from Jenkens & Gilchrist are anticipated to testify about the same subjects. Although Erwin Mayer is on Defendant's proposed list of deponents, he is "one of the [three] individuals who . . . developed and designed the 'digital option' [transaction]. . ." Both Donna Guerin and Paul Daugerdas are also listed as individuals who may knowledge of this same topic. Further, Donna Guerin, Paul Daugerdas and Bryan Lee all "signed-off" on the tax opinion letters to the Welles family members. While one or two depositions of individuals at Jenkens & Gilchrist may lead to relevant evidence, <u>four</u> depositions on the same subject matter is not only harassment, but can only lead to cumulative evidence.

Moreover, Deutsche Bank and Jenkens & Gilchrist are not on trial here. To require them to produce multiple employees to testify about the same subjects, is harassment to both them and the Plaintiffs. Defendant has cited to *In re Cobra Tax Shelters*, 1:05-ml-9727, for support to extend the number of depositions allowed. *See* Defendant's Unopposed Motion to Conduct a Pre-Trial Conference. Plaintiffs' counsel learned recently that depositions for eleven of the <u>same</u> employees of Deutsche Bank were noticed in *In re Cobra Tax Shelters*, 1:05-ml-9727; three of

which have already been taken in that case. Defendant's motives for noticing the same depositions it has noticed in other cases across the country is simply for harassment and to place a serious burden on plaintiffs to litigate tax issues.

**B. Timing of Motion is Harassment**

On March 16, 2007, less than a month before the close of discovery, Defendant moves this court for an extension of the number of depositions allowed from ten to forty and to extend the discovery schedule. Plaintiffs' counsel previously agreed, in good faith, to extend the number of depositions, pursuant to a request by Defense counsel over a month ago, from ten to fifteen, with the suggestion that the parties revisit the matter after the additional depositions had been taken. Defendant flatly refused this suggestion. Since then, Defendant has not noticed one deposition.

Defendant chose to wait until the very close of discovery to schedule perhaps the most extensive depositions to date. Many, if not all, of the proposed deponents on Defendant's list are not newly discovered, yet Defendant chose to wait until less than a month prior to discovery to file its motion. Defendant claims that it needs these depositions now based on late-produced documents. The documents bearing the names of these individuals were produced in the summer of 2006, over six months ago. Since receipt of the Deutsche Bank documents, Defendant has not subpoenaed one Deutsche Bank individual. The Deutsche Bank documents not only bear little apparent relationship to the actual transaction at issue in this case, but also could not possibly justify the broad-based inquiries sought by Defendant at the eleventh hour.

Courts have not hesitated to deny similarly late-noticed depositions. *See, e.g., In re Sulfuric Acid AntiTrust Litig.*, 231 F.R.D. 320, 327-28 (N.D. Ill. 2005)(denying motion to compel depositions noticed two weeks before the end of discovery); *Ultratech Inc. v. Tamarack*

*Scientific Co.*, No. 03-3235, 2005 WL 696979, at *1 (N.D. Cal. Mar. 17, 2005) (denying motion to compel depositions noticed for the final day of the discovery period). Defendant, here, has not even noticed these proposed deponents, less than a month before discovery closes. There can be no legitimate excuse for Defendant's failure to seek these depositions earlier. The rationales for this delay advanced by Defendant do not withstand scrutiny.

**C. <u>Discovery Sought is Not Relevant to This Matter</u>**

Finally, Defendant has not shown how the testimony sought is even remotely relevant to this matter. The single initial hurdle which must be cleared by a party seeking discovery is to demonstrate the relevance of the information sought to the issues involved in the case. *Pierson v. United States*, 428 F. Supp. 384 (DC Del 1977), *rev'd on other grounds* 621 F.2d 1227 (3d Cir.), *cert dism'd* 451 U.S. 1012. Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Furthermore, even if this testimony is determined to be relevant, any probative value is substantially outweighed by its unfair prejudicial effect. *See e.g.*, *W.V. Realty Inc. v. Northern Ins. Co. of NY*, 334 F.3d 306, 314-15(3d Cir. 2003) (holding that evidence of an insurer's failure to disclose bad faith actions in response to insured's discovery request was not relevant, and any probative value was substantially outweighed by its prejudicial effect).

The evidence sought here by the proposed deponents has nothing to do with any claim or defense at issue in <u>this</u> case, specifically, whether there is economic substance to this transaction or whether the Plaintiffs had a business purpose. Defendant has made repeated attempts at turning this trial on Stobie Creek's merits into an expansive crusade against all tax advantaged investments. Defendant seems committed to avoiding any discovery relating to the facts of <u>this</u>

case by diverting this Court's and the parties' attention to over 100 other transactions. It is apparent from Defendant's request to depose forty individuals here that Defendant wants to lose the facts of this case in the soup of transactions and entities having nothing to do with the Plaintiffs.

This case is not about "schemes" or hundreds of other transactions. There are apparently many pieces involved in Deutsche Bank entering into an option transaction as the counter-party of the option trade. However, examination of each of these pieces will not help to prove any claim or defense of any party in this case. Learning how Deutsche Bank structured, executed, booked, and approved foreign currency digital options transactions will not assist the Court in determining whether the Welles' family purchased the options in order to earn a profit, whether there was a reasonable opportunity of earning a profit, or whether each of the Welles family members purchased both a long and a short option. For example, Defendant has failed to show how testimony from Rick Pychewicz, an individual who signed the confirmations for the options purchased by the Welles' LLCs, will assist the Court in determining any of these factual issues. None of the Welles family members ever spoke with Mr. Pychewicz.

Similarly, according to Defendant's Exhibit F, William Vogel, Jeanette Michaels and Daniel Brooks "worked at the foreign exchange desk" and assisted in the internal booking of the option transactions. Matthew Connelly was the head of the foreign exchange desk. And, yet another individual, Christopher Chilcoat, "assisted" in the booking of the options purchased by the Welles family members. Plaintiffs' do not understand how information provided by these individuals will help prove any claim or defense in this matter. How a transaction is internally booked at Deutsche Bank plays no role in whether the Welles' family purchased the options in order to earn a profit, whether there was a reasonable opportunity of earning a profit, or whether

each of the Welles family members purchased both a long and a short option. These individuals had no substantive role in the Welles' purchase of the options and none of the Welles family members ever spoke with any of these individuals. In general, how other transactions were structured is not relevant to how this transaction actually proceeded—what was done in this case is what is relevant. The Defendant confuses a person who sits at the foreign exchange desk completing many transactions, with an individual having actual, meaningful involvement in the transactions at issue here.

Defendant complains that its delay is based on the fact that it has had to review over millions of pages of documents in order to learn of the names of these potential deponents, while omitting that the overwhelming majority of these documents are not even remotely related to Stobie Creek, its partners or their dealings in the year 2000. For example, over 90% of the documents produced by Deutsche Bank have no reference to the Welles family members, their entities or Stobie Creek. Again, Defendant's attempt to make this case one about any "similar" transaction or investment strategy is completely inappropriate and, to date, has been a waste of the parties' time and resources. The Motion filed by the United States does not justify how the forty depositions it seeks are in any way "reasonably calculated to lead to the discovery of admissible evidence," in this case as required by RCFC 26(b)(1).

An examination of the approximately 241,000 pages of documents produced by Deutsche Bank (including the documents in the IRS files) shows that many of the individuals on Defendant's list have no connection to the transaction at issue in this case. For example,

- Plaintiffs could only locate eleven documents relating to William Heaney; and none of these documents had any relation to the transactions at issue in this case.
- Plaintiffs could only locate forty-seven documents with Ross Crawford's name on them, none of which had any reference to the transactions at issue in this case.

- Plaintiffs could only locate thirty-five documents with William Boyle's name on them. Out of the thirty-five documents, only one page has a reference to closing the transactions at issue in this case.

- In the entire database of Deutsche Bank documents, Plaintiffs could only locate six documents relating to Christopher Chilcoat, some of which were duplicates. These documents show that Christopher Chilcoat is *a* clerk who booked the options here.

- Out of the over 21,800 documents relating to Craig Brubaker, Plaintiff could only locate three documents having any relation to the transactions at issue here.

It is essential to re-focus this case to the issues specifically relating to the transactions involved in this case.

Defendant argues that it needs this discovery to determine whether "its transactions were economic shams, and did not have any economic substance and business purpose." (Def. Motion, at p. 8). The economic substance doctrine is an objective test. *See, e.g.*, *Coltec Indus. Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006) However, to treat a transaction as a sham, the court must find that the taxpayer was motivated by no business purpose other than obtaining tax benefits and that the transaction had no economic substance because no reasonable possibility of profit exists. *Drobny v. United States* 1996 WL 170445 (Fed. Cir. 1996) (adopting the test as set forth in *Rice's Toyota World Inc. v. Comm.*, 752 F2d 89 (4th Cir. 1985)). Clearly, the individuals from Deutsche Bank that the Defendant wants to depose could not have relevant information regarding the Plaintiffs' motivation or the Plaintiffs' reasonable expectation of making a profit in the transactions involved.

Plaintiffs have previously and repeatedly identified the one person at Deutsche Bank that had contact with Plaintiffs and may have any relevance to this case: David Parse. Jeffrey Welles testified that he only spoke to one person at Deutsche Bank regarding this transaction. Yet, Defendant proposes to depose twenty-one additional people from Deutsche Bank with no relevance to the matters at issue in this case, with the suggestion that Deutsche Bank did not

enter into the transactions as counterparties of the Plaintiffs. Plaintiffs have produced all of the transaction confirmations for each of their entities. These confirmations are binding contracts between Deutsche Bank and the respective entities. Is Defendant really suggesting that one of the worlds largest banks, overseen by the Securities Exchange Commission, would fraudulently prepare contracts exposing themselves to the risks that the options would be "in the money" without actually booking the transaction? The proposed testimony is simply not relevant to the matters at issue in this case.

Defendant's motion is also premature. Defendant has not made a showing that each of the thirty-three people listed in Defendant's Exhibit F are remotely relevant to any claim or defense of any party. Further, it is doubtful that Defendant will ever be able to prove that many of the individuals on its list are relevant. As this Court observed, the depositions should focus on the transaction at issue in this case: "What I don't understand here is why the depositions should go any where beyond the Welleses." Court Transcript, 03/12/07, at p. 41. Plaintiffs do not deny that some of the individuals, like David Parse, for example, listed in Exhibit F are relevant to the issues here. To be fair, Plaintiffs agreed to an extension of the number of allowable deponents in this case to fifteen, with the understanding that the parties would revisit the matter after fifteen individuals had been deposed. However, Defendant seeks the ability to depose forty individuals, without showing that they have any knowledge about or relation to the transactions at issue in this action.

## II. PLAINTIFFS' AGREE TO A REASONABLE EXTENSION OF THE DISCOVERY SCHEDULE

Plaintiffs agree that a reasonable extension of time for discovery is appropriate. Plaintiffs have agreed to present the Welles family members to conclude their depositions. Plaintiffs' counsel has even suggested dates on which to schedule these depositions. Plaintiffs counsel

requests that this court extend discovery for a reasonable period to allow for closure of the outstanding issues.

## CONCLUSION

For all the foregoing reasons, this Court should deny Defendant's motion for leave to enlarge the number of allowable fact discovery depositions to a total of forty and should extend the discovery schedule for a reasonable period of time.

Dated: March 28, 2007

Respectfully Submitted
SCHIFF HARDIN LLP

/s/ Robert E. Kolek
Attorneys for Plaintiffs

Robert E. Kolek
Thomas R. Wechter
John A. Bannon
Colleen M. Feeney
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Phone: 312-258-5500
Fax: 312-258-5600

TOLEDO NEUROLOGICAL ASSOCIATES, INC.
BOARD CERTIFIED IN NEUROLOGY

PETER P. ZANGARA, M.D.
MARK G. LOOMUS, M.D.
E. TOMAS CALDERON, M.D.

INDIVIDUALS BOARDED IN:
NEUROPHYSIOLOGY
ELECTRODIAGNOSTIC (EMG)
SLEEP MEDICINE
INTERNAL MEDICINE

November 20, 2006

Robert Kolek
Attorney at Law
6600 Sears Tower
Chicago, Illinois 60606

RE: David K. Welles, Sr.

Dear Attorney Kolek,

In response to your inquiry regarding my patient David Welles permit me to summarize his medical neurologic condition. He suffers with a mixed form of dementia that includes ischemic cerebrovascular disease as well as a degenerative or Alzheimer's component. I have been monitoring this illness since his original visit here in November of 2005. The symptoms actually began two or three years earlier and have limited his ability to work.

Specific testing with MRI brain imaging has pointed up right sided temporal lobe infarction and a neuropsychological battery of tests in October of last year confirmed his mixed form of dementia while a laboratory screen found no other treatable cause of disease.

On his last visit earlier this month he appeared stable though having had other medical issues in the interval. Specifically, he was at The Cleveland Clinic due to tremulousness that eventually was attributed to the Zoloft therapy prescribed for his depression. He also underwent a cardiac pacemaker implantation prior to his Cleveland Clinic visit. After this visit Aricept was restarted together with Namenda for his underlying dementia. At the same time I advised a boost in his Desyrel medication which he was using for insomnia. My intention was to assist the depressive feelings since Zoloft medication had been discontinued. I made no other changes on his last visit and I performed a mini mental state examination or a standard evaluation of memory function. His score was 26/30 which puts him in a mild range of disability and little changed from previous scores.

EXHIBIT
tabbies
A

TWIN OAKS BUILDING • 3949 SUNFOREST CT. #105 • TOLEDO, OH 43623 • 419-475-9341 • FAX # 419-474-0095

More to the point of this letter is the effect a protracted deposition would have upon his underlying neurologic condition. While I cannot predict his level of function I can say with certainty that his condition would certainly be stressed and he might not be a valid or appropriate witness. As you well know, such patients have good and bad days and even on a good day he would likely be forgetful and possibly even inaccurate. For these reasons I would agree that if his deposition could be circumvented it would be a good think for him and the courts.

I appreciate the opportunity to explain his neurologic situation and I hope you find this information useful and appropriate.

Sincerely,

Peter P. Zangara, M.D.

PPZ/SF/kms