**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York 10007*

March 26, 2007

Robert B. Fiske, Jr., Esq.
James P. Rouhandeh, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

**Re: Jenkens & Gilchrist**

Dear Messrs. Fiske and Rouhandeh:

The protection against prosecution with respect to the tax offenses set forth below has been approved by the Tax Division, Department of Justice.

Pursuant to our discussions, the Office of the United States Attorney for the Southern District of New York ("this Office") and Jenkens & Gilchrist ("J&G"),[1] pursuant to the authority granted by the Boards of Directors or Management Committees of J&G Texas, J&G Illinois, J&G California, J&G New York, and JGPC, Inc., in the form of Resolutions for each of these entities (copies of which are attached hereto as Exhibit A), and represented by its undersigned attorneys, hereby enter into this Agreement.

---

[1] Jenkens & Gilchrist and J&G are defined herein to include Jenkens & Gilchrist, A Professional Corporation, a Texas professional corporation (EIN 75-2204006) ("J&G Texas"); Jenkens & Gilchrist, A Professional Corporation, an Illinois professional corporation (EIN 36-4263272) ("J&G Illinois"); Jenkens & Gilchrist LLP (EIN 95-4775690) ("J&G California"); Jenkens & Gilchrist Parker Chapin, LLP (EIN 13-4148545) ("J&G New York"); and JGPC Incorporated ("JGPC Inc.") (EIN: 20-8614033). In April 2005, all of the attorneys of J&G New York either retired or withdrew from that entity and joined Troutman Sanders LLP or other law firms.



EXHIBIT
H

fm

Robert B. Fiske, Esq.
James P. Rouhandeh, Esq.

This Office has been investigating the tax shelter activities engaged in by J&G during the period 1998 through 2004. According to representations made to this Office by and on behalf of J&G, J&G has suffered and continues to suffer significant financial hardship caused largely by its former tax shelter practice, including a significant loss of revenues associated with the departure of 397 attorneys since 2001, with the number of attorneys employed by the firm dropping from 605 attorneys in 2001 to 208 attorneys as of February 28, 2007. J&G has also represented to this Office: that as a result of its financial difficulties, J&G's offices have already been or will soon be closed, and J&G's lawyers have already joined or will join other law firms; that J&G Texas thereafter will remain in operation to wind up J&G's business affairs; that the purposes of this continuing entity will include continuing to cooperate with this Office by assisting in the ongoing criminal investigation of J&G's tax shelter activities and any resulting prosecutions, as well as paying a civil penalty to the Internal Revenue Service (the "IRS") pursuant to the terms of the Closing Agreement reached by J&G and the IRS to resolve the promoter penalty audit and other matters, and otherwise complying with the terms of the Closing Agreement; and that J&G will no longer be engaged in the practice of law. Since September 2004, J&G has cooperated with this Office's investigation. Moreover, J&G has provided a Statement of Responsibility (the "Statement") to this Office, acknowledging that certain J&G attorneys developed and marketed fraudulent tax shelters that wrongly deprived the U.S. Treasury of significant tax revenues. A copy of the Statement is attached hereto as Exhibit B. In consideration of the foregoing, this Office enters into this Agreement with J&G.

On the understandings specified below, this Office, and with respect to tax offenses, the Tax Division, Department of Justice, will not criminally prosecute J&G for crimes arising from J&G's tax shelter activities from 1998 through 2004, including but not limited to: the design, development, marketing, sale, and implementation of certain tax shelters commonly referred to as BOSS, BART, HOMER, and variants of the so-called "Son of BOSS" shelter that went by names including BEST, BEDS, BLISS, COBRA, the Short Option Strategy ("SOS"), and the Option Partnership Strategy ("OPS"); J&G's issuance of legal opinions supporting those tax shelters; J&G's assistance in the defense of those transactions against the IRS; and J&G's failure, at any time, to withhold taxes or file certain tax forms (including IRS Forms 1099 and W-2) with respect to compensation paid to "Paul M. Daugerdas, Chartered." This Agreement does not provide any protection against prosecution for any crimes except as set forth above. It is understood that this Agreement does not apply to any former or current shareholder, partner, associate, or employee of J&G, but only to J&G, as defined above.

It is further understood that J&G has entered into a Closing Agreement with the IRS in connection with the IRS's promoter penalty audit of J&G, and that the Closing Agreement will also resolve all other outstanding issues between J&G and the IRS upon such terms and



fm

conditions as have been mutually agreed upon. It is understood that the resolution reached in the Closing Agreement is a condition precedent to this Agreement, and that J&G's commission of a Major Event of Default under the terms of the Closing Agreement shall constitute a violation of this Agreement. In view of J&G's agreement to resolve the IRS's promoter penalty audit, and J&G's financial condition, this Office will not seek any restitution or fine from J&G in connection with any of the conduct described in this Agreement.

It is further understood that J&G: (a) shall truthfully and completely disclose all information in its possession and control with respect to the activities of J&G, its current or former shareholders, partners, associates, and employees, concerning all matters about which this Office, the IRS (civil and criminal), and the Tax Division, Department of Justice (civil and criminal) ("Tax DOJ") inquires, which information can be used for any purpose; (b) shall cooperate fully with this Office, the IRS (civil and criminal), Tax DOJ, and any other law enforcement agency designated by this Office; (c) shall volunteer and provide to this Office any information and documents that come to J&G's attention that may be relevant to this Office's investigation; (d) shall use its best efforts to assemble, organize, and provide, in a responsive and prompt fashion, and upon request, in an expedited fashion, all documents, records, information, and other evidence in J&G's possession, custody or control as may be requested by this Office, the IRS (civil and criminal), Tax DOJ, or any other law enforcement agency designated by this Office; (e) shall use its best efforts to make available its present and former shareholders, partners, associates, and employees to provide information and/or testimony before a grand jury or in court proceedings, and in interviews with law enforcement authorities, and to identify witnesses who, to J&G's knowledge may have material information concerning this Office's investigation, including but not limited to the conduct described in the fourth paragraph of this Agreement and in J&G's Statement; (f) shall use its best efforts to provide testimony or establish the original location, authenticity, or other basis for admission in evidence of documents and/or physical evidence in any criminal proceeding as requested by this Office, the IRS (civil and criminal), or Tax DOJ; (g) shall bring to this Office's attention any crimes of which J&G becomes aware that J&G or its current and former shareholders, partners, associates, and employees have committed, and all administrative, civil or criminal proceedings, investigations, or prosecutions of which J&G becomes aware in which J&G, or any of its current and former shareholders, partners, associates, or employees have been or are a subject, target, party, or witness (excluding domestic disputes, traffic and personal injury proceedings, as well as any proceedings regarding real property owned by current and former shareholders, partners, associates, or employees in a personal capacity); and (h) shall commit no crimes whatsoever.

It is further understood that J&G shall maintain the originals of all documents, records, or other items of tangible evidence in its possession and control related to the conduct described in

the fourth paragraph of this Agreement, at J&G's own expense, in a location or locations that shall be designated in writing to this Office and leased for a period of three years from the signing of this Agreement. J&G shall designate and train appropriate personnel, who will be available for a period of five years, to satisfy its obligations to provide materials under subsection (d) of the preceding paragraph. J&G shall also provide for payment to retain the services of such personnel to fulfill such obligations for a period of three years from the signing of this Agreement. After three years, this Office and/or the IRS shall pay for the storage of these documents and other materials, and for the retention of personnel designated and trained by J&G to satisfy its obligations under subsection (d) of the preceding paragraph. These documents, records and other items of tangible evidence include: (i) the firm's accounting ledgers and billing records pertaining in any manner to the conduct described in the fourth paragraph of this Agreement; (ii) the hard-copy originals of all client files pertaining in any manner to the conduct described in the fourth paragraph of this Agreement, to the extent they presently exist; (iii) the hard-copy originals of all "non-client" files pertaining in any manner to the conduct described in the fourth paragraph of this Agreement, to the extent they presently exist; (iv) electronic copies of all of the files in the firm's iManage database system pertaining in any manner to the conduct described in the fourth paragraph of this Agreement; (v) electronic copies of all of the e-mail currently present on or derived from the firm's e-mail servers contained in the e-mail accounts of certain current and former shareholders, partners, associates, and employees to be designated in writing by this Office upon consultation with J&G; and (vi) the hard drives of current and former shareholders, partners, associates, and employees to be designated in writing by this Office upon consultation with J&G, to the extent such hard drives presently exist.

It is further understood by this Office that by agreeing to take the actions indicated in the preceding two paragraphs, J&G is not waiving any attorney-client or work product privilege with respect to its representation in connection with this Office's criminal investigation, its representation in the IRS promoter penalty audit, and its representation in private civil litigation. It is the understanding of this Office, however, that following the 2004 court decision directing J&G to disclose the names of tax shelter clients, and in the course of complying with grand jury subpoenas issued by this Office, J&G has not maintained or asserted that its activities with respect to the design, development, marketing, sale, and implementation of tax shelters is covered by any attorney-client or work product privilege, or that it had any privileged communications with third parties with respect to such activities.

It is further understood that should J&G commit any crimes after the signing of this Agreement, or should this Office, in its sole discretion, determine that J&G, or any individual or

entity authorized to act on behalf of J&G, has given false, incomplete, or misleading testimony or information, or should J&G otherwise violate any provision of this Agreement, J&G shall thereafter be subject to prosecution for any federal criminal violation of which this Office has knowledge, including perjury and obstruction of justice. Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against J&G, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution. It is J&G's intent by entering into this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that should J&G commit any crime after the signing of this Agreement, or should this Office determine that J&G, or any individual or entity authorized to act on behalf of J&G, has given false, incomplete, or misleading testimony or information, or should J&G otherwise violate any provision of this Agreement, (a) all statements made by shareholders, partners, associates, employees, and agents of J&G to this Office or other designated law enforcement agents, and any testimony given by shareholders, partners, associates, employees, and agents of J&G before a grand jury or other tribunal, whether prior to or subsequent to the signing of this Agreement, and any leads from such statements or testimony shall be admissible in evidence in any criminal proceeding brought against J&G; and (b) J&G shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, or any other federal rule that such statements or any leads therefrom should be suppressed. It is J&G's intent by entering into this Agreement to waive all rights in the foregoing respects.

It is further understood that this Agreement does not bind any federal, state or local prosecuting authority other than this Office and, to the extent set forth above, the Tax Division, Department of Justice. This Office will, however, bring the cooperation of J&G to the attention of other prosecuting offices, if requested by J&G.

It is further understood that this Office and/or J&G may disclose this Agreement to the public.

With respect to this matter, this Agreement supersedes all prior, if any, understandings, promises and/or conditions between this Office, the Tax Division, Department of Justice, and J&G. No additional promises, agreements, and conditions have been entered into other than



fm

Robert B. Fiske, Esq.
James P. Rouhandeh, Esq.

those set forth in this letter and none will be entered into unless in writing and signed by all parties.

Very truly yours,

MICHAEL J. GARCIA
United States Attorney

By: ______________________
Jaikumar Ramaswamy/Deborah E. Landis
Assistant United States Attorneys
(212) 637-2204/2512

APPROVED:

______________________
SHIRAH NEIMAN
Chief Counsel to the United States Attorney

ACCEPTED AND AGREED BY:

______________________ 3-26-07
PATRICK E. MITCHELL, ESQ., DATE
Authorized Signatory for:
J&G Texas
J&G Illinois
J&G California
J&G New York
JGPC, Inc.

Attorneys for Jenkens & Gilchrist:

______________________ 3/26/07
ROBERT B. FISKE, JR., ESQ. DATE

______________________ /RLL 3/26/07
JAMES P. ROUHANDEH, ESQ. DATE

02.03.05

Exhibit A

**UNANIMOUS CONSENT IN LIEU OF
MEETING OF THE BOARD OF DIRECTORS OF
JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION**

Pursuant to the authority contained in Article 9.10B of the Texas Business Corporation Act, the undersigned, being all of the members of the Board of Directors of Jenkens & Gilchrist, A Professional Corporation, a Texas professional corporation (the "Company"), do hereby adopt the following recitals and resolutions with the same force and effect as though adopted at a special meeting of the Board of Directors duly called and held:

**Resolutions Approving Settlement Agreements**

**RESOLVED**, that the Board of Directors hereby approves a Closing Agreement As To Final Determination Of Tax Liability And Specific Matters and a Non Prosecution and Cooperation Agreement among the Company, certain of its affiliates and certain agencies of the United States government (the "Agreements") in the form presented to and reviewed by each of the members of the Board of Directors.

**RESOLVED,** in furtherance of the foregoing resolutions, that Patrick Mitchell be, and he hereby is, authorized, empowered and directed on behalf of the Company, to execute and deliver the Agreements, to take or cause to be taken all such further actions and to execute, acknowledge, certify, deliver, accept, record and file all such other instruments and notices in the name and on behalf of the Company as in his discretion he may deem necessary or appropriate in order to carry out and effectuate the intent and purposes of the foregoing resolutions.

**RESOLVED,** that all actions heretofore taken by the officers and directors of the Company in furtherance of the purposes of these resolutions are hereby ratified and confirmed in all respects.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands.

Date: 3-26-07

Patrick E. Mitchell

Date: 3-26-07

Thomas H. Cantrill

Date: 3-26-07

John C. Eichman

**UNANIMOUS WRITTEN CONSENT**
**OF THE MANAGEMENT COMMITTEE**
**OF**
**JENKENS & GILCHRIST, LLP,**

The undersigned being the Management Committee of Jenkens & Gilchrist, LLP, a California limited liability partnership (the "Partnership"), pursuant to the authority granted to them in the Partnership Agreement of the Partnership, do hereby take the following action and adopt the following resolutions:

**Resolutions Approving Settlement Agreements**

**RESOLVED**, that the Management Committee hereby approves a Closing Agreement As To Final Determination Of Tax Liability And Specific Matters and a Non Prosecution and Cooperation Agreement among the Partnership, certain of its affiliates and certain agencies of the United States government (the "Agreements") in the form presented to and reviewed by each of the members of the Management Committee.

**RESOLVED,** in furtherance of the foregoing resolutions, that Patrick Mitchell be, and he hereby is, authorized, empowered and directed on behalf of the Partnership, to execute and deliver the Agreements, to take or cause to be taken all such further actions and to execute, acknowledge, certify, deliver, accept, record and file all such other instruments and notices in the name and on behalf of the Partnership as in his discretion he may deem necessary or appropriate in order to carry out and effectuate the intent and purposes of the foregoing resolutions.

**RESOLVED,** that all actions heretofore taken by the representatives and members of the Management Committee of the Partnership in furtherance of the purposes of these resolutions are hereby ratified and confirmed in all respects.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands.

Date: *March 26, 2007*

*Patrick E. Mitchell*
Patrick E. Mitchell

Date: *March 26, 2007*

*[signature]*
Thomas H. Cantrill

# UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS OF JENKENS & GILCHRIST, A PROFESSIONAL CORPORATION (ILLINOIS)

The undersigned, being all of the directors of Jenkens & Gilchrist, a Professional Corporation, an Illinois professional corporation (the "Company"), do hereby consent and agree to the adoption of the following resolutions pursuant to Section 8.45 of the Business Corporation Act of the State of Illinois:

**Resolutions Approving Settlement Agreements**

**RESOLVED,** that the Board of Directors hereby approves a Closing Agreement As To Final Determination Of Tax Liability And Specific Matters and a Non Prosecution and Cooperation Agreement among the Company, certain of its affiliates and certain agencies of the United States government (the "Agreements") in the form presented to and reviewed by each of the members of the Board of Directors.

**RESOLVED,** in furtherance of the foregoing resolutions, that Patrick Mitchell be, and he hereby is, authorized, empowered and directed on behalf of the Company, to execute and deliver the Agreements, to take or cause to be taken all such further actions and to execute, acknowledge, certify, deliver, accept, record and file all such other instruments and notices in the name and on behalf of the Company as in his discretion he may deem necessary or appropriate in order to carry out and effectuate the intent and purposes of the foregoing resolutions.

**RESOLVED,** that all actions heretofore taken by the officers and directors of the Company in furtherance of the purposes of these resolutions are hereby ratified and confirmed in all respects.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands.

Date: 3-26-07 Patrick E. Mitchell

Patrick E. Mitchell

Date: 3-26-07

Thomas H. Cantrill

**UNANIMOUS WRITTEN CONSENT**
**OF THE MANAGEMENT COMMITTEE**
**OF**
**JENKENS & GILCHRIST PARKER CHAPIN LLP,**

The undersigned being the Management Committee of Jenkens & Gilchrist Parker Chapin LLP, a New York limited liability partnership (the "Partnership" or the "Firm"), pursuant to the authority granted to them in the Partnership Agreement of the Partnership, do hereby take the following action and adopt the following resolutions:

**Resolutions Approving Settlement Agreements**

**RESOLVED,** that the Management Committee hereby approves a Closing Agreement As To Final Determination Of Tax Liability And Specific Matters and a Non Prosecution and Cooperation Agreement among the Partnership, certain of its affiliates and certain agencies of the United States government, (the "Agreements") in the form presented to and reviewed by each of the members of the Management Committee.

**RESOLVED,** in furtherance of the foregoing resolutions, that Patrick Mitchell be, and he hereby is, authorized, empowered and directed on behalf of the Partnership, to execute and delivered Agreements, to take or cause to be taken all such further actions and to execute, acknowledge, certify, deliver, accept, record and file all such other instruments and notices in the name and on behalf of the Partnership as in his discretion he may deem necessary or appropriate in order to carry out and effectuate the intent and purposes of the foregoing resolutions.

**RESOLVED,** that all actions heretofore taken by the representatives and members of the Management Committee of the Partnership in furtherance of the purposes of these resolutions are hereby ratified and confirmed in all respects.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands.

Date: 3-26-07 Patrick E Mitchell
Patrick E. Mitchell

Date: 3-26-07 [signature]
Thomas H. Cantrill

**UNANIMOUS WRITTEN CONSENT**
**OF THE BOARD OF DIRECTORS OF**
**JGPC INCORPORATED**

The undersigned, being all of the directors of JGPC Incorporated, a New York corporation (the "Company"), do hereby consent and agree to the adoption of the following resolutions pursuant to applicable law:

**Resolutions Approving Settlement Agreements**

**RESOLVED**, that the Board of Directors hereby approves a Closing Agreement As To Final Determination Of Tax Liability And Specific Matters and a Non Prosecution and Cooperation Agreement among the Company, certain of its affiliates and certain agencies of the United States government (the "Agreements") in the form presented to and reviewed by each of the members of the Board of Directors.

**RESOLVED**, in furtherance of the foregoing resolutions, that Patrick Mitchell be, and he hereby is, authorized, empowered and directed on behalf of the Company, to execute and deliver the Agreements, to take or cause to be taken all such further actions and to execute, acknowledge, certify, deliver, accept, record and file all such other instruments and notices in the name and on behalf of the Company as in his discretion he may deem necessary or appropriate in order to carry out and effectuate the intent and purposes of the foregoing resolutions.

**RESOLVED**, that all actions heretofore taken by the officers and directors of the Company in furtherance of the purposes of these resolutions are hereby ratified and confirmed in all respects.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands.

Date: 3-26-07

Patrick E. Mitchell

Patrick E. Mitchell

Date: 3-26-07

Thomas H. Cantrill

Exhibit B

# Jenkens & Gilchrist

A PROFESSIONAL CORPORATION

**STATEMENT OF JENKENS & GILCHRIST**

Jenkens & Gilchrist ("J&G") has agreed to resolve a criminal investigation conducted by the United States Attorney's Office for the Southern District of New York, as well as a civil promoter penalty audit undertaken by the IRS, in connection with tax shelters promoted by the firm's Chicago office to high net worth individuals, and legal opinions issued by the firm in support of those shelters, during the period from 1999 through 2003. Under the terms of the agreement with the United States Attorney's Office, the Government will not prosecute J&G, and J&G will fully cooperate with the United States Attorney's Office and the IRS. In final settlement of the promoter penalty audit, J&G has undertaken to pay a civil penalty to the IRS.

J&G has made the following statement to the United States Attorney's Office for the Southern District of New York concerning the investigation:

"We believe certain J&G attorneys developed and marketed fraudulent tax shelters, with fraudulent tax opinions, that wrongly deprived the U.S. Treasury of significant tax revenues. The firm's tax shelter practice was spearheaded by tax practitioners in J&G's Chicago office who are no longer with the firm. Those responsible for overseeing the Chicago tax practice placed unwarranted trust in the judgment and integrity of the attorneys principally responsible for that practice, and failed to exercise effective oversight and control over the firm's tax shelter practice. Unfortunately, that misplaced trust and reliance extended to our initial response to the IRS and led to public statements we issued in support of our legal opinions. Our prior support for the opinions adversely affected the efforts of the IRS to assess and collect tax revenues. We deeply regret our involvement in this tax practice, and the serious harm it caused to the United States Treasury.

"The Chicago tax shelter practice seriously undermined this firm's long-standing reputation, revenues, and stability. We appreciate the willingness of the U.S. Attorney's Office and the IRS to consider those factors, as well as the cooperation we have provided to the Government since 2004, in determining an appropriate resolution of the grand jury and tax proceedings."