**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T** |
| | ) | **(Judge Christine O.C. Miller)** |
| **v.** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

---

**UNITED STATES' MOTION FOR PROTECTIVE ORDER ON PLAINTIFF'S NOTICE OF 30(b)(6) DEPOSITION**

---

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
Chief, Court of Federal Claims Section

STUART D. GIBSON
Senior Litigation Counsel
U.S. Department of Justice
Tax Division, Office of Civil Litigation
Post Office Box 403
Ben Franklin Station
Washington D.C. 20044
(202) 307-6586 (Phone)
(202) 307-2504 (Fax)

CORY A. JOHNSON
Trial Attorney
Court of Federal Claims Section

# TABLE OF CONTENTS

Page(s):

Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Plaintiff's Son of BOSS Tax Shelter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Plaintiff's RFC 30(b)(6) Notice to the United States.. . . . . . . . . . . . . . . . . . . . . . . . 4

Summary of Argument.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. The Court Has Already Decided That the Plaintiff May Not Take Discovery Into the Audit Process, or Go "Behind" the FPAAs or the IRS's Issuance of Notice 2000-44. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. Plaintiff's Requests For Testimony About Other Written Tax Shelter Opinions and the IRS's Application of Principles of Law to Other Taxpayers Are Not Proper Discovery Requests Under RCFC 26(b)(1), and Are Barred By 26 U.S.C. §6103(a). . . . . . . . . . . . . . 11

III. The Attempt to Pose Contention Interrogatories as a Deposition is Premature and Disruptive. If the Court Rules That This Discovery is Proper at All, It Should Require the Plaintiff to Pose This Discovery as Interrogatories, and to Wait Until the End of the Discovery Period to Do So.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

Page(s):

CASES

Church of Scientology of California v. United States, 484 U.S. 9 (1987). . . . . . . . . . . . . . . . . . . 12

In re Convergent Technologies Securities Litigation, 108 F.R.D. 328 (N.D.Cal. 1985). . . . . . . . 19

Cook v. United States, 46 Fed. Cl. 110 (Fed. Cl. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (Tax Ct. 1974). . . . . . . . . . . . . . . . . . . 10

Helmer v. Commissioner, 34 T.C. Memo 727 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7

Hospital Corp. of America v. Commissioner, T.C. Memo 1996-559, n 12 (1996). . . . . . . . . . . . 16

Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888 (Fed. Cir. 1984). . . . . . . . . . . . . . . . 8

Suel v. Sec'y of Health and Hum. Svcs., 192 F.3d 981 (Fed. Cir. 1999). . . . . . . . . . . . . . . . . . . . . 8

TIFD III-E Inc. v. United States, 342 F. Supp. 2d 94 (D. Conn. 2004),
*rev'd on other grounds*, 459 F.3d 220 (2nd Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATUTES & REGULATIONS

Internal Revenue Code of 1986 (26 U.S.C.):

§743. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
§752. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12
§754. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§6103. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 12, 15, 19
§6226. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
§7104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IRS Notice 2000-44. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7, 14

MISCELLANEOUS

Federal Rules of Civil Procedure 33(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Federal Rules of Criminal Procedure 6(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

Federal Rules of Evidence 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rules of the Court of Federal Claims:

Appendix A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
26(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10, 11, 12
30(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
45. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T** |
| | ) | **(Judge Christine O.C. Miller)** |
| **v.** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**UNITED STATES' MOTION FOR PROTECTIVE ORDER**
**ON PLAINTIFF'S NOTICE OF 30(b)(6) DEPOSITION**

The United States moves for a protective order to prevent the plaintiff from taking the deposition of the United States under the RCFC 30(b)(6) notice of deposition served on April 24, 2007, a copy of which is attached as Exhibit A.

**STATEMENT**

I. Plaintiff's Son of BOSS Tax Shelter

As noted in earlier filings, in early 2000, plaintiff and its purported members engaged in a Son of Boss tax shelter transaction in an effort to avoid paying capital gains taxes on several thousand shares of Therm-Tru Corporation that were to be redeemed in May 2000. Briefly, the shelter transaction involved the purported purchase and sale of foreign currency options (at a cost of $2 million – 1% of the income to be sheltered – and with attendant fees totaling $6 million), the creation of various shell corporations and other entities, and certain paper transactions and transfers between these entities and Stobie Creek. Through these transactions, completed

according to a prepackaged integrated plan in only a few weeks, plaintiff claims that the tax basis in the Therma-Tru stock was increased by approximately $205 million, and that the gain realized on the redemption of stock was, therefore, not approximately $200 million, but only $5 million. Plaintiff is asking this Court to determine that this scheme, designed to generate a one-hundred-fold increase in basis, – at a total cost (including fees) that far exceeded any possible gain from the transactions – was motivated by non-tax reasons and is grounded in economic reality.[1]

The United States asserts here that the Internal Revenue Code does not permit the plaintiff to artificially inflate the basis of the Therma-Tru stock in this way. The United States contends that the plaintiff is not entitled to the tax benefits generated through the shelter because, among other things: (a) the transactions lacked economic substance and a business purpose; (b) the step transaction doctrine applies to prevent the plaintiff from relying on certain artificial and intermediate transactions; and (c) the taxpayers cannot avoid paying income taxes on capital gains of $205 million merely by paying $8 million to Deutsche Bank, Jenkens & Gilchrist and Shumaker, Loop & Kendrick to create a pre-planned paper trail of transactions that are totally divorced from economic reality. These, and other defenses, are discussed in the Joint Preliminary Status Report (JPSR), filed February 2, 2006.

The plaintiff, in contrast, has articulated its contrary position in the litigation as follows:

> Plaintiff asserts that during April, 2000, the Plaintiff and its members engaged in certain transactions, including certain foreign currency option transactions, with a valid business purpose. As a result and not as the principal purpose of such transactions, the

---

[1]By referring to Stobie Creek as a partnership and its purported members as partner, the United States does not concede that Stobie Creek is a valid partnership for federal tax purposes.

> plaintiff was entitled under Code §§754 and 743 to increase the basis of the Therma-Tru stock which it held to approximately $204,000,000. Upon the subsequent sale of the Therma-Tru stock by Stobie, it realized and correctly reported a capital gains of $5,442,303. The plaintiff and its members assert that the transactions that they engaged in had economic substance, were engaged in for valid business purposes, were not steps in an integrated plan to increase the basis of the Therma-Tru stock, and the tax effects thereof were properly reflected on the tax returns of Stobie and its members consistent with the Code, the Treasury regulations and relevant legal authority. In reporting the transactions on their tax returns for the years in question, Stobie and its members, in good faith, reasonably relied upon opinion of counsel.[3]

Succinctly put, the crux of the dispute in this case involves whether the transactions in which Stobie and its members engaged with Deutsche Bank possessed true economic substance, as well as whether those transactions were merely based on a template of pre-planned steps designed by Jenkens & Gilchrist to generate an artificial "bump" in the basis of the Therma-Tru stock which the Welles Family members knew was about to be redeemed at a substantial gain.[4]

---

[3]JPSR, p. 3.

[4]For its part, Jenkens & Gilchrist has already admitted that it designed, marketed and implemented this illegal tax shelter scheme, known as Basis Enhancing Derivatives Structure (BEDS) and provided fraudulent opinion letters to its clients. See, Non-Prosecution Agreement between Jenkens & Gilchrist and the Office of the United States Attorney for the Southern District of New York and IRS penalty settlement announcement, attached as Exhibits H and I, respectively, to the United States' Reply Brief in Support of Defendant's Motion for Leave to Take More than 10 Depositions, filed April 4, 2007. The documents obtained in discovery make it clear that this is the tax shelter scheme that the Welles family members purchased from Jenkens & Gilchrist in 2000. See, Exhibit 1 to the United States' Response to Plaintiff's Motion to Compel, filed December 29, 2006, which is a summary of the tax shelter that the Welleses received from J&G, titled "Basis Enhancing Derivatives Structure."

II. Plaintiff's RCFC 30(b)(6) Notice to the United States

On April 24, 2007, plaintiff served a notice to take the deposition of the United States under RCFC 30(b)(6). The notice directs the United States to designate one or more witnesses to appear and testify about 21 separate subjects listed in the notice.[5] Those subjects fit roughly into three broad categories:

1. The planning and conduct of the IRS audit of Stobie Creek and any separate audits of its members, as well as the preparation of the notices of final partnership administrative adjustments (FPAAs) issued to Stobie Creek for the tax years ended April 30, 2000, and December 31, 2000. Plaintiff filed this case to determine the partnership items of Stobie Creek for the short tax year ended December 31, 2000. After the plaintiff filed this case, the IRS issued an FPAA to Stobie Creek for its short tax year ended April 30, 2000.[6]

2. The IRS's application of Helmer v. Commissioner, 34 T.C. Memo 727 (1975) to other taxpayers in connection with transactions occurring in 1999 and 2000, advice potentially given to and/or relied upon by other taxpayers who conducted transactions described in notice 2000-44, and audits, investigations, FPAAs and notices of deficiency (so-called "90-day letters") applying Code §752 and the regulations promulgated thereunder to other taxpayers both before and after August 2000 (when the IRS issued Notice 2000-44);[7] and

---

[5]The "Definitions" section of the notice makes clear that the plaintiff seeks testimony not only on behalf of the Internal Revenue Service, but on behalf of the government's attorneys at the Department of Justice, including counsel for the defendant in this case. (Notice, p. 2, ¶3).

[6]¶¶ 10-16, 18, 19 of the Notice.

[7]¶¶ 9, 17, 20-21.

3. Evidence, including the opinions of expert witnesses (¶ 6), that supports what plaintiff believes are the contentions of the United States in this case.[8]

**SUMMARY OF ARGUMENT**

For the reasons discussed at the March 12, 2007, hearing on plaintiff's motions to compel discovery from the United States and the deposition of Richard Starke (an IRS employee), the reasons set forth in this Court's March 14, 2007, Order denying those motions, and the reasons set forth in the memoranda the United States filed in opposition to the plaintiff's motions to compel that discovery, the present deposition request is, for the most part, improper, irrelevant, and in some respects simply burdensome and argumentative.[9] The deposition request is also premature. And, to the extent the plaintiff seeks information about the IRS's audits and investigations of other taxpayers, the information sought is protected from disclosure by 26 U.S.C. §6103(a).[10]

It is obvious that a number of the subjects about which the plaintiff seeks discovery in this requested deposition are the very same subjects that this Court has already ruled fall outside the bounds of relevant discovery under RCFC 26(b)(1). For example, the Court has already denied the plaintiff's request that the United States produce documents and answer interrogatories about the conduct of the IRS's audit of Stobie Creek, and the IRS's interpretation and application of the

[8]¶¶ 1-8.

[9]See, for example, ¶9, which directs the United States to designate and produce a witness to testify about, "Any written advice (whether or not constituting formal written opinion, and whether or not that advice indicated that the taxpayer could rely on it) provided by **any financial institution, or law, accounting, tax services, or investment advisory firm to any taxpayer relating to the tax consequences of any transaction described in [Notice] 2000-44.**"

[10]To the extent the plaintiff seeks testimony about witness interviews conducted by criminal investigators in the Southern District of New York, that request impinges on the governmental investigatory privilege and possibly Fed.R.Crim.P. 6(e).

law following the Tax Court's decision in Helmer. Yet the plaintiff now demands that the United States produce a witness to testify in deposition on these same matters that the Court has already ruled the plaintiff could not discover through document requests and interrogatories. The United States – pressed to complete its depositions by July 12, 2007 – should not have to devote its resources to responding to discovery that the Court has already ruled is inappropriate. And the Court should not have to revisit old, unsuccessful arguments that the plaintiff has dressed up and trotted out anew.

The dispute here does not concern how the IRS conducted the audit of Stobie how the IRS interpreted Helmer, or how the IRS treated other taxpayers. Nor does this case even remotely involve how law, accounting and financial planning firms – other than Jenkens & Gilchrist; Shumaker, Loop & Kendrick; and Deutsche Bank – advised other clients about similarly structured deals that were designed and marketed as ways to enable high-net-worth taxpayers to artificially inflate their basis in existing assets – or generate millions of dollars in "paper" losses – to avoid paying millions of dollars in income taxes they would otherwise owe.[11] The plaintiff may not seek discovery on these matters, as the Court has already ruled.

---

[11]We do not contend that the plaintiff may not take discovery about other identical or nearly identical foreign currency option transactions that – like the plaintiff's transaction – were designed and implemented to artificially inflate the basis of the Welles family members' Therma-Tru stock using the Jenkens & Gilchrist supposedly confidential "BEDS" tax shelter.

## ARGUMENT

### I. THE COURT HAS ALREADY DECIDED THAT THE PLAINTIFF MAY NOT TAKE DISCOVERY INTO THE AUDIT PROCESS, OR GO "BEHIND" THE FPAAs OR THE IRS's ISSUANCE OF NOTICE 2000-44.

This is not the first time the plaintiff has sought discovery from the United States about many of the matters contained in the Notice of Deposition that is the subject of this motion. In fact, the plaintiff earlier sought documents and answers to interrogatories about the conduct of the audit, as well as about the application of the Helmer to them and other taxpayers.[12] When the United States objected, the plaintiff moved to compel the United States to produce documents and answer interrogatories..

Following full briefing and a hearing, the Court denied the plaintiff's motion to compel the discovery seeking to go behind the audit, the FPAAs and the development of IRS regulations and notices. At the March 12, 2007, hearing the Court agreed that factual discovery on the merits should concern whether the underlying transactions had economic substance, and not what individuals who once worked for the IRS may have thought about the law, or how the FPAA was prepared and audit conducted before this case was filed. This is consistent with this Court's *de novo* review of Stobie Creek's partnership items in this case.[13]

---

[12]See, e.g., Plaintiff's Motion to Compel. In that motion the plaintiff sought, among other things, to compel the United States to respond to Interrogatory No. 4 and Document Request No. 5, seeking documents relied upon by the IRS in issuing the FPAA. The plaintiff also sought to compel the United States to respond to Document Requests Nos. 7 and 11, seeking documents relied upon by the IRS for certain determinations in the FPAA, without expressly mentioning the FPAA.

[13]26 U.S.C. §6226(f). *See, e.g.*, TIFD III-E Inc. v. United States, 342 F.Supp. 2d 94, 108 (D. Conn. 2004), *rev'd on other grounds*, 459 F.3d 220 (2nd Cir. 2006).

In denying the plaintiff's earlier motion to compel, the Court has already ruled that the plaintiff may not take discovery into the IRS's conduct of the audit and issuance of the FPAA. This is the law of the case, and the plaintiff may not take a second bite at the apple.[14] Yet that is precisely what the plaintiff seeks with its RCFC 30(b)(6) deposition notice. Plaintiff has asked the government to produce one or more witnesses to testify to the following matters involving the IRS's planning and conduct of the audit, the preparation of the FPAA that forms the basis for the Court's jurisdiction here and a second FPAA issued after this lawsuit was filed, as well as the responses of the United States' counsel to the plaintiff's document request in this case:[15]

1. Plaintiff's cooperation with reasonable requests by the IRS for meetings, interviews, witnesses, information and documents;

2. Timing, subjects and discussions with others, including but not limited to the Welles Family members and attorneys, accountants and other representatives of Welles Family members, Stobie Creek, or North Channel, LLC regarding the investigation of taxes allegedly owed by the partners of Stobie Creek for the year 2000.

3. Documents contained and produced from the IRS administrative file relating to the taxpayers and taxes involved in this Case.

---

[14]"Law of the case is a judicially created doctrine, the purpose of which is to prevent relitigation of issues that have been decided. . . . The doctrine operates to protect the settled expectations of the parties and promote orderly development of the case. It 'ensures judicial efficiency and prevents endless litigation. Its elementary logic is matched by elementary fairness – a litigant given one good bite at the apple should not have a second.' . . . Under law of the case, then, a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation." Suel v. Sec'y of Health and Hum. Svcs., 192 F.3d 981, 984-985 (Fed. Cir. 1999), quoting Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 890 (Fed. Cir. 1984). (internal citations omitted).

[15]Notice of 30(b)(6) Deposition, ¶¶ 10-16, 18, and 19.

4. The search done to gather all relevant documents produced to Plaintiffs by the Defendant in the above-captioned action.[16]

5. Scope of investigation of taxes allegedly owed by the partners of Stobie Creek for the year 2000.

6. The audit plan for Stobie Creek.

7. Any instructions or directions provided to the agent regarding the adjustment to be made regarding the subject transactions.

8. Investigation, preparation and issuance of the FPAA issued to Stobie Creek for the tax year ending on December 31, 2000 (an FPAA not at issue here).

9. Investigation, preparation and issuance of the FPAA issued to Stobie Creek for the tax year ending on April 30, 2000 (the FPAA that forms the basis for the Court's jurisdiction).

The Court has already ruled that the plaintiff may not inquire into the conduct of the audit or the development of the FPAA at issue here (let alone an FPAA that is not even before this Court). But in this notice of deposition, the plaintiff seeks to take a second bite at the apple, in contravention of the law of the case. The Court should not allow it.

Not only is this the law of the case, but the Court ruled correctly when it denied the plaintiff's request to inquire into the audit and development of the FPAA in this case. As the plaintiff itself noted in response to the United States' motion for leave to take more than 10

[16]Among other things, the plaintiff asked the United States to produce all documents it obtained through the discovery process in this case. The decision about what documents to produce was made by counsel, as representative of the United States. There is no reason one party should be able to depose its opposing counsel about what documents were produced in discovery, absent persuasive evidence that opposing counsel had acted improperly in deciding what documents to produce. The plaintiff has made no such suggestion here, let alone a showing.

depositions, RCFC 26(b)(1) limits the parties to taking discovery that is either relevant or reasonably calculated to lead to the discovery of admissible evidence.[17] As plaintiff also noted, relevance is defined in Fed.R.Evid. 401 as evidence that, "has the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." As applied to proceedings for review of determinations made by the IRS, the Court of Federal Claims has already ruled that the IRS's intermediate determinations are irrelevant and beyond the scope of proper discovery.[18] Thus discovery into the IRS audit plan, the conduct of the audit, the development of the FPAAs and the audit of members of the Welles family is clearly irrelevant and outside the scope of RCFC 26(c).

Each of the nine paragraphs listed above seeks information about the IRS's conduct of the audit, its audit of individual members of the Welles family whose individual income taxes are not at issue in this proceeding, its issuance of the FPAA that generated this case, its issuance of an FPAA not before this Court, and counsel's response to a discovery request made in the defense of this lawsuit. None of this has any bearing on the claimed economic substance of the transactions in which the plaintiff and its members engaged in 2000.[19] Just as the Court has already denied the

---

[17]See Plaintiff's Response to the United States' Motion for Leave to Enlarge the Number of Depositions and Extend Discovery Schedule (Doc. No. 41), pp. 7-8.

[18]Cook v. United States, 46 Fed. Cl. 110, 113 (Fed. Cl. 2000) ("factual issues are tried *de novo* in this court, with no weight given to subsidiary factual finding made by the Service in its internal administrative proceedings."). See also, Greenberg's Express, Inc. v. Comm'r, 62 T.C. 324, 328 (Tax Ct. 1974) (this "proceeding is *de novo;* our determination as to a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level.").

[19]As an aside, requiring the United States to produce a witness to testify about the production of the documents sought in discovery – most of which were obtained from the plaintiff and third party witnesses pursuant to subpoenas issued in this lawsuit – clearly infringes

plaintiff's motion to compel the United States to produce internal IRS documents and to answer questions about the IRS's conduct of the audit and its internal deliberations about the law, it should deny the plaintiff's attempt to obtain deposition testimony on the same irrelevant subjects.[20]

## II. PLAINTIFF'S REQUESTS FOR TESTIMONY ABOUT OTHER WRITTEN TAX SHELTER OPINIONS AND THE IRS's APPLICATION OF PRINCIPLES OF LAW TO OTHER TAXPAYERS ARE NOT PROPER DISCOVERY REQUESTS UNDER RCFC 26(b)(1), AND ARE BARRED BY 26 U.S.C. §6103(a).

Congress has determined that "return information" is confidential, and may not be disclosed by any officer or employee of the United States except under narrowly-tailored exceptions in Title 26, most of which are enumerated in § 6103.[21] This tax confidentiality statute defines "return information" broadly to include not only information from a tax return, but also virtually any information provided to, obtained by, or developed by the Internal Revenue Service as part of its duty to administer the tax laws. Thus, "return information" specifically includes whether a taxpayer is under audit or investigation, and the results of any such audit or investigation.[22] And "return information" does not lose its character or confidentiality merely by redacting the identity of the taxpayer.[23]

---

on the attorney-client privilege and work product doctrine.

[20]Especially troubling about this notice is the attention and effort that it forces counsel to focus on irrelevant matters, at a time when they are working diligently to identify and depose the remaining witnesses within the limited time remaining to complete discovery.

[21]26 U.S.C. §6103(a).

[22]26 U.S.C. §6103(b)(2).

[23]Church of Scientology of California v. United States, 484 U.S. 9 (1987).

Here, not only does the plaintiff insist that the United States produce a witness to testify about the IRS's conduct of **this** audit (a subject which the Court has already ruled is irrelevant), but also seeks deposition testimony about the IRS's conduct of audits of other taxpayers to which the IRS applied "Code Section 752 and the regulations promulgated thereunder" both before and after August 2000. By definition, this request asks the United States to disclose the "return information" of other taxpayers. Absent some exception, § 6103(a) prohibits the United States (not just the Internal Revenue Service) from disclosing that information. The statute does not contain any exception that opens up the tax information of thousands of other taxpayers to scrutiny in this lawsuit. Thus, the Court should enter an order protecting the United States from having to provide any information – including testimony – about these matters.

Not only is the United States prohibited by law from disclosing the matters about which the plaintiff seeks testimony in ¶¶ 20 and 21, but those matters are irrelevant to the factual dispute at issue in this case, as well. As discussed above, the Court has already ruled that the IRS's conduct of this audit falls outside the scope of discovery permitted by RCFC 26(b)(1). *A fortiori*, discovery into the IRS's audits of other taxpayers in which the IRS raised § 752 as an issue (whether or not the audits involved tax shelters like this one, or even tax shelters at all), falls well beyond the pale of permissible discovery. The Court should not permit it.

We do not contend, as the plaintiff might suggest, that the plaintiff may not take discovery about other substantially similar tax shelters involving foreign currency option transactions that were designed and implemented to artificially inflate the basis of an asset or create an artificial loss, such as the proprietary BEDS transaction the Welles family members purchased from Jenkens & Gilchrist and used to artificially inflate the basis of their soon-to-be-redeemed Therma-

Tru stock. To the contrary, the United States has sought and obtained discovery about substantially similar tax shelter transactions from the parties actually involved in those shelters (i.e., Deutsche Bank, Jenkens & Gilchrist, and Shumaker, Loop & Kendrick), and has provided all of this discovery to plaintiff. But the notice of deposition to the United States does not seek discovery about substantially similar transactions from the parties actually involved. Indeed, the Notice does not seek discovery about the transactions at all. Instead, the plaintiff has asked the United States to produce a witness to testify about **advice** that countless unidentified third-party advisors gave to a multitude of taxpayers, many of whom may not have engaged in transactions remotely related to the BEDS deals at issue here (or in a tax shelter transaction at all). It seems disingenuous for the plaintiff to seek to limit the defendant's third-party discovery to other deals that were "identical" to the BEDS shelter that the plaintiff bought and implemented (as plaintiff's counsel did at the April 10 hearing), and then attempt to take discovery from the United States about any tax shelter that any taxpayer engaged in, ever. Surely the Court can and should distinguish between the United States' legitimate attempt to develop pattern evidence from third parties, and the plaintiff's attempt to obtain completely irrelevant testimony from the United States and IRS employees who did not participate in tax shelter transactions..

Finally, in this vein the plaintiff asks the United States to produce a witness to testify about "Any written advice (whether or not constituting formal written opinion, and whether or not advice indicated that the taxpayer could rely on it) provided by any financial institution, or law, accounting, tax services, or investment advisory firm to any taxpayer relating to the tax consequences of any transaction described in Notice 2000-44."[24] At first blush, it is difficult to

---

[24]Notice, ¶9.

understand what testimony the plaintiff wants the United States to provide. One might interpret this part of the notice to require the government to produce a witness who can testify on behalf of the United States about **every single** tax shelter opinion letter and every piece of informal written or oral advice, provided by anyone to any taxpayer who participated (or who even considered participating, and decided against it) in any of the thousands of transactions of a type described in Notice 2000-44. The other possibility is that the plaintiff simply wants the United States to produce an expert witness to testify about tax shelter opinions involving Notice 2000-44 transactions in general. In either case, the plaintiff is not entitled to the testimony.

The first interpretation would require the government to gather up every piece of tax return information about every taxpayer anyone in the government is aware of who participated or considered participating in a Notice 2000-44 transaction, review the opinions that may have been provided to each of those taxpayers, and then produce a witness who could testify about those opinions. On its face, this request would seem abusive in the extreme. And, as noted above, to the extent the plaintiff seeks information obtained by the IRS in administering the tax laws in connection with other taxpayers (whether they bought, developed, sold or implemented the tax shelter schemes), § 6103(a) prohibits the United States from disclosing that information here.[25] In any event, the Court should not allow it.[26]

---

[25]Instructive here is the plaintiff's use of the term "taxpayer" to describe the persons about whom the plaintiff seeks deposition testimony. Although that term is not defined in the notice of deposition, it is defined in § 7701(a)(14). It is certainly reasonable to interpret the Notice as encompassing information obtained by the IRS about other taxpayers.

[26]To the extent the plaintiff seeks testimony about advice provided to other taxpayers which did not come into the government's possession through the IRS's administration of the tax laws, the notice poses another problem: the information sought may be protected from disclosure by Fed.R.Crim.P. 6(e). Some of the information obtained by prosecutors may have been

Of course, the larger issue about this exceedingly broad demand is that this information is completely irrelevant to the factual issues before the Court in **this case**: that is, whether the transactions at issue lacked economic substance and whether the conduct of the plaintiff is subject to penalty. That brings into dispute the advice provided to these taxpayers, and not any advice provided to other taxpayers about other transactions.[27] The plaintiff may not ask the government to produce a witness in discovery to testify about advice given to countless others.[28]

The alternative interpretation is that the plaintiff simply wants someone from the government to testify about documents plaintiff already possesses, and particularly about the advice given in those documents to other taxpayers. By definition, this would require the government to produce an expert witness – one who is not "percipient" as to the matters to be asked about – who would then testify about that advice.[29] But a party to a lawsuit cannot use a

obtained through the grand jury process and may therefore be protected from disclosure by Rule 6(e). As we disclosed in the JPSR, p. 2, the United States Attorney for the Southern District of New York is also conducting a criminal investigation into the transactions that are the subject of this lawsuit. While we do not know whether the plaintiff seeks testimony about "matters occurring before the grand jury" under Rule 6(e), it is clear that unless the plaintiff obtains an order under Rule 6(e) authorizing the disclosure of grand jury information, the United States may not produce a witness to testify about matters occurring before the grand jury.

[27] As discussed at pp. 6-7, above, in raising this argument, the United States does not contend that information about other transactions is irrelevant to the determination of this case. The United States contends, instead, that the testimony sought by this vague and exceedingly broad request about **advice given to others** falls outside the scope of permissible discovery in this dispute – as well as directly within the scope of the tax confidentiality statute, § 6103.

[28]Assuming that the plaintiff could find other taxpayers who obtained and thought they could rely upon similar silly advice about their own iterations of this abusive tax shelter, it would simply bring to mind what our parents used to tell us in response to our youthful indiscretions, "If all your friends jumped off a cliff, would you jump off a cliff too?"

[29]Presumably, the plaintiff would ask whether the advice given was reasonable, and whether a taxpayer could reasonably rely upon that advice to support positions taken on filed tax

subpoena or a notice to compel a witness to appear and testify as an expert, or to direct a party to develop and produce an expert witness solely for purposes of deposition.[30] Moreover, should the United States wish to offer expert testimony on this subject, it need not identify its expert until August 13, 2007, under the April 12, 2007 order. The plaintiff may not circumvent that Order by noticing an expert deposition under the guise of the deposition of a fact witness.[31]

As discussed in this section, federal law prohibits the United States from disclosing any matters on which testimony is sought in ¶¶ 9, 17, 20 and 21 of the notice. Moreover, that testimony clearly exceeds the bounds of relevancy, and may constitute an improper attempt to circumvent the rules governing expert discovery. For all these reasons, the Court should enter a protective order directing that the plaintiff may not take the deposition of the United States on these matters.

---

returns.

[30]RCFC 45(c)(3)(B)(ii); See also, e.g., Hospital Corp. of America v. Commissioner, T.C. Memo 1996-559, n 12 (1996).

[31]This same reason prohibits the plaintiff from now taking the defendant's deposition on the matters described in ¶ 6 of the notice. In that paragraph, the plaintiff seeks testimony on, "The facts supporting Defendant's contention that the foreign currency transaction (sic) in which Plaintiffs (sic) engaged were structured in such a way as to virtually assure that the Plaintiffs (sic) would not realize a gain or loss on the transaction, in excess of the transactional costs." The defendant plans to offer the testimony of one or more expert witnesses on this subject. The plaintiff may certainly take the deposition(s) of any such expert(s), and inquire into this matter. But the plaintiff must take that discovery within the bounds of the scheduling order.

## III. THE ATTEMPT TO POSE CONTENTION INTERROGATORIES AS A DEPOSITION IS PREMATURE AND DISRUPTIVE. IF THE COURT RULES THAT THIS DISCOVERY IS PROPER AT ALL, IT SHOULD REQUIRE THE PLAINTIFF TO POSE THIS DISCOVERY AS INTERROGATORIES, AND TO WAIT UNTIL THE END OF THE DISCOVERY PERIOD TO DO SO.

Finally, in ¶¶ 1- 8 of the notice, the plaintiff demands that the United States produce a witness to testify about the evidentiary support for what the plaintiff characterizes as the the United States''s factual contentions in this lawsuit. If posed as written discovery this request would be fairly characterized as "contention interrogatories," designed to learn the other side's contentions and the evidence supporting them.[32] The United States does not object to the plaintiff posing reasonable contention interrogatories *at an appropriate time in this lawsuit.* But these are not interrogatories, and this is not the proper time.

The plaintiff's approach and timing pose two major difficulties. First, and most important, the United States has not completed its discovery into the transactions at issue, and is still gathering facts about the matters on which the plaintiff insists on exploring in a deposition now. Any deposition inquiring into the factual basis for the United States' contentions, therefore, would clearly be incomplete and might prove inaccurate (depending on the outcome of third-party depositions still to be taken). Second, to comply with this part of the notice would require the

[32] Although not styled as a contention interrogatory, ¶ 7 of the Notice attempts to track the work product of defendant's attorneys – and perhaps the work of the prosecutors – in the manner of a contention interrogatory. That paragraph asks the United States to produce a witness to testify about, "All witness interviews or statements within the possession, access, custody or control of the Defendant relating to Stobie Creek and its partners." As noted above, this encompasses interviews that may have been conducted by defendant's counsel in this case, and interviews conducted by prosecutors investigating these transactions. In any case, it is an attempt to depose the defendant about matters developed by its attorneys, which in turn implicates the work product doctrine. The plaintiff has made no showing which would entitle it to obtain the work product of defendant's counsel.

United States' counsel either to testify about the present state of the development of the United States' case in the context of this lawsuit, or to educate another federal employee to testify on behalf of the defendant on this matter. In either event, the notice implicates the work product of the United States' counsel, and requires the United States' attorneys to take time and energy from preparing for and taking the depositions that the Court allowed in its April 14, 2007, Order, and use that time and energy to prepare a witness for a deposition about discovery that is not yet complete.[33] Neither alternative is appropriate at this stage of the case.

Not only is the timing wrong, but under the Court's rules the plaintiff need not pose contention interrogatories or take a deposition like this at all. After all, those rules require the parties to disclose the evidence that they intend to submit at trial, identify the issues to which that evidence relates, and any address questions as to the admissibility of the evidence, at the end of discovery.[34] If this open process still does not satisfy the plaintiff, the Court should still require the plaintiff to wait at least until discovery is completed before posing contention discovery.[35] In

---

[33]We know of no federal employees who have first-hand knowledge about the evidence underlying the the United States' position in this case. Accordingly, to produce a witness to testify about matters obtained from third-parties would require counsel to identify all the matters developed thus far that support the United States' factual contentions, and impart that information to another federal employee who would then be designated as the RCFC 30(b)(6) witness for purposes of the deposition. Given the relatively short time remaining in the discovery period, and the large volume of discovery remaining to be completed in that time, complying with the plaintiff's Rule 30(b)(6) deposition notice would not advance the prompt, speedy and just resolution of this case. RCFC 1.

[34]*See* RCFC, Appendix A, ¶¶ 13(a), (c).

[35]*See* FRCP 33(c); and FRCP 33, Advisory Committee Notes. For a more detailed, thoughtful discussion about the use and misuse of contention interrogatories, *see also, In re Convergent Technologies Securities Litigation,* 108 F.R.D. 328 (N.D.Cal. 1985). Among other things, Judge Brazil notes, ". . . there is considerable recent authority for the view that the wisest general policy is to defer propounding and answering contention interrogatories until near the end

this context, therefore, the United States asks the Court to enter a protective order that quashes the plaintiff's "contention deposition," and permits the plaintiff to pose any necessary contention interrogatories at the close of discovery.[36]

## CONCLUSION

As discussed above, the plaintiff now seeks to obtain through a Rule 30(b)(6) deposition information that the Court has already ruled it may not obtain in written discovery. The plaintiff is attempting not only to obtain irrelevant information behind the FPAAs and the audit, but also to obtain information about other the audits of taxpayers, some of whom engaged in transactions identical to theirs (but many who did not), in contravention of § 6103. Finally, the plaintiff seeks testimony about the evidentiary support for the United States' contentions in this case, prematurely and by deposition instead of interrogatories. Because none of the 21 listed matters on which the plaintiff now seeks deposition testimony is a proper – or in some cases, lawful – subject of discovery, the Court should enter a protective order prohibiting the deposition from going forward as scheduled and, if necessary, allowing the plaintiff to pose contention interrogatories at the close of discovery.

---

of the discovery period." Id. at 336.

[36]Although the court's procedures referenced in fn 34 above would appear not to require the parties to serve contention interrogatories to learn the evidence their opponent intends to rely on to support its case at trial, the defendant would not object to extending the discovery period simply to enable the parties to pose and respond to interrogatories about their contentions.

Respectfully submitted,

*/s/ Stuart D. Gibson*
Stuart D. Gibson
Attorney of Record
U.S. Department of Justice
Tax Division
Office of Civil Litigation
Post Office Box 403
Ben Franklin Station
Washington D.C. 20044
(202) 307-6586

Eileen J. O'Connor
Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section
Cory A. Johnson
Trial Attorney, Court of Federal
Claims Section
*/s/ Cory A. Johnson*
Of Counsel

Dated: May 18, 2007