**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T** |
| | ) | **(Judge Christine O.C. Miller)** |
| **v.** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**THE UNITED STATES' RESPONSE TO MOTION**
**<u>OF PAUL DAUGERDAS TO QUASH DEPOSITION SUBPOENA</u>**

For the reasons set forth below, the deposition of Paul Daugerdas should proceed on August 30, 2007, in Chicago, Illinois, as currently scheduled.

**<u>Background</u>**

This case concerns a tax shelter – a "Son of Boss" shelter – developed and promoted by the law firm Jenkens & Gilchrist and Deutsche Bank A.G. in 1999 and 2000. Plaintiff and members of the Welles family purchased and implemented this shelter in 2000, and plaintiff now claims in this case that the shelter allows it and the Welleses to avoid paying any income tax on approximately $200 million in capital gains that they earned in 2000.

Paul Daugerdas, who was a lawyer at Jenkens & Gilchrist at the time, was intimately involved in creating, developing, and promoting the tax shelter at issue, and in preparing the opinion letters that plaintiff argues allegedly support the tax benefits it claims as a result of the shelter. Just as an example of his involvement, attached as Exhibit A is a copy of an email apparently sent by Mr. Daugerdas concerning the "New Strategy" developed with Deutsche

Bank. Additionally, attached as Exhibit B is a confidentiality agreement between the Welleses and Jenkens & Gilchrist (signed by Mr. Daugerdas) that was a precondition to the Welleses being told about the tax strategy. Attached as Exhibit C is a Jenkens & Gilchrist engagement letter concerning the associated tax opinion letters, in which Mr. Daugerdas and Donna Guerin are identified as the "principal attorneys handling your tax matters."

Plaintiff paid Jenkens & Gilchrist a flat fee of approximately $4 million for the tax shelter and associated opinion letters. This fee was determined as a percentage (2%) of the taxable income sheltered ($200 million). As one of the principal attorneys, Mr. Daugerdas presumably received a portion of this enormous fee.

## Argument

## I. THE POTENTIAL ASSERTION OF 5TH AMENDMENT RIGHTS IS NOT GROUNDS TO QUASH A DEPOSITION SUBPOENA

Mr. Daugerdas's stated intention to assert his "right under the 5th Amendment to the U.S. Constitution to decline to give testimony that may be incriminating" does not warrant quashing the subpoena issued to him. To the contrary, the courts have consistently held that potential witnesses cannot make a blanket 5th Amendment claim and refuse to appear at trial or for a deposition. Rather, a witness must comply with a subpoena, appear for deposition, and either provide an answer or assert his or her 5th Amendment rights in response to each individual question asked of him or her. *See, e.g.*, *Hansen v. United States,* 229 Ct. Cl. 660 (1981) ("The privilege against self incrimination, however, does not exempt a civil party from deposition. To the contrary, that party must appear and invoke the privilege in response to specific questions the party reasonably believes will incriminate him"), *citing National Life Insurance Co. v. Hartford*



2703503.1

*Accident and Indemnity Co.*, 615 F.2d 595, 598 - 99 (3rd Cir. 1980). In *Roundtree v United States*, 420 F.2d 845, 852 (5th Cir. 1969), the court stated:

> But even if the danger of self-incrimination is great, Roundtree's remedy is not to voice a blanket refusal to produce his records or to testify. Instead, he must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense. The district court may then determine by reviewing Roundtree's records and by considering each question whether, in each instance, the claim of self-incrimination is well-founded.

*See also In re Morganroth*, 718 F2d., 161, 167 (6th Cir. 1983); *United States v. Argomaniz*, 925 F.2d 1349, 1356 (11th Cir. 1991); *Hudson Tire Mart v. Aetna Casualty & Surety Co.*, 518 F.2d 671, 674 (2d Cir. 1975); *Guy v. Abdulla*, 58 F.R.D. 1 (N.D. Ohio 1973); *United States v. Int'l Brotherhood of Teamsters*, 247 F.3d 370, 388 (2d Cir. 2001) ("We cannot agree that civilized standards of procedure and evidence require that a witness *under indictment* be given the option of nonappearance in any proceedings in related civil or criminal cases until his own trial is concluded") (emphasis added), *quoting United States v. Simon*, 373 F.2d 649, 653 (2d Cir. 1967), *vacated as moot*, 389 U.S. 425 (1967); *United States v. Hansen*, 233 F.R.D. 665 (D.C. Cal.2005); and *United States v. Malnik*, 489 F.2d 682 (5th Cir. 1974) ("we think that Malnik should have been required to appear pursuant to the subpoena and raise his constitutional claim with regard to specific questions").

As summarized in a leading treatise on civil procedure:

> If a deposition is sought, the availability of the privilege is not ground for vacating the notice of the deposition. The proper procedure is for the deponent to attend the deposition, to be sworn under oath, and to answer those questions he or she can answer without running a risk of incrimination. In this way a record can be made and the court can determine whether particular questions asked did entitle the deponent to claim the privilege.

8 Charles Wright, Arthur Miller, & Richard Marcus, *Federal Practice and Procedure*, *Civil* §

2018 (2nd ed. 1994). Given the clarity and consistency of this relevant case law, it is not surprising that *none* of the cases cited by Mr. Daugerdas holds that a deposition should be quashed because a witness states an intention to assert his or her 5th Amendment rights to any questions that may be incriminating.

## II. MR. DAUGERDAS'S TESTIMONY, OR FAILURE TO TESTIFY, MAY PROVIDE ADMISSIBLE EVIDENCE

Mr. Daugerdas's argument that he should not have to appear for deposition because his testimony will "provide no evidence valuable in this case," and because an adverse inference cannot be drawn against plaintiff based on a non-party's assertion of the privilege (*See* Motion to Quash, p. 2), is wrong. First, as the above case law makes clear, the parties and the Court cannot simply assume that Mr. Daugerdas will refuse to answer all questions.[1]

Second, courts have specifically held that a non-party's refusal to testify may be relevant and admissible, and may support an adverse inference against a party. In *Federal Deposit Insurance Corp. v. Fidelity & Deposit Co. of Maryland*, 45 F.3d 969 (5th Cir. 1995), the court addressed an argument similar to Mr. Daugerdas's here:

> [Defendant] argues that inferences from the invocation of the Fifth Amendment are not allowed when a non-party asserts the privilege. *We find no support for such a proposition.*

*Federal Deposit Ins. Corp.*, 45 F.3d at 977 (emphasis added). The court then stated that whether or not an adverse inference is appropriate is examined on a case-by-case basis, and is determined

---

[1] In fact, Mr. Daugerdas submitted an affidavit in the tax shelter case *CEMCO Investors, LLC, Forest Chartered Holdings, Ltd., Tax Matters Partner, v. United States*, 2007 WL 951944 (N.D. Ill. 2007). *See* Declaration of Paul M. Daugerdas, *CEMCO,* (No. 04-8211) Document 26. According to the opinion in that case, Mr. Daugerdas was the president and sole shareholder of Forest Chartered Holdings, the tax matters partner that brought the case.

under the standard evidence rules applicable at trial, including Federal Rules of Evidence 402 and 403. 45 F.3d at 977 - 78. In that case, the court found that the adverse inference instruction given to the jury was appropriate.

Additionally, in *LiButti v. United States*, 107 F.3d 110, 120 - 24 (2nd Cir. 1997), the court held that a non-party's refusal to testify based on an assertion of his 5th Amendment rights could be used to support an adverse inference at trial against a party. Indeed, the court stated (170 F.3d at 124):

> As for the weight to be accorded to adverse inferences, the district court should be mindful of Justice Brandeis' classic admonition: "Silence is often evidence of the most persuasive character."

Plaintiff here paid Jenkens & Gilchrist $4 million for a tax shelter developed, at least in part, by Mr. Daugerdas, and for associated tax opinions, purportedly intended to support the shelter if challenged by the IRS. Plaintiff also identified Jenkens & Gilchrist in its RCFC 26 initial disclosures as having information that may support its claims in this case. Now – during discovery – the United States is entitled to find out what information and knowledge Mr. Daugerdas has.[2]

If Mr. Daugerdas does refuse to testify, based on an assertion of his 5th Amendment rights, the issue of whether or not that will support an adverse inference against plaintiff will be addressed at trial. That issue cannot be determined now, however. First, Mr. Daugerdas must

---

[2] On April 12, 2007, this Court entered an order allowing the United States to take a total of 27 deposition, 17 more than the 10 depositions presumptively allowed under RCFC 30(a)(2)(A). In doing so, the Court examined the discovery standards under RCFC 26(b)(2), and determined that Mr. Daugerdas was one of the potential witnesses that justified the additional depositions under these standards. (*See* Order of April 12, 2007, and The United States' Motion for Leave to Enlarge the Number of Allowable Fact Discovery Depositions and Extend the Discovery Schedule, filed March 16, 2007, pp. 8 - 14, and Exhibit F, attached thereto.)

appear for his deposition and assert his rights, as he deems appropriate, on a question-by-question basis.

## III. ANY INCONVENIENCE TO <u>MR. DAUGERDAS IS OF HIS OWN MAKING</u>

As Mr. Daugerdas states in his motion, he was recently deposed, on August 22, 2007, in *In re: COBRA Tax Shelter Litigation,* No. 05-ml-09727 (S.D. Ind.), which involves several different tax shelter cases consolidated in a multi-district litigation proceeding in the United States District Court for Southern District of Indiana. Mr. Daugerdas also moved to quash that deposition, on the same grounds he asserts here. Judge Matthew Kennelly, of the United States District Court for the Northern District of Illinois, denied his motion. *See In re COBRA Tax Shelter Litigation*, No. 07-4667 (N.D. Ill. August 21, 2007) (minute order) *available at* http://ecf.ilnd.uscourts.gov/cgi-bin/login.pl?109414977608213_L_835_0-1.

Counsel for the United States in this case was in contact with counsel for Mr. Daugerdas over the past few months attempting to schedule Mr. Daugerdas' deposition in this case, and offered to schedule his deposition in this case on the same day as his deposition in the *COBRA* cases, so that Mr. Daugerdas would have to appear at the U.S. Attorney's Office in Chicago just once. (Mr. Daugerdas lives in a suburb of Chicago.) Mr. Daugerdas refused, however, to authorize his attorney to accept service of a subpoena on his behalf. Accordingly, the United States was not able to schedule his deposition in this case for August 22. Despite numerous attempts over the past two months to personally serve Mr. Daugerdas with a subpoena at his residence and published business address, the United States was not able to serve him with a subpoena until just last week. Pursuant to RCFC 45(c)(3)(A)(i), the United States had to allow

Mr. Daugerdas reasonable time to comply with the subpoena. The supboena, therefore, requires his appearance this week, on August 30.

**Conclusion**

For all the above reasons, this Court should deny the motion of Paul Daugerdas to quash the deposition subpoena issued to him.

Respectfully submitted,

*/s/ Stuart D. Gibson (by CAJ)*
Stuart D. Gibson
Attorney of Record
U.S. Department of Justice
Tax Division
Office of Civil Litigation
Post Office Box 403
Ben Franklin Station
Washington D.C. 20044
(202) 307-6586

Richard T. Morrison
Acting Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section
Cory A. Johnson
Trial Attorney, Court of Federal
Claims Section

/s/ *Cory A. Johnson*
Of Counsel

Dated: August 27, 2007