**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STOBIE CREEK INVESTMENTS LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 05-748T |
| STOBIE CREEK INVESTMENTS LLC, by and through JFW INVESTMENTS LLC, Tax Matters and Notice Partner,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 07-520 T<br>Consolidated with 05-748T<br><br>Judge Christine O.C. Miller |

**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT, REBUTTAL REPORT, AMENDMENT TO EXPERT REPORT AND TESTIMONY OF DR. DAVID F. DEROSA AND MEMORANDUM OF LAW**

Plaintiffs submit this motion in limine under the Federal Rules of Evidence to exclude the Expert Report, Rebuttal Report, Amendment to Expert Report consisting of pages 35 and 36, and the testimony of Dr. David F. DeRosa. Defendant cannot prove that this evidence meets the safeguards of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

# MEMORANDUM OF LAW

## I. INTRODUCTION

Consistent with Defendant's litigation position, the Expert Report, the Rebuttal Report, and the Amendment of Expert Report of Dr. David F. DeRosa contain a conclusion that the two offsetting euro options and the two offsetting Swiss franc options with Deutsche Bank each were component elements of a single transaction structure or were a single transaction. Although Dr. DeRosa sometimes refers to the paired options as "component elements" and at other times as "component pieces," or "component parts," when referring to Dr. DeRosa's conclusion herein, "component pieces" will be used. Dr. DeRosa's conclusion was based upon the following: (1) Deutsche Bank's unusual pricing of the offsetting options; (2) that, on a gross basis, the long and short stated premiums for the options exceeded the theoretical values of such options; (3) that Deutsche Bank, as the calculating agent, could ensure that the spot rate for the relevant currency pairs on the expiration date would never fall within the spread necessary for the option pair to finish in the "sweet spot" and therefore return 200 times the premium; (4) that the currency option pairs produced a negative expected rate of return and therefore no prudent investor would invest in the paired options; (5) that the marketing literature and Deutsche Bank internal documentation showed the reliance that the options have upon each other for credit and margin purposes; and (6) that 252 other paired currency options during the years 1999 and 2000 were executed by other customers of Deutsche Bank having similarities with the paired currency options involved in this case.

## II. DISCUSSION

### 1. Defendant Must Prove that its Expert's Testimony is Admissible.

Federal Rule of Evidence Rule 702 provides that expert witness testimony may be admitted only if four criteria are satisfied:

(1) The scientific, technical, or other specialized knowledge must assist the trier of fact;

(2) The testimony must be based upon sufficient facts or data;

(3) The testimony must be the product of reliable principles and methods; and

(4) The witness must apply the principles and methods reliably to the facts of the case.

Defendant must prove by a preponderance of the evidence that Dr. DeRosa's Expert Report, Rebuttal Report, Amendment to the Expert Report and testimony are admissible under Rule 702. *Daubert*, 509 U.S. at 593 n. 10 (*citing Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)). A trial court's role in determining admissibility of scientific or other expert evidence is that of a gatekeeper. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Daubert*, 509 U.S. at 589. In considering the gatekeeping function, the Supreme Court has stated:

> Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

When a witness abandons his role as an independent expert in favor of advocating his employer's litigating position, he no longer "assists the Court" under Fed. R. Evid. 702. *See e.g. Laureys v. Commissioner*, 92 T.C. 101, 126-27 (1989). For that reason and others, the Rule 702 amendments heighten the historical standards as a means of protecting parties and trial courts from "junk science" and other unreliable opinions offered by expert/advocates to fulfill their employer's desires.

From the record to date, it is clear that Dr. DeRosa is not an independent expert as contemplated by Rule 702 of the Fed. R. Evid. Over the last two years, Dr. DeRosa has been retained by the Department of Justice as an expert in the foreign currency option area to prepare

an expert report and to testify at trial in no fewer than nine cases listed in Dr. DeRosa's Resume and two other cases not so listed but disclosed during his deposition. Attached hereto as Exhibit A, a copy of relevant portions of Dr. DeRosa's Deposition, 10/25/2007, at p. 128:12. In all of these cases, issues very similar to the issues presented in this case were the subject of his expert report and or testimony. Pursuant to the Department of Justice's letter of January 23, 2008, setting forth additional information requested at Dr. DeRosa's deposition, it is disclosed that Dr. DeRosa's firm, which was retained in all of the other foreign currency option cases, was paid for the expert reports and testimony $889,000 in 2006 and $1,034,000 in 2007. Exhibit B. In addition, in accordance with the Department of Justice's letter, Dr. DeRosa spends about 37.5% of his time on Department of Justice expert reports and testimony involving issues similar to those presented in this case. *Id.* In light of the number of cases in which Dr. DeRosa has been retained by the Department of Justice as an expert against the taxpayer and the amount of money that the Department of Justice has paid Dr. DeRosa for his reports and testimony against taxpayers, it is difficult to say that Dr. DeRosa is truly independent.

According to the Court of Appeals for the Federal Circuit, "reliability is the touchstone for expert testimony" and a trial judge in her capacity as "gatekeeper" must ensure that expert testimony admitted is "not only relevant, but reliable." *Libas, Ltd. v. United States*, 193 F3d. 1361, 1366 (Fed. Cir. 1999) (*citing Daubert*, 509 U.S. at 589). See also, *Perreira v. Dep't of Health and Human Services*, 33 F. 3d. 1375, 1377, n. 6 ( Fed. Cir. 1994) ("An expert opinion is not better than the soundness of the reasons supporting it"). The Supreme Court in *Daubert* set out the following guidelines a trial court may use to test the reliability of an expert's methodology and opinion:

> 1) whether the theory or methodology can be or has been tested or whether it is a subjective, conclusory approach that cannot be

> assessed for reliability; 2) whether the theory or methodology has been subjected to peer review and publication; 3) the known or potential rate of error; 4) whether there are standards controlling the operation of the methodology; and 5) whether the theory or methodology is generally accepted in the relevant scientific or technical community.

*Daubert*, 509 U.S. at 593-594.

Here, Defendant cannot carry its burden of proving that Dr. DeRosa's "component pieces of a single transaction structure" conclusion would assist the Court as the reliable application of reliable/accepted methods to the facts of this case.

In *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999), the Court struck an expert's report because it found that report unreliable and unhelpful under Rule 702:

> '[B]ecause [the expert] assumes the very fact that he has been hired to prove, his testimony is not helpful to the trier of fact in issue.'

*Id*. (internal citations omitted).

Here, Dr. DeRosa's conclusion is stated with minimal to no analysis and therefore the methodologies used to reach his conclusion are suspect. *Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084, 1087 (7th Cir. 1997) (An expert providing only an ultimate conclusion with no analysis is meaningless). Therefore, Dr. DeRosa's conclusion fails to meet the standards for admissibility of expert opinion and should be stricken. It is nothing other than the *ipse dixit* of Dr. DeRosa.

**2. Dr. DeRosa's Conclusion That the Paired Currency Options Were Component Pieces of a Single Transaction Structure Falls Short of *Daubert* and Violates Rule 702.**

Consistent with Defendant's litigating position, Dr. DeRosa opines that the offsetting options were "component pieces of a single transaction structure." Dr. DeRosa Report, at p. 96. Dr. DeRosa's report cites no source for his "component pieces of a single transaction structure"

theory and fails the classic *Daubert* methodology requirement. In fact, not even in his book, *Options on Foreign Exchange*, does Dr. DeRosa even mention or document any such theory.

This "component pieces of single transaction structure" methodology was not borne of the "intellectual rigor" experts must use in their respective fields, but instead was invented strictly for this litigation and therefore must be excluded. *Kumho*, 526 U.S. at 152; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (a trial court must determine whether the experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying").

Defendant's expert appears to be simply advocating Defendant's litigating position. *See Buffalo Tool & Die Mfg. Co. v. Comm'r*, 74 T.C. 441, 452 (1980). A putative expert abandons the attempt to "assist the Court" under Fed. R. Evid. 702 when he becomes an advocate:

> In the context of valuation cases we have observed that **experts may lose their usefulness (and credibility) when they merely become advocates for the position argued by a party.** In this case we conclude that Dr. Cornell's report was 'an overzealous effort *** to infuse a talismanic precision' into speculation in stock options.

*Laureys v. Comm'r*, 92 T.C. 101, 129 (1989) (internal citations omitted) (emphasis added).

Like the expert in *Laureys*, Dr. DeRosa's reports overstep the bounds of his expertise and merely argue Defendant's litigating position without meeting the tests of *Daubert*. As such, the "component pieces of a single transaction structure" sections of the reports should be excluded under Fed. R. Evid. 702, and, *inter alia*, *Daubert*.

In Appendix III of his Expert Report, Dr. DeRosa also points towards 252 other trades implemented through Deutsche Bank as indicative that the foreign currency options involved herein are "component parts of a single transaction structure." The similarities of those trades

with the trades involved herein were that the net premium was 1% of the long option premium and the sweet spot was two pips wide. However, the similarities end there. This proves nothing other than that Deutsche Bank implemented other trades with similar characteristics. In fact, as noted in Dr. DeRosa's deposition, he conveniently omitted other trades with similar characteristics--for what reason this Court can only guess.

In addition, Dr. DeRosa alleges an irregular nature to the pricing of the options involved in this case and suggests a negative expected rate of return for the options involved in this case. However, Dr. DeRosa fails to evaluate the pricing of the other 252 trades implemented by Deutsche Bank, or whether the rate of return is negative. It can only be surmised that if Dr. DeRosa had done so, the facts would not support his conclusions. More importantly, the mere existence of these other 252 Deutsche Bank trades supports no other conclusion than that Deutsche Bank implemented these trades. Here again, Dr. DeRosa's conclusion with respect to these other 252 trade is nothing other than the *ipse dixit* of Dr. DeRosa.

Dr. DeRosa's theory or methodology, if it can be called that, cannot be tested and it is merely a subjective conclusory approach that cannot be assessed for reliability. Also, Dr. DeRosa's methodology has not been subjected to peer review and publication, but was merely invented to service this litigation and the Defendant's litigating theory. Further, there is no way to measure the potential rate of error, since Dr. DeRosa's conclusions only have import in the Defendant's litigation of like cases. There are no standards controlling the operation of the methodology which Dr. DeRosa attempts to apply in this case. Also, as evidenced by the experts in the other cases in which Dr. DeRosa has prepared reports and testified, the theory or methodology of Dr. DeRosa has not been generally accepted in the relevant scientific or technical community. As such, Dr. DeRosa's report should be excluded.

**3. Dr. DeRosa's Conclusions Should Be Bared Due To His Failure To Produce His Electronic Files Which He Created or Relied Upon for this Case.**

Dr. DeRosa's testimony, Report and Rebuttal Report should also be barred because of Defendant's failure to produce Dr. DeRosa's electronic files which he created for this matter or relied upon for his opinion and report. Plaintiffs subpoenaed this information on or about October 22, 2007. See attached Exhibit C. Plaintiffs again requested this information at Professor Kolb's deposition on October 23, 2007. On January 17, 2008, and again at the meeting of counsel on January 22, 2008, Plaintiffs yet again requested that Dr. DeRosa produce his electronic files. Defendant's counsel stated that they would not produce this information because they already produced hard copies of his materials. Interestingly, Defendant's counsel did not feel that production of hard copies was sufficient with respect to Plaintiffs' experts. Plaintiffs, as requested by Defendant have produced all electronic files for their experts. Defendant's failure to produce the underlying electronic records which Dr. DeRosa created or relied upon in rendering his opinion has caused the Plaintiffs irreparable harm. Dr. DeRosa's Reports and opinions cannot be properly analyzed by Plaintiffs because Plaintiffs do not have all of the supporting information for his opinions. Plaintiffs, therefore, ask that Dr. DeRosa's testimony and Reports be barred. In the alternative, Plaintiffs respectfully request that this Court enter an order compelling Defendant's to produce these electronic files immediately.

## III. CONCLUSION

For the reasons set forth above and consistent with the law cited herein, Plaintiffs request that the Court preclude Dr. DeRosa's Expert Report, Rebuttal Report, Amended Report and testimony. In the alternative, Plaintiffs respectfully request an order compelling Defendant to produce Dr. DeRosa's electronic files of documents he created for or reviewed in connection with his opinions in this case immediately.

Dated: February 19, 2008

Respectfully Submitted

SCHIFF HARDIN LLP

/s/ Robert E. Kolek

Attorneys for Plaintiffs
Robert E. Kolek
Thomas R. Wechter
Matthew C. Crowl
Colleen M. Feeney
Ayad P. Jacob
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Phone: 312-258-5500
Fax: 312-258-5600

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th of February, 2008, the undersigned counsel caused to be electronically filed *Plaintiffs' Motion in Limine to Exclude the Expert Report, Rebuttal Report, Amendment to Expert Report and Testimony of Dr. David F. DeRosa and Memorandum of Law* using the CM/ECF system, which will send notification of such filing to the following named counsel of record:

Stuart D. Gibson, Esq.
Cory A. Johnson, Esq.
Trial Attorney
Tax Division
U. S. Department of Justice
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044

/s/ Colleen M. Feeney