# EXHIBIT B

**U.S. Department of Justice**

**Tax Division**

*Please reply to: Office of Civil Litigation*

*Facsimile No. (202) 307-2504*
*Trial Attorney: Stuart D. Gibson*
*Attorney's Direct Line: 202-307-6586*

*P.O. Box 403*
*Ben Franklin Station*
*Washington, D.C. 20044*

NJH:DG:SDGibson
154-2322
CMN 2005105383

January 23, 2008

Mr. Robert E. Kolek
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL 60606

Re: Stobie Creek Investments v. United States

Dear Mr. Kolek:

I write to provide you with the information that Dr. David DeRosa had agreed to gather and provide in response to questions asked at his October 25, 2007 deposition.

1. Dr. DeRosa was asked to provide, for each of the years 2006 and 2007, the income earned from expert witness engagements with the United States Department of Justice, both on a gross basis and on a net basis (after payments to his employees and associates).

Here are his estimates:

| Year | DOJ Engagement Income | |
|---|---|---|
| | Gross | Net |
| 2006 | $ 889,000 | $ 388,000 |
| 2007 | $1,034,000 | $ 380,000 |

2. Dr. DeRosa was asked to estimate, of the time he devoted to expert witness engagements during the years 2006 and 2007, what percentage of time was spent on engagements with the United States government.

Dr. DeRosa testified during his deposition that he devotes about 50% of his time to expert witness engagements, and about 50% of his time to other endeavors, including teaching, writing, and serving on boards of directors. Of the 50% that he spent on expert witness engagements in 2006 and 2007, Dr. DeRosa estimates that during 2006 and 2007, about 75% of that time was spent on expert witness engagements for the United States government.

3. Dr. DeRosa was asked to review his expert witness engagements with the Department of Justice, to determine whether there were more than two cases in which his engagement has not been disclosed to the other side (pp. 127-128). If there are more than two such cases, he agreed to supplement his response.

Dr. DeRosa has advised us that, to the best of his knowledge, there are no more than two expert witness engagements for the Department of Justice in which his engagement has not been disclosed.

4. Dr. DeRosa was asked to review Appendix II to his report, the list of documents reviewed in preparation of his report, and determine whether entry 19 contains a typographical error. He is still reviewing this matter, and we will let you know the answer when he has completed his review.

5. Finally, Dr. DeRosa was asked a number of questions about the content of Table 6 in his report (at p. 35), and the impact of the calculations of the theoretical value of the EUR/USD options on the conclusions discussed at p. 54 of his report. In particular, he was asked to explain why the calculation of the theoretical net premium ($160,538) for the EUR/USD option, without the "sweet spot," seemed to provide for a rate of return greater than the "risk free rate," when compared with his calculation of the expected dollar return of the option. He agreed to reflect on this and supplement his answers (Tr., pp. 70-78).

Attached is a supplemental report from Dr. DeRosa explaining the apparent inconsistency about which he was asked during his deposition, along with his revised Table 6, containing his recalculation of the theoretical net premium. Also enclosed are amended pages 35-36 with Table 6. We intend to include these as part of Dr. DeRosa's report, and as a trial exhibit, should the Court admit the expert reports into evidence. As you might imagine, the discovery of the rounding error – as Dr. DeRosa explained – does not change any of his conclusions, and in fact, reinforces them.

Dr. DeRosa has also made one small change to the USD/ CHF short option value in Table 6, which then flows through to the net premium as well.

With the exception of item 4, above, this completes Dr. DeRosa's follow up to the questions that you had asked him to follow up on at his deposition in October.

Sincerely,

*/s/ Stuart D. Gibson (by CAJ)*

STUART D. GIBSON
Senior Litigation Counsel

Enclosure (as listed)

cc: David F. DeRosa

**David F. DeRosa, Ph.D.**

**January 23, 2008**

***Stobie Creek Investments, LLC, et al v.***

***The United States Of America***

Response to Questions Posed in

October 25, 2007 Deposition

At the request of Plaintiffs' counsel, I have reviewed my report and calculations, based on an apparent inconsistency raised in my October 25, 2007 deposition. I was asked to reconcile my calculation of a $160,538 "theoretical value without sweet spot" for the EUR/USD spread strategy with my later calculation that the "expected dollar return" on the EUR/USD spread strategy was $233,829. These values would imply an expected rate of return on the EUR/USD spread strategy much greater than the risk free rate.

The inconsistency is explained by a rounded number in one of my calculations. In calculating the theoretical values of the component options including the sweet spot, I used a EUR/USD spot rate of .95745, which is the value indicated on the Deutsche Bank ODET sheets. I also used this spot rate of .95745 in calculating the theoretical value of the long component option without the sweet spot. However, the value shown for the theoretical value of the short component option without the sweet spot was calculated rounding the EUR/USD spot rate up to .95750. I have attached revised pages 35 and 36 of my report with Table 6 corrected so that the theoretical value of the short EUR/USD option without the sweet spot is based upon a EUR/USD spot of .95745.

Additionally, after reviewing Table 6, I am making a small correction to the theoretical value of the USD/CHF short component option without the sweet spot. I have therefore corrected the calculation on page 36 based on these adjustments to the theoretical value calculations.

Neither of these small adjustments changes any of my conclusions.

X ______________________________

David F. DeRosa, Ph.D.

other, I effectively removed the sweet spot. In its internal risk book, DEUTSCHE BANK set the two strikes equal to each other, thus 'eliminating' the sweet spot in the risk book (discussed fully in III.E). Table 6 compares the value of the Stobie Creek options with and without the sweet spot.

**Stobie Creek Participants**

| | Deutsche Stated Premium | DeRosa Theoretical Value with Sweet Spot | DeRosa Theoretical Value without Sweet Spot | Change in Value Due to Removal of Sweet Spot |
|---|---|---|---|---|
| Long Option Value EUR/USD | (102,287,500) | (23,346,255) | (23,346,255) | |
| Short Option Value EUR/USD | 101,264,625 | 22,832,588 | 23,112,742 | $280,154 |
| Net Premium | (1,022,875) | (513,667) | (233,513) | $280,154 |
| Long Option Value USD/CHF | (102,287,500) | (40,668,325) | (40,668,325) | |
| Short Option Value USD/CHF | 101,264,625 | 40,025,738 | 40,261,642 | $235,904 |
| Net Premium | (1,022,875) | (642,587) | (406,683) | $235,904 |
| Total Long Option Value | (204,575,000) | (64,014,580) | (64,014,580) | |
| Total Short Option Value | 202,529,250 | 62,858,326 | 63,374,384 | $516,058 |
| Total Net Premium | (2,045,750) | (1,156,254) | (640,196) | $516,058 |

Table 6

The reason why the values of the long and short component options, viewed separately, change only modestly with the removal of the sweet spot is because the probability of obtaining the sweet spot is de minimus. By contrast, the impact of the theoretical value of the net premium is

dramatic. The theoretical total net premium falls by $516,058 for the combined EUR/USD and USD/CHF digital options. This means that the net stated premium was actually more than 3.1 times greater than the theoretical net value of the offsetting options (from Table 6, $2,045,750/$640,196 = 319.55%). Later, in this report, I will show that DEUTSCHE BANK treated the sweet spot as though the probability of its being hit was in fact zero.

As mentioned above, the stated premium of an option may vary marginally from its theoretical value. That said, I can think of no market-related explanation to account for the significant pricing differences between the stated premiums and the theoretical valuations derived by both DEUTSCHE BANK and myself. Thus, in my opinion the stated and net stated prices were materially overstated.

In general practice, options on foreign exchange are bought and sold at market determined prices, based off of third-party quotes. For the pricing of the Stobie Creek transactions, however, the net option premium was always 1% of the long option stated premium. This is not the way that options are bought and sold in the marketplace.