**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STOBIE CREEK INVESTMENTS LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 05-748T |
| STOBIE CREEK INVESTMENTS LLC, by and through JFW INVESTMENTS LLC, Tax Matters and Notice Partner,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 07-520 T<br>Consolidated with 05-748T<br><br>Judge Christine O.C. Miller |

**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE NON-PARTY "PATTERN" EVIDENCE OR IN THE ALTERNATIVE MOTION TO COMPEL**

Robert E. Kolek
Thomas R. Wechter
Matthew C. Crowl
Colleen M. Feeney
Ayad P. Jacob
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Phone: 312-258-5500
Fax: 312-258-5600
*ATTORNEYS FOR PLAINTIFFS*

## TABLE OF CONTENTS

**Page**


I. Background ........ 1
II. Argument ........ 3
A. Fed. R. Evid. 404(b) Prohibits Admission of Pattern Evidence ........ 3
B. The "Pattern" Evidence is Not Relevant ........ 3
1. Potential for Profit ........ 4
2. Business Purpose ........ 5
C. The Evidence At Issue Offers No "Pattern" ........ 7
D. The Challenged Evidence Is Incomplete ........ 8
E. The "Pattern" Evidence Is Confidential And Should Not Be Disclosed to Plaintiffs or the Court ........ 9
F. The "Pattern" Evidence Will Unfairly Prejudice Plaintiffs, Cause Undue Delay and Waste Time ........ 10
III. Motion to Compel ........ 13
A. Pattern Evidence ........ 13
1. Relevance ........ 14
2. Burden ........ 15
3. 26 U.S.C. § 6103 is No Bar to Plaintiffs' Request ........ 15
B. Interview Transcripts and Information Responses ........ 15
IV. Conclusion ........ 16

# TABLE OF AUTHORITIES

## Cases

*Amoco Prod. Co. v. Forest Oil Corp*., 844 F.2d 251 (5th Cir. 1988) ............ 5
*Cicero v. Borg-Warner Auto., Inc.*, 163 F. Supp. 2d 743 (E.D. Mich. 2001)............ 9
*Compaq Computer Corp. v. Comm.*, 277 F.3d 778 (5th Cir. 2001) ............ 3
*Cooper v. Hallgarten & Co.*, 34 F.R.D. 482 (S.D.N.Y. 1964) ............ 9
*Faison, et al. v. Nationwide Mortgage Co.*, 839 F.2d 680 (D.C. Cir. 1987) ............ 12, 13
*Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007 (D.C. Cir. 1997) ............ 5
*Fox v. Comm'r*, 80 T.C. 972 (1983) ............ 11, 12
*In re Fontaine*, 402 F. Supp. 1219 (E.D.N.Y 1975) ............ 5
*Murray v. Stuckey's Inc.*, 939 F.2d 614 (8th Cir. 1991) ............ 7
*United States v Stein*, No. 1:05-cr-00888-LAK ............ 6
*United States v. DeCicco*, 435 F.2d 478 (2d Cir. 1970) ............ 3
*United States v. Qaoud*, 777 F.2d 1105, 1111 (6th Cir. 1985) ............ 6

## Statutes

26 U.S.C. § 6103............ 2, 9, 10, 13, 15

## Rules

Fed. R. Civ. P. 37(a) ............ 9
Fed. R. Evid. 1001 ............ 1
Fed. R. Evid. 401 ............ 13
Fed. R. Evid. 402 ............ 1
Fed. R. Evid. 403 ............ 1, 10, 11, 12, 13
Fed. R. Evid. 404(b)............ 1, 2, 3, 10, 13
Fed. R. Evid. 405 ............ 1
Fed. R. Evid. 406 ............ 1
Fed. R. Evid. 602 ............ 1

## Miscellaneous

Notice 2000-44............ 1, 13, 15

# PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE NON-PARTY "PATTERN" EVIDENCE OR IN THE ALTERNATIVE MOTION TO COMPEL

Plaintiffs hereby move this Court to exclude the so-called "pattern" evidence that Defendant intends to offer at trial. In the alternative, Plaintiffs move the Court to compel Defendant to produce additional "pattern" evidence to Plaintiffs. Plaintiffs seek to exclude two categories of information: (1) incomplete material about the motives and conduct of hundreds of unrelated people and entities (Defendant's so called "pattern" evidence) and (2) unauthenticated papers that lack adequate foundation as to their creation or relevance to Stobie Creek or the Welles family. This material should be excluded because it obstructs a fair trial of the facts relevant to *this* case and is irrelevant, selective, incomplete, and in many instances, unauthenticated hearsay. If allowed, this extraneous material would prolong the trial, waste time, and require the Court to conduct a series of mini-trials to determine its authenticity, its lack of relationship to the Welles family and Stobie Creek, and its admissibility. The materials and testimony should be excluded on several grounds, including Fed. R. Evid. 402, 403, 404(b) , 405, 406, 602, and 1001. In support of their motion, Plaintiffs state as follows:

## I. Background

In Notice 2000-44, the IRS challenged the tax results claimed by taxpayers for a large number of transactions, including the transactions at issue in this case. According to the IRS, there were more than 1,800 of these transactions, which the IRS collectively refers to as "Son of Boss" transactions. The purposes and economics of these transactions varied from taxpayer to taxpayer.

On or about January 22, 2008, Defendant presented Plaintiffs with a list of 708 proposed exhibits and 32 possible witnesses pursuant to this Court's order dated December 10, 2007. Plaintiffs seek to exclude certain exhibits and the testimony of two witnesses, Steven Bores and Barbara Aprile. Defendant produced as trial exhibits numerous transaction documents, apparently culled from earlier productions of Deutsche Bank and Jenkins & Gilchrist documents, as well as a summary exhibit, all of which are inadmissible "pattern" evidence under Federal Rule of Evidence 404(b). Not only are these documents irrelevant, but *any* relevance is outweighed by the unfair prejudicial effect of this testimony. Defendant has also designated a witness named Barbara Aprile to testify relating to this so-called "pattern" evidence.

On May 14, 2007, Plaintiffs' Second Request for Production of Documents requested the production of:

> Any written advice (whether or not constituting formal written opinion, and whether or not advice indicated that the taxpayer could rely on it) provided by any financial institution, or law, accounting, tax services, or investment advisory firm to any taxpayer relating to the tax consequences of any transaction described in 2000-44. To the extent there is advice give[n] to multiple taxpayers that is the same, in lieu of producing each piece of advice, You may produce one copy and a list identifying the other taxpayers (name and address) who received the same advice.

See Exhibit A. Defendant refused to produce this information, claiming that it was: (i) irrelevant information, (ii) unduly burdensome, or (iii) protected from disclosure as taxpayer return information under 26 U.S.C. § 6103. See Exhibit B. Plaintiffs have combined with their motion in limine an alternative motion to compel Defendant to produce this information, should the Court find that the "pattern" evidence at issue is admissible despite Plaintiffs' objections.

## II. Argument

### *A. Fed. R. Evid. 404(b) Prohibits Admission of Pattern Evidence*

The Federal Rules of Evidence allow evidence of a person's prior acts to be used as evidence of that person's motive for a current act. See Fed. R. Evid. 404(b) . However, the rules do not allow evidence of one person's acts to prove another person's motive. "Guilt ... cannot be inferred merely by association." *United States v. DeCicco,* 435 F.2d 478, 483 (2d Cir. 1970). Thus, "prior similar acts of misconduct performed by one person cannot be used to infer guilty intent of another person who is not shown to be in any way involved in the prior misconduct..." *Id*. (finding that it was an abuse of discretion for the trial court to allow testimony of prior bad acts of one defendant in a joint trial, even with a cautionary instruction). Courts routinely hold that pattern evidence or evidence of prior bad acts cannot be admitted against an individual who was not involved in the bad act, and that such an admission would be prejudicial.

### *B. The "Pattern" Evidence is Not Relevant*

The issues before the Court focus on the Plaintiffs' motives and intent when investing in Stobie Creek. Two issues central to this case are: (1) whether the taxpayers had a business purpose apart from obtaining federal tax benefits, and (2) whether there was economic substance to the transactions. *See e.g., Compaq Computer Corp. v. Comm.*, 277 F.3d 778, 781-82 (5th Cir. 2001) (reserving judgment on whether the two components should be applied conjunctively or disjunctively). At best, evidence pertaining to transactions engaged in by *other investors* who are unrelated to Plaintiffs, may constitute indirect, circumstantial evidence of the non-parties' intent, but this type of evidence is wholly irrelevant to a proper legal analysis of either the subjective business motivation or the objective potential to generate a profit for the transactions engaged in by members of the Welles family.

*1.* *Potential for Profit*

Jeffrey Welles formed a number of opinions that led him to conclude that the proposed options purchases involving euro and Swiss franc options had the opportunity to produce a reasonable profit. Jeffrey believed that the resulting market downturn would lead to a rise in the value of the euro. Additionally, Jeffrey expected that the European Central Bank would raise interest rates in early April 2000 and issue a favorable employment report, leading to a surge in the euro and increased volatility in the currency market. Jeffrey Welles further anticipated an uncoupling of the historic relationship between the euro and Swiss franc relative to the dollar. If he was right and the options hit the "sweet spot" price, the Welles family would have made a 200 times return on their investment, furthering their economic and charitable ambitions. If he was partially correct, and one of the options expired in the money, the Welles family would have made a 200% return on their investment. To evaluate the objective profit potential of the Plaintiffs' transactions, the Court will need to hear evidence on the reasonableness of Jeffrey Welles' market views. Plaintiffs intend to show this through the testimony of expert and fact witnesses who have specific knowledge of these transactions.

There is no dispute that parties who had made similar investments in these same currencies in the past may *not* have profited from the transactions, for the simple and obvious reason that these currencies had historically tended to trade in tandem. Furthermore, in order to hit the "sweet spot" the currencies would not have had to decouple. Experts will testify, however, that the volatility of the changes of each of these currencies was sufficient to make a profit. And, as undisputed evidence will show, had these trades been made a few weeks later, one of the options would have expired in the money, resulting in 200% return investment.

*2.* *Business Purpose*

Defendant apparently intends to use purported "pattern" evidence in an attempt to show that other investors in purported Son of Boss transactions were principally motivated by tax avoidance. Defendant apparently would rely on the alleged motives of these other investors to prove that the Plaintiffs must have been similarly motivated.

The subjective motivation of one taxpayer may not be proven through "pattern" evidence of the motivations of other taxpayers because purpose is a subjective inquiry that is unique to the individual person. One person's motivation for making an investment cannot be proven through evidence of the purpose of any other person for making a similar type of investment. This is especially true where the investors in other digital options investments are completely unrelated to the Plaintiffs. *See Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1013 (D.C. Cir. 1997) (holding that the district court erred in allowing plaintiff to conduct discovery into non-party documents because such documents could not be relevant to show defendant's intent); *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y 1975) (overruling bankruptcy court's decision to allow plaintiff to discover how the defendant-bank had handled other loan applications to show that the bank had not relied on a false statement in plaintiff's loan application because "failure to rely on similar false statements, if true, is no evidence that there was no reliance in this particular instance especially in view of the fact . . . that each loan is a separate entity and is considered apart from previous applications. Consequently, there is no likelihood that useful evidence might be uncovered which is relevant to the subject matter.").

In *Amoco Prod. Co. v. Forest Oil Corp.*, 844 F.2d 251, 257 (5th Cir. 1988), Amoco sought to prove Forest's intent relating to a contract by introducing evidence of Forest's

intent with respect to similar language that it had used in another contract with Amoco. The Fifth Circuit upheld the district court's decision to exclude that evidence, even though that evidence involved contracts between the same parties. *See also*, *United States v. Qaoud*, 777 F.2d 1105, 1111 (6th Cir. 1985) (holding that the district court properly excluded pattern evidence because it "involved a totally different incident" which demonstrated little or nothing about the defendant's intent on what was at issue). In this case, by contrast, the evidence that Defendant offers is even more remote, for it concerns transactions involving unrelated third parties.

Moreover, Defendant's argument in this case that pattern evidence is relevant to prove intent is inconsistent with the position it took in *United States v Stein*, No. 1:05-cr-00888-LAK, a criminal case pending in the Southern District of New York, where Defendant argued that such evidence was not relevant to intent. In *Stein*, the accused repeatedly requested exculpatory "Brady" material from Defendant, including evidence that would tend to show that IRS employees believed the transactions were legitimate and that investors in the transactions at issue in that case had a proper business purpose for making the investments. See Exhibit C. However, in that case Defendant took the position that such information was not relevant, stating: "The fact that, unknown to your client, other individuals held or did not hold certain beliefs does not bear on your client's mental state." See Exhibit D. Plaintiffs agree with Defendant's statement in *Stein*. And, for the same reason emphasized by Defendant in *Stein*, the "pattern" evidence that Defendant seeks to offer in this case is irrelevant and inadmissible because it has no bearing on the mental state of Jeffrey Welles or any members of his family.

*C. <u>The Evidence At Issue Offers No "Pattern"</u>*

Defendant apparently seeks to use the so-called "pattern" evidence to prove the subjective motivations of other investors in the Deutsche Bank transactions, which Defendant would then similarly attribute to Mr. Jeffrey Welles.[1] However, there is no "pattern" as to the time between the trade date and the expiration date, with differences of 17, 21, 30, 33 and 60 days to name a few. There is no "pattern" as to the currency spreads entered into among the trades: some investors entered into British pound/U.S. dollar options, others entered into Japanese yen/U.S. dollar options, Canadian dollar/U.S. dollar options, Swiss franc/U.S. dollar options, and euro/U.S. dollar spreads. And, one hundred twenty four of the trades according to Defendant's "summary chart" expired in-the-money. Further, in Defendant's summary chart, the Defendant has only chosen to include certain trades from 1999 through 2000. Each of the non-party trades Defendant marked as proposed exhibits or as part of its summary chart were fact specific and were dependant upon market conditions existing at the time that the trades were entered into. There simply is no pattern: many of the trades expired in-the-money, others were of different currencies, with varying days to expiration, different strike prices, and different exercise prices. In addition, 32 individual trades on Defendant's "summary chart" are missing information, either because it does not exist or Defendant chose not to include it on its chart. None of this evidence is persuasive of anything without examining the underlying motives of each of the individual investors. *See Murray v. Stuckey's Inc.*, 939 F.2d 614, 621 (8th Cir. 1991)

[1] This evidence is also inadmissible under Fed. R. Evid. 406 to show a habit or pattern of Deutsche Bank. As noted in *Coltec Indus. Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006) and *Jade Trading LLC v. United States*, 80 Fed. Cl. 11 (2007), the subjective intent of Deutsche Bank is irrelevant.

(holding that pattern evidence would be unpersuasive to prove unpaid overtime claims because the employees had differing work situations).

*D. The Challenged Evidence Is Incomplete*

Defendant should also be precluded from relying on the challenged evidence because such evidence is biased and incomplete. Defendant produced a summary of the challenged evidence to Plaintiffs presumably from Deutsche Bank and Jenkens & Gilchrist documents. However, in multiple cases, Defendant's proposed summary witness, Barbara Aprile, failed to cite the source of her information, shown by areas in her chart that are either blank or have "document not found" in the location where the bates number of her source should be located. In addition, Deutsche Bank is a bank that completes hundreds of thousands of transactions a year. However, Defendant's summary chart includes fewer than 1,000 transactions. This simply cannot be the scope of foreign currency transactions completed by Deutsche Bank in the years 1999 and 2000. In addition, Defendant has not produced any tax related information, including but not limited to, the tax returns of the investors listed on the summary chart for the relevant periods, such as information about whether the investors claimed any tax benefits, whether they were ever under audit for these investments, or whether the Defendant asserted any deficiencies with respect to such option trading. Therefore, evidence of certain other non-party investors should not be admitted into evidence as it is incomplete.

Defendant has also failed to produce a privilege log in this case. Accordingly, Plaintiffs do not know the scope of the other materials in Defendant's possession relevant to this inquiry. For example, did Defendant interview Deutsche Bank or Jenkens & Gilchrist employees? Likely, interviews were conducted in the context of "promoter audits" or in Defendant's investigations of certain Deutsche Bank and Jenkens & Gilchrist employees.

Defendant's questions would presumably have focused on the same facts that Defendant now seeks to prove through transactional documents (e.g., the transaction "design," how it was implemented from case to case, and potential for profit). However, Defendant produced no interview transcripts or notes, nor did it put them on a privilege log.

Defendant should be precluded from ascribing any "motive" (or anything else) to investors in other transactions through transactional documents when Defendant possessed but did not produce (i) the investors' explanations of the documents and testimony about their motive discovered through audit and (ii) the prior testimony of investment advisors who implemented the investments. *Cicero v. Borg-Warner Auto., Inc.*, 163 F. Supp. 2d 743, 755 (E.D. Mich. 2001) ("[I]n the absence of evidence concerning the circumstances of those individuals, mere numbers cannot be 'pattern' evidence."). The Court should preclude Defendant from selectively using "pattern" evidence when it failed to produce more probative evidence of the very facts it seeks to prove. *See* Fed. R. Civ. P. 37(a) ("A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not ... permitted to use as evidence at a trial ... any witness or information not so disclosed.").

### *E. The "Pattern" Evidence Is Confidential And Should Not Be Disclosed to Plaintiffs or the Court*

"Public policy favors the non-disclosure of income tax returns." *Cooper v. Hallgarten & Co.*, 34 F.R.D. 482, 483 (S.D.N.Y. 1964). "[T]he production of tax returns should not be ordered unless it clearly appears they are relevant...." *Id.* at 484 (emphasis added). This policy is embodied in 26 U.S.C. § 6103, which extends confidentiality protections to tax "return information" as well as tax returns.

The "pattern" evidence summarized by Defendant contains taxpayer information generally protected from such disclosure. For example, the summary chart contains taxpayer names, taxpayer identification numbers, and personal information, such as the amount of the taxpayers' gain. See 26 U.S.C. § 6103(b). Despite this, Defendant invokes the general non-disclosure rule in refusing to produce tax returns and other documents. See Exhibit B.

Defendant's efforts to introduce tax return information of non-parties into an adjudicative setting should be evaluated considering the strong policy favoring the confidentiality of tax returns and tax return information and, perhaps even more important, in light of the fact that these other investors were not given notice of Defendant's intent to violate their privacy interests by introducing certain of their tax return information in this case. Further, as discussed above, the "pattern" evidence is incomplete. In order to provide complete and accurate information, additional tax return information is necessary. It would be unfair and highly prejudicial to allow the Defendant to use 26 U.S.C. § 6103 as a shield to block this information from Plaintiffs, while also using the statute as a sword to present certain of this information in its case-in-chief. Accordingly, this Court should exclude the "pattern" evidence under 26 U.S.C. § 6103.

*F. The "Pattern" Evidence Will Unfairly Prejudice Plaintiffs, Cause Undue Delay and Waste Time*

The non-party evidence that Defendant seeks to use at trial is also inadmissible under Fed. R. Evid. 403 and 404(b) because it invites prejudice, would cause undue delay, and waste time. Fed. R. Evid. 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

> considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Injecting other taxpayers and their tax returns and advisors into this case is particularly unfair to Plaintiffs. Plaintiffs will prove their case before this Court, but, in doing so, should not be required to explain and defend what hundreds of other taxpayers may have done or thought in reporting their taxes. Moreover, without complete information about the non-parties and their transactions, Plaintiffs cannot compare and contrast the non-party transactions and the Court cannot adequately analyze the inferences that Defendant seeks to draw. The danger of unfair prejudice to Plaintiffs is clear and substantial and outweighs any probative value which these evidence may have.

Further, permitting Defendant to use this evidence at trial will create an unfair evidentiary burden for Plaintiffs. Were Defendant able to proffer enough information about the non-party transactions to establish a proper foundation, Plaintiffs would need to compare and contrast all of the facts for each and every non-party and transaction to determine whether such evidence has relevance to the transactions at issue. Similarly, the Court would have to undertake extensive factual inquiry and analysis, essentially conducting a series of mini-trials for each non-party's facts and circumstances, merely to ascertain whether the non-party evidence (consisting of nine large boxes of documents) have any relevance at all. This exercise will not only unfairly burden Plaintiffs, but it will also cause undue delay during trial and will waste the Court's time on information that is not relevant. Under Fed. R. Evid. 403, any possible value of the challenged evidence is substantially outweighed by the danger of unfair prejudice, undue delay, and waste of time. Accordingly, the Court should exclude such evidence.

In *Fox v. Comm'r*, 80 T.C. 972, 1004-05 (1983), the Tax Court rejected Defendant's efforts to rely on similar "pattern" evidence for precisely these reasons. The issue in *Fox* (as in the present case) was whether two partnerships were engaged in business activities for profit. In *Fox*, as in the present case, Defendant attempted to introduce testimony and exhibits relating to many other limited partnerships organized by a common investment advisor. *Id.* at 1005. As here, the defendant in *Fox* invited the Court to consider numerous alleged similarities in the operation of the partnerships before the Court and the operation of the partnerships involving other third parties. The Court excluded the proffered evidence relating to the other partnerships, concluding that even if such evidence had minimal significance, it would require an expansive trial of all of the other partnerships along with the two partnerships already in trial. The Court explained:

> [T]he evidence respondent seeks to introduce with regard to these other entities is sketchy and incomplete. To consider fairly the profit history of these other partnerships, we would have to examine the underlying cause of the financial results in each partnership. This would greatly expand the scope of our inquiry and, in effect, require us to try the cases of all these other partnerships simultaneously with the case of the instant two partnerships. Principles of efficient judicial administration would not be served by such a course, especially since the evidence relating to the other Resource-sponsored partnerships is only of collateral significance. Consequently, we hold that while the evidence relating to the other partnerships may be relevant, it will ... not be considered.

*Fox*, 80 T.C. at 1005.

The D.C. Circuit has also held that the type of "pattern" evidence that Defendant seeks to offer is not admissible under Fed. R. Evid. 403. In *Faison, et al. v. Nationwide Mortgage Co.*, 839 F.2d 680, 689-90 (D.C. Cir. 1987), plaintiffs lost their home as a result of an allegedly fraudulent loan scheme. Relying on "pattern" evidence of settlements in which

members of the Defendant's law firm (but not the Defendant) had served as settlement attorneys. Plaintiffs sought to prove that their settlement attorney had defrauded them. The D.C. Circuit held such evidence was not admissible:

> Plaintiffs proffered the "bad act" evidence in question in order to demonstrate a consistent "plan," i.e., as pattern evidence of a loan fraud scheme. The evidence objected to by Boddie involved prior loan settlements in which members of Boddie's law firm served as settlement attorneys. In at least one of the other "bad act" settlements, plaintiffs' witness testified that he believed Boddie was present and "sitting at the head of the table" during settlement. Tr. at 197. The evidence evinced from the other pattern witnesses was arguably not probative of Boddie's liability for fraud in this case and, even if marginally relevant on that issue, was almost surely more prejudicial than probative; therefore, its admission violated Rule 403.

*Id*. at 689.

For all of the reason set forth above, Plaintiffs respectfully request that the Court enter an order in limine to exclude the so-called "pattern" evidence in this case pursuant to Fed. R. Evid. 401, 403, and 404(b) .

## III. <u>Motion to Compel</u>

### *A. <u>Pattern Evidence</u>*

Plaintiffs issued a Second Request for Production of Documents, seeking written advice provided to taxpayers with respect to Notice 2000-44 transactions. Plaintiffs did so because if the type of "pattern" evidence that Defendant intends to offer were admitted at trial, Plaintiffs would then need to demonstrate through rebuttal "pattern" evidence that dozens of the nation's leading legal and accounting firms gave taxpayers advice that these transactions were based upon valid interpretations and applications of governing tax law. Defendant refused to produce such information, claiming that the requested information was: (i) irrelevant, (ii) unduly

burdensome, and (iii) protected from disclosure as taxpayer return information under 26 U.S.C. §6103. See Exhibit B.

If "pattern" evidence is relevant to this case (which Plaintiffs dispute), then this Court should order Defendant to produce the "pattern" evidence that would show that many of the country's leading legal and accounting firms advised their clients that the tax positions taken by taxpayers in cases similar to the one at issue were valid. For the reasons we discuss below, Defendant's objections to this discovery are frivolous.

*1.* *Relevance*

If the Court were to sustain the IRS' adjustments to the tax returns of the partners of Stobie Creek, the Court would then need to determine whether the massive penalties asserted by Defendant are warranted. In asserting the penalties, the IRS determined that Plaintiffs were "negligent" in taking the tax positions at issue, that there was not "substantial authority" for Plaintiffs' tax reporting, and that Plaintiffs did not have reasonable belief upon the filing of the return that the position taken was more likely that not the correct treatment of the transaction. These questions require the Court to make a determination of the reasonableness of Plaintiffs' tax reporting in light of then existing law. In making this objective finding, is relevant that many of the country's leading law and accounting firms advised their clients that tax positions like those taken by Plaintiffs were more likely than not correct. If the "pattern" evidence that Defendant seeks to introduce to prove subjective intent is relevant, than "pattern" evidence that Plaintiffs would rely on to prove the reasonableness of their tax position is also relevant. Indeed, the evidence that Plaintiffs would rely on concerning penalties is relevant because it goes to an objective issue (whether there was a basis for reasonable reliance on professional advice), while Defendant's "pattern" evidence is not relevant because it goes to the subjective intent and

business motives of the individual investors whose taxes are at issue in this case (Jeffrey Welles and other members of the Welles family).

*2.* *Burden*

Defendant apparently spent hundreds of hours preparing the "pattern" evidence that it seeks to introduce if Defendant thus should be required to make similar efforts to produce documents necessary to rebut such evidence. Yet, Plaintiffs are not asking that Defendant expand such effort. Rather, Plaintiffs would accept a stipulation from Defendant that names the firms that provided advice, describes such advice, without requiring the production of documents. Plaintiff understands that Defendant routinely compiles and centralizes information about firms that provided advice in these types of transactions, and Defendant's counsel should be able to easily retrieve this information.

*3.* *26 U.S.C. § 6103 is No Bar to Plaintiffs' Request*

The names of firms that provided advice to clients that engaged in transactions described in Notice 2000-44 is not confidential tax return information protected by 26 U.S.C. § 6103. Thus, if Defendant merely stipulated to the names of the firms that provided such advice, there would be no disclosure of any confidential information protected by statute. Alternatively, if Defendant provided copies of the written advice, such copies could be redacted to protect the identity of the taxpayers.

*B.* *Interview Transcripts and Information Responses*

If Defendant is allowed to introduce "pattern" evidence of investor intent through transactional documents, then this Court shall compel Defendant to produce transcripts of any interviews or other documents or records relating to the motive or purpose of any investor in

such transactions, as well as transcripts of interviews of any Deutsche Bank employees or principals.

## IV. <u>Conclusion</u>

For all of the reasons set forth above, Plaintiffs respectfully request that this Court enter an order in limine excluding all so-called "pattern" evidence in this case. If this Court should allow Defendant to introduce "pattern" evidence of investor intent through transactional documents, then Plaintiffs respectfully request that this Court compel Defendant to produce transcripts of any interviews or other documents or records relating to the motive or purpose of any investor in such transactions, transcripts of interviews of any Deutsche Bank employees or principals, as well as documents responsive to Plaintiffs' Second Request for Production of Documents.

Dated: February 19, 2008

Respectfully Submitted
SCHIFF HARDIN LLP

/s/ Robert E. Kolek
Attorneys for Plaintiffs

Robert E. Kolek
Thomas R. Wechter
Matthew C. Crowl
Colleen M. Feeney
Ayad P. Jacob
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Phone: 312-258-5500
Fax: 312-258-5600

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th of February, 2008, the undersigned counsel caused to be electronically filed *Plaintiffs' Motion in Limine to Exclude Non-Party Pattern Evidence or Alternative Motion to Compel* using the CM/ECF system, which will send notification of such filing to the following named counsel of record:

Stuart D. Gibson, Esq.
Cory A. Johnson, Esq.
Trial Attorney
Tax Division
U. S. Department of Justice
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044

/s/ Colleen M. Feeney