# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-against-<br><br>JEFFREY STEIN, JOHN LANNING, RICHARD SMITH, JEFFREY EISCHEID, PHILIP WIESNER, JOHN LARSON, ROBERT PFAFF, DAVID AMIR MAKOV, LARRY DELAP, STEVEN GREMMINGER, RAYMOND J. RUBLE, GREGG RITCHIE, RANDY BICKHAM, MARK WATSON, CAROL WARLEY, DAVID RIVKIN, CARL HASTING, RICHARD ROSENTHAL, and DAVID GREENBURG,<br><br>Defendants. | 05 CR 00888 LAK (ECF)<br><br>**JOINT MEMORANDUM OF POINTS AND AUTHORITIES BY DEFENDANTS JOHN LARSON AND ROBERT PFAFF RE:**<br><br>**(1) MOTION FOR DISCLOSURE OF RULE 16 AND BRADY MATERIAL;**<br><br>**(2) MOTION FOR BILL OF PARTICULARS; AND**<br><br>**(3) MOTION TO DISMISS FOR LACK OF VENUE** |

**MOTION FOR DISCLOSURE OF RULE 16 AND BRADY MATERIAL**

Following a massive, multi-year investigation, the government has charged 19 professionals (so far) with a vast conspiracy implicating more than 600 prominent investors throughout the country over a span of almost 10 years. The defendants are alleged to have committed the specific intent crime of tax evasion, yet the government takes the position that there is no favorable or exculpatory evidence at all. The government also has rejected each of our detailed requests for Rule 16 and Brady materials. We respectfully ask the Court to intervene and to order the government to produce the materials listed in the accompanying proposed order, so that the defense has access to the materials it needs.

## I. INTRODUCTION

The government has brought an extraordinarily complicated case, alleging that 19

the government has obtained from taxpayers and investors in the BLIPS, OPIS, FLIP, SOS, and Son of BOSS investigations. For example, we have requested the names and addresses of all investors (and their professional financial, tax and accounting advisors) who have provided favorable or exculpatory information, the details of that information, and any evidence that contradicts or is inconsistent with the indictment's portrayal of the investor's engagement of KPMG, Presidio, or Brown & Wood; the investor's motivation to participate in the investment strategies; the investor's expectation regarding the profit potential of the strategies; or the duration of the investor's participation in the strategy. Sager Decl., Exhibit A. These materials are plainly material to the defense.

1. Taxpayer and Investor Evidence Is Material to the Defense

Did any of the prominent taxpayers who made these investments – and signed tax returns under penalty of perjury – tell the government that he or she believed the tax treatment was appropriate and "more likely than not" to prevail against a government challenge? Common sense would indicate that maybe hundreds of taxpayers have told this to the government. Indeed, how many people would immediately agree with the government's theory that the tax law is clear and that the return was intentionally fraudulent? Not many, we submit.

We expect that the government's complete audit files and interview reports and notes are full of evidence that sophisticated investors carefully considered their multi-million dollar investments, received advice from their own separate tax advisors, accountants, and investment advisors, and concluded that the tax position they took under written oath was appropriate under the IRS's own regulations: that is, more likely than not to prevail in court. The files and notes will show which issues they especially considered, what their advisory team's analysis was, and to whom they spoke with (at KPMG or elsewhere) about those beliefs. Any time a sophisticated investor (or his advisors, accountants or law firms) indicates that he or she believed the investment program made sense and could make money, or passed the amorphous, judicial "economic substance doctrine," or that the Brown & Wood or KPMG legal

opinion made sense, it shows that Presidio's economic program was appropriate, that it was reasonable (and correct) for the Presidio defendants to rely on the tax professionals' opinion letters, and that the defendants are credible when they say that they certainly did not intentionally break the tax laws of this country.

Statements by these investors and their representatives, and related documentation obtained by investigators, is critical evidence directly contradicting the core of what the government must prove. The government cannot avoid this discovery obligation by its current contention that the element of tax due and owing is immaterial since the taxpayers have allegedly paid their taxes. The taxpayers who signed allegedly false tax returns are alleged coconspirators in the indictment. When investors are interviewed by IRS criminal or revenue agents, or when they or their lawyers meet with the prosecution team in New York, if they say that they believed the investments were legal, that the tax treatment works, that any of the tax issues we describe above in Section II.A have not been violated, then that is compelling defense evidence. The position itself tends to show there is no specific intent. Their analysis provides leads to the defense to other documents and witnesses to support the statements. The taxpayers and their advisors are potential defense witnesses. Surely, this evidence meets the Rule 16 materiality and constitutional "helpful to the defense" standards.

The government's response misses the point:

> The fact that, unknown to your client, other individuals held or did not hold certain beliefs does not bear on your client's mental state. To the extent any such third parties shared these beliefs with your client, you are in as good a position as the Government to investigate those matters and offer the evidence, to the extent it is admissible and exculpatory

Sager Decl., Exhibit G (December 22, 2005 letter). This is wrong for many reasons:

First, the fact that sophisticated investors and advisors came to the same conclusion as the defendants on complicated tax and investment issues shows that the positions are credible, reasonable, and made in good faith, as described above. This applies to every issue in the case, be it, for example, the Argentine Peso's odds of devaluing (relevant to BLIPS), the