**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STOBIE CREEK INVESTMENTS LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 05-748T |
| STOBIE CREEK INVESTMENTS LLC, by and through JFW INVESTMENTS LLC, Tax Matters and Notice Partner,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 07-520 T<br>Consolidated with 05-748T<br><br>Judge Christine O.C. Miller |

**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE DEPOSITION TESTIMONY CONTAINING BLANKET ASSERTIONS OF THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION**

Robert E. Kolek
Thomas R. Wechter
Matthew C. Crowl
Colleen M. Feeney
Ayad P. Jacob
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Phone: 312-258-5500
Fax: 312-258-5600
*ATTORNEYS FOR PLAINTIFFS*

Plaintiffs submits this motion in limine to exclude the deposition testimony of Paul Daugerdas, Donna Guerin, John Ivsan, David Parse, Perry Parker, and Craig Brubaker, and to prohibit the Defendant from offering into evidence any invocation of the Fifth Amendment right against self incrimination by these non-party witnesses.

## I. INTRODUCTION

The Defendant seeks to offer into evidence, either through testimony at trial or by designating depositions, invocations of the Fifth Amendment by Paul Daugerdas and Donna Guerin, former attorneys of Jenkens & Gilchrest ("J&G"), John Ivsan, formerly an associate with Shumaker, Loop and Kendrick ("SLK"), and David Parse, Perry Parker, and Craig Brubaker, current and/or former employees of Deutsch Bank Alex Brown ("DB") (collectively the "Non-Party Witnesses").

Between August 3, 2007 and August 30, 2007, each of Non-Party Witnesses were deposed pursuant to subpoenas served on them by the Defendant in this action. *See* Exhibit A, Deposition Excerpts. As there was and continues to be a federal grand jury investigation by the United States Attorney's Office for the Southern District of New York relating to transactions recommended by J&G, prior to their depositions, counsel for each Non-Party witness informed the Defendant that the witness intended to assert their Fifth Amendment rights and would decline to answer any question posed at their deposition. *See* Exhibit B, Joint Preliminary Status Report at 2 (noting the existence of an ongoing criminal investigation and that the United States Attorney for the Southern District of New York had asked to be kept "apprised of any discovery in this action"). The Defendant nevertheless proceeded with the depositions of each witness. At their depositions, after stating their name and identifying the subpoenas pursuant to which they appeared, the Non-Party Witnesses declined to answer *any* question put to them in reliance on

their Fifth Amendment rights against self incrimination. *See* Exhibit A, Deposition Excerpts.

The Defendant seeks to offer the testimony of each of the Non-Party Witnesses and will likely seek to argue that the Court should draw an adverse inference against Plaintiffs based on the fact that they asserted their Fifth Amendment rights. As set forth below, under Federal Rules of Evidence 401, 402 and 403, this Court should prohibit the Defendant from offering, displaying or referring to any Non-Party Witnesses' assertion of their Fifth Amendment right against self-incrimination.

## II. ARGUMENT

The Fifth Amendment to the United States Constitution provides in pertinent part that "no person . . . shall be compelled in any criminal proceeding to be a witness against himself." United States Const. Amend. v. The U.S. Supreme Court has held that the privilege against self-incrimination extends to civil litigation. *McCarthy v. Arnstein*, 266 U.S. 34, 40 (1924); *see also Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). The Supreme Court also has held that a jury may be permitted to draw an adverse inference against a *party* based on that *party's* assertion of his or her Fifth Amendment right against self-incrimination. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (emphasis added).

Although adverse inferences may generally be appropriate when a party invokes the Fifth Amendment, a non-party's invocation can give rise to adverse inferences only in strictly limited circumstances. Basing adverse inferences on a non-party's Fifth Amendment invocation infringes an opposing party's right to confrontation and allows the witness's proponent to build a case on "evidence" that lacks any indicia of trustworthiness required by due process. *Bowles v. United States*, 439 F.2d 536, 541-42 (D.C. Cir. 1970); *see also LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997) ("the overarching concern is fundamentally whether the adverse

inference is trustworthy . . . ."). When a party has invoked the Fifth Amendment, these concerns are implicated to a much lesser degree, if at all. However, when a non-party invokes the Fifth Amendment, courts must carefully evaluate whether allowing adverse inferences would be both fair and consistent with due process.

**a. Non-Party Witnesses' Assertions Of Their Fifth Amendment Rights Are Not Relevant Evidence Of Wrongdoing By Plaintiffs**

In this case, *all* non-party invocations of the Fifth Amendment should be excluded under Federal Rules of Evidence 401, 402 and 403. The assertions of the Non-Party Witnesses are not relevant evidence. Moreover, even if they were relevant, the admission of such evidence would be substantially outweighed by the danger of unfair prejudice to Plaintiffs. Indeed, any adverse inference that the Defendant seeks to draw from the assertion of the Fifth Amendment by any Non-Party Witness is particularly irrelevant and untrustworthy in light of the fact that each of these witness refused to answer *all* substantive questions bearing on any of the issues in this case.

*In re Worldcom, Inc. Sees. Litig.*, No. 02 Civ. 3288, 2005 WL 375315, *4 (S.D.N.Y. Feb. 17, 2005), is instructive on this point. *Worldcom* involved the admissibility of the testimony of several former employees of Worldcom who invoked their Fifth Amendment privilege in response to all questions asked by the parties in securities litigation. The court ruled that "[i]t is unlikely . . . that the substantive questions asked of these witnesses will be received in evidence" because the circumstances under which the witnesses asserted the Fifth Amendment right create "the potential for 'lawyer abuse' when the examining attorney effectively testifies for the witness who is invoking the privilege." *Id.* at *5. The court explained that the practice of presenting fact-specific questions designed to suggest that the deponent would answer in the affirmative, gives evidentiary weight to questions rather than answers. *Id.* Indeed, "it leaves the examiner

free, once having determined that the privilege will be invoked, to pose those questions which are most damaging to the adversary, safe from any contradiction by the witness no matter what the actual facts." *Id.*

Similarly, in *Ullman-Briggs, Inc. v. Salton/Maxim Housewares, Inc.*, Nos. 92C680, 92C2394, 1996 WL 535083 (N.D. Ill. Sept. 17, 1996), the court barred the defendants from introducing the non-party witness' blanket assertion of the Fifth Amendment. The court explained:

> During Briggs' deposition testimony, he made a blanket assertion of his Fifth Amendment privilege against self-incrimination, answering only the question asking his name. He refused to answer any other question whatever. *It is therefore impossible to draw a negative inference from his refusal to answer any given question, as it would be if his assertion of the privilege had been selective.* Once it became apparent to Briggs' questioner that he would invoke the fifth amendment privilege with respect to any question whatsoever, counsel would then be able to fashion the questions in such a way as to be able to create the most damaging testimony through negative inference, "safe from any contradiction by the witness no matter what the actual facts."

*Id.* at *17. (citations omitted) (emphasis supplied)

In *Cavalier Clothes, Inc. v. Major Coat Co.*, the court yet again refused to issue an adverse inference instruction, explaining that "[t]he Third Circuit specifically warned against 'sharp practices' which would allow the 'systematic interrogation of witnesses on direct examination by counsel who knows they will assert the privilege against self-incrimination.' This type of calculated questioning 'by which the examining attorney effectively testifies for the invoking witness' has been specifically eschewed . . . . " No. 89-3325, 1995 WL 314511, at *6 (E.D. Pa. Apr. 6, 1995) (*quoting RAD Services, Inc. v. Aetna Casualty and Surety Co.*, 808 F.2d 271, 278 (3rd Cir. 1986)); *see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, No. 91-C-6103, 1994 WL 502955, at *6 (N.D. Ill. Sept. 13, 1994) (court declines to draw an adverse inference where witness' lawyer had advised him to invoke the Fifth Amendment as to all

questions); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 (5th Cir. 1990) (noting that the assertion of the Fifth Amendment privilege, particularly on the advice of counsel, is an ambiguous response); *In re Citric Acid Antitrust Litig.*, 996 F. Supp. 951, 961 (N.D. Cal. 1998) (finding invocation of Fifth Amendment irrelevant, in part, where the party refused to answer any question).

The conduct characterized as "lawyer abuse" in *Worldcom*, *Ullman-Briggs*, and *Cavalier* is exactly what has occurred here. The Defendant was well aware before the deposition of each Non-Party Witness at issue that they would decline to answer any questions posed to them. Nonetheless, the Defendant proceeded to ask scores of suggestive questions designed to cast Plaintiffs in a bad light. Now, the Defendant seeks to draw the adverse inference that the Non-Party Witnesses asserted their Fifth Amendment right because the answers to those questions would have been damaging to Plaintiffs. Under the case law, there is no legitimate basis for any such inference.

The Non-Party Witnesses' assertion of their Fifth Amendment rights says nothing about how each would have answered the Defendant's questions under different circumstances. Their testimony is irrelevant because it does not tend to make the existence of any fact that is of consequence to this action any less or more probable than it would be without the evidence. *See* Fed. R. Evid. 401. Where, as here, each of the Non-Party Witnesses declined to answer any questions, whether nominal or substantive, it is impossible to draw a negative inference from their refusals to answer at all.

**b. There Is No Basis to Attribute The Non-Party Witnesses' Assertions Of Their Fifth Amendment Rights to Plaintiffs**

Various courts have enumerated a number of "non-exclusive" factors that should guide trial courts in determining whether a non-party's assertion of his or her Fifth Amendment right

against self-incrimination can justify an adverse inference against a party. Those non-exhaustive factors include: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) and the compatibility of the interests of the party and non-party witness in the outcome of the litigation. *See Libutti v. United States*, 107 F.3d 110, 123 (2d Cir. 1997) (canvassing the law on key considerations). Applying these factors also confirms that this Court should exclude any testimony by the non-party witnesses invoking their Fifth Amendment right against self-incrimination.

**i. The Non-Party Witnesses Do Not Have The Necessary Relationship With Plaintiffs**

The nature of the relationship between a party and the non-party is invariably critical -- the closer the relationship, the more likely that the non-party refused to testify in order to aid the related party. *Libutti*, 107 F.3d at 123. The nature of this relationship "should be examined . . . from the perspective of a non-party witness' loyalty to the plaintiff or defendant, as the case may be." *Id.* Thus, the closer the bond, the less likely the non-party witness would be to render testimony in order to damage that relationship. *Id.* Courts have permitted an adverse inference to be drawn where the relationship is close enough to conclude that the non-party's invocation promotes the interests of the party. *Id.*; *In re Payroll Express Corp.*, 216 B.R. 344, 364 (S.D.N.Y. 1997) (an adverse inference "may be drawn when the non-party's relationship with a party to the litigation is so close that her assertion of Fifth Amendment rights may be viewed as a vicarious admission of that party").

The circumstances at issue here bear no relationship to those in which courts have found a sufficiently close relationship to warrant drawing an adverse inference against a party based on the assertion of the Fifth Amendment right by a non-party. *See e.g. LiButti*, 107 F.3d at 123-24 (adverse inference permitted against daughter in her action against government for imposing a

wrongful levy on property based on father's assertion of Fifth Amendment right when asked whether he owned property); *Cerro Gordo Charity v. Fireman's Fund American Life Ins. Co.*, 819 F.2d 1471, 1481-82 (8th Cir. 1987) (adverse inference permitted against charitable organization based on assertions of Fifth Amendment rights by former director of charitable organization); *RAD Servs., Inc. v. Aetna Casualty & Surety Co.*, 808 F.2d 271, 278-79 (3d Cir. 1986) (adverse inference permitted against employer based on assertion of Fifth Amendment right by former employees); *Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983) (same).

Here, the relationship between the Non-Party Witnesses and Plaintiffs is anything but "close." It is hostile and adverse. None of the non-party witnesses have any interest in assisting Plaintiffs in this or any other litigation. There is no basis to conclude that any of the Non-Party Witnesses have any relationship with Plaintiffs such that it would be likely that they would assert their Fifth Amendment right out of loyalty to Plaintiffs or for fear of damaging any existing relationship. Simply put, an adverse inference against Plaintiffs is not warranted here because there is nothing to suggest that any of the Non-Party Witnesses are in any way beholden to Plaintiffs. Indeed there is no evidence to suggest that their claims of privilege are motivated by anything other than personal reasons. *See Veranda Beach Club, L.P. v. Western Surety Co., et al.*, 936 F.2d 1364, 1374 (1st Cir. 1991) (noting invocation of privilege was inadmissible against an associated party where the evidence was insufficient to show that the non-party witness was motivated by anything other than personal reasons). The Non-Party Witnesses are the subject of a broad criminal. The fact that the Non-Party Witnesses have, not surprisingly, refused to relinquish their constitutional rights in the force of such investigation, as individuals should not cast a shadow of suspicion on Plaintiffs.

**ii. Plaintiffs Have No Control Over the Non-Party Witnesses and Any Invocation of their Fifth Amendment Rights Does not Advance the Interest of Plaintiffs**

Additional factors enumerated in *LiButti* also focus on "the degree of control of the party over the non-party witness" as well as any alignment of interests. *See LiButti*, 107 F.3d at 123. Plaintiffs have never exercised control over any of the Non-Party Witnesses in this case, nor do Plaintiffs have the ability to influence or control them now. Each Non-Party Witness decided to invoke their Fifth Amendment right after consulting with their separate and independent counsel. Plaintiffs did not control this decision nor did they benefit from it.

Moreover, Plaintiffs and the Non-Party Witnesses do not have identical interests in the outcome of the litigation. *Id.* For example, in *LiButti* the Court held that an adverse inference would be appropriate where a father and daughter possessed precisely the same interest against the drawing of adverse inferences from the father's invocation of the Fifth Amendment. *Id.* at 124. Here, the Non-Party Witnesses' assertions of their Fifth Amendment rights do not advance the interests of Plaintiffs. On the contrary, the truthful testimony of the Non-Party witnesses could significantly advance Plaintiffs' argument that penalties are not appropriate, as several of the Non-Party Witnesses provided legal advice upon which Plaintiff reasonably relied in filing their income tax returns. Moreover, each of the Non-Party Witnesses also specifically declined to answer questions posed to them by Plaintiffs' counsel. The conflicting interests at stake here are further highlighted by Plaintiffs' prior efforts to secure the testimony of the Non-Party Witnesses. *See* October 3, 2007 letter from Robert Kolek to Stuart Gibson, attached hereto as

Exhibit C (requesting use immunity for the testimony of non-party witnesses asserting their Fifth Amendment rights against self incrimination).[1]

This Court has broad authority under Federal Rule of Evidence 403 to control the way in which the invocation of the Fifth Amendment privilege is used. The Defendant must be prevented from exploiting any invocation of the Fifth Amendment in the prejudicial manner that it now seeks.

## III. CONCLUSION

For these reasons, this Court should grant Plaintiffs' motion in limine and exclude the testimony and deposition designations of Paul Daugerdas, Donna Guerin, John Ivsan, David Parse, Perry Parker, and Craig Brubaker.

Dated: February 19, 2008

Respectfully Submitted

SCHIFF HARDIN LLP

/s/ Robert E. Kolek

Attorneys for Plaintiffs
Robert E. Kolek
Thomas R. Wechter
Matthew C. Crowl
Colleen M. Feeney
Ayad P. Jacob
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Phone: 312-258-5500
Fax: 312-258-5600

[1] Some courts have also considered whether the non-party witness is a key figure in the litigation. *Libutti*, at 123-124. However, this factor alone is not controlling. Where, as here, the Non-Party Witnesses do not possess the requisite relationship, are not controlled by a party litigant, and do not exhibit compatibility of interests drawing an adverse inference would be inappropriate.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th of February, 2008, the undersigned counsel caused to be electronically filed *Plaintiffs' Motion in Limine to Exclude Deposition Testimony Containing Blanket Assertions of the Fifth Amendment* using the CM/ECF system, which will send notification of such filing to the following named counsel of record:

Stuart D. Gibson, Esq.
Cory A. Johnson, Esq.
Trial Attorney
Tax Division
U. S. Department of Justice
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044

/s/ Colleen M. Feeney