**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T** |
| | ) | **07-520 T** |
| **v.** | ) | |
| | ) | **(Judge Christine O. C. Miller)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**THE UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS CONCERNING THE UNITED STATES' SUMMARY EXHIBIT**[1]

**INTRODUCTION**

The United States seeks to offer a summary of voluminous documents, as permitted by Fed.R.Evid. 1006. It disclosed that summary at the January 22, 2008, meeting of counsel, as required by RCFC App. A, Rule 13(a). Plaintiffs have had the source documents for the summary for well over a year. The United States plans to offer the summary through the testimony of the person who prepared it, Internal Revenue Agent Barbara Aprile. Ms. Aprile will not testify as an expert, nor will she attempt to draw any conclusions from the summary. She will testify merely as the scrivener, the person who prepared it at the request of United States's counsel. As required by RCFC, App. A, Rule 13(a), the United States has offered to make Ms.

[1]The motion purports to be filed not only by the named plaintiffs in these two consolidated cases – JFW Enterprises, Inc. and JFW Enterprises, LLC – but also by 10 purported "plaintiffs" that are not properly before this Court: DKW Senior Enterprises, Inc., DKW Junior Enterprises, Inc., VJ Enterprises, Inc., PCW Enterprises, Inc., CSW Asset Management, Inc., DKW Senior Investments LLC, DKW Junior Investments LLC, VJ Investments LLC, PCW Investments LLC and CSW Investments LLC. For the reasons discussed in the response to the plaintiffs' "Motion to 'Confirm' Jurisdiction," and as discussed in this Court's March 10, 2008, Order, none of these other moving parties is properly a "participating plaintiff."

Aprile available to identify the sources of the "information in the summary." Plaintiffs may not examine Ms. Aprile, however, to inquire into other matters, such as the United States' trial strategy or its counsel's work product.

## **FACTS**

During discovery, the United States obtained by subpoena – with the Court's knowledge and approval – voluminous documents from third parties (primarily Deutsche Bank and Jenkens & Gilchrist), evidencing transactions identical or nearly identical in structure to the 14 paired digital option transactions that lie at the heart of this case.[2] Those documents include trade confirmations, account statements, tax opinion letters, and summaries of more than 500 such transactions contemporaneously prepared by employees of Deutsche Bank and/or Jenkens. All told, these documents total between 500,000 and 1 million pages. Every document was produced to the plaintiffs' counsel as it was obtained by United States. Plaintiffs have had these documents for more than a year.

Among other things, the plaintiffs have argued throughout this case that the digital foreign currency option transactions they entered into were unique, and not part of a "cookie cutter" or pre-designed, template-driven tax shelter product.[3] The United States views these transactions differently. Thus, the United States has devoted considerable effort to developing evidence that would prove precisely the opposite – that the Welles family members sought and bought an off-the-shelf, cookie-cutter, template-driven tax shelter. And the United States expects

[2]*See, e.g.,* Order filed April 12, 2007.

[3]*See, e.g.,* Plaintiffs' Response to the United States' Motion for Leave to Enlarge the Number of Depositions and Extend Discovery Schedule, p. 2, filed March 28, 2007 (This case is not "about a 'prepackaged scheme.'")

to prove this, in part, through documents obtained from Deutsche Bank, Jenkens, and other third parties.

Rather than offer a million pages of documents into the record, the United States has created a chart or summary document admissible under Fed.R.Evid. 1006, summarizing for the Court the salient information contained in these voluminous documents.[4] And counsel for the United States asked Ms. Aprile to create the summary. The summary chart contains specific citations – by bates number – to documents that provided the source for each item of information in the summary.[5]

At trial, the United States will offer the summary, as well as the testimony of Revenue Agent Aprile. Ms. Aprile will explain the summary, and will describe (as needed) precisely what information is summarized. She will not offer opinion testimony, nor will she interpret any of the information contained in the summary, or in the documents summarized. Her role was, is, and will be that of recorder and compiler of information taken from other documents.

Counsel for the United States disclosed during the discovery period that they were planning to offer a Rule 1006 summary at trial. They also disclosed that Ms. Aprile was assigned to prepare that summary. In response to questions raised by plaintiffs' counsel, counsel for the

---

[4]Each document used to create the summary is, as required by Rule 1006, admissible in evidence.

[5]Two columns of information in the summary prepared by Ms. Aprile, titled "type of income sheltered," do not have pin-point cites, by bates number, to the source documents. The United States intends to exclude these two columns from the summary offered into evidence. While the information in those two columns was obtained from the documents produced in discovery, they are unnecessary to the substance of the summary. Pin-point citations to the precise source document are provided for all other entries in the summary. The "type of income sheltered" columns are the only items identified by plaintiff in its motion as to which they claim they could not determine the precise citation for the source documents.

United States explained that Ms. Aprile would not offer any substantive testimony about the summary or the underlying documents. The only purpose for her testimony, we told counsel, will be to explain what she did to prepare the summary, identify the source of the information summarized, and describe the information included in the summary – we recently reaffirmed our intention in a phone conversation the day before the plaintiffs filed this motion.[6]

Although the plaintiffs sought to take Ms. Aprile's deposition before the close of discovery, she did not complete the summary exhibit before then. Accordingly, the parties postponed her previously-scheduled deposition until after she had completed and the United States had produced the summary.[7] Because the summary was produced at the meeting of counsel, as directed by RCFC App. A, Rule 13(a), the examination of Ms. Aprile was scheduled after the close of discovery, as also provided by RCFC App. A, Rule 13(a).

The parties agreed that the plaintiffs would examine Ms. Aprile on March 6, 2008. On February 28, 2008, a week before the examination, counsel for the plaintiffs sent to United States's counsel by e-mail a subpoena duces tecum, seeking to compel the witness to appear and

---

[6]Because each document used for the summary is admissible in evidence, the United States can simply offer the summary itself at trial, without calling a witness to explain it. But because the summary encapsulates such a large wealth of information, the United States intends to offer a witness to help explain the source of the information and the summary for the Court's benefit.

[7]Attached as Exhibit 1 is an August 17, 2007 e-mail exchange between counsel for the parties, about the then-upcoming deposition of Ms. Aprile. Plaintiffs' counsel had asked for the summary to be produced in advance of the deposition, and expressed concern about not having received it in time to prepare for the deposition, which was then set to occur in 11 days. The e-mails make it clear that plaintiff had sought to take Ms. Aprile's deposition just 18 days after receiving the summary. As of this filing, 52 days have elapsed since United States's counsel gave the summary to plaintiffs' counsel at the January 22, 2008 meeting of counsel.

produce documents.[8] It reads like a subpoena issued to an expert witness. It seeks the witness' résumé (¶ 1), all the witness' work product, as well as communications with and the work product of United States's counsel (¶¶ 2, 3, 5, 6, 9), information about the witness' compensation (¶6), and a list of cases in which the witness has testified (¶¶ 7, 8). Even though the United States long ago produced all the documents from which the summary was prepared, ¶ 4 of the subpoena asks for "any materials, including but not limited to the documents upon which the deponent relied to prepare summary chart."

The plaintiffs ask the Court to compel the witness to produce all these documents, before conducting the examination permitted by RCFC App. A, Rule 13. For the reasons discussed below, the United States objects and asks the Court to deny the motion to compel.

## ARGUMENT

### COUNSEL FOR THE PLAINTIFF MAY "EXAMINE" THE CREATOR OF A RULE 1006 SUMMARY ABOUT THE SUMMARY – NO MORE AND NO LESS

To offer a summary of voluminous documents that is admissible at trial under Fed.R.Evid. 1006, the proponent need only establish the following four elements:

> First, the summarized writings must be so voluminous so as to be unable to be conveniently examined in court. Second, the underlying evidence must itself be admissible. Third, the original or copies of the summarized writings must be made available to the opposing party. And, fourth, the proposed summary (or chart or calculation) must accurately summarize (or reflect) the underlying document(s) and *only* the underlying document(s).

*AFD Fund v. United States*, 61 Fed.Cl. 540, 546 (2004), *quoting, Bannum, Inc. v. United States*, 59 Fed. Cl. 241, 244-245 (2003), *quoting, Bath Iron Works Corp. v. United States*, 34 Fed.Cl. 218, 232-233 (1995), *affd*, 98 F.3d 1357 (Fed. Cir. 1996) (emphasis in original). Ms. Aprile is

[8] The subpoena is attached to the motion as Exhibit D.

being made available pursuant to RCFC App. A, Rule 13(a) only to assist plaintiff in their examination of the source documents, and provide explanations that may be required for them to verify the information in the summary.

To support their claim to discover matters beyond this, the plaintiffs attempt to expand the elements required for admission of the exhibit by one. They argue that to be admissible under Rule 1006, a summary should be "nonprejudicial,"[9] – ignoring, of course, the fact that this summary is intended, in part, to rebut plaintiffs' own claim that the transactions they entered into were not a pre-packaged scheme. Not only have the courts not imposed this requirement, they have routinely rejected attempts to impose it. Thus, the courts have ruled that a summary can properly include evidence that favors only one party, *United States v. Bishop*, 264 F.3d 535, 547-548 (5th Cir. 2001), and that a party offering a summary is not obligated to include in a summary its opponent's version of the facts, *United States v. Swanquist*, 161 F.3d 1064. 1072-1073 (7th Cir. 1998). In short, a summary need only accurately reflect the information included to be summarized, not other information that might have been summarized, but was not.

Ms. Aprile will testify about what information she summarized. She will testify that the source of all the information is the documents provided by Jenkens & Gilchrist and Deutsche Bank in discovery, and that she summarized the transactions for which documents were available. These documents were provided to the United States in response to subpoenas requesting documents about taxpayers who implemented tax shelters substantially similar to the shelter implemented by Stobie Creek. The United States provided all these documents, in turn,

---

[9] Motion to Compel, p. 4, last line.

to plaintiffs' counsel, in response to a document request seeking all documents obtained pursuant to subpoenas issued by the defendant.

The plaintiffs did not have to rely upon the United States, either to discover the underlying documents or to summarize the transactions they reflect. Plaintiffs were, of course, free to request additional information from Deutsche Bank about its other, legitimate, but dissimilar, option transactions – they never did so. Plaintiffs were also free to review the documents evidencing the similar transactions provided by Jenkens & Gilchrist and Deutsche Bank, and prepare their own summary of purportedly similar transactions – they did not do so. They are also free to examine those source documents, as well as the entire universe of documents produced in discovery, and determine if the summary is accurate summary of its sources – after all, they have had these documents for more than a year and the summary provides pin-point cites to the documents.

The obvious purpose of plaintiffs' subpoena is to expand the scope of Ms. Aprile's deposition beyond a straight-forward examination of the source material. They attempt to bootstrap a fictitious "requirement" that a summary be "fair" or "nonprejudicial" to argue that the Court should allow them to take discovery into why, allegedly, the United States chose to summarize some transactions and not others, and to include some information and not other information in the summary. As noted above, the courts have routinely rejected this view of summaries. Plaintiffs are allowed simply to verify the sources of the summary.

To state the plaintiffs' argument in this more realistic way is to expose it for what it really is – an apparent attempt to learn the work product and trial strategy of the United States's attorneys. There is no other plausible reason that the plaintiffs seek to compel the witness to

produce all evidence of communications between her and the United States's attorneys. And this is not properly the subject of any discovery, let alone this particular discovery.

It is clear that the documents an attorney selects to use at trial, or to show a witness before a deposition or trial, reflect his or her strategy and mental impressions about the case. *See, e.g.*, *Sporck v. Peil*, 759 F.2d 312, 315-318 (3d Cir. 1985). Absent some compelling reason, a party may not use the discovery process – including a subpoena – to discover its opponent's trial strategy, thought processes, and mental impressions.[10] By the same token, the witness' résumé, compensation, and other work in other cases lies beyond the scope of the "examination" contemplated by RCFC App. A, Rule 13(a). The purpose of the rule is to enable the opposing party an opportunity to learn about the summary, and the documents it purports to summarize. The plaintiffs' subpoena seeks information well beyond that scope.

[10]The United States agrees that a party may take discovery about the trial strategy of its opponent, to the extent that strategy may be communicated to a testifying expert witness. But that issue is not presented by the instant motion, in which the plaintiffs seek to take work product discovery from a mere scrivener.

**CONCLUSION**

The subpoena in this case seeks information that is not only privileged, but falls far outside the bounds of discovery and the examination permitted by RCFC App. A, Rule 13(a). Accordingly, the Court should deny the plaintiffs' motion to compel the witness to produce the documents demanded by the subpoena that is the subject of this motion.

Respectfully submitted,

*/s/ Stuart D. Gibson*
Stuart D. Gibson
Attorney of Record
U.S. Department of Justice
Tax Division
Office of Civil Litigation
Post Office Box 403
Ben Franklin Station
Washington D.C. 20044
(202) 307-6586

John A. DiCicco
Deputy Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section
Cory A. Johnson
Trial Attorney, Court of Federal
Claims Section

/s/ *Cory A. Johnson*
Of Counsel

Dated: March 14, 2008