**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T &** <br> **No. 07-520-T** |
| **v.** | ) | |
| | ) | **Judge Christine O.C. Miller** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**RESPONSE OF THE UNITED STATES TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF SETTLEMENT AND SETTLEMENT NEGOTIATIONS**

The United States opposes plaintiffs' motion *in limine* to exclude a nonprosecution agreement between the Jenkens & Gilchrist law firm and the United States Attorney for the Southern District of New York. Contrary to plaintiffs' arguments, and as discussed in greater detail below, the nonprosecution agreement is not excludable under Rule 408 because it is not a compromise – Jenkens did not dispute or compromise its liability for the tax offenses underlying the agreement. Therefore, Rule 408 does not apply. Moreover, the nonprosecution agreement is admissible for other purposes, and falls within exceptions to the rule against hearsay.

The plaintiffs also seek to exclude the closing agreement reached between former Therma-Tru CEO Stephen Bores and the IRS, in which Mr. Bores and the IRS addressed the merits of the tax shelter that is the subject of this case. As part of its trial preparation, the United

States has decided not to seek to offer that closing agreement into evidence. Accordingly, we do not address that part of the plaintiffs' motion in this response.[1]

## INTRODUCTION

On March 26, 2007, the United States Attorney for the Southern District of New York agreed not to criminally prosecute Jenkens (which was no longer to be a going concern) for crimes arising from its tax shelter activities during 1998 to 2004, and Jenkens agreed to fully cooperate with the Government in the prosecution of related criminal and civil actions. (*See* Nonprosecution Agreement, attached, Ex. A.) In a statement Jenkens had previously made to the United States Attorney's Office concerning its investigation into its tax shelter activities, Jenkens admitted to developing and marketing fraudulent tax shelters, as well as to issuing fraudulent opinion letters. Jenkens' statement was attached as an exhibit to the nonprosecution agreement.

On October 28, 2004, Stephen Bores signed a closing agreement with the IRS in settlement of claims arising out of his participation in a Son of BOSS transaction, identical to the transactions implemented by the Welleses in this case. (*See* Closing Agreement, attached, Ex. B.) Mr. Bores was the CEO of Therma-Tru and, like the Welleses, used this tax shelter in an attempt to avoid paying taxes on the capital gains that he realized on the sale of his Therma-Tru stock. The Court should deny plaintiffs' motion to exclude these agreements from evidence.

---

[1] Plaintiffs apparently seek to exclude "numerous other documents," which they fail to identify, that "relat[e] to Mr. Bores' settlement with the IRS." The United States objects insofar as plaintiffs' motion fails to identify the documents to which it refers, making an appropriate response impossible. Plaintiffs' failure to specify such documents is unexplainable. The United States' exhibit list, disclosed to plaintiffs during the meeting of counsel, specifically identified each exhibit by row and also by bates number or deposition exhibit number.

## ARGUMENT

## THE JENKENS NONPROSECUTION AGREEMENT IS ADMISSIBLE

1. *Rule 408 does not apply to the nonprosecution agreement because the agreement does not reflect any compromise of liability for the underlying tax offenses, which Jenkens did not dispute*

Rule 408 of the Federal Rules of Evidence prohibits admission of evidence of settlement and settlement negotiations only in certain situations.[2] By its terms, Rule 408 is limited to claims that were actually disputed. *Deere & Co. v. Intern'l Harvester Co.*, 710 F.2d 1551, 1556-57 (Fed. Cir. 1983); *see also* McCormick on Evidence, § 266, at 194-95 (4th ed. 1992) ("To invoke the exclusionary rule, there must be an actual dispute, preferably some negotiations, and at least an apparent difference of view between the parties as to the validity or amount of the claim. An offer to pay an admitted claim is not privileged since there is no policy of encouraging compromises of undisputed claims.").

---

[2] Rule 408 provides:

(a) Prohibited uses. Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

> (1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

(b) Permitted uses. This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

The nonprosecution agreement and an attached statement by Jenkens demonstrate that Jenkens did not dispute its liability for the underlying tax offenses, which related to its activities in developing, promoting, and implementing illegal tax shelters. Before it entered into the nonprosecution agreement, Jenkens openly acknowledged in a statement to the United States Attorney's office that it had participated in developing, promoting, and implementing illegal tax shelters. Jenkens' statement, attached to the nonprosecution agreement, states in part:

> We believe certain J&G attorneys developed and marketed fraudulent tax shelters, with fraudulent tax opinions, that wrongly deprived the U.S. Treasury of significant tax revenues. . . . We deeply regret our involvement in this tax practice, and the serious harm it caused to the United States Treasury.

Because Jenkens did not dispute its liability for the tax offenses underlying the nonprosecution agreement, *i.e.*, having developed and marketed fraudulent tax shelters and tax opinions, the bar of Rule 408 does not apply, and the nonprosecution agreement (and the attached statement by Jenkens) is admissible without restriction under Rule 408.

Not only was Jenkens' liability for its illegal tax shelter activities undisputed, the nonprosecution agreement is offered for purposes other than "to prove liability for, invalidity of, or amount of" the criminal claims against Jenkens.[3] *See* Fed. R. Evid. 408(b). The agreement is offered and is admissible, among other things, (1) to prove that Jenkens *believed* that the tax shelters and the tax opinion letters it had issued were fraudulent, regardless of whether they were, in fact, fraudulent; (2) to show that Jenkens has closed its offices and no longer provides

[3] The relevant "claim" in an inquiry under Rule 408 is the one that is the subject of the alleged compromise; in the case of the nonprosecution agreement here, it is the criminal claims arising out of Jenkens' fraudulent tax shelter activities, and not the Welleses' claims in this suit. In other words, the "claim" referred to in 408(a) is also the "claim" referenced in 408(a)(1) and 408(a)(2) (both referring to "*the* claim") (emphasis added).

legal services, and that Jenkens said its demise was caused by its tax shelter practice in Chicago;[4] and (3) to establish Jenkens' role as a promoter in this case and its relationship to plaintiffs and the other participants involved in the tax shelter, *see Wentz v. Comm'r*, 105 T.C. 1, 6 (1995) (evidence of compromise was admissible to show a promoter's relationship to other participants in a tax scheme). The need for this evidence is especially significant in this case, as Jenkens no longer exists as a going concern, and the potential witnesses that might otherwise testify on behalf of Jenkens concerning its tax shelter activities – such as Paul Daugerdas and Donna Guerin – have refused to testify in reliance on their Fifth Amendment privilege against self incrimination.

2. *The nonprosecution agreement falls within the "statement against interest," "public record," and "residual" exceptions to hearsay*

The nonprosecution agreement falls within exceptions to the hearsay rule, including the "statement against interest," "public record," and "residual" exceptions.

a. *"Statement against interest" exception*

The nonprosecution agreement falls within the "statement against interest" exception to hearsay. Fed. R. Evid. 804(b)(3). Not only is the agreement itself incriminating, especially where Jenkens knew it would be made public, the attached statement by Jenkens was undeniably a "statement against interest," as it admits both civil and criminal liability. In it, Jenkens candidly acknowledges its fraudulent participation, so as to "subject the declarant to civil or criminal liability."

---

[4] Offered for this purpose, Jenkens' statement does not constitute "hearsay" to begin with inasmuch as it would be offered only to show that Jenkens said it discontinued its services because of its tax shelter practices, and would not be offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c).

Moreover, the declarant, Jenkens, is unavailable for purposes of the "statement against interest" exception because Jenkens is no longer a going concern, and those who might testify on its behalf have invoked the Fifth Amendment. *See* Fed. R. Evid. 804(a) (defining "unavailability" to include situations in which testimony regarding the statement is subject to a privilege).

b. *"Public records" exception*

The nonprosecution agreement also falls within the "public records" exception to hearsay, which applies, in civil actions, to "factual findings resulting from an investigation made pursuant to authority granted by law." Fed. R. Evid. 803(8)(C). Plaintiffs' argument that the nonprosecution agreement does not contain "factual findings," and that 803(8)(C) therefore does not apply, is incorrect. See, for example, page 2 of the agreement, which is replete with factual findings of the investigation that the United States Attorney's Office conducted into Jenkens and its activities developing, promoting, and implementing illegal tax shelters. Any conclusions made from such findings are also admissible. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988). The agreement also carries with it circumstantial guarantees of trustworthiness, because the agreement was subject to public disclosure (as discussed more fully in the following subsection).

c. *"Residual" exception*

The nonprosecution agreement also falls within the "residual" exception to the rule against hearsay, which provides in relevant part (Fed. R. Evid. 807):

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The nonprosecution agreement carries with it circumstantial guarantees of trustworthiness. It is signed by authorized representatives of both parties to the agreement. Most notably, the agreement is explicit (at 5) that either party "may disclose this Agreement to the public." The incriminating nature of the agreement, Jenkens' acknowledgment of fault therein, and the understanding that the agreement could (and probably would) be publicly disclosed provide sufficient "guarantees of trustworthiness" under the residual exception. Plaintiffs' argument (at 6) that the agreement is "untrustworthy" because it was "prepared in anticipation of litigation" is entirely untenable, as is plaintiffs' comparison of the agreement to a "report" that would presumably be prepared by only *one* party to litigation.

The agreement satisfies the other elements of the residual exception. First, the agreement reflects direct evidence of material facts, *i.e.*, that the tax shelter purchased by the Welleses was fraudulent, or at least that Jenkens believed it was fraudulent, and that its own tax opinions in support of the shelter were also fraudulent. Second, the agreement is more probative for this purpose than other evidence because it includes Jenkens' own public admission that its tax

shelters and opinions were fraudulent, Jenkens is now defunct except for winding down purposes, and those who might testify on behalf of Jenkens have invoked their Fifth Amendment rights. Third, the interest of justice will be served by admission of the agreement, which will further the policy behind the Rules of Evidence to ascertain the truth with respect to the nature of Jenkens' tax shelter activities. *See* Fed. R. Evid. 102.

Accordingly, the Court should deny the motion in limine insofar as it seeks to exclude the Jenkens nonprosecution agreement and attached statement.

Respectfully submitted,

*/s/ Stuart D. Gibson*
Stuart D. Gibson
Attorney of Record
U.S. Department of Justice
Tax Division
P.O. Box 403, Ben Franklin Station
Washington D.C. 20044
(202) 307-6586

John A. DiCicco
Deputy Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section
Cory A. Johnson
Trial Attorney, Court of Federal Claims Section
Jacob E. Christensen
Trial Attorney, Court of Federal Claims Section

Dated: March 19, 2008

*/s/ David Gustafson*
Of Counsel