0001

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STOBIE CREEK INVESTMENTS, )
)
Plaintiff, )
)
-vs- ) No. 05-748-T
)
THE UNITED STATES, )
)
Defendant. )

Videotaped deposition of DAVID PARSE, taken before DONNA L. POLICICCHIO, C.S.R., and Notary Public, pursuant to the Federal Rules of Civil Procedure for the United States Courts pertaining to the taking of depositions for the purpose of discovery, at Room 3051, 219 South Dearborn Street, Chicago, Illinois, commencing at 2:18 p.m., on the 6th day of August, 2007.

0002

There were present at the taking of this deposition the following counsel:

SCHIFF HARDIN LLP by
MS. COLLEEN M. FEENEY
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5717
on behalf of the Plaintiff;

U.S. DEPARTMENT OF JUSTICE - TAX DIVISION by
MR. STUART D. GIBSON
P.O. Box 403

Washington, D.C. 20044
(202) 307-6586
on behalf of the Defendant;
DEWEY BALLANTINE LLP by
MS. KATHRYN E. LEONE
1301 Avenue of the Americas
New York, New York 10019-6092
(212) 259-8414
on behalf of Deutsch Bank;
BRUNE & RICHARD LLP by
MS. THERESA TRZASKOMA
80 Broad Street
New York, New York 10004
(212) 668-1900
on behalf of the witness.
ALSO PRESENT: Mr. Walter Cwik, Videographer
* * * * * *

0003

DEPOSITION OF DAVID PARSE
August 6, 2007

| EXAMINATION BY: | PAGE |
| --- | --- |
| Mr. Gibson | 5 |
| Ms. Feeney | 112 |

* * * * * *

EXHIBITS

| | |
| --- | --- |
| Deposition Exhibit 500 | 5 |
| Deposition Exhibit 501 | 6 |
| Deposition Exhibit 502 | 28 |
| Deposition Exhibit 503 | 29 |
| Deposition Exhibit 504 | 29 |
| Deposition Exhibit 505 | 30 |
| Deposition Exhibit 506 | 31 |
| Deposition Exhibit 507 | 32 |
| Deposition Exhibit 508 | 32 |
| Deposition Exhibit 509 | 37 |
| Deposition Exhibit 510 | 40 |

Deposition Exhibit 511 41
Deposition Exhibit 512 42
Deposition Exhibit 513 48
Deposition Exhibit 514 49
Deposition Exhibit 515 50
Deposition Exhibit 516 51
Deposition Exhibit 517 52
Deposition Exhibit 518 56
Deposition Exhibit 519 59
Deposition Exhibit 520 61
Deposition Exhibit 521 63
Deposition Exhibit 522 66
Deposition Exhibit 523 70
Deposition Exhibit 524 72
Deposition Exhibit 525 73
Deposition Exhibit 526 74
Deposition Exhibit 527 76
Deposition Exhibit 528 78
Deposition Exhibit 529 80
Deposition Exhibit 530 81
Deposition Exhibit 531 82
Deposition Exhibit 532 83
Deposition Exhibit 533 86
Deposition Exhibit 534 88
Deposition Exhibit 535 102
Deposition Exhibit 536 106

0004

THE VIDEOGRAPHER: Here begins Tape No. 1 in the videotaped deposition of David Parse in the matter of Stobie Creek Investments LLC versus The United States, in the United States Court of Federal Claims, No. 05-748T. This deposition is being held at 219 South Dearborn, Chicago, Illinois, on August 6, 2007, at approximately 2:18.

My name is Walter Cwik and I am a certified legal specialist from Merrill Legal Solutions. The court reporter today is Donna Policicchio in association with Merrill Legal Solutions.

Will counsel please introduce themselves for the record.

MS. FEENEY: Colleen Feeney for plaintiff.

MR. GIBSON: Stuart D. Gibson, Tax Division, Department of Justice, for the United States.

MS. TRZASKOMA: Theresa Trzaskoma on behalf of the witness, Mr. Parse.
MS. LEONE: Kathryn Leone for Deutsche Bank.
THE VIDEOGRAPHER: Will the court reporter please swear in the witness.
(Witness duly sworn.)

0005

DAVID PARSE,

called as a witness herein, having been first duly sworn, was examined upon oral interrogatories and testified as follows:

EXAMINATION

by Mr. Gibson:

BY MR. GIBSON:
Q Please state your name for the record.
A David Parse.
Q And where do you live, Mr. Parse?
MS. TRZASKOMA: You can answer.
A A suburb of Chicago.
(Exhibit 500 marked as requested.)
BY MR. GIBSON:
Q Okay. And I have marked -- I've had the court reporter mark, and it's in front of you, Deposition Exhibit 500.
Have you ever seen this document -- Just for the record, this is the notice of this deposition for today for you, Mr. Parse.
Have you ever seen this document before?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

0006

MS. TRZASKOMA: I'm sorry. You can answer that question. I was signaling I don't know if you --
THE WITNESS: I think I've seen this.
(Exhibit 501 marked as requested.)
BY MR. GIBSON:
Q Okay. And I show you what we've marked, and you're holding in your hand, Deposition Exhibit 501, which is the subpoena that we issued that your attorney agreed to accept service on your behalf

calling for you to appear today and produce documents as listed in the attachment.
Have you seen this document before, Mr. Parse?
A Yes, I think I have.
Q And have you searched for any of the documents that are called for in the attachment to the subpoena?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Okay. Now, have you ever had your deposition taken before, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to
0007
answer.
Q Okay. Well, I'm going to give you a few of the ground rules, which are that I'm going to ask you a series of questions and you are to testify truthfully, and if at any time I ask you a question and you don't understand the question, if you tell me that you don't understand it, I'll try to rephrase it in a way that you will understand. It's important that you verbalize all your answers because the court reporter, although the videographer will get shakes of the head and nods of the head and that sort of thing and uh-huhs and uh-uhs, it comes out very difficult to understand on a written transcript.
Do you understand what I just said?
A Yes.
Q And if you want to take a break at any time, just say so and we'll take a break.
Is that okay?
A Yes.
Q Now, please tell me about your education starting with high school graduation.
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
0008
Q Please tell me about your job history beginning with after graduation from high school.

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever worked for Alex. Brown?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever worked at what is now known as Deutsche Bank?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever worked at a company that was known as BT Alex. Brown?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever worked at a company that was called Deutsche Bank Alex. Brown?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
0009
Q Have you ever been fired from any job, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever resigned or quit a job?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Please describe the circumstances under which you left Deutsche Bank -- your employment at Deutsche Bank.
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Do you currently hold any professional licenses?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

Q Have you ever had a professional license revoked in any state?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to
0010
answer.
Q Have you ever been disciplined by a federal or state governmental regulatory agency?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Are you currently a party to any lawsuit arising out of your employment with Deutsche Bank?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have there been any complaints filed against you or disciplinary charges pending at this time before state -- any federal or state governmental regulatory agency?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever been sued?
A Based upon the advice of counsel, I am going to invoke Fifth Amendment privilege and decline to answer.
Q Have you ever been sued by a former client of yours from Deutsche Bank?
0011
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever reached a settlement of any claim filed against you or made against you in connection with your representation of them while you were at Deutsche Bank?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever been sued by anyone with respect to the transactions referred to as -- I'm sorry. I will start again.

Have you ever been sued by anyone with respect to your participation in the arranging of transactions known as digital options?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you done anything to prepare for this deposition today?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
0012
Q Did you review any documents to prepare for this deposition today?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Do you possess any documents relating to digital options, Deutsche Bank, Jenkens & Gilchrist, the law firm of Shumaker, Loop & Kendrick, or members of the Welles family dating from 1999 to the present?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you given anyone a written statement concerning digital options?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you given a videotaped or audiotaped statement regarding digital options?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Paul Daugerdas?
A Based upon the advice of counsel, I am going
0013
to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Paul Daugerdas?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

Q Who is Donna Guerin?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Brian Lee?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Donna Guerin?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Brian Lee?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Sandy Burnside?
A Based upon the advice of counsel, I am going
0014
to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Sandy Burnside?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Michael Cook?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Michael Cook?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is David Waterman?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met David Waterman?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is John Ivsan?
A Based upon the advice of counsel, I am going

0015

to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met John Ivsan?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Tom Cotter?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Tom Cotter?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q I understand, Mr. Parse, that during a deposition taken last week Mr. Cotter said that he had two conversations with you about the digital option transactions that were contemplated by the Welles family members in early 2000.
Did you speak with Mr. Cotter about the digital options transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

0016

Q What, if anything, did you say to Mr. Cotter about the digital options transactions that the Welles family members were contemplating?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you tell Mr. Cotter that there was a reasonable opportunity for the Welles family members to earn a profit from the digital option transactions after payment of the premium and fees and expenses?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you tell Mr. Cotter that there was no chance for participants in the digital option transactions to hit the sweet spot?
A Based upon the advice of counsel, I am going

to invoke my Fifth Amendment privilege and decline to answer.
Q What did you tell Mr. Cotter about the chances of hitting the sweet spot payout?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
0017
Q Who is Craig Brubaker?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Craig Brubaker?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Perry Parker?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Perry Parker?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Daniel Brooks?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Daniel Brooks?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
0018
Q Who is Jason Shih?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Jason Shih?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Carrie Yackee?
A Based upon the advice of counsel, I am going

to invoke my Fifth Amendment privilege and decline to answer.
Q Is it true, Mr. Parse, that while you were working here at Deutsche Bank in the years '99 and 2000 that Carrie Yackee was your assistant?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Rod MacKay?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it true that Mr. MacKay worked with you during 1999 and 2000 here at Deutsche Bank in
0019
Chicago?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Rick Pychewicz?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Rick Pychewicz?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Jeanette Michaels?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Jeanette Michaels?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Jeanette Kwong?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
0020
Q Have you ever met Jeanette -- Did you ever know Jeanette Kwong when she worked at Deutsche Bank in Chicago in 1999 and 2000?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Bill Boyle?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Bill Boyle?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Nancy Donohue?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Nancy Donohue?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Ross Crawford?
A Based upon the advice of counsel, I am going
0021
to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Ross Crawford?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Jeffrey Rupp?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Jeffrey Rupp?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Todd Clendening?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met Todd Clendening?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to

answer.
Q Who is Jeff Welles?
A Based upon the advice of counsel, I am going
0022
to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met or spoken with Jeff Welles?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Peter Welles?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever spoken in person or on the telephone with Peter Welles?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Christopher Welles?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met or spoken with Christopher Welles?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
0023
Q Who is David K. Welles, Sr.?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met or spoken with David K. Welles, Sr.?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is David K. Welles, Jr.?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met or spoken with David K.

Welles, Jr.?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Virginia Welles Jordan?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met or spoken with Virginia Welles Jordan?
0024
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Stephen Bores?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met or spoken with Stephen Bores?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Robert Floyd?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever met or spoken with Robert Floyd?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Larry Goldstein?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to
0025
answer.
Q Have you ever met or spoken with Larry Goldstein?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q I'm going to ask you a series of questions

about transactions that are referred to as digital
option transactions. These are the transactions that
the Welles family members engaged in that are at
issue in this case.
I want to ask you, Mr. Parse, did you play
any role in developing the form of the digital option
transactions?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Did you play any role in developing any of
the documents used to carry out the digital options
transactions?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Did you play any role in reviewing any of the
0026
documents used to carry out the digital option
transactions?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Did you play any role in seeking any internal
approvals within Deutsche Bank for carrying out the
digital option transactions?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Did you play any role in developing any of
the steps to be used in carrying out the digital
option transactions?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Did you play any role in deciding what terms
would be used for the foreign exchange option trades
as part of the digital option transactions?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Did you play any role in determining the fees
0027

to be charged to the clients for engaging in the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q How is it that -- How was it determined what fee you would earn from each digital option transaction that your clients engaged in?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q How was your fee determined?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q How was the price that Deutsche Bank charged as a premium to the clients who engaged in digital option transactions determined?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it correct that the premium paid to Deutsche Bank was a percentage of the notional amount of one of the options?
0028
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it correct that the premium charged by Deutsche Bank was a percentage of the income that the client sought to shelter from taxation?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you share the fees that you had earned from digital option transactions with anyone?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
MR. GIBSON: Mark this one as the next number.
(Exhibit 502 marked as requested.)
BY MR. GIBSON:
Q Mr. Parse, I show you what we've marked for

identification as Exhibit 502. This is a document that the United States has received pursuant to subpoena in discovery. That's a letter dated December 9, 1999, from Paul Daugerdas to Jeff Welles describing the terms of an engagement.
Have you ever seen this document before?
0029
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
MR. GIBSON: Mark this one 503.
(Exhibit 503 marked as requested.)
BY MR. GIBSON:
Q Mr. Welles -- Mr. Welles. Mr. Parse, I show you what we've marked for identification as Exhibit 503. This is a document obtained by the United States in discovery, and it's got the Jeff Welles fax banner on the top dated May 4, 2000, and it's a document on Jenkens & Gilchrist letterhead entitled Basis Enhancing Derivatives Structure, Executive Summary. Take a moment to read it, please.
Have you ever seen this document before?
A Based -- excuse me. Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
MR. GIBSON: Next one.
(Exhibit 504 marked as requested.)
BY MR. GIBSON:
Q Mr. Parse, I show you what we've marked for identification as Exhibit 504. This is an e-mail obtained in discovery pursuant to subpoena, an e-mail
0030
dated March 20, 2000, from John Ivsan to Donna Guerin, copy you, at btalexbrown.com.
Before I ask you about the document, did you have an e-mail account on the Deutsche Bank system in 2000?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q I show you what we've marked as Exhibit 504. And this is an e-mail concerning the Welles family and Stephen Bores.

Have you ever seen this document before?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 505 marked as requested.)
BY MR. GIBSON:
Q Oh, I want to go back to 504 for a second. I realize I handed you 505, Mr. Parse. If you look at the next to the last paragraph on Exhibit 504, it says, Unfortunately, Virginia Jordan has decided not to consolidate her interests with the others who are pursuing the digital options investment strategy.
Do you recall learning at some point in
0031
March of 2000 that Virginia Jordan had decided not to pursue the digital options transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Okay. Let's turn to 505. I show you what we've marked as Exhibit 505. This is an e-mail obtained in discovery pursuant to subpoena. It's from John Ivsan to Donna Guerin dated March 20, 2000, copy you.
Have you ever seen this document before, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Thank you.
(Exhibit 506 marked as requested.)
BY MR. GIBSON:
Q Mr. Parse, I show you what we've marked as Exhibit 506. This is a document obtained pursuant to discovery. It is an e-mail dated March 24, 2000, from John Ivsan to Donna Guerin, copy you; subject, Virginia Jordan.
Have you ever seen this document before?
0032
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Do you recall learning at some point during

March 2000 that Virginia Welles Jordan had decided to participate in the digital option transactions?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

(Exhibit 507 marked as requested.)

BY MR. GIBSON:

Q Mr. Parse, I show you what we've marked as Deposition Exhibit 507. This is a document obtained pursuant to subpoena by the United States in this case. It's an e-mail from John Ivsan to Donna Guerin dated March 31, 2000, which is the date on which the Welles family members entered into the digital option transactions, and it contains an attachment, Contract Amount and Fee Schedule.

Have you ever seen this document before?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

(Exhibit 508 marked as requested.)

0033

BY MR. GIBSON:

Q Mr. Parse, I show you what we've marked as Exhibit 508. This is a document -- This is a document obtained -- It's a number of pages. I apologize. The first page is an e-mail from John Ivsan to Donna Guerin; subject, Welles update, dated April 4, 2000. The second page, for the record, is the succeeding -- the next succeeding Bates number; that is, IRS-JG-839. And that's an e-mail from John Ivsan to Donna Guerin, copy you, dated March 22, 2000. And then following that are four pages -- one, two -- five pages of contract amounts and fee schedules concerning members of the Welles family and their participation in the digital option transactions.

Have you ever seen any of these documents before, Mr. Parse?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

MS. FEENEY: For the record, Exhibit 508 is not consecutively numbered throughout the exhibit.

MR. GIBSON: That is correct. Actually, they are consecutively numbered. There is two sets of
0034
consecutive numbers. If you use the first Bates number that got put on there, which is the ones that don't have any letters in front of them, the first two are 837 and 838 and then the next ones are 862 through 866.
MS. FEENEY: Okay.
MR. GIBSON: It is what it is.
BY MR. GIBSON:
Q I'd like you to turn over to the third page of the exhibit, which is the -- it's Bates 862, also IRS-JG-863. And this is a document entitled Contract Amount & Fee Schedule, Final, dated March 30, 2000, 3:00 o'clock p.m.
Have you ever seen this document before, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q There is a column Contract Amount.
Do you know what that is?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The next column is J&G fees.
0035
Does that stand for the fees that were due to Jenkens & Gilchrist?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The last column is SL&K fees.
Are those the fees to be paid to the Shumaker, Loop & Kendrick law firm?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Do you know how the amount of fees was determined as reflected on this schedule?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to

answer.
Q Do you know if the fees were a percentage of the income to be sheltered from taxation?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Were the fees a percentage of the income to be sheltered from taxation?
A Based upon the advice of counsel, I am going
0036
to invoke my Fifth Amendment privilege and decline to answer.
Q Please turn to the next page in the exhibit. This is the one that's Bates numbered 863 and also IRS-JG-864. You see over on the right-hand -- Do you see the three far right columns, Amount Realized, Adjusted Basis, and Approximate Gain?
Do you see where I am, Mr. Parse?
A Yes.
Q Is the amount realized, is that the amount that the Welles family members expected to realize on the redemption of their stock in Therma-Tru Corporation?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The column Adjusted Basis, is that your understanding of what the basis for tax purposes that each of the Welles family members and Mr. Bores had in their stock in Therma-Tru Corporation?
A Based on the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The last column, Approximate Gain, is that
0037
just the two preceding columns, the second one subtracted from the first?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Was the amount, the cumulative amount of the digital option transactions in which the Welles family members and Mr. Bores engaged, did they

approximate the amount of gain that they expected to realize upon the redemption of the stock in Therma-Tru Corporation during 2000?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Turn to the next page, please, Mr. Parse. This one is titled Welles Family Contract Amounts. And it's Bates 864 and IRS-JG-865. The third -- The final column on the right-hand side, Contract Amount, is that the amount of each family member's digital option transaction?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 509 marked as requested.)

0038

BY MR. GIBSON:
Q Mr. Parse, I show you what we've marked as Exhibit 509, which is a two-page document. It looks to be a fax cover sheet from Larry Goldstein at North Channel LLC to you at Deutsche Bank in Chicago with an attachment.
Have you ever seen this document before, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The fax number that's on the front page of the sheet listed as yours, (312) 537-3729, was that your fax number in November of 2004?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The phone number right below, was that your telephone number in November 2004?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Please turn over to the second page, and for the record these are Bates numbered Plaintiff's 2332

0039

and 2333. The second page is titled Stobie Creek

Investments, Capital Contributions Schedule, and the word "revised" is handwritten and circled.
Have you ever seen this document before?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Does this document, the second page of the exhibit, reflect the instructions to the Welles family members for how they were to pay the premiums for the digital -- for the foreign exchange option transactions that they were entering into with Deutsche Bank Alex. Brown?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
MS. FEENEY: Can we go off the record for a minute?
MR. GIBSON: Certainly.
THE VIDEOGRAPHER: We are going off the record at 2:54.
(Discussion had off the record.)
THE VIDEOGRAPHER: We are going back on the record at 3:02.
0040
(Exhibit 510 marked as requested.)
BY MR. GIBSON:
Q Mr. Parse, I show you what we've marked as Exhibit 510. This is a copy of the trade confirmation for the digital option transaction that JFW Investments LLC did with the Deutsche Bank.
Have you ever seen this document? By the way, it's directed to JFW Investments LLC, care of David Parse, DB Alex. Brown in Chicago.
Have you ever seen this document before?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Please turn to the third page of the exhibit. Do you recognize any of the signatures on that page?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you receive copies of the trade

confirmations for all of your clients who
participated in the digital option transactions
through Deutsche Bank?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
0041
answer.
(Exhibit 511 marked as requested.)
BY MR. GIBSON:
Q Mr. Parse, I show you what we've marked as
Exhibit 511. This is a copy of a tax opinion letter
from Jenkens & Gilchrist to Jeffrey F. Welles dated
January 2, 2001. This is the portion of the letter
that is specific to Mr. Welles without the additional
attachments, just for the record, and those are about
an inch thick.
Have you ever seen this document before,
Mr. Parse?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Did you get copies of the tax opinion letters
that your client -- that were furnished to your
clients who did digital option transactions with
Deutsche Bank?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q If you turn over to Page 7 of the exhibit,
you will see a series of representations, Mr. Parse.
0042
I'd like you to just take a minute and read those to
yourself. They continue on to the final page of the
exhibit.
Mr. Parse, did you have any role in
developing those representations that are contained
in this letter?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Did you communicate any of the information in
these representations to Jeffrey Welles?
A Based upon the advice of counsel, I am going

to invoke my Fifth Amendment privilege and decline to answer.
Q Did you communicate any of the matters listed in these representations to any other member of the Welles family?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 512 marked as requested.)
BY MR. GIBSON:
Q Mr. Parse, I show you what we've marked as Deposition Exhibit 512. This is a document that was
0043
provided by Deutsche Bank to the United States pursuant to dep -- pursuant to subpoena issued in this case. It is a -- It is -- It runs from DOJ-Stobie-3519 through 3525. And the front page is an e-mail from you to Carrie Yackee, copy you and Rick Pychewicz, dated November 23rd, 1999, with an attachment.
Did you write this e-mail, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Attached to the e-mail is a spreadsheet, and on the front page of the spreadsheet are names, amounts, the initials T/D, S/d, equity, an account number, a rep number, and a dollar amount for trade, and then continuing on to the next page, a net premium, a confirmation number, estimated gross, currency, type, two strike prices.
Did you play any role in preparing this spreadsheet, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Are the names listed on the left-hand column
0044
in Field 1 in the spreadsheet, are those the names of your clients when you were at Deutsche Bank in Chicago?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to

answer.
Q Are those the names of clients who did digital option transactions with you at Deutsche Bank?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The initials over in Column 4, T/D, does that stand for trade date?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If you look up in Row 2, it says -- it looks like it says estimated fees, non-EY.
Did EY -- Does EY stand for Ernst & Young?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q And then in Line 3 it says EY premium.
0045
Is that the amount of the premium that went to Ernst & Young?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The -- You see over in Field 5 it says S/d.
Is that the settlement date for the digital option contracts?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Over in Field 6 it says Entity.
Are those the entities that were listed as the parties opposite Deutsche Bank on the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q In Field 7 it says Account Number.
Are those the Deutsche Bank accounts numbers for the entities listed in Field 6?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to

answer.
0046
Q Over in Field 8 it says Rep Number.
Is it true, Mr. Parse, that when you worked at Deutsche Bank in 1999 and 2000 your representative number was Number 30?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q In Field 9 it says Trade with a dollar amount.
Is that the amount that each one of the individuals on the left-hand side engaged in in terms of the digital option transaction?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If you turn over to the next page, the spreadsheet continues into Field 10, and the heading says Net Premium.
Is that the net premium that the individual who did the digital option transaction paid to Deutsche Bank?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer base.
0047
Q In Field 11 it says Confirm Number.
Are those the numbers, the trade confirms that reflect the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The next four columns, 13, 14, 15, and 16, which are Currency, Type, First Strike, and Second Strike, are those specific details about each of the digital option transactions reflected on each particular line?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The total -- Each of the transactions that are listed in this exhibit, in Exhibit 512, are these

the digital option transactions that your clients did with you at Deutsche Bank in the calendar year 1999?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Over on the front page of 512, it says -- the attachment is identified as Paul D 1999 Digital Options Master.xls.
0048
Is that -- Is Paul D. Paul Daugerdas?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 513 marked as requested.)
BY MR. GIBSON:
Q I show you what we've marked as Exhibit 513. It's a document obtained pursuant to subpoena issued to Deutsche Bank in this case. It consists of a cover sheet and an attached Excel spreadsheet, DOJ-Stobie-9474 through 9500. The cover sheet is an e-mail from you to Carrie Yackee dated Monday, December 27, 1999, with an attached Excel spreadsheet.
Did you send this e-mail, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q And is Paul D. referenced in the attachment, is that Paul Daugerdas?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Would you start on the first page of the
0049
attachment, which is 9475, would you please describe each -- the meaning of each of the headings for each of the fields in the Excel spreadsheet?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is this spreadsheet a list of clients of yours at Deutsche Bank who did digital option transactions in the year 1999?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

MR. GIBSON: What was that?

MS. TRZASKOMA: 513.

MR. GIBSON: Thank you.

(Exhibit 514 marked as requested.)

BY MR. GIBSON:

Q Mr. Parse, I show you what we've marked as Exhibit 514. It's a document obtained from Deutsche Bank pursuant to subpoena in this case. It's an e-mail string, and it's identified as DOJ-Stobie-3624 and 3625. And the way I understand you read these is you read them from the bottom up, so if you start on the second page and you see there is an e-mail from

0050

Rick Pychewicz dated January 24, 2000, and then there is a second e-mail at the bottom of the first page, January 28, from Rick Pychewicz to himself, copy Craig Brubaker, Kristine Humphrey, Perry Parker, you, and two other people. And then the top is an e-mail from Carrie Yackee to Rick Pychewicz, copy you, dated January 28.

Have you ever seen -- Did you receive the e-mails that were directed to you as are indicated on the first page of the exhibit, Mr. Parse?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

(Exhibit 515 marked as requested.)

BY MR. GIBSON:

Q I show you what we've marked as Exhibit 515, Mr. Parse. This is a document obtained from Deutsche Bank pursuant to subpoena issued in this case. It's Bates stamped DOJ-Stobie-3434 through 3439. It consists of an e-mail with an attachment. The e-mail is from Carrie Yackee to Rick Pychewicz, copy you and Carrie Yackee, dated January 28, 2000; subject, Re: premiums due.

Did you receive a copy of this e-mail,

0051

Mr. Parse, around the time it was sent?

A Based upon the advice of counsel, I am going

to invoke my Fifth Amendment privilege and decline to answer.
Q Please turn to the second page, which is the first page of an Excel spreadsheet that runs four pages.
Are these -- Is this a compilation, Mr. Parse, of the dates, amounts, trade dates, entities, account numbers, trade amounts, and net premiums to Deutsche Bank of clients of yours who participated in digital option transactions during 1999?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 516 marked as requested.)
BY MR. GIBSON:
Q I show you, Mr. Parse, what we've marked as Exhibit 516. This is an e-mail from you to Darlene Gobrecht, Carrie Yackee, and Rod MacKay dated October 24, 2000; subject, digital -- October digital option business.
Who is Darlene Gobrecht?
0052
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you compose this e-mail, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you send this e-mail?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Does this e-mail list the amounts that -- of premiums paid to Deutsche Bank -- I'm sorry. I'm going to start this one again.
Does this e-mail list the amount of money that you earned from clients of yours who participated in digital option transactions during October of 2000?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to

answer.

(Exhibit 517 marked as requested.)

BY MR. GIBSON:

Q I show you what we've marked as Exhibit 517.

0053

This is a document obtained from Deutsche Bank pursuant to subpoena. It is a cover e-mail and an attached Excel spreadsheet. It runs from DOJ-Stobie-9438 to 9458. And this is an e-mail from Carrie Yackee to Richard Ignacio dated October 25, 2000; subject, Digital Options Master 2000 10-24-00.xls.

Who is Richard Ignacio?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

Q Did you ever see this document at or about the time it was sent?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

Q Is the -- Please turn to the spreadsheet, which begins on the second page of the exhibit, Mr. Parse.

Is this a compilation of the details of the clients of yours who engaged in digital option transactions with Deutsche Bank in the year 2000?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to

0054

answer.

Q If you look on the second page of the exhibit, which is 9439 on the bottom, if you look on line -- I can't tell if it's 34 or 35 -- David K. Parse.

Is your middle initial K?

A Yes.

Q Is that you?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

Q Did you participate in a digital option transaction on your own account -- for your own

account in the year 2000?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Now, if you look on the very top of that
second page of the exhibit, it says black, JG; blue,
DBO; purple, Ivsan.
What do those mean?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
0055
Q Is JG Jenkens & Gilchrist?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Is BDO BDO Seidman?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q And is Ivsan John Ivsan of Shumaker -- then
of Shumaker, Loop & Kendrick?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Do you know if any of the transactions that
are compiled in Exhibit -- in the spreadsheet
attached as part of Exhibit 517, if any of those
clients hit the sweet spot in the digital option
transactions?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q If you just go back for a second, I want to
ask you the same question about 513. You should have
it in that pile, Mr. Parse.
0056
A Got it.
Q Do you know if any of the individuals who are
listed in the spreadsheet attached to the e-mail in
Exhibit 513 hit the sweet spot on their digital
option transactions with Deutsche Bank?
A Based upon the advice of counsel, I am going

to invoke my Fifth Amendment privilege and decline to
answer.
Q Did any client of yours who engaged in digital option transactions with Deutsche Bank ever hit the sweet spot?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Do you know of any client of -- who engaged in a digital option transaction with Deutsche Bank who ever hit the sweet spot?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 518 marked as requested.)
BY MR. GIBSON:
Q I show you what we've marked, Mr. Parse, as Exhibit 518. This is a document obtained from
0057
Deutsche Bank pursuant to subpoena issued in this case. It's an e-mail and an attached spreadsheet that are Bates stamped DOJ-Stobie-236326 and 327. The e-mail is from Craig Brubaker to you dated June 11, 2001; subject, proposed deal.
Did you receive this e-mail from Mr. Brubaker at or around the time it was sent?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If you take a look at the e-mail itself, Mr. Parse, it says that there is an attached spreadsheet, and the payout structure in Number 4 includes digital options. It's 4a.
Was the attached spreadsheet -- I'll refer you to the second page of the exhibit -- does that reflect how the premiums were divided among Deutsche Bank, you, and Mr. Brubaker?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever used the term vig, V-I-G?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to

0058

answer.

Q If you look on the front page in Number 3, toward the top it says, The cost of the trade is in Perry's court. He'll manage the cost to 40 basis points.

Is that Perry Parker?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

Q If you look down on the bottom, there is another set of 1 through 5. It says in Number 3, Regardless of the above two items, Perry is paying our splits based on the collective premium volume of you and I. You made the point that if one or the other of us contributes significantly more premium than the other, which causes the late starter to receive initial comp at a higher payout than would otherwise be the case, we'll adjust between ourselves.

Is that your understanding of the arrangement as to how you were going to split your share of the premiums with Mr. Brubaker?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to

0059

answer.

(Exhibit 519 marked as requested.)

BY MR. GIBSON:

Q Mr. Parse, I show you what we've marked as Exhibit 519. This is a three-page spreadsheet. This was obtained from Deutsche Bank pursuant to subpoena in this case. It's marked DOJ-Stobie-2330 through 2332. And the title of this document is BT Alex. Brown Commissions - YTD to 27/11/00.

Is this a listing of -- and then -- I'm sorry. And then on the second page of the exhibit it lists a number of -- in the box on the right-hand side, sum of amount based off ODET and a list of names under the heading Salesperson, and your name is on there.

Have you ever seen this document before, Mr. Parse?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it true, Mr. Parse, that you earned $3,003,681 in commissions in the year 2000 through November -- I'm sorry -- through November 27, 2000, with respect to clients of yours who engaged in
0060
digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If you look on the front page of the exhibit, Mr. Parse, over on Lines 24 and 25 -- let's look at 25 in particular with an ODET reference.
Do you know what ODET stands for?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it true that ODET stands for option deal entry tool and it was used to enter the details of transactions on the records of Deutsche Bank?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is the entry on Line 25, is that the entry of the transaction that the Welles family members -- the digital option transaction the Welles family members entered into with Deutsche Bank in March -- on March 31, 2000?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to
0061
answer.
Q If you turn over to the second page of the exhibit, Mr. Parse, on Line 25, it says in column -- in Field L it says, David K. Welles, Sr., 1994 qualified annuity trust, Alex. Brown, Chicago, pay David Parse USD $409,150.
Is that the amount, $409,150, that you received from the digital option transaction that the Welles family members entered into?
A Based upon the advice of counsel, I am going

to invoke my Fifth Amendment privilege and decline to answer.

Q How much did you earn at Deutsche Bank in the year 2000 as a result of clients of yours who participated in digital option transactions?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

(Exhibit 520 marked as requested.)

BY MR. GIBSON:

Q I show you what we've marked as Exhibit 520. This is a document that we obtained from Deutsche Bank pursuant to subpoena issued in this case. It consists of two spreadsheets, DOJ-Stobie-2468 through

0062

2470 and DOJ-Stobie-2471 through 2474.

Have you ever seen this document before, Mr. Parse?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

Q What does HNWI stand for?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

Q Is it true that HNWI stands for high net worth individuals?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

Q Is the first part of the spreadsheet, the one with your name on the front page, is that a list of the entities and the individuals who participated in digital option transactions who are your clients?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

Q How about the second part of the spreadsheet that begins Craig Brubaker, BT Alex. Brown in Dallas,

0063

is that a listing of Mr. Brubaker's clients who did digital option transactions?

A Based upon the advice of counsel, I am going

to invoke my Fifth Amendment privilege and decline to answer.
Q Okay.
(Exhibit 521 marked as requested.)
MR. GIBSON: Are there two or three there? Give me one back. This is 521.
BY MR. GIBSON:
Q I show you what we've marked as Exhibit 521, Mr. Parse. This is a document obtained from Deutsche Bank pursuant to subpoena issued in this case, and it runs from DOJ-Stobie-33754 through 33756. It's an e-mail from Craig Brubaker dated October 26, 1999, to Stuart Tohill, copy Todd Clendening and you; subject, please review.
Did you receive this e-mail and the attachment to it at about -- at or around the time it was sent?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Stuart Tohill?
0064
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The e-mail begins, Stuart, please take a look at the list of steps I've outlined to facilitate the flow of a fairly large number of transactions, around 100, in a fairly short time frame, between now and November 15. David Parse in Chicago and I will each be managing the relationships on about half of the total.
Is that statement -- Are those two statements accurate?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q In the second paragraph it lists two -- it says that the transactions will each take a particular format, and then it lists 1 and 2.
Are those -- Is that accurate, that each of the transactions will take that format?
A Based upon the advice of counsel, I am going

to invoke my Fifth Amendment privilege and decline to answer.
Q The next sentence says, The positions will
0065
close out in the partnership with the client either winning or losing the net investment.
Is that true, Mr. Parse, that there were only two possibilities; one was that both options would finish in the money or both options would finish out of the money?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Mr. Parse, the last sentence in that paragraph says, These steps are critical to the tax results to be achieved on the transaction.
Is that accurate, that those steps were critical to the tax results to be achieved on the transaction?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If you turn over to the attachment, it's a two-page document entitled Currency Linked Digital Swap, Transaction Steps For Implementation with Deutsche Bank AG London and Deutsche Bank Alex. Brown, and there is a list of Steps 1 through 15c.
Are those the steps that were to be followed
0066
for clients who wanted to enter into the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Were those the steps that were actually followed for clients who entered into digital option transactions with Deutsche Bank when you were there in Chicago in 1999 and 2000?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 522 marked as requested.)
BY MR. GIBSON:

Q I show you what we've marked as Exhibit 522. This is a document also obtained from Deutsche Bank pursuant to subpoena issued in this case. It's three pages beginning with DOJ-Stobie-236156 through 158. It's an e-mail from Craig Brubaker to Ross Crawford, copy a number of people, including you, blind copy emayer@jenkens.com. I think I said October 27, 1999.
Have you ever seen this document before, Mr. Parse?
A Based upon the advice of counsel, I am going
0067
to invoke my Fifth Amendment privilege and decline to answer.
Q You see that the document, the e-mail from Mr. Brubaker outlines three steps that start halfway through the first page and go on to the second page.
Are those the steps that were planned to be followed for clients who participated in the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Are those the steps that were actually followed for the clients who were participating in the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Under the heading on the first page, The Transaction, it says, We understand from our client's legal counsel that the format will be virtually identical in all of the 100-plus cases.
Was it your understanding that the format for all of the digital option transactions would be virtually identical?
0068
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q And the second sentence says, We are dealing with wealthy individuals who are entering into a tax planning transaction created and advised on by the U.S. law firm, Jenkens & Gilchrist.

Is that your understanding?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If you turn over to the second page, this is under Step 3. It just goes over from the first page. Steps 3 says, Within a few days of opening the digital option trade, an authorized signatory of the LLC will send an assignment letter to Deutsche Bank advising Deutsche Bank that it is their intent to convey legal ownership of the digital option position from the LLC to the partnership.
Was it your understanding that that had been planned in advance as one of the steps for the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to
0069
answer.
Q The next sentence says, Settlement proceeds, if the position pays off, would also be paid to the assignee partnership, and then it says, This is an extremely critical step for their tax transaction to accomplish its purpose.
Was it your understanding that that was a critical step for the tax transaction to accomplish its purpose?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If you proceed through the e-mail, it says that -- Mr. Brubaker says this is what their understanding is as to how the process was going to work. Then it lists a number of things, 1 through 7. Number 5, it says, Dave Parse has faxed to Ross the Alex. Brown forms, and it lists the forms.
Did you fax the forms listed in Paragraph 5 to Mr. Crawford at Deutsche Bank?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Now, if you look at the next to the last
0070

paragraph on that second page, it says, It is likely we could be ready to start trades as early as Friday, October 29, as most of the backlogged clients already have Alex. Brown accounts with money ready to be wired to Dan Brooks to put on the trades and that it's anticipated that approximately 100 separate client trades will be entered into before November 15, 1999.
Was that your understanding at about -- in late October of 1999 that that was going to happen?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Mr. Parse, in the last paragraph it says to all the people who are getting this e-mail that if anybody has any questions they could call either Mr. Brubaker or you.
Did you get any calls from people who had questions about the content of this e-mail or what was expected?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 523 marked as requested.)
0071
BY MR. GIBSON:
Q Let me show you, Mr. Parse, what we've marked as Exhibit 523. This is an e-mail with an attachment. This is a document that was produced by Deutsche Bank pursuant to subpoena in this case, DOJ-Stobie-77 through -- I'm sorry. And the attachment is -- I'm going to apologize. There is actually two Power Points, I apologize, and there is two e-mails. The first e-mail is 77, and the attachment is 78 through 85. The second is an e-mail, which is DOJ-Stobie-33, and the attachment is 34 through 38.
Let's take the first e-mail. It's an e-mail from Craig Brubaker to Todd Clendening with an attachment and Power Point presentation on the short options dated October 27, 1999.
Have you ever seen either the e-mail or the attachment, the Power Point?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The second e-mail is October 29 from Craig Brubaker to Ray Guenther and copies to L. Ryan and E. Mayer at Jenkens, and then there is an e-mail on
0072
the bottom of the first page involving Perry Parker.
Have you ever seen this document before?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you ever make a Power Point presentation to a potential client about the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you ever use either of these two Power Point presentations in making a presentation about the digital option transactions to a client or potential client?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 524 marked as requested.)
BY MR. GIBSON:
Q Let me show you what we've marked as Exhibit 524. This is another document obtained from Deutsche Bank pursuant to subpoena. It is DOJ-Stobie-13 through 23. It consists of an e-mail and a number of
0073
attachments as detailed in the e-mail. The e-mail is from Ross Crawford to Donna Guerin, copy you, Craig Brubaker, Daniel Brooks, Alex Alexander, and Kevin Michaels dated November 3, 1999.
Have you ever -- Did you receive a copy of this e-mail on or about the time it was sent?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you ever read the attachments to the e-mail at or about the time it was sent?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Are the attachments to the e-mail, Mr. Parse, copies of the forms that were to be used to carry out the digital option transactions between clients and Deutsche Bank?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 525 marked as requested.)
BY MR. GIBSON:
Q Let me show you what we've marked as
0074
Exhibit 525. This is another document obtained from Deutsche Bank pursuant to subpoena, DOJ-Stobie-149 and 150. It's actually an e-mail string. The one at the top of the first page is from Daniel Brooks to Craig Brubaker, copy you, dated November 3rd, 1999. The subject is final legal documents.
Did you receive a copy of this e-mail at or around the time it was sent?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The final e-mail in the string is the one on the top of the first page and it says, Guys, if J&G is comfortable with these, Ross Crawford says everything is go. Dan B.
Was it your understanding from this e-mail that you now had in place the forms and other processes necessary to handle the 100 or so digital option transactions that were contemplated with Deutsche Bank in the latter part of 1999?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 526 marked as requested.)
0075
BY MR. GIBSON:
Q I show you what we've marked as Exhibit 526, Mr. Parse, another document we obtained from Deutsche Bank pursuant to subpoena. It's an e-mail chain

dated -- and actually runs from DOJ-Stobie-468 through 471. The bottom e-mail on the first page is one we've seen before. It's the e-mail from Mr. Brubaker to Mr. Crawford. And the e-mail above it on the first page is an e-mail from Craig Brubaker to Eric Gallinek with copies to Daniel Brooks, Jeff Rupp, and you dated November 4, 1999; subject, Forward: transaction overview.
Did you receive a copy of this e-mail at or around the time it was sent?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The e-mail from Mr. Brubaker to Mr. Gallinek says, David Parse and I, Chicago and Dallas respectively, for DB Alex. Brown, are working with Dan Brooks on this transaction for the U.S. law firm of Jenkens & Gilchrist who asked if we could assist in delivering a financial transaction for their clients who are undertaking under Jenkens' direction
0076
some sophisticated tax planning.
Is that an accurate statement?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who is Eric Gallinek?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q In the second paragraph of that e-mail from Mr. Brubaker, in the next to the last sentence it says, Jenkens needs execution of these trades by November 15. Was that because if they needed the trades -- I'm sorry. Let me strike this one again.
Is it accurate to say, Mr. Parse, that Jenkens needed these trades executed by November 15 so that the option would expire before the end of the calendar year?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 527 marked as requested.)

BY MR. GIBSON:
Q I'm going to show you what we've marked as
0077
Exhibit 527. Again, this is a document obtained from Deutsche Bank pursuant to subpoena. It's an e-mail chain, DOJ-Stobie-11 and 12. The first one in the chain is at the bottom of the first page, and it's from Alex Alexander to Daniel Brooks, Craig Brubaker, Ross Crawford, you, and Bill Ryan dated November 4, 1999, and the subject is swap or option.
Did you receive this e-mail at or around the time it was sent?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Do you recall whether there was a question about whether these -- this product was more of an option or more of a swap?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The second e-mail in the chain is actually a very little tiny one right in the middle of the page, and it's from you, and it says -- to Alex Alexander, and it says, Alex, Please forward any inquiries he may have in the future to Paul Daugerdas at Jenkens. Thanks.
0078
Did you compose that e-mail?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you send that e-mail?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q And you see the last e-mail in the string is the one on top from Mr. Alexander to you saying, Thanks, I will. Best, Alex.
Did you receive that e-mail at or around the time it was sent?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to

answer.
(Exhibit 528 marked as requested.)
BY MR. GIBSON:
Q I'll show you what we've marked as Exhibit 528. This is a document also obtained from Deutsche Bank pursuant to subpoena, one page, DOJ-Stobie-74. This is an e-mail from Craig Brubaker to Daniel Brooks and Perry Parker, copy you; subject, indicative term sheet language.
0079
Did you receive that e-mail at or around the time it was sent?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The subject -- The substance of the e-mail says, Guys, I noticed that the -- I'm sorry. I noticed that the two-page term sheet template still occasionally references swap 1 and swap 2 and in main heading sometimes references swaps. I think you -- I think the desired wording is digital option or just option. Isn't that your understanding, Dave?
Was it your understanding that the desired wording for the templates was digital option?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Were these digital option transactions, Mr. Parse, done through means of templates?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Were they memorialized through the use of templates?
0080
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 529 marked as requested.)
BY MR. GIBSON:
Q I'm going to show you what we've marked as Exhibit 529. This is a document obtained from Jenkens & Gilchrist pursuant to subpoena, JG-NC38034

and 35. It's a two-page e-mail string. The second e-mail is from Nancy Donohue to Craig Brubaker and William Boyle, copies to Alex Alexander, Daniel Brooks, and John Rioux, and the first e-mail is from Mr. Brubaker to Mr. Mayer, Mr. Ryan, copies to you and others.
Did you receive this e-mail string at or around the time it was sent in November of 1999?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The part that was forwarded; that is, the e-mail from Ms. Donohue to Mr. Brubaker, et al., is that -- that has a list of documentation that was expected at the time of the transactions in November 1999, and it goes 1 through 6.
0081
Was it your understanding that those -- that was the documentation that was required to effectuate the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer. Excuse me.
MR. GIBSON: Would you like to take a little break?
THE WITNESS: I'm good. Thanks.
(Exhibit 530 marked as requested.)
BY MR. GIBSON:
Q I'm going to show you what we've marked as Exhibit 530. This is a document obtained from Deutsche Bank pursuant to subpoena, DOJ-Stobie-26 through 28. And this is actually a continuation of the previous e-mail. The e-mail that begins about a third of the way down the first page is from Jeffrey Rupp to Craig Brubaker and Nancy Donohue, copy you and Todd Clendening.
Did you receive a copy of this e-mail at or around the time it was sent in November of 1999?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
0082
Q Do you know what PCS Management was at

Deutsche Bank in November of 1999?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q What did -- What was your understanding learning that Jason Shih of PCS Management had signed off on the transaction?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 531 marked as requested.)
BY MR. GIBSON:
Q I'm going to show you what we've marked as Exhibit 531. This is another document obtained from Deutsche Bank pursuant to subpoena. It's an e-mail from Craig Brubaker to Nancy Donohue and William Boyle, copy a number of people, including you, Daniel Brooks and Perry Parker; subject, November 8 pre-approval orders.
Did you receive a copy of this e-mail at or around the time it was sent?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to
0083
answer.
Q In the first paragraph Mr. Brubaker says to Ms. Donohue, Per our discussion on Friday, I am requesting advance approval to initiate digital option trades today for the accounts as itemized on the attached spreadsheet. As I mentioned, this is the group of clients we have put off for more than a week.
Were there a number of digital option clients of yours, Mr. Parse, who had been waiting to have their digital option transactions carried out when -- as of November 8, 1999?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 532 marked as requested.)
BY MR. GIBSON:
Q I show you what we've marked as Exhibit 532. This is another document obtained from Deutsche Bank

pursuant to subpoena, DOJ-Stobie-235866 through 869. It's an e-mail and an attachment. The e-mail is from William Boyle to Paul Glover, copy a number of people, dated January 10, 2000. And the substance of the e-mail says, Attached is the corrected project
0084
update needed to attached to Paul Lotus Note on private client deals. If you look over on the second page of the exhibit, which is the first page of the attachment, about two-thirds of the way it says foreign currency transactions.
Was it your understanding that that was a separate project for Deutsche Bank in 1999 and 2000, the foreign currency transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Have you ever heard of a transaction called BLIPS?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If you turn over, Mr. Parse, to the very last page of the exhibit, it says 1999 Transactions, and the third one says BTAB FX transactions. And it indicates that the short FX option trades will generate approximately 12 to 15 million dollars to the FX desk and 6 to 7 and a half million for BTAB.
Was it your understanding that the digital option transactions in 1999 generated approximately
0085
12 to 15 million dollars to the Deutsche Bank foreign exchange desk?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Was it your understanding that the digital option transactions generated 6 to 7 and a half million dollars for BT Alex. Brown?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Continuing on that page, the next heading is

Potential 2000 Transactions, and under Number 3 it says FX short option trades. We expect to continue executing these structures in 2000 for BTAB, E&Y, Bricolage, and BDO and generating fees for the STG in the 3 to 10 million dollar range.
Was it your understanding as of January 2000 that you were -- that you and your clients at Deutsche Bank would continue to participate in the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
0086
Q Was STG the Structured Transactions Group at Deutsche Bank?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 533 marked as requested.)
BY MR. GIBSON:
Q I show you, Mr. Parse, what we've marked as Exhibit 533. It's another document produced by Deutsche Bank pursuant to subpoena, DOJ-Stobie-33268 and 69. It's an e-mail from William Boyle to Jason Shih and Jeffrey Rupp, copy Daniel Brooks, Nancy Donohue, and Paul Glover; subject, FX option letter. Have you ever seen -- and it's dated February 1, 2000.
Have you ever seen this document before, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The e-mail to Mr. Shih says, There are some changes that we need to make for the letter; that is, the letter dated January 7, 2000, for the 1999 FX trades. And it says, The orders for these trades
0087
were provided to Dan Brooks of DB FX sales, from Craig Brubaker of the DBAB Dallas office, and David Parse of the DBAB Chicago office.
Is that accurate?
A Based upon the advice of counsel, I am going

to invoke my Fifth Amendment privilege and decline to answer.
Q It says in the next sentence, As you may remember, when Dan Brooks was attempting to open up accounts at DB to execute the trades, DB London and New York compliance/legal raised a number of questions regarding the account opening process, the type of trades, and other procedural related items. I believe execution delays caused Craig, David, and Jeff Rupp to become very concerned with their ability to have these trades executed.
Were you very concerned in late 1999 of your ability to have the digital option trades executed?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Are you -- Do you know whether Deutsche Bank Alex. Brown addressed, was comfortable with, and was responsible for addressing the reputational risks to
0088
itself, its -- and its clients from executing the digital option trades?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Do you know if there was a requirement that Deutsche Bank Alex. Brown make a representation that it had addressed the institutional reputational issues from the execution of the digital option trades and was comfortable with those reputational issues which may arise from the execution of the FX option orders?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 534 marked as requested.)
MS. TRZASKOMA: Stuart, I assume we're getting near the end of your binder --
MR. GIBSON: Yes, we're getting near --
MR. TRZASKOMA: -- and you're not going to whip out another binder, are you?
MR. GIBSON: No. We're getting near the end of my binder, Theresa, and then I have some other

questions.

0089

MS. TRZASKOMA: I just had that happen before.
MR. GIBSON: No, I have no -- this is -- we're getting to the end of the documents and then I have a number of questions to ask.
MS. TRZASKOMA: Okay.
MR. GIBSON: And I want to make it through all the documents before I finish the other questions.
BY MR. GIBSON:
Q I show you what we've marked as Exhibit 534, another document obtained from Deutsche Bank pursuant to dep -- pursuant to subpoena. It's an e-mail from Craig Brubaker to Paul Young dated May 1, 2000.
Have you ever seen this document before?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The e-mail talks about the fact that on this particular transaction they were not using Jenkens & Gilchrist and there were a number of steps that -- requirements that were incorporated into these deals.
Do you know that -- Do you know whether Jenkens just built the requirements that are listed in this e-mail into their standard routine as represented in the e-mail?

0090

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Do you know if the -- if you ever -- did you ever see --
A Excuse me. Could we take a break now?
MR. GIBSON: Sure we could. Let's take a break.
THE VIDEOGRAPHER: We're going off the record at 4:14.
(Recess was taken.)
THE VIDEOGRAPHER: Here begins Tape No. 2 in the deposition of David Parse. We are going back on the record at 4:23.
BY MR. GIBSON:
Q Mr. Parse, was a form or a prototype tax opinion letter drafted before you had any actual

clients who were doing digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you participate or collaborate with Jenkens & Gilchrist in drafting the tax opinion letter?
A Based upon the advice of counsel, I am going
0091
to invoke my Fifth Amendment privilege and decline to answer.
Q Did you ever meet any of the Welles family members who -- I'm sorry.
Did you ever meet any of the Welles family members face to face?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you meet with every client who did a digital option transaction through your office?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you attend any meetings before early November 1999 at which the planning for the digital option transactions was discussed?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you participate in any phone conversations or e-mail exchanges before November 1999 during which the digital option transactions were discussed?
0092
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you participate in any discussions with anybody at Jenkens & Gilchrist about the digital option transactions before any were entered into?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.

Q Did you participate in discussions with anybody else at Deutsche Bank about the digital option transactions before November 1999?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it true, Mr. Parse, that you were involved in the design of the digital option transactions from the beginning?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q I want you to go back in the big stack of stuff to the beginning and I would like you to pull out Exhibit 503. That's the one, the BEDS memo.

0093

This executive summary lays out in six numbered paragraphs a series of steps.
Were all the steps listed in this memorandum planned in advance?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Were these steps planned to achieve a desired tax result?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Were these steps planned to achieve the reduction or elimination of taxes on other income of the clients who participated in the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did the digital option transactions as structured make economic sense without considering the claimed tax benefits?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to

0094

answer.
Q How do the digital option transactions as

structured make economic sense absent the claimed tax benefits, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you have any discussions with potential clients or actual clients about how the digital option transactions as structured made economic sense without the claimed tax benefits?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it accurate to say that for your digital option clients, Mr. Parse, you were the primary source of information about the potential profitability of the transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q How was it -- How was it determined what the dollar amount would be of each of the foreign exchange trades in the digital option transactions?
0095
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it accurate to say, Mr. Parse, that the dollar amount was determined in part by how much income the tax bearer wanted to shelter from taxation?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q How were the currencies and the strike prices for the digital option transactions determined?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Are there any worksheets that show the analyses of the investment options, potential risks, and potential gains for each of the -- each of the clients that entered into the digital option transactions?

A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Who actually carried out the foreign exchange
0096
trades themselves for the digital option
transactions?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Did you actually make any of the trades
yourself?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Is it accurate, Mr. Parse, to describe the
digital option transactions as one transaction with
two components instead of as two separate
transactions?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Did Deutsche Bank treat the digital options
as, in fact, one transaction with two components and
not as two separate transactions?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Did you ever participate in any sales
0097
presentations for the digital option transactions?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Were you ever present during anybody else's
sales presentation for the digital option
transactions?
A Based upon the advice of counsel, I am going
to invoke my Fifth Amendment privilege and decline to
answer.
Q Where was the primary thrust of the sales
presentations on the digital option transactions?
A Based upon the advice of counsel, I am going

to invoke my Fifth Amendment privilege and decline to answer.
Q Was the primary thrust of the sales presentations the potential for the client to eliminate taxes on income from other sources?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q How did Jenkens & Gilchrist actually get paid their fees for the opinion letters?
A Based upon the advice of counsel, I am going
0098
to invoke my Fifth Amendment privilege and decline to answer.
Q How did you advise your clients of what the price was for each component of the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Was the tax opinion -- the cost of the tax opinion, was that separately or was that included in an overall fee?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q There is a letter that the Welles family's attorney wrote in August of 2000 that said that the fee that they were paying for the tax opinion was three percent of the income to be sheltered.
Was that the fee that the rest of your clients paid for their tax opinion letters?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did anyone who participated in the digital
0099
option transactions, anyone who was a client of yours, make any money after considering the cost of the trade and the fees they paid for the tax opinion letter?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to

answer.
Q Is it true, Mr. Parse, that Deutsche Bank priced these options at one percent of the notional amount?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Do you know, Mr. Parse, if the price that Deutsche Bank received in terms of a premium bore any relationship to the price that would be determined by a standard pricing model such as Black-Scholes?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it accurate to say, Mr. Parse, that theoretically there were three possible outcomes upon expiration of the digital option trades?
A Based upon the advice of counsel, I am going
0100
to invoke my Fifth Amendment privilege and decline to answer.
Q One possibility, Mr. Parse, is that both options finished out of the money, is that right?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If both options finished out of the money, is it true, Mr. Parse, that the client would lose the amount of the premium that they paid Deutsche Bank as well as the amount they paid to Jenkens & Gilchrist and others for the tax opinion letters?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it accurate, Mr. Parse, that one possibility would be that both options finished in the money?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If both options finished in the money, Mr. Parse -- I'm sorry. I'm going to ask that one again.

0101
Do you know what the chances were at any given case that both options would finish in the money?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it accurate to say, Mr. Parse, that even if both options finished in the money the client would still not earn a profit after paying the fee to Jenkens & Gilchrist for the tax opinion letter?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Did you ever calculate for any client the odds that the client would hit the third option; that is, the sweet spot, where the client's option finished in the money and the bank's option finished out of the money?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Who determined at the end when the options expired whether the options finished in the money, Mr. Parse?
0102
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it accurate, Mr. Parse, to say that the determination of whether the options finished in the money was left to a calculation agent?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it accurate to say, Mr. Parse, that Deutsche Bank was the calculation agent and had the authority to decide whether one or both of the options finished in the money?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 535 marked as requested.)

BY MR. GIBSON:
Q I'm going to show you, Mr. Parse, what we've marked as Exhibit 535. And I dropped my microphone yet again.
Exhibit 535 is a document obtained pursuant to subpoena from Deutsche Bank in this case, and it is an e-mail series. It's DOJ-Stobie-33746 and 7.

0103

And the first e-mail is at the bottom of the first page from Loren Deters at Lee, Goddard & Duffy in Irvine, California, to Perry Parker dated 2 August 2000, and the first one was from Tom Tahl to Mr. Brubaker, same date, and it attaches an e-mail from Perry Parker that talks about the calculation agent.
Have you ever seen this e-mail before, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The e-mail from Mr. Parker -- that's the top part of the first page -- talks about how Deutsche Bank acts as calculation agent and the practices they follow for determining the spot price for a particular option upon expiration. It says that they poll five interbank FX participants, and it lists the counterparties that they use, and then they -- he gives an example of the bid and ask prices on that particular date for quotes in U.S. dollar, Japanese yen.
Is it your understanding -- Is it your understanding that that's how Deutsche Bank made the

0104

determination of whether the options expired in or out of the money?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Do you know if Deutsche Bank had an opportunity to select prices from generally available sources that would make it impossible for the client to hit the sweet spot?
A Based upon the advice of counsel, I am going

to invoke my Fifth Amendment privilege and decline to answer.
Q Is it true that Deutsche Bank as a large money center bank constantly monitors the foreign exchange markets as part of its business?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If -- Do you know if Deutsche Bank is large enough -- a large enough foreign exchange trader that it had the ability to move the market off the sweet spot if it felt that a client in a digital options transaction had a possibility of hitting the sweet spot?
0105
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it accurate to say, Mr. Parse, that no one who ever did a digital option transaction with Deutsche Bank had ever hit the sweet spot?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it accurate to say that no one who participated in a digital option transaction with Deutsche Bank made a profit after considering the cost of the trade and the fees paid for the tax opinion letter?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Do you know whether Deutsche Bank actually hedged the digital option trades for the possibility that the clients would hit the sweet spot?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Is it true, Mr. Parse, that Deutsche Bank did
0106
not hedge the digital option trades for the possibility that the clients would hit the sweet spot?

A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
(Exhibit 536 marked as requested.)
THE WITNESS: 536.
MR. GIBSON: 536.
BY MR. GIBSON:
Q Let me show you, Mr. Parse, what we've marked as Exhibit 536. This is another document obtained from Deutsche Bank pursuant to subpoena. It's an e-mail and an attachment. And it's DOJ-Stobie-236301 through 304. The e-mail is the first page. It's from you to Perry Parker, copy yourself, August 15, 2000, with an attachment.
Did you send this e-mail on or about the date that it contains?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The e-mail actually forwards an e-mail from you to Craig Brubaker, copy Jeff Rupp, of the same
0107
date, a little earlier in the morning.
Did you prepare that e-mail and send it, Mr. Parse?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q By the way, when you worked at Deutsche Bank Alex. Brown in 2000, was your office at 222 West Adams, Suite 1900, Chicago, Illinois?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The e-mail that you sent to Mr. Brubaker says, Craig, attached is a Word file with a brief outline of the DO process.
Does DO stand for digital options?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The next sentence says, I thought it would be a good idea to give Perry some ammo for his talk with

his boss.
Is that Perry Parker?
A Based upon the advice of counsel, I am going
0108
to invoke my Fifth Amendment privilege and decline to answer.
Q And why would Perry need some ammo for his talk with his boss?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Was Mr. Parker's boss expressing some doubt or skepticism about whether Deutsche Bank ought to continue participating in the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q The next -- The attachment is the next three pages of the exhibit, Mr. Parse.
Did you prepare the attachment?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If you look at the first page of the attachment, Digital Option Business with DBAB, the first part, it says DB's role, and it talks about receiving the order, executing the trade, receiving
0109
the premium via wire transfer, and then 4 says, options expire. If in the money, DB pays proceeds to client's brokerage account at DBAB.
Was it your intent to convey that either it would finish in the money, in which case the client would receive the premium back plus the amount of the premium, or would expire out of the money, in which the case the client would lose the premium?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If you look over on -- then on -- a little farther down on that page under DBAB's role.
Now, Deutsche Bank Alex. Brown, that's how

your office in Chicago is referred to, isn't it?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Under the notes under the DBAB's role, the second bullet says, DBAB will only discuss the economic/financial aspects of the trade. DBAB explicitly states it does not give any other non-investment advice, such as issues related to taxes.
0110
Is that accurate?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q If you turn over to the next page of the exhibit, it refers to exhibits that are referenced on the page we just got finished with, and the first one says, Exhibit 1 taken from the standard three-page contract signed by Deutsche Bank and the client, and it contains a number of representations.
Did you participate in drafting those representations?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
Q Under representations under (i), it says non-reliance, and it says it; that is, the client, is acting for its own account, and it has made its own independent decisions to enter into this transaction and as to whether the transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary. It is not relying on any communication, written or oral, of the other party, including any affiliate or
0111
subsidiary thereof, as investment advice or as a recommendation to enter into this transaction, it being understood that information and explanations related to the terms and condition of this transaction shall not be considered to be investment advice or a recommendation to enter into the transaction.

Was that your understanding, that you were not providing investment advice to the client about whether it was appropriate from an investment standpoint to enter into the digital option transactions?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
MR. GIBSON: Let's go off the record.
THE VIDEOGRAPHER: We are going off the record at 4:48.
(Discussion had off the record.)
THE VIDEOGRAPHER: We are going back on the record at 4:51.
MR. GIBSON: I have no more questions, Mr. Parse.
0112
EXAMINATION
by Ms. Feeney:
BY MS. FEENEY:
Q Mr. Parse, I just have one question. You've pled the Fifth Amendment to all the questions asked by Mr. Gibson this afternoon. If I were to ask you any questions regarding your knowledge concerning the communications with any of the Welles family members or the transactions at issue in this case or digital option transactions or any of the subjects in Attachment A of Exhibit 501 entered today, would your answer be the same?
A Based upon the advice of counsel, I am going to invoke my Fifth Amendment privilege and decline to answer.
MS. TRZASKOMA: I think you can answer. If she asked you substantive questions, would you invoke your Fifth Amendment privilege and decline to answer?
THE WITNESS: I would answer just like I answered all the other questions, so yes.
MS. FEENEY: So yes. Okay. No further questions.
MR. GIBSON: That concludes the deposition.
THE VIDEOGRAPHER: This marks the end of Tape No.
0113

2 and concludes the deposition of David Parse. We are going off the record at 4:52.

* * * * * *

0114

STATE OF ILLINOIS )
) ss:
COUNTY OF C O O K )

The within and foregoing deposition of the aforementioned witness was taken before DONNA L. POLICICCHIO, C.S.R., and Notary Public, at the place, date, and time aforementioned.

There were present during the taking of the deposition the previously named counsel.

The said witness was first duly sworn and was then examined upon oral interrogatories; the questions and answers were taken down in shorthand by the undersigned, acting as stenographer and Notary Public; and the within and foregoing is a true, accurate, and complete record of all of the questions asked of and answers made by the aforementioned witness, at the time and place hereinabove referred to.

The signature of the witness was not waived, and the deposition was submitted, pursuant to Rules 30(e) and 32(d) of the Rules of Civil Procedure for the United States District Court, to the deponent per copy of the attached letter.

The undersigned is not interested in the within case, nor of kin or counsel to any of the parties.

0115

Witness my official signature and seal as Notary Public in and for Cook County, Illinois, on this __________________ day of ____________________, A.D. ______.

_______________________________________

DONNA L. POLICICCHIO, C.S.R.
License No. 084-003740
Notary Public
230 West Monroe Street
Suite 1500
Chicago, Illinois 60606
Phone: (312) 263-3524

0116

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STOBIE CREEK INVESTMENTS LLC, )
)
Plaintiff, )

)
-vs- ) No. 05-748-T
)
THE UNITED STATES, )
)
Defendant. )

I, DAVID PARSE, being first duly sworn, on oath say that I am the deponent in the aforesaid deposition taken on August 6, 2007; that I have read the foregoing transcript of my deposition, consisting of Pages 1 through 116, inclusive, and affix my signature to same.

_______________________________
DAVID PARSE

Subscribed and sworn to
before me this ______ day
of ______________, ______.

___________________________
Notary Public