UNITED STATES COURT OF FEDERAL CLAIMS

STOBIE CREEK INVESTMENTS, LLC, )
JFW ENTERPRISES, INC., Tax )
Matters and Notice Partner, )
Plaintiff, )
vs. ) 05-748 T
THE UNITED STATES OF AMERICA, )(Judge Block)
Defendant. )

The deposition of PAUL M. DAUGERDAS, called for examination, taken before ELLEN DUSZA, CSR No. 84-3386, a Notary Public within and for the County of DuPage, State of Illinois, and a Certified Shorthand Reporter of said state, at Suite 500, 219 South Dearborn Street, Chicago, Illinois, on the 30th day of August, A.D. 2007, at 9:07 a.m.

PRESENT:

SCHIFF HARDIN, LLP,
(6600 Sears Tower,
Chicago, Illinois 60606,
312-258-5717), by:
MS. COLLEEN M. FEENEY,
appeared on behalf of the Plaintiffs;

U.S. DEPARTMENT OF JUSTICE,
(Room 7201, Judiciary Center Building,
555 Fourth Street, NW,
Washington, DC 20001,
202-307-3046), by:
MR. CORY A. JOHNSON,
Trial Attorney, Tax Division,
appeared on behalf of the Defendant;

JENNER & BLOCK LLP,
(330 North Wabash Avenue,

Chicago, Illinois 60607,

312-222-9350), by:

MS. SHANNON BARTLETT,

appeared on behalf of the Deponent.

REPORTED BY: ELLEN DUSZA, CSR No. 84-3386.

(WHEREUPON, the witness was duly
sworn.)

PAUL M. DAUGERDAS,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. JOHNSON:

Q. Good morning. Could you tell us your name and home residence for the record, sir?

A. My name is Paul Daugerdas and I live at 816 Forest Avenue in Wilmette, Illinois.

Q. Is that a single-family home on Forest Avenue?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you operate any business out of that

residence?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution

MR. JOHNSON: Counsel, do you want to agree that the witness can short-hand his response if he's going to give the same response that he's just given the last two times, that we can shorthand it somehow?

MS. BARTLETT: That sounds like a good idea to me.

MR. JOHNSON: Mr. Daugerdas, if you're intending to assert the same rights that you just did, if you want to shorthand it and say "Same response" or "I assert the Fifth," I think that's fine with counsel here.

MS. FEENEY: Yes.

MS. BARTLETT: That's fine.

BY MR. JOHNSON:

Q. Are you a lawyer, Mr. Daugerdas?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Are you licensed by Illinois as a lawyer?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. How long have you been a lawyer?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did you work for the firm Jenkens & Gilchrist during the years 1999 through at least 2001?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Can you tell me what your practice was while you were at Jenkens & Gilchrist?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States
Constitution.
Q. Did you have any specialties?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Did you specialize in tax law?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Do you have any education or training in
finance or investments?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by

the Fifth Amendment to the United States Constitution.

Q. Do you have any education, training or expertise in foreign currency options?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. Do you have any education, training or
expertise or experience in foreign currency
markets?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. Have you ever been in the business of
providing investment advice?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. Prior to joining Jenkins & Gilchrist were you with the law firm Altheimer & Gray in Chicago?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. When you were at Altheimer & Gray, did you work with Donna Guerin and Erwin Mayer?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did Ms. Guerin and Mr. Mayer also work at Jenkens & Gilchrist when you were there?

A. Privileged.

Q. During the time period you were at Jenkens & Gilchrist, did you ever represent or provide advice to any member of the Welles family, and by that I mean David Welles, Sr. and his wife Georgia, and their children, David Welles, Jr., Jeff Welles, Peter Welles, Chris Welles or Virginia

Welles Jordan?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. If we consider those individuals I just listed as the Welles family, can you tell me if you have ever had any communications with any members of the Welles family?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Have you ever provided any advice to the members of the Welles family regarding the tax results or tax consequences of any transactions they may have entered into?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did you provide them any advice as to the tax benefits or tax consequences of a foreign exchange digital currency transaction?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Have you ever heard of the Welles family before, prior to receiving the subpoena in this case?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Mr. Daugerdas, I'd like to show you what has been previously marked as Welles Exhibit 96.

(WHEREUPON, the document marked Exhibit No. 96 was first referred to.)

BY MR. JOHNSON:

Q. This is a document that's been previously marked as Exhibit 96, Mr. Daugerdas,

produced by plaintiff in this case or perhaps Jeff
Welles. Could you turn to the fifth page of the
document that's Bates stamped JFW-0651?
Is that your signature there?
A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Can you tell me if this document is a copy of a confidentiality agreement that you signed on behalf of Jenkins & Gilchrist?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. I'd also like to show you -- ask you to take a look on the second page of the exhibit and that's the page Bates stamped JFW-0648. In the first paragraph there, the second sentence says, quote, "The confidential, proprietary information, (confidential information) involves certain financing structures (the structures) developed by

J&G and/or its clients, consultants or co-counsel that provide economic, financial, business and tax advantages for individuals and companies through the use of the structures."

Do you see that sentence?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Did you have any involvement in
developing the structures that are referenced here?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Do you understand the structures that
are being referred to here, do you know what they
are?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States

Constitution.

Q. Do you know who else at Jenkins &
Gilchrist -- do you know who at Jenkins & Gilchrist
may have been involved in developing these
structures?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. That paragraph also represents -- references other clients' consultants or co-counsel may have been involved in developing these structures. Can you tell me who else other than Jenkins & Gilchrist may have been involved in developing these structures?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Was Deutsche Bank involved in developing these structures?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution Deutsche Bank.

Q. Can you tell me anything about the

economic or financial or business advantages that these structures could provide for clients?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Can you tell me anything about the tax advantages that could be provided to clients from these structures?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is it correct that the primary motive for these structures was to reduce taxes?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Can you tell me why Jenkins & Gilchrist wanted to keep the information regarding the

structures confidential?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. This letter is addressed to Jeffrey Welles. Have you ever spoken to Jeffrey Welles?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Paragraph 6 on page Bates stamped JFW 0649 states in it that, quote, "The undersigned and J&G are acting solely as independent contracting parties and neither party shall be deemed to be an agent or fiduciary of the other."

Do you see that?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Was it your understanding that with regard to Mr. Jeffrey Welles that Jenkins & Gilchrist and you were not acting as a fiduciary with regard to these structures?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is it correct that Jenkens & Gilchrist required all clients to sign a confidentiality agreement similar to this before they would disclose the details of these structures?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Going back to the first paragraph on

page JFW-0648, did you or to your knowledge did anyone else at Jenkens & Gilchrist rely on any other person or entity to advise Jenkens about the economic or financial or business advantages that could arise from these structures?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did Jenkens engage any person or firm to provide advise to it about the economic, financial or business advantages of these structures?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Let me show you next, Mr. Daugerdas, what's previously been marked as Guerin Exhibit 1. This is a document that was produced by Jenkens in this case pursuant to a subpoena. Do you recognize this?

(WHEREUPON, the document marked

Guerin Deposition Exhibit
No. 1 was first referred to.)

BY THE WITNESS:

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

BY MR. JOHNSON:

Q. Is it true that this is an e-mail with an attachment that you sent to Ms. Guerin, Mr. Mayer, Mr. Beery back in October of 1999?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. It's labeled New Strategy. Is this strategy one of the structures that's referred to in the confidentiality agreement we just looked at?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States Constitution.

Q. Is this a tax strategy that you helped develop along with Deutsche Bank back in 1999?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Mr. Daugerdas, on the second page of the exhibit, the title is Currency Link Digital Swap. I like to show you what was previously marked as Welles Exhibit 98 and Welles Exhibit 99 and ask you if these documents reflect transactions similar to those you're referring to in this Guerin Exhibit 1 when you referred to Currency Linked Digital Swap?

(WHEREUPON, the document marked Welles Deposition Exhibit Nos. 98 and 99 was first referred to.)

BY THE WITNESS:

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States Constitution.

BY MR. JOHNSON:

Q. What are you referring to in that title when you say "digital swap"?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. There are a number of steps listed in this chart that begins on Page 2 of the exhibit. Step 1 has a sentence that states, "Target amount that client seeks to invest is the target basis."

What is the basis you're referring to there?

A. Privilege.

Q. Is that a target tax basis for some asset?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Isn't it correct that that's the basis
that was sought to be created pursuant to this
strategy either in order to create a tax loss or an
enhancement to the basis of some asset?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Further on in that step one it references a lottery payout. Can you tell me what that is?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Does that refer to the two PIP spread in the digital option transactions?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Moving on to the third page of the exhibit, Step 10. There's a sentence that says, "Final DS pricing after funds wired."

Does "DS" refer to digital swap?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Does that sentence, does that indicate that the pricing for the digital swap would not be determined or even agreed upon until after the client had wired money to Deutsche Bank?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know who determined the digital swap pricing for any of these deals?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States Constitution.

Q. Can you tell me what the purpose of this strategy was?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Was the purpose to shelter capital gain
that a client might have?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Was the purpose to make money on foreign
currency options?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Was the purpose to make money on the

digital swap?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Step 12 talks about, again on Page 3, quote, "J&G will prepare and provide assignment executed by a client to DBAG to move DS to target entity."

Can you tell me what that concerns?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Was one of the steps in this text strategy the assignment of the digital options or digital swap to a partnership?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. And was that assignment of the options
to the partnership one of the steps necessary for
the claims tax benefits?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know of a business purpose at least in your mind when you wrote this strategy for the assignment of the option to a target entity?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Step 14 talks toward the end about providing an audit trail. Do you see that?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. When you use the word "audit" there,

what are you referring to?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.
Q. Are you referring to an IRS audit?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Is there some other audit internal to Deutsche Bank that you're referring to?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Is there any other sort of audit that you're referring to?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States
Constitution.
Q. Step 15(a) on that same page talks about
a tax reserve fund and can you tell me what that
is?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. It also references earning a return on this fund during the "statute of limitations." What statute of limitations were you referring to here?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Are you referring to the statute of limitations that would be applicable to the IRS assessing additional tax that might be due in connection with someone who did this strategy?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. When you created this strategy, were you

concerned that the IRS would dispute the tax benefits that were to be claimed?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Step 15(b) states, "Trading activity before year-end to reenforce profit motive/business purpose."

Can you tell me what you're referring to there?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did you have a profit motive or business purpose in mind when you were developing this

strategy?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.
Q. The profit motive and business purpose you're referring to there, is that related to the profit motive or business purpose that is required by case law for certain transactions to be respected for tax purposes?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Were you concerned in any way that any of the transactions involved in this strategy did not have a valid profit motive or business purpose?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. For purposes of this strategy, were you intending that someone else would provide evidence of the profit motive or business purpose?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. The e-mail subject line says "New Strategy." What became of this strategy?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know did any clients of yours or of Jenkens & Gilchrist implement the strategy?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

MR. JOHNSON: I'm going to mark that.

MS. FEENEY: What is this?

MR. JOHNSON: Exhibit 1, Daugerdas 1. That's
her copy, sorry.

(WHEREUPON, a certain document
was marked Daugerdas Deposition
Exhibit No. 1, for

identification, as of 8/30/07.)
BY MR. JOHNSON:
Q. Mr. Daugerdas, we've marked as Exhibit 1 a two-page document produced by Jenkens in this case Bates stamped JG-NC 038918.
MS. FEENEY: Through 20.
MR. JOHNSON: Does yours have three pages?
MS. FEENEY: Yes.
MR. JOHNSON: Mine has two for some reason.
BY MR. JOHNSON:
Q. Through 20. With some handwriting on that. Can you tell me if that's your handwriting?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Were you involved in developing the terms or reviewing the terms of foreign exchange

digital options transactions that were to be entered into with Deutsche Bank as the counterparty?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know a Craig Brubaker?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did you ever communicate with Mr. Brubaker?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. He was with Deutsche Bank, is that right?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did you work with him to develop the

digital option strategy?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Do you know a David Parse?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Do you know a Jason Shih?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Do you know a Dan Brooks?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. How about -- did you ever work with anybody at Ernst & Young in relation to developing a tax strategy?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know a Robert or a Bob Copeland?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

MR. JOHNSON: Can you mark that as the next exhibit?

(WHEREUPON, a certain document was marked Daugerdas Deposition Exhibit No. 2, for

identification, as of 8/30/07.)

BY MR. JOHNSON:

Q. Mr. Daugerdas, we've marked as Exhibit 2 a blank piece of paper. I wanted to ask you to give me a handwriting sampler.

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Well, I disagree with that assertion of the privilege because handwriting samples are not testimonial and therefore a witness cannot assert the Fifth on that.

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

MS. BARTLETT: I disagree. I instruct him not to comply with your request.

MR. JOHNSON: Well, we'll fight about it later then.

(WHEREUPON, documents marked

Guerin Deposition Exhibit
Nos. 3, 4, 5 and 6 were first
referred to.)

BY MR. JOHNSON:

Q. Mr. Daugerdas, I'd like to show you a

number of exhibits that were previously marked as Guerin Exhibits 3, 4, 5 and 6. Again, these were all documents that were produced to us in this case by Jenkens & Gilchrist.

The first one, Guerin Exhibit 3, is titled Basis Enhancing Derivatives Structure. You're welcome to page through it if you'd like.

Do you recognize this? Have you ever seen a copy of this document before?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did you have any involvement in developing this structure?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States Constitution.

Q. Do you know who at Jenkens may have been involved in developing this structure?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. Do you know the purpose of this
structure?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. Do you know if it had any economic or
business purpose?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. The second page says, "Method to create

ordinary or capital losses." Is it correct that
that was the purpose of this structure?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by

the Fifth Amendment to the United States Constitution.

Q. The next document, Guerin Exhibit 4, is titled Basis Enhancing Securities Transaction and, again, you're welcome to page through it. Did you have any involvement in developing this transaction?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know who may have been involved?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know the purpose of this

transaction?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Do you know if it has a business or economic purpose aside from any tax benefits?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is it correct that this was designed as a tax shelter?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. How about Guerin Exhibit 5. That's, again, it's a different document, but it is also titled Basis Enhancing Securities Transaction. Again, you're welcome to page through it.

Did you have any involvement in developing this transaction?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States Constitution.

Q. Can you tell me the purpose of this transaction?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know who may have been involved in developing it?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Regarding Exhibits 3, 4 and 5, were these documents created in order to help promote these transactions to potential clients?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. Were you involved in promoting these transactions to individual clients?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know who at Jenkens may have been involved in promoting these transactions?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Are you aware of any clients of Jenkens who engaged in these transactions or structures?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States Constitution.

Q. Those clients of Jenkens who did engage in basis enhancing derivative structure transactions or the basis enhancing securities

transactions, how did they come to Jenkens?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is it correct that Jenkens or the clients who engaged in these transactions were often referred by other financial advisors or law firms?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is it true that Jenkens had referral relationships with these other firms and would share the fees with these firms?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did Jenkens have clients referred to it

by the firm Shumaker, Loop & Kendrick?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Are you familiar with that firm?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Have you ever spoken with anybody from that firm at any time?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know John Ivsan?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Do you know a David Waterman?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know a Thomas Cotter?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know a Tom Webb?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Let me show you -- before we get to Guerin Exhibit 6, let me show you what was previously marked as Jeff Welles Exhibit 2. This appears to be a lengthy opinion letter addressed to Larry Morgan dated April 8, 1999.

(WHEREUPON, the document marked Welles Deposition Exhibit No. 2 was first referred to.)

BY MR. JOHNSON:

Q. Do you know a Mr. Larry Morgan?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you recall that he was a client of Shumaker, Loop & Kendrick?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you recall going to the Shumaker, Loop & Kendrick office sometime in 1999 and meeting

with a few of their lawyers?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.
Q. Do you recall meeting with Mr. Cotter or Mr. Webb to discuss strategies or structures that you and Jenkens had developed?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Did the meeting in 1999 concern Mr. Morgan potentially implementing one of these strategies or structures?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Page 2 of the exhibit references or states that Mr. Morgan engaged -- or at least a

Delaware limited liability company called
LCM Holdings, LLC engaged in a short sale of
Treasury notes. Do you see that?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did you have any involvement in strategies or structures that involved the short sale of Treasury notes?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Was that short-handed as a Treasury short?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know of anybody else at Jenkens

that was involved in developing the Treasury short
strategy?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by

the Fifth Amendment to the United States Constitution.

Q. Getting back to Guerin Exhibit 6, again, that's a document produced by Jenkens in this case and that includes a number of pages with what appear to be strategies or structures of different names, including homer, short option transaction, short swap transaction, boss transaction, COBRA transaction and a few others. Do you recognize any of those pages in the document?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did you have any involvement in creating any of these transactions or structures outlined?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is it correct that these were several different tax shelters that Jenkens & Gilchrist had

developed?

A. Privileged.

Q. The transactions and structures outlined in here, do you know if they had a business or economic purpose other than the creation of tax benefits?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know anybody who might know the answer to that question?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Now, with regard to the tax strategies

and structures that Jenkens had developed or at least participated in the development of, did you participate in the creation of any tax opinion letters or the review of any tax opinion letters regarding the tax consequences of those structures

or strategies?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Do you know who at Jenkens & Gilchrist may have been involved in the creation of opinion letters regarding the tax consequences of these strategies or structures?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Is it correct that template opinion letters were created prior to any clients engaging in these transactions?
A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is it correct that these draft opinion

letters were used as part of the promotion of these transactions?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

(WHEREUPON, the document marked Guerin Deposition Exhibit No. 2 was first referred to.)

BY MR. JOHNSON:

Q. Let me show you what's been marked as Guerin Exhibit 2, Mr. Daugerdas, and that, again, is a document produced by Jenkens & Gilchrist in this case and it's titled Template Index and then the third page is titled 2000/2001 Template Index.

Can you tell me what this document is?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is it correct that this is an index of

the templates for various tax opinion letters for
the structures or strategies that Jenkens had
developed?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. The template index, the first two pages
has an outline which has seven headings starting
with Short-Term Capital Loss Generator and
including Long-Term Capital Loss Generator,
Ordinary Loss Generator, Section 754 Election,
Mixed Ordinary and Short-Term Capital Loss, Mixed
Ordinary and Long-Term Capital Loss and Treasury
Note Short Sales. Can you tell me who those
headings refer to?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Are those at least seven of the tax strategies and structures that Jenkens had

developed?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Are those the seven template opinion letters that Jenkens had developed?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Turning to the third page, the one titled 2000/2001 Template Index. Similar headings are included there and then various numbers off to the right. Do you know what the numbers refer to?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is it correct that those numbers refer to the template opinions?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

(WHEREUPON, a certain document was marked Daugerdas Deposition Exhibit No. 3, for identification, as of 8/30/07.)

BY MR. JOHNSON:

Q. We marked as Exhibit 3, Mr. Daugerdas, a document produced by Jenkens in this case, Bates stamped JD-NC 043627 through 37. You'll see the first page is blank except for the number 137633, and then on the second page there appears to be what is a draft template opinion with the handwriting that appears to say "ordinary loss generator."

Do you see that?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. The number on the first Page 137633
matches up with the number on -- a number on Page 3
of Guerin Exhibit 2 for the ordinary loss
generator. Do you see that?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. Is Daugerdas Exhibit 3 the template
opinion letter for the ordinary loss generator
shelter?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. The draft in Daugerdas Exhibit 3 has
text but also appears to have various places where

information can be inserted where the word "FIELD"
appears. Do you see where the word "FIELD" appears
in all caps?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Were those places where the particular information for the clients could be inserted for this template?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know who created this exhibit or this document?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. In the third page of this exhibit, the

bottom there's a sentence that says, quote, "The
options can be transferred or signed independently
of one another."
Do you know what that refers to?
A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Does that refer to the long and the short option in the swap being able to be transferred or assigned independently of one other?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Can you tell me what importance, if any, that fact has for the opinions in this exhibit?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Do you know if, in fact, the options in this digital option with Deutsche Bank could, in fact, be transferred or assigned independently to one another?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

MR. JOHNSON: Can you mark that?

(WHEREUPON, a certain document was marked Daugerdas Deposition Exhibit No. 4, for identification, as of 8/30/07.)

BY MR. JOHNSON:

Q. Mr. Daugerdas, we have marked as Exhibit 4 another document produced by Jenkens in this case JG-NC 043498 through 508. Have you ever seen a copy of this document before?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Like the previous one, this one has a number on the first page and this number being 137,493 and then on the second page there's some handwriting that says long-term capital loss

generator. Again, those numbers and that name match up with one of the entries on the template index. Do you see that?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is this Exhibit 4 another copy of a template opinion letter, this one for the long-term capital loss generator shelter?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. And, again, was this created so that the boilerplate text could be used and then the individual information for the client inserted in

the field entries in this document?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States

Constitution.

(WHEREUPON, a certain document
was marked Daugerdas Deposition
Exhibit No. 5, for
identification, as of 8/30/07.)

BY MR. JOHNSON:

Q. We've next marked Daugerdas Exhibit 5, which is a document Bates stamped JG-NC 043371 through 80. Do you recognize this as another Jenkens template opinion?

MS. FEENEY: I think his goes to 81.

MS. BARTLETT: It does.

MR. JOHNSON: Okay. Through 81.

BY MR. JOHNSON:

Q. What we marked as Exhibit 5, Mr. Daugerdas, a document produced to us by Jenkens in this case. Do you recognize that as another template opinion?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Exhibits 3, 4 and 5, do you know when

those might have been created?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Can you tell me who was involved in creating them?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Did you provide a draft opinion letter to any member of the Welles family when they were considering whether to implement a Jenkens strategy or structure?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know if anybody else from Jenkens provided the Welles with a draft or a template

opinion letter while they were considering whether
to implement the strategy or structure?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Do you know if anybody from Jenkens
including yourself provided a draft opinion letter
from anyone from Shumaker, Loop & Kendrick so that
the Welles could look at it or at least Shumaker
could look at it when the Welles were considering
whether to implement the strategy?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. With regard to the opinion letters for

the clients who implemented Jenkens' strategies or structures, can you tell me how those were put together and provided to the clients?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

(WHEREUPON, a certain document was marked Daugerdas Deposition Exhibit No. 6, for identification, as of 8/30/07.)

BY MR. JOHNSON:

Q. Ms. Daugerdas, we've marked as Exhibit 6 a document produced by Jenkens in this case Bates stamped JG-NC 039391 through 92.

Is this a memo you sent in January -- on January 13, 2000?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Does this memo concern the individuals

who were going to be involved in assembling opinion letters for clients of Jenkens who implemented the tax strategies?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. I notice a number of the people listed there are first year -- well, there's a level of category and it says first year or second year or shareholder or fourth year or sixth year. Does that refer to how many years these lawyers have been at Jenkens?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Or does that refer to their seniority?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Well, I notice a number of them are first and second years and don't list their department as being tax. Were these people in any way involved in reviewing the substance of the

opinions?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is it correct that the preparation of the opinions was a fairly mechanical process of putting together various portions of the templates that had been created?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. This memo references transactions which occurred during 1999. Was a similar tax opinion preparation team utilized for transactions that occurred in the year 2000?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

MR. JOHNSON: Can you mark that?

(WHEREUPON, a certain document was marked Daugerdas Deposition Exhibit No. 7, for identification, as of 8/30/07.)

BY MR. JOHNSON:

Q. Mr. Daugerdas, we've marked as Exhibit 7 a two-page document produced to us by Jenkens in this case, Bates stamped JD-STCRK-004024 through 25. The name Brian Lee is the top. Do you know or did you know a Brian Lee?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Was he a lawyer with Jenkens?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. We received this in response to our subpoena to Jenkens in which we asked for documents

regarding the Welles transactions and any other similar transactions, substantially similar transactions. In that light, do you know if these clients referred to here by their number all participated in tax strategies or structures for which Jenkens provided an opinion letter?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did Mr. Lee have any role in substantively preparing or reviewing any opinion letters?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

MS. FEENEY: Can we go off the record for a
minute?

(WHEREUPON, discussion was had
off the record.)

(WHEREUPON, the document marked

Guerin Deposition Exhibit
No. 114 was first referred to.)

BY MR. JOHNSON:

Q. Mr. Daugerdas, let me show you what's been previously marked as Welles Exhibit 114. That's a letter addressed to Stobie Creek Investments dated February 9, 2001 from Donna Guerin.

Do you recognize this letter?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you recognize this as a form letter for Jenkens & Gilchrist?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States Constitution.

Q. On the second page, the second full paragraph begins with your name and it says, quote, "Paul Daugerdas and I will be the principal

attorneys handling your tax matters."

Do you see that?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. As I said, it's addressed to Stobie Creek Investments, but then you'll see -- the letter is addressed to them, but then you'll see in the first paragraph it references Stobie Creek as well as seven of its members, and they're listed on the last page of the exhibit and those are members of the Welles family.

Do you see that?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Is it your recollection that you and Ms. Guerin were, quote, "the principal attorneys handling tax matters," end quote, for Stobie Creek on behalf of the members of the Welles families

listed here?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Did you have any involvement in handling tax matters for Stobie Creek or any member of the Welles family?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Can you tell me anybody at Jenkens, the name of anybody at Jenkens who had a role in handling any tax matter or providing any tax advice to Stobie Creek or the Welles family?
A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Also in the second paragraph it

references that Stobie Creek has agreed to pay the amount of $4,091,500 as a fixed fee for a tax opinion.
Do you see that?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Is it your recollection that there was an agreement that Stobie Creek would pay that amount?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Do you know how that amount was determined?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is it correct that that amount was determined as a percentage of the income that was being sheltered pursuant to the strategy?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is it correct that that's how Jenkens determined its fee for other clients as well in that the fee was determined as a percentage of the claimed tax benefits?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Later down in Paragraph 2 -- I'm sorry, Page 2, the last paragraph there's a reference to

ethical rules governing lawyers and that certain thing also lead to withdrawal by Jenkens from their representation of Stobie Creek. One of the things listed is a, quote, "Misrepresentation or failure by you to disclose material facts to us."

Do you see that?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Are you aware of any misrepresentations or failure to disclose material facts by Stobie Creek or any member of the Welles family regarding the matter on which Jenkens was engaged?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. The tax opinion letter that's referenced in this engagement letter and for which Stobie Creek was paying roughly $4 million, are you aware of any other attorneys other than Jenkens attorneys

who also may have provided advice to Stobie Creek
or the Welles about the same subject that was --
the same transactions that were the subject of this
opinion letter referenced here?
A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know whether anybody at Shumaker gave Stobie Creek or the Welles any advice on the tax consequences of these transactions that were the subject of the Jenkens opinion letter?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution?

Q. Do you know if Shumaker also received a flat fee determined as a percentage of the tax benefits?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States
Constitution.

Q. Are you aware whether Shumaker offered
to waive at least a portion of that $2 million fee
that they were to receive?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did Jenkens tell Shumaker that if it did, Jenkens would claim that waived portion for itself?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Also on Page 2 after that reference to the $4 million fee, there's a reference to sending on a draft opinion letter and that Stobie Creek's acknowledging the receipt of a draft opinion letter.

Do you see that?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you recall that a draft opinion letter was sent to Stobie Creek or at least a member of the Welles family?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Next, Mr. Daugerdas, I would like to show you what has been previously marked as Welles Exhibit 118, and that's a copy of a document that was produced by the plaintiff and it purports to be a Jenkens tax opinion letter. This one is addressed to Mr. Jeffrey Welles. You're welcome to page through it.

(WHEREUPON, the document marked Welles Deposition Exhibit No. 118 was first referred to.)

BY MR. JOHNSON:

Q. Did you have any involvement in the preparation or review of this opinion letter to Mr. Welles?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. How about similar letters to any other member of the Welles family, did you have any involvement in the preparation or the review of such letters?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know who at Jenkens may have been involved?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know who at Jenkens may have been
involved in signing off on the -- on these -- on
the letter to Jeff Welles or any similar letter to
other members of the Welles family?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Are you aware of any advice given to Stobie Creek or any member of the Welles family in addition to what's set forth in Exhibit 118 or any similar letters to other members of the Welles family?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did you provide any advice or -- well, did you provide any advice to anybody at Shumaker, Loop & Kendrick as to whether IRS notice 2044 covered the Welles transaction that's referenced in this Exhibit 118?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know if anyone at Jenkens had communication with anyone at Shumaker about that subject?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. The first few pages of the exhibit there's a section called Facts. It sets forth various transactions. Do you recognize those transactions as a strategy or structure developed by Jenkens?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. On the second page there's a reference

to purchase of sale of digital options with
Deutsche Bank as the counter-party. Wasn't that
part of the basis enhancing derivative structure
that Jenkens developed and was promoting?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. It also references a contribution of those options to a partnership and in particular Stobie Creek.

Do you see that?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. That contribution, that was a step in the basis enhancing derivative structure strategy, wasn't it?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States Constitution.

Q. And that step was necessary for the tax benefits to be claimed, is that correct?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Are you aware of any business purpose for the contribution of the options after their purchase to a partnership and in particular in this case Stobie Creek?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. In this Fact section, there's also a reference to Mr. Welles contributing his interest in his individually owned LLC to his wholly-owned S Corporation.

Do you see that?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Was that also a step in the basis

enhancing derivative structure strategy that Jenkens had developed and was promoting?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. It also talks about a 754 election. Do you see that?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Regarding the contribution of the interest in the individually owned LLC to the wholly-owned S Corporation, are you aware of any business purpose for which that could have been done?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. There's also, starting on the third page, a section called Opinion, and there's an opinion set forth in the sub -- the paragraph lettered B, and in part it says, "The option should be treated as separate instruments for federal income tax purposes."

Do you see that?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Were you involved in any way in coming up with that opinion?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know -- do you have any information or knowledge as to the basis for that opinion?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Regarding the long and short portion of the digital swap with Deutsche Bank, are you aware of any instance in which one or the other of those was separated from the other?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. How many transactions did Jenkens provide an opinion for in which these digital options that involve the long and short portion were involved?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States
Constitution.

Q. If we assumed that the options could not
be treated as separate instruments, do you know
what impact that would have on the tax

consequences?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Further on in the letter beginning on the page Bates stamped JFW 1314, there's a section entitled Representations.
Do you see that?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Were any of these representations in this letter made to you?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did any of the other members of the Welles family make similar representations to you

with regard to the opinion letters they were
seeking?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Do you know if representations like
those listed in this document were made to anyone
else at Jenkens by any member of the Welles family
or by anyone on behalf of the Welles family?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Did you -- do you know whether the
representations are accurate and correct?
A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know did anybody at Jenkens do

anything to determine whether the representations set forth in this letter were accurate and correct?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. How about with regard to any representations in letters to other members of the Welles family, do you know if anybody at Jenkens did anything to determine whether those representations were accurate and correct?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. On the page Bates stamped JFW 1383, there's a reference to an objective investment

analysis of the options positions.

MS. FEENEY: What was that Bates number again?

MR. JOHNSON: 1383. In the middle paragraph.

BY MR. JOHNSON:

Q. And just in summary, it states that

Jenkens has been informed that an objective investment analysis of the option positions had been done.

Do you see that reference, Mr. Daugerdas?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Are you aware or were you aware back in the 2000/2001 of an objective investment analysis of the instant option positions?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution?

Q. Do you know if anybody else at Jenkens

was aware of such an analysis?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Have you ever seen such an analysis with regard to any similar option positions?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did anybody from outside of Jenkens participate in the preparation and review of this tax opinion letter?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know if anybody from Shumaker, Loop & Kendrick ever communicated with you or anybody else at Jenkens about this opinion letter?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Did anybody at Shumaker ever tell you
that they agreed with the conclusions?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Do you know if anybody at Shumaker told
anybody else at the firm, the Jenkens firm that
they agreed with the conclusions?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.
Q. Do you know if the Welles were ever
advised by anybody at Jenkens, including yourself,
whether they should seek an opinion from somebody
other than the Jenkens firm?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. The $4 million fee that we saw referenced to earlier, can you tell me what was that paid in exchange for?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Was that paid in exchange for Jenkens telling the Welles about the structure and the steps involved?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Was it paid or charged in exchange for the opinion letters?

A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Was it paid in exchange for both?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Was the providing of the information about the strategy or the structure and then the opinion letter associated with those a package deal, so to speak?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. In any of the instances where clients -- well, let me strike that.

Are you aware of instances where taxpayers implemented a strategy or structure developed by Jenkens in connection with a --

obtained an opinion letter from a different firm?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

(WHEREUPON, the document marked
Guerin Deposition Exhibit
No. 7 was first referred to.)

BY MR. JOHNSON:

Q. Let me show you, Mr. Daugerdas, what has
been previously marked as Guerin 7. That's a long
spreadsheet produced to us by Jenkens & Gilchrist
in this case with a title Persons Who Engaged in
Short Option Transactions. And then there's a
listing of what appears to be over 900
transactions.
Do you recognize this?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. The Welles are listed here as

Transactions 641 through 647 on the page Bates stamped JG-SCCRK-004504.

Do you see that?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Can you -- do you know what's -- what transaction is being referred to in the title when it says Short Option Transaction?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. The other individuals listed here in addition to the Welles, do you know if they engaged in a similar strategy or structure as the Welles?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Do you know if Jenkens provided opinion
letters to these other individuals as well?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

(WHEREUPON, a certain document was marked Daugerdas Deposition Exhibit No. 8, for identification, as of 8/30/07.)

BY MR. JOHNSON:

Q. Mr. Daugerdas, we've marked as Exhibit 8 a one-page document produced by Jenkens in this case Bates stamped JG-NC 031066. Do you recognize this as a memo you received in November of 2000 from Laura Lightholder?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Can you tell me who Ms. Lightholder is?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. The subject line says it concerns the cancellation of Delaware LLCs. Is it your recollection that these LLCs were created in connection with tax strategies and structures that Jenkens had developed?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Were these -- does this memo concern the LLCs that entered into initially the digital option transactions with Deutsche Bank?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. After -- and is it correct that the

LLCs, then, in these transactions assigned the
options to another partnership?
A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by

the Fifth Amendment to the United States
Constitution.

Q. And is it correct in the strategies and structures, you and Jenkens had developed -- after this assignment to the LLC -- to the partnership of the options, the LLCs had no reason to continue to exist?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Can you tell me what the purpose of the creation of the LLCs was in connection with these -- the basis enhancing strategy?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Do you know who a Garrett Blanchard is?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States
Constitution.

Q. In connection with developing the tax
strategies and structures, did you have any
dealings with someone named Ross Crawford from
Deutsche Bank?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. How about Alex Alexander, do you know
who he is?

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. Let me back up a minute, Mr. Daugerdas,

and ask you again about Welles Exhibit 98 and 99,
which are the confirmations for the digital option
transactions with JFW Investments.

(WHEREUPON, the document marked
Welles Deposition Exhibit

Nos. 98 and 99 was first
referred to.)

BY MR. JOHNSON:

Q. Have you seen a transaction in this form before, whether or not it dealt specifically with JFW Investments?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you know if the structure of this transaction was developed specifically for the tax strategies that Jenkens had developed along with Deutsche Bank?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Do you know if a transaction in this
structure is pursued commercially otherwise,
independent and not associated with any tax
strategy?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

(WHEREUPON, a certain document was marked Daugerdas Deposition Exhibit No. 9, for identification, as of 8/30/07.)

BY MR. JOHNSON:

Q. This isn't Bates stamped but it's 101 pages pulled from the --

MS. FEENEY: Okay.

MR. JOHNSON: I'll send you a copy.

BY MR. JOHNSON:

Q. Mr. Daugerdas, I've marked as Exhibit 9 a document from the docket of a case titled CEMCO Investors, LLC versus United States of America. This document is titled Declaration of Paul

Daugerdas.

On Page 8 of the declaration, is that your signature?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Is this a declaration you submitted in the CEMCO case?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you believe everything in this -- that you state in the declaration is true and accurate?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Attached to the declaration starting at

Page 34 of 101, I'm going by these numbers up here, beginning at that Page 34, there's a document that was attached as Exhibit C, it appears, and it's titled Foreign Exchange Digital Options Transaction between Deutsche Bank and CEMCO Investment Trust.

Do you see that?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. The third page of that Exhibit C to the declaration, is that your signature?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
Q. Other than this transaction that's referenced here in Exhibit C, have you entered into any other similar foreign exchange digital option transactions in which Deutsche Bank was the counter-party?
A. Based upon the advice given to me by my

attorney, I respectfully decline to answer that
question based on the privileges granted to me by
the Fifth Amendment to the United States
Constitution.

Q. Has any entity in which you have an

interest entered into similar transactions?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Have you, yourself, or any entity in which you have an interest implemented one of the structures or strategies developed by Jenkens?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Your declaration references a Mr. Steven Kaplan. Can you tell me who he is?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by

the Fifth Amendment to the United States Constitution.

Q. Do you recall giving a presentation at which Mr. Kaplan and Mr. Parse and a Mr. McKay were present?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Do you recall giving a presentation at least where Mr. McKay and Mr. Parse were present?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. And did that concern strategies or structures Jenkens or others had developed for the reduction of taxes?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. And was that being discussed in connection with Mr. Kaplan?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. And at that discussion, did it involve the Treasury short strategy or some other strategy?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Could it have involved the digital options strategy?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Mr. Daugerdas, have you or has anybody on your behalf been approached to provide factual

testimony in this case?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.

Q. Has anybody on behalf of the Welles approached you or your counsel to provide factual testimony in the case?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Has anybody on behalf of the Welles or any of the Welles family members themselves approached you and asked you to provide opinion testimony in connection with this case?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

Q. Have you had any communications with any

lawyers from Schiff Hardin regarding this case?

A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States

Constitution.
Q. Have you provided any written statements regarding the facts of this case or underlying this case?
A. Based upon the advice given to me by my attorney, I respectfully decline to answer that question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.
MR. JOHNSON: Well, other than the issue of the handwriting exemplar, that's all I have this morning, Mr. Daugerdas.
MS. FEENEY: I have one question.
EXAMINATION
BY MS. FEENEY:
Q. You've pled the first, your right to the Fifth Amendment to every question asked by Mr. Johnson today. If I asked you any questions regarding communications with the Welles,

transitions at issue in this case or digital option
transactions or strategy in general, would you
continue to plead the Fifth Amendment.

A. Based upon the advice given to me by my
attorney, I respectfully decline to answer that

question based on the privileges granted to me by the Fifth Amendment to the United States Constitution.

MS. FEENEY: Okay.

FURTHER DEPONENT SAITH NOT.

STATE OF ILLINOIS )
) SS:
COUNTY OF DU PAGE )

I, ELLEN DUSZA, a Notary Public within and for the County of DuPage, State of Illinois, and a Certified Shorthand Reporter of said state, do hereby certify:

That previous to the commencement of the examination of the witness, the witness was duly sworn to testify the whole truth concerning the matters herein;

That the foregoing deposition transcript was reported stenographically by me, was thereafter reduced to typewriting under my personal direction and constitutes a true record of the testimony given and the proceedings had;

That the said deposition was taken before me at the time and place specified;

That I am not a relative or employee or

attorney or counsel, nor a relative or employee of such attorney or counsel for any of the parties hereto, nor interested directly or indirectly in the outcome of this action.

IN WITNESS WHEREOF, I do hereunto set my hand and affix my seal of office at Chicago, Illinois, this 18th day of September, 2007.

Notary Public, DuPage County, Illinois.

My commission expires October 7, 2009.

C.S.R. Certificate No. 84-3386.

I N D E X

WITNESS EXAMINATION

PAUL M. DAUGERDAS

By Mr. Johnson....................3
By Ms. Feeney...................107

E X H I B I T S

NUMBER MARKED FOR ID
PAGE

Daugerdas Deposition Exhibit

No. 1............................30
No. 2............................34
No. 3............................54
No. 4............................58
No. 5............................60
No. 6............................63
No. 7............................66
No. 8............................95
No. 9...........................100

FIRST REFERRED TO

PAGE

Guerin Deposition Exhibit

No. 1...........................17

I N D E X (Continued)

FIRST REFERRED TO

PAGE

Guerin Deposition Exhibit

No. 2.............................51

No. 7.............................93

No. 114..........................68

Welles Deposition Exhibit

No. 2.............................45

No. 98...........................19

No. 99...........................19

No. 118..........................76

*** EXHIBITS NOT ATTACHED ***