and USD/CHF options because premiums were the same for each currency pair:

**Stobie Creek Participants**

Net Transaction Cost

| | Long Option Premium | Short Option Premium | J&G Fees | SL&K Fees | Net Transaction Cost |
|---|---|---|---|---|---|
| EUR/USD | ($102,287,500) | $101,264,625 | ($2,045,750) | ($1,022,875) | ($4,091,500) |
| USD/CHF | ($102,287,500) | $101,264,625 | ($2,045,750) | ($1,022,875) | ($4,091,500) |
| Total | ($204,575,000) | $202,529,250 | ($4,091,500) | ($2,045,750) | ($8,183,000) |

**Table 11**

Stobie Creek's net transaction cost of the EUR/USD investment (adjusting the net premium to include legal fees) was $4,091,500. As discussed at various points in this report, the offsetting options have only two outcomes at expiration. In the out-of-the-money scenario both component options would be worthless at expiration. In the other scenario both options would be at- or in-the-money at expiration, paying $2,045,750. To arrive at the net expected rate of return we simply divided the expected dollar return by the net transaction cost (including fees) of the options, and then subtract 1.00 (See Appendix IV).

Table 12 provides a net expected rate of return analysis of the EUR/USD and USD/CHF transactions for the Participants.

**Stobie Creek Participants**
Net Expected Rates of Return

| | OTM Probability | OTM Net Payoff | ITM Probability | ITM Net Payoff | Expected Return | Net Premium | Net Fees | Net Expected Rate of Return |
|---|---|---|---|---|---|---|---|---|
| EUR/USD options | 88.57% | 0.00 | 11.43% | $2,045,750 | $233,829 | ($1,022,875) | ($3,068,625) | -94.29% |
| USD/CHF options | 80.05% | 0.00 | 19.95% | $2,045,750 | $408,127 | ($1,022,875) | ($3,068,625) | -90.03% |

**ITM - In-The-Money**
**OTM - Out-of-The-Money**

**Table 12**

The net expected rate of return on the Stobie Creek EUR/USD offsetting options was -94.29%. The net expected rate of return on the Stobie Creek USD/CHF offsetting options was -90.03%.

My calculations reveal that the Participants' offsetting options had negative expected returns, whether or not the Participants take into consideration the fees paid to Jenkens & Gilchrist, and to Shumaker, Loop & Kendrick, LLP.

The offsetting options, whether viewed singularly as option pairs, or collectively as the assets of Stobie Creek, did

not have a reasonable possibility of achieving a profit. Consequently Stobie Creek had no reasonable possibility of achieving a profit.

### *III.D. Each Offsetting Option The Participants Purchased, Sold, Or Contributed To Stobie Creek Investments, LLC, Represented A Component Element Of A Single Transaction Structure.*

#### *III.D.i. Each offsetting option was designed to be inextricably related.*

As stated earlier, on March 31, 2000 each Participant entered into offsetting options with DEUTSCHE BANK as their counterparty. The transactions were comprised of two components: a long digital currency option and a short digital currency option, which were purchased and sold simultaneously. The payout amount of each short option component was 99% of the payoff of its corresponding long option component. The premium received for each short option component was also 99% of the premium paid for its corresponding long option component. The strike price on each long option component was 2 pips below the strike for

its corresponding short option component. Finally, the expiration for all of the component options was April 17, 2000 (17 days after the trade date).

Table 13 provides the trade details of one set of the JFW Investments, LLC EUR/USD offsetting options.

**JFW Investments, LLC**
Contributed to Stobie Creek Investments, LLC

Offsetting Options

| | Long Option | Short Option | Net |
|---|---|---|---|
| Currency Pair | EUR/USD | EUR/USD | |
| Trade Date | 31-Mar-00 | 31-Mar-00 | |
| Expiration Date | 17-Apr-00 | 17-Apr-00 | |
| Option Type | EUR Put / USD Call | EUR Put / USD Call | |
| Strike Price | 0.9912 | 0.9914 | |
| Stated Premium | ($9,662,500) | $9,565,875 | ($96,625) |
| USD Payoff | $19,325,000 | ($19,131,750) | $193,250 |
| Counterparty | DEUTSCHE BANK | DEUTSCHE BANK | |

**Table 13**

I reviewed DEUTSCHE BANK records concerning 266 offsetting digital option pairs from 1999 and 2000 in Appendix III, including the 14 Stobie Creek transactions. In each of these transactions, the long and short options had strike prices that were 2 pips apart. Given this design structure, it is my opinion that the offsetting options

were inextricably related components of a single transaction.

### *III.D.ii. DEUTSCHE BANK considered the offsetting options traded with the Participants to have created no credit or counterparty risk.*

Because the offsetting options were elements of a single transaction structure, DEUTSCHE BANK could regard them as risk-free from a credit exposure perspective.

In Craig Brubaker's (of DEUTSCHE BANK Alex Brown) email he states that,

> There is no credit involved in this transaction, therefore, credit approval procedures will not be required.[23]

This comment indicates that credit analysis was not necessary because the offsetting options could never be split. By marrying structurally similar offsetting component options together and establishing a razor-thin strike spread, DEUTSCHE BANK was able to eliminate counterparty credit risk with respect to the Participants.

[23] DOJ-STOBIE-00000217.

DEUTSCHE BANK would be paid the net premium for the offsetting options and would not owe any money if the options expired out-of-the-money. If the offsetting options expired in-the-money, DEUTSCHE BANK would owe money to the Stobie Creek Participants or Stobie Creek Investments, LLC. Under no circumstance would DEUTSCHE BANK be owed money beyond the initial payment of the net option premium.

Hence I conclude DEUTSCHE BANK had no credit risk exposure to the Participants or Stobie Creek Investments, LLC. The Bank would have been able to preserve its risk-free credit position by requiring the component pieces to always remain together. Said another way, each pair of offsetting options would never be split into separate component options.

***III.D.iii. Separation of the offsetting options would have required the Participants, or Stobie Creek Investments, LLC, to post a massive amount of margin collateral.***

It is the industry practice for Master Trading Agreements (and related Credit Support Annexes) to establish margin requirements for foreign exchange and foreign exchange

options, either held as long or short positions. None of the documents I have reviewed stated the margin requirements for the offsetting options. The absence of such an agreement is evidence that DEUTSCHE BANK never intended for the offsetting options to be separated. Indeed, from an internal email by R. Craig Brubaker of DEUTSCHE BANK Alex. Brown, client credit was never an issue.

> We understand that there is no credit involved with this transaction, therefore, credit approval procedures will not be required.[24]

Nonetheless, some basic facts about margin can be understood from industry standards for foreign exchange and options on foreign exchange and a discussion is relevant to my opinions.

Typical master trading agreements establish margin requirements for both long and short positions in currency options, and by extension, offsetting options. These requirements would have applied if DEUTSCHE BANK had ever allowed the offsetting long and short option pairs to be split into stand-alone individual options. Separating these offsetting options from each other would have meant the

[24] DOJ-STOBIE-00000470.

Participants or Stobie Creek Investments, LLC would have been outright long one option, with no offsetting short option (case #1), or outright short one option, with no offsetting long option (case #2). This would have created a massive margin requirement. The significant margin payment that would be required for the transactions was a convincing reason why the offsetting option pairs would never be split into two separate options.

Although there appears to be no documented margin requirements, based on my experience in the financial industry, I can estimate the margin required to split the offsetting options. In case #1, the margin requirement for purchasing a digital currency option is the entire long option premium. For example, in the Stobie Creek offsetting option pairs, JFW Investments, LLC bought a digital currency option on EUR/USD struck at 0.9912 and sold a digital currency option on EUR/USD struck at 0.9914, for a net premium payable to DEUTSCHE BANK of $96,625. If JFW Investments, LLC wished to purchase the long option by itself (case 1) it would have been required to pay the stated premium in full -- in other words pay $9,662,500 in cash. The other Participants, likewise, would have been required to pay the full premium amounts totaling

$204,575,000 for the long component USD/CHF and EUR/USD options.

In case #2, the margin requirement calculation for a stand-alone short digital currency option is more complex. Given no offsetting long option, industry standard margin convention would have required considerable initial margin collateral. This would be necessary to ensure performance by the Participant or Stobie Creek Investments, LLC on the option sold to the bank. Any such margin would have to account for the risk of potentially adverse market fluctuations and for the possibility of counterparty non-performance.

It is industry standard practice that the investor is required to keep the full short premium received from his option sale on deposit with the custodian. It does not count for margin purposes. The appropriate margin on a short digital currency option is difficult to calculate, especially when the digital currency options are only 17 days from expiration, as was the case for the Participants' transactions. The problem with a single digital is that its value can swing violently up or down with small changes in the spot exchange rate. As the exchange rate moves, the

probability that the option will be at- or in-the-money at expiration can change dramatically. More specifically, as the exchange rate trades around the strike price, and the time value of the option decays, the value of the option can swing so dramatically that any system of assessing and collecting current margin collateral may be insufficient to keep pace with a firm's current exposure. This is due in large part to the fact that digital options feature a large, all-or-nothing lump-sum payoff that is triggered by the option being at- or in-the-money at expiration. With spot trading at or around the strike, as an option converges on expiration, a few pips movement up or down could be the difference between a large payout and no payout at all. For this reason, a bank would be well within rights to simply demand that the full in-the-money payout be kept on deposit.

In fact, the only way that the bank could ensure that its digital currency option client would perform is to demand all of the lump-sum payout as margin collateral. That is to say that the difference between the lump-sum payout of the JFW Investments, LLC EUR/USD short option of $19,131,750 and the premium of $9,565,875 (equal to $9,565,875) could have been demanded as collateral by

DEUTSCHE BANK. Under similar requirements the other Participants would have had to post margin on each of their stand-alone short digital currency options of between $2,680,425 and $44,371,800, for a total of $202,529,250.

In summary, if JFW Investments, LLC had entered separate stand-alone long and short EUR/USD options with different brokers, according to the above analysis it would have had to deposit a total of $19,228,375 (the $9,662,500 long premium plus the $9,565,875 difference between the payoff on the short digital and the short digital's premium). This margin requirement would be a staggering 199 times the value of the net premium of $96,625 JFW Investments, LLC paid to DEUTSCHE BANK to enter into the EUR/USD options as offsetting options.

Table 14 compares the margin requirements in a scenario where the long and short options were netted, versus a scenario where they received stand-alone treatment. The Participants would have been required to post $405,058,500 more in cash had the options received stand-alone margin treatment. It is my opinion that the Participants could not have done these transactions if the long and short

options had been separated, unless they had posted this huge margin.

**Stobie Creek Participants**

Margin Comparison

| | | Long Option Premium | Short Option Premium | Premium Requirement (Stand-Alone Treatment) | Net Premium Requirement (Netting Treatment) | Difference (Stand-Alone vs Net Treatment) |
|---|---|---|---|---|---|---|
| JFW Investments, LLC | EUR/USD | ($9,662,500) | $ 9,565,875 | ($19,228,375) | ($96,625) | $19,131,750 |
| JFW Investments, LLC | USD/CHF | ($9,662,500) | $ 9,565,875 | ($19,228,375) | ($96,625) | $19,131,750 |
| PCW Investments, LLC | EUR/USD | ($9,902,500) | $ 9,803,475 | ($19,705,975) | ($99,025) | $19,606,950 |
| PCW Investments, LLC | USD/CHF | ($9,902,500) | $ 9,803,475 | ($19,705,975) | ($99,025) | $19,606,950 |
| CSW Investments, LLC | EUR/USD | ($9,662,500) | $ 9,565,875 | ($19,228,375) | ($96,625) | $19,131,750 |
| CSW Investments, LLC | USD/CHF | ($9,662,500) | $ 9,565,875 | ($19,228,375) | ($96,625) | $19,131,750 |
| DKW Senior Investments, LLC | EUR/USD | ($2,707,500) | $ 2,680,425 | ($5,387,925) | ($27,075) | $5,360,850 |
| DKW Senior Investments, LLC | USD/CHF | ($2,707,500) | $ 2,680,425 | ($5,387,925) | ($27,075) | $5,360,850 |
| David K. Welles Sr. 1994 Trust | EUR/USD | ($44,820,000) | $ 44,371,800 | ($89,191,800) | ($448,200) | $88,743,600 |
| David K. Welles Sr. 1994 Trust | USD/CHF | ($44,820,000) | $ 44,371,800 | ($89,191,800) | ($448,200) | $88,743,600 |
| DKW Junior Investments, LLC | EUR/USD | ($15,870,000) | $ 15,711,300 | ($31,581,300) | ($158,700) | $31,422,600 |
| DKW Junior Investments, LLC | USD/CHF | ($15,870,000) | $ 15,711,300 | ($31,581,300) | ($158,700) | $31,422,600 |
| VJ Investments, LLC | EUR/USD | ($9,662,500) | $ 9,565,875 | ($19,228,375) | ($96,625) | $19,131,750 |
| VJ Investments, LLC | USD/CHF | ($9,662,500) | $ 9,565,875 | ($19,228,375) | ($96,625) | $19,131,750 |
| | TOTAL | ($204,575,000) | $202,529,250 | ($407,104,250) | ($2,045,750) | $405,058,500 |

**Table 14**

***III.D.iv. DEUTSCHE BANK documentation originally identified the offsetting options as components of a single structured transaction.***

On July 14, 1999 DEUTSCHE BANK AG London created a "prototype confirmation" (DOJ-STOBIE-00000174 through

00000177) for a Foreign Exchange Linked Swap Transaction. The participating counterparties were identified only as Party A and Party B. The economic structure of the trade described in the prototype confirmation is identical in practically every respect to that used in the confirmations pertaining to the Participant's offsetting options. The only differences between the confirmations were:

- The prototype confirmation referred to a certain transaction as a "Foreign Exchange Linked Swap Transaction." That name was changed to "Foreign Exchange Digital Currency Option Transaction" in the current transaction.
- The prototype confirmation referred to certain transactions as a "First Swap Transaction" and "Second Swap Transaction." Those names were changed to "First Digital Currency Option Transaction" and "Second Digital Currency Option Transaction" in the current transactions.
- The prototype confirmation referred to certain events as a "First Swap Trigger Event" and "Second Swap Trigger Event." These names were changed to "First Digital Currency Option Trigger Event" and "Second

Digital Currency Option Trigger Event" in the current transaction.

The "Linked Swap Transaction" (singular) was composed of two legs identified as "First Swap Transaction" and "Second Swap Transaction," which incidentally correspond with the component digital currency options in the Participants' transactions. In the "First Swap Transaction" Party A was a seller to Party B. In the "Second Swap Transaction" Party A was a buyer from Party B. As explained in III.D.iii, if these transactions stand-alone they would have specific margin requirements that may prohibit participation in larger notional values. However, if they are brought together under one single and unique structured transaction, then the benefits of netting could provide the parties with access to notional values that they would otherwise not be approved. In my opinion one of the principal purposes in designing the Foreign Exchange Linked Swap Transaction was to create a single transaction structure from which DEUTSCHE BANK could take advantage of this netting benefit.

DEUTSCHE BANK essentially married the two offsetting swap transactions under a single transaction structure through

two specific text references in the Foreign Exchange Linked Swap Transaction confirmation. In the introductory paragraph of the confirmation DEUTSCHE BANK describes the transaction (structure) as consisting,

> ..of a number of elements as detailed below in Sections 1, 2(i) and (ii), 3(i) and (ii), and Section 4. The details of each component swap transaction are listed individually in Section 1.

The plain meaning of this passage indicates that the foreign exchange linked swaps couple together as components in a single transaction structure.

My reading of this language is further supported in Section 2(i) - Other Provisions, which covers payment and settlement netting.

> For the purpose of this Transaction only, the following provisions shall apply: Subparagraph (ii) of Section 2 (c) of the ISDA Form[25] shall not apply to the First Swap Transaction and the Second Swap Transaction.[26]

[25] If the parties executed an ISDA Form, then the language in DEUTSCHE BANK's prototypical confirmation would be subject to the relevant ISDA interpretation. Even if they had not executed an ISDA Form, the clear language in the prototypical confirmation specifies that, "Party A and Party B agree to use all reasonable efforts promptly to negotiate, execute, and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency Cross Border) (the "ISDA Form") with such modifications as Party A and Party B will in good faith agree."

[26] DOJ-STOBIE-00000176.

Subparagraph (ii) of the Section 2(c) of the ISDA Master Agreement (Multicurrency Cross Border)[27] provides that payments could only be netted for a single transaction. Since each swap leg is in form a single transaction this provision would have prevented the swap leg payments from being netted. By electing that single transaction netting will not apply, DEUTSCHE BANK is able to combine its two offsetting swap transactions together, creating a separate and unique singular structure which takes advantage of this payment netting feature.

DEUTSCHE BANK's Foreign Exchange Linked Swap Transaction links its individual swap component transactions together under one single structure. The structural similarities between its prototype confirmation and the trade confirmations, in my opinion, demonstrate that DEUTSCHE BANK's architects understood the offsetting options' design should be similar to that of the foreign exchange linked swaps. As such, in DEUTSCHE BANK's eyes the offsetting option components, like the foreign exchange linked swaps, were also interrelated, and indeed comprised a single structured transaction.

[27] The ISDA Master Agreement can be found at www.isda.org.

In an internal DEUTSCHE BANK email to Craig Brubaker, David Parse, Daniel Brooks, et al, Ross Crawford describes this type of digital currency option transactions as follows:

> …to me the trade looks much more of a fx swap than a digital option (which provides for a fixed payment dependent upon the movement in underlying rates). I have referred to the trade as one transaction because, although the trade contains swap transactions, I want the trade to be construed just as one trade (particularly as we are payment netting amounts between the First Swap and the Second Swap.)[28]

This email demonstrates an opinion, within DEUTSCHE BANK, that the option pairs were "one transaction."

***III.D.v. Neither the Participants nor DEUTSCHE BANK sought to separate the offsetting options.***

The offsetting option components were paired together and remained paired together when they were:

- Entered into by the Participants,
- Contributed to Stobie Creek Investments, LLC,
- Closed out in Stobie Creek Investments, LLC.

I am unaware of any effort by the Participants, Stobie Creek Investments, LLC, or DEUTSCHE BANK to separate these

[28] DOJ-STOBIE-00000221

pairs into their individual digital currency option components. The Participants entered into offsetting long and short options. They contributed the offsetting options to Stobie Creek Investments, LLC. At no time were the offsetting options split apart. As such, the Participants treated the offsetting options as a single transaction structure.

***III.D.vi. The plain language references of the Stobie Creek trade confirmations indicate DEUTSCHE BANK's intention to regard each offsetting option as a component element in a single transaction structure.***

The plain language references in every Stobie Creek trade confirmation issued by DEUTSCHE BANK reflect that the offsetting options were components of a single transaction structure. All of the Participants' trade confirmations read as follows:

> The purpose of this letter agreement (this "Confirmation") is to confirm the terms and conditions of the Foreign Exchange Digital Option transaction... The transaction consists of a *number* of elements as detailed below in Sections a, 2(i) and (ii), 3(i) and (ii), Section 4. Certain definitions and provisions which are applicable to more that one element of the transaction are detailed in Section 1. The terms of the

> transaction to which this Confirmation relates are as follows.[29]

DEUTSCHE BANK's intent to package the two offsetting options components into a single transaction structure is evidenced by the specific reference to a singular Foreign Exchange Digital Option transaction, entered into by the two parties. Further reading the confirmation reveals the individual offsetting options are each elements of a transaction detailed within Section 1, and that the terms of the singular "Transaction" (not of each transaction) are contained in the body of the confirmation.

Furthermore, Section 2 of the Trade Confirmation specifically states that,

> For purposes of this Transaction only, the following provision shall apply: Subparagraph (ii) of Section 2 (c) of the ISDA Form shall not apply to the First Digital Option Transaction and the Second Digital Option Transaction.[30]

This passage specifically refers to the singular structured transaction, and clearly differentiates it from the

[29] IRS-JG-05255, IRS-JG-05261, IRS-JG-05267, IRS-JG-05273, IRS-JG-00597, IRS-JG-00603, IRS-JG-04061, IRS-JG-04067, IRS-JG-05303, IRS-JG-02954, IRS-JG-01765, IRS-JG-01771, IRS-JG-05243 IRS-JG-05249.
[30] IRS-JG-05256, IRS-JG-05262, IRS-JG-05268, IRS-JG-05274, IRS-JG-00598, IRS-JG-00604, IRS-JG-04062, IRS-JG-04068, IRS-JG-05304, IRS-JG-02955, IRS-JG-01766, IRS-JG-01772, IRS-JG-05244, IRS-JG-05250.

component offsetting option transactions (First Digital and Second Digital option transactions) that comprise it.

Finally, Section 4 of the Trade Confirmation claims that if the Participants and DEUTSCHE BANK are not parties to an ISDA Interest Rate and Currency Exchange Agreement or an ISDA Master Agreement then the trade confirmation:

> ...evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates.[31]

This implies that if the confirmation references two or more transactions within its text then these transactions are looked upon as comprising component terms of a singular transaction structure, the terms of which are contained in the confirmation.

All of the above passages repeatedly refer to a single confirmation, and the singular transaction structure that the confirmation pertains too. This further emphasizes that it was DEUTSCHE BANK's intention to treat these offsetting options as being within a single transaction

[31] IRS-JG-05257, IRS-JG-05263, IRS-JG-05269 IRS-JG-05275, IRS-JG-00599, IRS-JG-00605, IRS-JG-04063, IRS-JG-04069, IRS-JG-05305, IRS-JG-02956, IRS-JG-01767, IRS-JG-01773, IRS-JG-05245, IRS-JG-05251.

structure. DEUTSCHE BANK's use of a single deal number for the long and short components of each digital option pair further support the single transaction opinion.

In addition to the compelling text within the trade confirmation of each offsetting option transaction, page 22 of Paul Harding's, "Mastering the ISDA Agreement," provides us with a definition of "trade confirmation" that is also useful in identifying each combination of offsetting options as a single transaction structure. He defines a trade confirmation as,

> specifying the economic terms of a transaction (e.g. trade effective and maturity dates, payment calculation terms, timing and mechanics, and Offices through which payments are to be made.)[32]

The confirmation is described as specifying the economic terms of a transaction (singular). There is no implication that a single confirmation refers to the economic terms of several different transactions. Rather the plain language meaning is that all of the component elements listed within a single confirmation represent component parts of the

[32] Reference: Harding, Paul. "Mastering the ISDA Master Agreement." Prentice Hall. 2002, pg. 22

economic terms of a single ("specified") transaction structure.

***III.D.vii. The irregular pricing of the offsetting options supports the single transaction opinion.***

Also arguing for my single transaction opinion are the pricing irregularities of the offsetting options, as was reported in Section III.A. Consider the parts. If the long option were a separate transaction, the pricing would squarely fall under the heading of an unfairly valued derivative. DEUTSCHE BANK's Policies and Procedures manual speaks to this issue:

> For all brokered deals, Trade Support calculates a reasonable Options price using FENICS to verify broker's price is fair (Traders perform this calculation themselves for non-brokered trades). Any Options mispricing discovered by Trade Support is directed to the trader responsible for the options position to investigate the discrepancy.[33]

The long option positions were priced, meaning stated premium, more than 200% over theoretical value - an egregious overpricing that could never be considered fair in any market situation.

[33] DOJ-STOBIE-00033309.

There is also no doubt that DEUTSCHE BANK wildly mispriced the short position. If it were a separate transaction, then there would have been no reason why DEUTSCHE BANK would have done the trade. Banks do not voluntarily overpay for options they themselves are dealing.

The only way to understand the gap between the stated premiums and theoretical values for the long and short positions would be to realize the truth of the situation: that the overpricing of the two sides was meant to more or less wash out on a net basis. That said, the options taken as a single transaction were still overpriced and resulted in a net payment of $2,045,750 to DEUTSCHE BANK.

For all of the reasons detailed in Sections D.i-vii, it is clear that each offsetting digital option the Participants purchased, sold, or contributed to Stobie Creek Investments, LLC, represented a component element of a single transaction structure.

### *III.E. An Analysis of the Hedging Transactions Done By DEUTSCHE BANK Supports My Single Transaction Opinion.*

My opinion that the two component options in each Stobie Creek transaction comprise a single transaction is supported by an in-depth analysis of DEUTSCHE BANK's hedging transactions.

First, I must add some background on the nature and practices of option dealing and hedging. In the foreign exchange market large dealing banks, such as DEUTSCHE BANK, make markets in currency options and in exotic currency options. Digital options, which have already been described, are a type of exotic option. In essence the Black-Scholes revolution was contained in a mathematical model for option pricing that allowed option dealers to replicate synthetically long or short positions in options for purchase or sale. As a result, the modern options world consists of counterparties, such as the Participants, who buy and sell options to dealing banks who in turn replicate option exposures using mathematical models. These banks, including DEUTSCHE BANK, run what are

known as risk books containing a large variety of plain and exotic options. A basic tenet of the business of running an option risk book is to keep the book hedged, or "flat," with respect to movements in exchange rates. Options desks hedge their risk by taking positions in spot and forward foreign exchange. Hence an option that is a call or a put on the euro can be hedged with transactions in spot and forward euros. The "recipe" for the hedge comes from the mathematics of the Black-Scholes family of models. The original Black-Scholes model was for put and call options on shares of stock. It has been modified to work for currency options and exotic currency options, as was noted above.

A typical option desk at a dealing bank is organized by currency. There are traders who trade pound sterling against the dollar, the dollar against the yen, and the dollar against the Swiss franc, to take some examples. There are also option dealers who buy and sell options and exotic options on currencies. Finally there are "sales-traders" who bridge between the banks' customers and the traders who make the markets in spot, forward, and options.

In the normal sequence of events, a customer of the dealing bank asks his assigned sales-trader for a bid price and an ask price for an option. For example, he might inquire about a call on the euro (which can also be called a put on the dollar). The sales-trader obtains bids and asks for the option from his trader. Suppose the customer agrees to buy at the price. The sales-trader informs the option dealer at once. This triggers the recording of the option that the bank has sold in the bank's risk book (which on belief DEUTSCHE BANK refers to as RMS[34]).

William Vogel, who worked in the middle office of DEUTSCHE BANK during these transactions, described the trade information flow in his deposition as follows:

> Somebody books it on ODET to start with. Usually the sales person who does the trade. Then that would go into RMS,…and then from there someone would make a confirmation of deal…[35]

When an option dealer like DEUTSCHE BANK buys or sells an option, it immediately does an offsetting hedge in the foreign exchange market. I will refer to this as the

[34] RMS stands for Risk Management System, which I understand to be DEUTSCHE BANK's tool for managing, or hedging, its option risk.

[35] Deposition of William Vogel, August 13, 2007, p. 24.

"initial hedge." In this example, the bank will have sold a call on the euro. To hedge itself against moves in the euro, the bank must buy some number of euros against dollars immediately - the exact amount is provided by the bank's software that incorporates the mathematical machinery of the Black-Scholes family of models. Typically, the option desk will buy the requisite number of euros from the bank's own spot dealing desk. This would be an "internal hedge." What has happened in this case is that the spot desk has sold euros to the options desk. Next, the spot desk itself has to go outside of the bank to replenish its own euro position. Whatever the exact process, we know in this example that the bank must buy euros and sell dollars, regardless of whether there is an intermediate step of doing the internal trade with the bank's spot desk.

This then is the drill for all option dealing: The bank buys or sells an option, or group of options, and immediately does a one-off transaction in the spot market to create the initial hedge against short-term movements in the relevant exchange rate. Both the option and its hedge are booked in the option risk book.

With regard to the offsetting pairs of digital options DEUTSCHE BANK and the Participants entered into, each offsetting option pair was assigned one deal number in the ODET system, and the details of the component options were spread across "legs," as shown below:

<u>ODET Legs</u>

Leg 0: Common Terms

Leg 1: Long Option

Leg 2: Short Option

Leg zero is a recording of the common terms of the entire transaction, including the net amount to be paid by the Participant. Leg one is the long digital option. Leg two is the short option. Legs one and two contain the stated premium, the theoretical price, the option parameters, such as the strike, the face amount, trade date, expiration date plus several pricing factors, such as interest rates and volatility. Moreover, legs one and two show the recommended hedging amounts from the bank's option model for each option under the captions of buy and sell currency amounts.

With the passage of time and movements in exchange rates (and other parameters), the correct hedge for an option changes. Once an option has been booked any changes to its hedge will be addressed only in context of the larger book. In other words, options are created with their own hedge, but thereafter the entire book of options is re-hedged as needed (i.e. the hedge is adjusted en bloc). This is referred to as "re-hedging the book." Re-hedging the book, as opposed to the re-hedging separately each of the individual options that make up the book, achieves considerable economies of scale in hedging. This is because the book typically consists of both puts and calls held in either long or short positions, meaning that some portion of the risks cancel each other out across the entire book. The book as a whole will be re-hedged daily or over shorter intervals as needed to address market volatility.

Based upon the information from DEUTSCHE BANK in this case, DEUTSCHE BANK's aggregate risk position is managed with another software program/database called RMS, as referred to above, on p.81. RMS contains ODET entries plus it allows for direct modification independent of ODET.

Now I turn to the particular problem of hedging digital and pairs of digital options that concern Stobie Creek. A single digital option is relatively simple to value but, ironically, difficult to hedge. The hedging difficulty comes from the fact that at expiration the option either pays nothing or pays a lump sum of money. This all-or-nothing payoff feature is strictly a function of what the dealing bank, as calculation agent, determines to be the in-the-money or out-of-the-money status of the option at exactly 10 AM in New York on expiration date. The complexity of the hedging comes from the fact that if the spot exchange rate is hovering around the strike close to expiration a small movement in the exchange rate, flipping the option in- or out-of-the money will have a profound effect for the option owner and the dealing bank. By way of analogy, the hedge will have to do a huge amount of work over a small change in exchange rates if it is going to immunize the dealer from the risk of making the lump sum payoff. For this reason digital option hedging is notoriously tricky.

This situation is made more complex when there are two digital options, one long and the other short but with

only a razor-thin difference in strike prices. Effectively the offsetting digital options create a three-part payoff matrix. Payoff number one is zero, as both options are out-of-the-money; payoff number two is equal to the net difference between the payoffs of the long and short options. This is equal to $2,045,750 in the case of the Stobie Creek EUR/USD offsetting options. So far in this discussion the payoffs one and two create a small digital option.

The complexity comes when we look at the potential third payoff, for what I call the payoff from hitting the sweet spot. This is the case where the long option is in-the-money but the short option is out-of-the money. For the Stobie Creek EUR/USD offsetting options this would pay a sum of $202,529,250.[36]

I have discussed in this report that DEUTSCHE BANK would never have allowed this outcome to occur. Yet if it did occur, and this is completely hypothetical, it would mean a huge binary payoff inside the gap between the two strikes (the sweet spot).

---

[36] Even assuming that DEUTSCHE BANK would have allowed the sweet spot to be realized the sweet spot payoff does not figure largely in the initial price of the options because of the possibility of landing at expiration between the strikes is mathematically remote.

DEUTSCHE BANK did not hedge the risk of the sweet spot. DEUTSCHE BANK hedged all of the risk of the offsetting options except for the risk the sweet spot would be hit, as is evidenced by examining the RMS reports.[37]

According to the trade confirmations of each of the Participants[38], the long component of the EUR/USD options had a strike of 0.9912, and the short component had a strike of 0.9914. Therefore, the sweet spot would have been between these strikes. When these options were entered into ODET, the strike prices of the long and short components were correct. However, when the trade data passed to the RMS system, the short component strike was changed to that of the long component, so that both long and short strikes were 0.9912. Similarly, when the USD/CHF option data were passed to RMS, the strike price for the short component, which was 1.7029 on the confirmations, was altered to match the long component's

[37]DOJ-STOBIE-243939-243942,DOJ-STOBIE-243967-243970,DOJ-STOBIE-243935-DOJ-STOBIE-243938,DOJ-STOBIE-243971-243974,DOJ-STOBIE-243927-243930,DOJ-STOBIE-243979-243982,DOJ-STOBIE-243931-243934,DOJ-STOBIE-243975-243978,DOJ-STOBIE-243947-243950,DOJ-STOBIE-243959-243962,DOJ-STOBIE-243943-243946,DOJ-STOBIE-243963-243966,DOJ-STOBIE-243951-243954,DOJ-STOBIE-243955-243958.

[38] IRS-JG-05255-05257, IRS-JG-05261-05263, IRS-JG-05267-05269, IRS-JG-05273-05275, IRS-JG-00597-00599, IRS-JG-00603-00605, IRS-JG-04061-04063, IRS-JG-04067-04069, IRS-JG-05303-05305, IRS-JG-02954-02956, IRS-JG-01765-01767, IRS-JG-01771-01773, IRS-JG-05243-05245, IRS-JG-05249-05251.

price of 1.7027. (See Footnote 37 for a listing of all the RMS reports).

In a Q&A exchange in William Vogel's deposition, the changing of the strike prices in RMS was described as follows:

> Q. Is there a difference in the strike price on the second entry than the first entry?
>
> A. Yes.
>
> Q. So the strike price on the second entry, do you know why that was changed?
>
> A. I can't remember fully, but it was something to do with the way that the traders wanted to look at the trades when they were done. When they were looking at them in risk management, they wanted to have the strikes the same or something.
>
> Q. They wanted to have the strikes on the A leg and B leg be the same?
>
> A. I think so, yes. [39]

By changing the strike of the short option DEUTSCHE BANK's trading desk removed the theoretical risk of the sweet spot and accordingly no longer maintained an internal hedge for the theoretical risk of hitting the sweet spot. Hedging the sweet spot, even narrow ones such as we find in this

[39] Deposition of William Vogel, August 13, 2007, p. 32.

case, is not without cost. Moreover, the cost of maintaining a hedge for the sweet spot would have grown large and difficult to manage if the spot exchange rate at the end of the transaction's life were in the proximity of the strikes. Setting the strikes equal precluded the need to run a costly, albeit unnecessary, hedge.

In my opinion there is strong evidence showing that in the case of the Stobie Creek options, DEUTSCHE BANK did not - nor did it ever intend to - hedge the sweet spot.

DEUTSCHE BANK of course had every right to hedge the Stobie Creek transactions in any way that it wished. What this analysis shows however is that as far as DEUTSCHE BANK was concerned, the sweet spot was an illusion, meaning something never to be attained. DEUTSCHE BANK's decision to change the strike prices for the short options (to equal the long options) supports my opinion that the offsetting options were a single transaction and this provides further evidence of the lack of a reasonable possibility of economic profit for the Stobie Creek transactions.

***III.F. The Participants Had No Business Purpose In Contributing Their Offsetting Options To Stobie Creek Investments, LLC, And Therefore Stobie Creek Investments, LLC Had No Business Purpose In The Context Of These Transactions.***

In my opinion, the Stobie Creek Participants received no financial benefit by contributing their offsetting options to the Stobie Creek Investments, LLC.

When the Participants contributed their offsetting options to Stobie Creek Investments, LLC, they gave up their direct economic interest in the EUR/USD and USD/CHF options. In exchange, they received partial interest in a pool, which contained EUR/USD and USD/CHF digital options in the same proportion to the Participants' original transaction. Each Participant's interest in Stobie Creek Investments, LLC was essentially a share of a portfolio containing the same offsetting pairs of options, each of which had a significantly negative expected return. Therefore, there was neither diversification nor a diminution of currency or trading risk by transferring to another entity.

In addition, it is my opinion that the Participants gained no centralized management benefits from contributing their offsetting options to Stobie Creek Investments, LLC.[40]

Finally, there was very little profit potential or risk exposure in the portfolio. In fact, at the time of the trade inception and contribution to Stobie Creek Investments, LLC, there was considerably less risk and profit potential than the combined net premiums of $2,045,750 would suggest. This is because the euro and the Swiss franc are highly correlated against the dollar.[41]

Currencies which move closely in value against the dollar are said to be correlated. If a portfolio is made up of two financial assets of similar value and which are highly correlated, where one asset is held long and the other is held short, they will partially offset each other in performance. Changes in the value of one will be largely offset by changes in the value of the other. Similarly, call options and put options are financial instruments that largely offset each other. This counteracting effect

[40] Modern financial theory is explicit on there being no marginal benefit to investors who pool their assets and receive pro rata interests in a resultant large portfolio, provided the investors could have reconfigured their own accounts to make scaled-down replicas of the pooled portfolio. In the case of Stobie Creek, that condition already existed. This princple underlies several important thereoms of finance, including the Miller and Modigliani propositions on financing and the capital structure of the firm.

[41] A perfect positive correlation is defined as 1. A perfect negative correlation is -1. No correlation is 0.

significantly decreases the risk of loss as well as the potential for profit. In the specific case in Stobie Creek, the options being compared are a euro call and a Swiss franc put. The correlation of the euro versus the Swiss franc is about 0.97.[42] This is a very high correlation for two currencies, and is explained by the economic, political, and geographical proximities of the currencies within Europe. In other words, the euro and Swiss franc move in near lock-step against the dollar; when the euro goes up against the dollar, it is very likely the Swiss franc is also going up, and vice versa. Because the Participants' options were partially offsetting, the economic exposure was much less than the net premiums, totaling $2,045,750, would suggest.

One might ask why neither pair of options expired in the money, given the opposing nature of these highly correlated currency options. The answer is that the currencies did not move significantly between March 31 and April 17, 2000, and therefore both sets of options expired out of the money. Conversely, given the high correlation between the euro and the Swiss franc, it would have been extremely

[42] I measured the correlations for EUR versus CHF as of 3/31/2000 as follows: 17 day, 0.9728; 30 day, 0.9709; 60 day, 0.9720; 90 day, 0.9704.

unlikely for both sets of options to have expired in the money, since one option was a call on the euro and the other was a put on the Swiss franc.

Given the inability to satisfy any of the business purposes addressed above, I conclude that the Participants created no meaningful advantage by contributing the offsetting options to Stobie Creek Investments, LLC, and that therefore Stobie Creek Investments, LLC had no business purpose in the context of these transactions.

## IV. CONCLUSION

After examining the offsetting option pairs in Stobie Creek, I conclude that DEUTSCHE BANK's unusual pricing of the offsetting options produced an overstatement of the option premiums on a gross and net basis when compared with their theoretical values. On a gross basis the long and short stated premiums exceeded the theoretical values by well over 200%, while on a net basis by over 75%.

Table 15 provides a complete Stobie Creek premium analysis.

**Stobie Creek**
Premium Analysis

| | | Deutsche Stated Premium | DeRosa Theoretical Value | % Change Theoretical to Stated Premium | Deutsche Theoretical Premium | % Change Theoretical to Stated Premium |
|---|---|---|---|---|---|---|
| **Gross Long** | | | | | | |
| JFW Investments, LLC | EUR/USD | ($9,662,500) | (2,205,384) | 438.13% | ($2,184,585) | 442.30% |
| JFW Investments, LLC | USD/CHF | ($9,662,500) | (3,841,698) | 251.52% | ($3,883,632) | 248.80% |
| PCW Investments, LLC | EUR/USD | ($9,902,500) | (2,260,162) | 438.13% | ($2,238,846) | 442.30% |
| PCW Investments, LLC | USD/CHF | ($9,902,500) | (3,937,119) | 251.52% | ($3,980,094) | 248.80% |
| CSW Investments, LLC | EUR/USD | ($9,662,500) | (2,205,384) | 438.13% | ($2,184,585) | 442.30% |
| CSW Investments, LLC | USD/CHF | ($9,662,500) | (3,841,698) | 251.52% | ($3,883,632) | 248.80% |
| DKW Senior Investments, LLC | EUR/USD | ($2,707,500) | (617,964) | 438.13% | ($612,136) | 442.30% |
| DKW Senior Investments, LLC | USD/CHF | ($2,707,500) | (1,076,471) | 251.52% | ($1,088,221) | 248.80% |
| David K. Welles Sr. 1994 Trus | EUR/USD | ($44,820,000) | (10,229,785) | 438.13% | ($10,133,309) | 442.30% |
| David K. Welles Sr. 1994 Trus | USD/CHF | ($44,820,000) | (17,819,913) | 251.52% | ($18,014,423) | 248.80% |
| DKW Junior Investments, LLC | EUR/USD | ($15,870,000) | (3,622,193) | 438.13% | ($3,588,032) | 442.30% |
| DKW Junior Investments, LLC | USD/CHF | ($15,870,000) | (6,309,728) | 251.52% | ($6,378,601) | 248.80% |
| VJ Investments, LLC | EUR/USD | ($9,662,500) | (2,205,384) | 438.13% | ($2,184,585) | 442.30% |
| VJ Investments, LLC | USD/CHF | ($9,662,500) | (3,841,698) | 251.52% | ($3,883,632) | 248.80% |
| | **TOTAL LONG** | ($204,575,000) | ($64,014,581) | 319.58% | ($64,238,312) | 318.46% |
| **Gross Short** | | | | | | |
| JFW Investments, LLC | EUR/USD | $ 9,565,875 | $ 2,156,861 | 443.51% | $ 2,136,449 | 447.75% |
| JFW Investments, LLC | USD/CHF | $ 9,565,875 | $ 3,780,997 | 253.00% | $ 3,822,364 | 250.26% |
| PCW Investments, LLC | EUR/USD | $ 9,803,475 | $ 2,210,433 | 443.51% | $ 2,189,515 | 447.75% |
| PCW Investments, LLC | USD/CHF | $ 9,803,475 | $ 3,874,910 | 253.00% | $ 3,917,305 | 250.26% |
| CSW Investments, LLC | EUR/USD | $ 9,565,875 | $ 2,156,861 | 443.51% | $ 2,136,449 | 447.75% |
| CSW Investments, LLC | USD/CHF | $ 9,565,875 | $ 3,780,997 | 253.00% | $ 3,822,364 | 250.26% |
| DKW Senior Investments, LLC | EUR/USD | $ 2,680,425 | $ 604,367 | 443.51% | $ 598,648 | 447.75% |
| DKW Senior Investments, LLC | USD/CHF | $ 2,680,425 | $ 1,059,462 | 253.00% | $ 1,071,053 | 250.26% |
| David K. Welles Sr. 1994 Trus | EUR/USD | $ 44,371,800 | $ 10,004,708 | 443.51% | $ 9,910,027 | 447.75% |
| David K. Welles Sr. 1994 Trus | USD/CHF | $ 44,371,800 | $ 17,538,346 | 253.00% | $ 17,730,230 | 250.26% |
| DKW Junior Investments, LLC | EUR/USD | $ 15,711,300 | $ 3,542,497 | 443.51% | $ 3,508,972 | 447.75% |
| DKW Junior Investments, LLC | USD/CHF | $ 15,711,300 | $ 6,210,030 | 253.00% | $ 6,277,973 | 250.26% |
| VJ Investments, LLC | EUR/USD | $ 9,565,875 | $ 2,156,861 | 443.51% | $ 2,136,449 | 447.75% |
| VJ Investments, LLC | USD/CHF | $ 9,565,875 | $ 3,780,997 | 253.00% | $ 3,822,364 | 250.26% |
| | **TOTAL SHORT** | $202,529,250 | $62,858,327 | 322.20% | $ 63,080,161 | 321.07% |
| **Net** | | | | | | |
| JFW Investments, LLC | EUR/USD | ($96,625) | ($48,523) | 199.13% | ($48,136) | 200.73% |
| JFW Investments, LLC | USD/CHF | ($96,625) | ($60,701) | 159.18% | ($61,268) | 157.71% |
| PCW Investments, LLC | EUR/USD | ($99,025) | ($49,729) | 199.13% | ($49,332) | 200.73% |
| PCW Investments, LLC | USD/CHF | ($99,025) | ($62,209) | 159.18% | ($62,789) | 157.71% |
| CSW Investments, LLC | EUR/USD | ($96,625) | ($48,523) | 199.13% | ($48,136) | 200.73% |
| CSW Investments, LLC | USD/CHF | ($96,625) | ($60,701) | 159.18% | ($61,268) | 157.71% |
| DKW Senior Investments, LLC | EUR/USD | ($27,075) | ($13,597) | 199.12% | ($13,488) | 200.73% |
| DKW Senior Investments, LLC | USD/CHF | ($27,075) | ($17,009) | 159.18% | ($17,168) | 157.71% |
| David K. Welles Sr. 1994 Trus | EUR/USD | ($448,200) | ($225,077) | 199.13% | ($223,281) | 200.73% |
| David K. Welles Sr. 1994 Trus | USD/CHF | ($448,200) | ($281,567) | 159.18% | ($284,193) | 157.71% |
| DKW Junior Investments, LLC | EUR/USD | ($158,700) | ($79,696) | 199.13% | ($79,060) | 200.73% |
| DKW Junior Investments, LLC | USD/CHF | ($158,700) | ($99,698) | 159.18% | ($100,628) | 157.71% |
| VJ Investments, LLC | EUR/USD | ($96,625) | ($48,523) | 199.13% | ($48,136) | 200.73% |
| VJ Investments, LLC | USD/CHF | ($96,625) | ($60,701) | 159.18% | ($61,268) | 157.71% |
| | **NET TOTAL** | ($2,045,750) | ($1,156,254) | 176.93% | $ (1,158,150) | 176.64% |

Table 15

I also conclude that these differences would have been even larger if the prices reflected my opinion that the "sweet spot" in the spread between the offsetting option strikes would never be hit.

When one examines the digital currency options from viewpoint of their implied volatility (see pp. 40-42), which is how traders typically analyze and compare currency options, the stated premiums are completely off the scale of experience.

Furthermore, DEUTSCHE BANK, as the calculating agent, could ensure that the spot rate for the relevant currency pairs at 10:00am New York time on the expiration date would never fall within the 2 pip spread established between the long and short offsetting options. That is, one option would never expire without the other expiring, or be exercised without the other being exercised.

I conclude that any prudent investor will always make an effort to calculate his expected return on a potential investment. My analysis reveals expected returns of approximately -77% for the Stobie Creek EUR/USD offsetting options and -60% for their USD/CHF options. When adjusted

to include the fees paid to Jenkens & Gilchrist and Shumaker, Loop & Kendrick LLP, these negative expected returns shrink to below -90% for the EUR/USD and the USD/CHF offsetting options.

Additionally, I conclude that the offsetting options were component pieces of a single transaction structure. Together, they are looked upon as component parts of a singular transaction structure in the trade confirmations, which evidence a complete and binding agreement between the parties as to the terms of the transaction to which they relate. This single transaction structure is supported by marketing literature and DEUTSCHE BANK internal documentation which show the reliance the options have upon each other for credit and margin purposes.

Finally, I conclude that there is no meaningful business purpose in contributing the options to Stobie Creek Investments, LLC. There is no evidence of the Participants receiving any material advantage in terms of diversification or management support through Stobie Creek Investments, LLC, than was otherwise available through the Participants' LLC's.

David F. DeRosa, Ph.D.

## V. APPENDICIES

Appendix I: Dr. DeRosa's Résumé

Appendix II: Discovery Documents

Appendix III: List of Similar DEUTSCHE BANK Transactions

Appendix IV: List of Formulas

# APPENDIX I

**David F. DeRosa's Résumé**

(4 pages to follow)

**DeRosa Research and Trading, Inc.**
495 White Oak Shade Road
New Canaan, CT 06840
Tele (203) 801-4340 Fax (203) 801-4342
derosa@derosa-research.com

# Dr. David DeRosa

## Education

**The University of Chicago, Graduate School of Business** Chicago, Illinois
Doctor of Philosophy (Ph.D.), December 1978. Finance and Economics.
- Dissertation: Rates of Return on Common Stocks and Inflation

**The University of Chicago** Chicago, Illinois
Bachelor of Arts (AB), August 1972.
- Major Field: Economics

## Experience

1997 - Present **DeRosa Research and Trading, Inc.** New Canaan, Connecticut
*President and Owner*
- Consultant for international financial markets and derivative instruments matters.
- Expert witness in foreign exchange, international finance, emerging markets, derivatives, and risk management.
- Commodity Trading Advisor (effective May 1998).

Spring 1996 - Present **Yale School of Management** New Haven, Connecticut
*Adjunct Professor of Finance*
- Instructor for advanced graduate courses in financial management, international finance, financial policy in emerging markets, foreign exchange, derivatives, and asset management.

Summer 2006 - Present **Columbia University** New York, New York
*Adjunct Associate Professor Industrial Engineering and Operations Research*
- Instructor in graduate program in Financial Engineering

1998 - 2004 **Midwest Independent Transmission System Operator** Carmel, Indiana
*Director, Chairman of the Markets Committee, Member of the Finance and Audit Committee*
- Member of a seven-director board for MISO, which oversees wholesale transmission electricity in the Midwest and portions of Canada.

1999 - Present **Rubicon Fund Management** Cayman Islands
*Director*
- Member of boards of directors of Cayman Islands-registered macro-hedge funds.

2002 - Present **BlueCrest Capital International** Cayman Islands
*Director*
- Member of boards of directors of Cayman Islands-registered investment companies.

2003 - Present **The Children's Investment Fund** Cayman Islands
*Director*
- Member of boards of directors of Cayman Islands-registered European equity, event-driven hedge funds.

2005 - Present **GSA Capital International** Cayman Islands
*Director*
- Member of boards of directors of Cayman Island-registered statistical arbitrage hedge funds.

2005 - 2006 **CCC Carbon Fund** Cayman Islands
*Director*
- Member of boards of directors of Cayman Island-registered hedge funds.

1998 - 2004 **Bloomberg News** New Canaan, Connecticut
*Financial Columnist*
- Regular columnist for Bloomberg News, Bloomberg Radio, and Bloomberg Magazines on international finance, foreign exchange, and global politics.

1996-1997 **Quadrangle Investments, LLC** Greenwich Connecticut
*Co-Founder and Managing Partner*
- Global trader of foreign exchange, options, and exotic options on foreign exchange.
- Founder of macro-fundamental hedge fund with $32 million in assets.

1993 - 1996 **Swiss Bank Corporation** New York, New York
*Director, Foreign Exchange Trading*
- Global proprietary trader of foreign exchange, options, and exotic options on foreign exchange.
- Head of SBC technical education for North America.
- Instructor, intensive training courses for traders.
- Spokesman to financial press (wire services, newspapers, and television) re: foreign exchange issues.

Spring 1995 - Fall 1996 **The University of Chicago, Graduate School of Business** Chicago, Illinois
*Lecturer in Finance*
- Concurrent with Swiss Bank.

1992 – 1993 **BEA Associates** New York, New York
*Vice President and Derivatives Portfolio Manager*
- Portfolio Manager in $7 billion hedging and arbitrage group.

1988 - 1992 **Alliance Capital Management L.P.** New York, New York
*Vice President – Derivatives and Synthetics*
- Handled portfolio management, product design, trading, and marketing for start-up derivatives group.

1985 - 1988 **DeRosa & Company** Los Angeles, California
*President and Owner*
- Established NASD broker-dealer firm which performed soft-dollar funded quantitative research for investment managers. Company sold in 1988.

1984 - 1985 **International Financial Advisers** Kuwait City, Kuwait
*Acting General Manager*
- Advised and ran operations of IFA, a registered investment banking firm in Kuwait owned by members of the royal family and their close business associates.

1981 - 1983 **Consulting Center For Finance and Investment** Riyadh, Saudi Arabia
*Senior Vice President*

1980 - 1981 **Wilshire Associates** Santa Monica, California
*Senior Associate*

1979 - 1980 **The University of Southern California** Los Angeles, California
*Assistant Professor of Finance and Business Economics*

1979 **Ministry of Finance and National Economy** Riyadh, Saudi Arabia
*Economic Advisor*

1975 - 1978 **Loyola University of Chicago** Chicago, Illinois
*Instructor in Finance*

## Books

In Defense of Free Capital Markets: The Case Against a New International Financial Architecture, Bloomberg Press, January, 2001. (Turkish language edition, Simple Chinese edition).

Options on Foreign Exchange, 2nd ed. John Wiley & Sons, 2000 (Japanese Language Edition, Toyo Keizai, Tokyo).

Currency Derivatives, John Wiley & Sons, 1998.

Managing Foreign Exchange Risk, Revised Edition, Irwin / McGraw-Hill, 1996 (Japanese Language Edition, Yuuhikaku, Tokyo).

## Chapters, Articles and Seminars

"China's Defense of the Peg Perpetuates Central Planning", *Cato Journal,* Vol.25, No. 1 (Winter 2005).

"Financial Markets and Legal Ambiguity," Columbia University Practitioners in Mathematics of Finance Conference, October 2003

"Memo to Argentina: Dollarize or Die" In *Newsweek*, December 17, 2001.

'Innovations in World Monetary Policy",," Columbia University Practitioners in Mathematics of Finance Conference, September 15, 2001

"Recent Innovations in Japanese Monetary Policy," Yale University, August 1, 2001

"The Capital Mistress: Free Market Models and the Global Economy" In *Harvard International Review*, Summer 1999.

"Foreign Exchange Hedging by Managers of International Fixed Income and Equity Portfolios" In *Handbook of Portfolio Management*, edited by Frank J. Fabozzi. New Hope, PA: Frank J. Fabozzi Associates, 1998.

"Going Along for the Ride" In *Newsweek*, June 22, 1998.

"The Southeast Asian Currency Crisis," New York Society of Securities Analysts, New York, Summer 1997.

"An Option-Based Approach to Currency Risk Mangement." In *Strategic Currency Investing*, edited by Andrew W. Gitlin. Chicago: Probus Publishing, 1993.

"Equity-Linked Cross Currency Swaps." With Philip G. Nehro in Cross Currency Swaps, edited by Carl R Beidleman. Homewood, IL: Business-One Irwin, 1992.

"An Introduction to Currency Insurance" In *Global Portfolios – Quantitative Tools for Maximum Performance*, edited by Robert Aliber and Brian Bruce. Homewood, IL: Dow Jones-Irwin, 1991.

**Expert Witness**

Richard H. & Patricia Penske v. Lewis, Rice & Fingersh, L.C. – Expert Report Eastern District of Pennsylvania

Carmel Partners, et al. v. United States – Expert Report and Deposition U.S. District Court, Southern District of Indiana

JBJZ, et al. v. United States – Expert Report and Deposition for United States Court of Federal Claims

Murfarm Farms, et al. v. United States – Expert Report and Deposition for the United States Court of Federal Claims

Gary Woods, et al. v. United States – Expert Report and Deposition U.S. District Court, Western District of Texas

Sala v. United States – Expert Report and Deposition U.S. District Court, District of Colorado

K2 Trading, et al. v. United States – Expert Report and deposition for the United States Court of Federal Claims

Jade Trading, et al. v. United States – Expert Report and Testimony in the United States Court of Federal Claims (2005)

COLM Producer, Inc., Kornman & Associates, and the Ettman Family Trust v. The United States, expert report and deposition for U.S. District Court, Northern District of Texas

Compton et al v. Alex Brown et al., Case No. 24-C-03-007514, Deposition for Circuit Court of Baltimore City

Klamath v. The United States and Kinabalu v. The United States, expert report and testimony U.S. District Court, Eastern District of Texas

United States of America v. Polina Sirotina; Mamed Mekhtiev; Albert Guglielmo; Philip Levinson, and Justin Fauci (Evergreen International Spot Trading) – Testimony in U.S. District Court, Eastern District of New York (May – June 2003)

"Opening Trade in Financial Services – The Chile and Singapore Examples" – Testimony before the U.S. House of Representatives Committee on Financial Services (March 2003)

High Risk Opportunities Hub Fund LTD. v. Credit Lyonnais and Societe Generale – Affidavit to Supreme Court of the State of New York (May 2002)

Hermes v. J.P. Morgan – Affidavit to Superior Court of New York (2002)

Re: Enron – Testimony in U.S. Bankruptcy Court (Jan 2001)

De Kwiatkowski v. Bear Stearns – Testimony in U.S. District Court, Southern District of New York (May 2000)

Evergreen Security, LTD v. Windels Marx Lane & Mittendorf, LLP – Expert Report in U.S. District Court, Middle District of Florida (November 2003)

**Appendix II**
**Discovery Documentation Sources**

1 - Bank for International Settlements, Triennial Central Bank Survey of Foreign Exchange and Derivatives Market Activity in 2001. Final global results March 2002, Basel pg.1 and 5.

2 - Chicago Mercantile Exchange, 8K SEC Filing, 12/6/02, pg. 41

3 - Reiner, Eric and Mark Rubenstein,
"Breaking Down the Barriers," Risk 4 (September 1991a): 29-35.
"Unscrambling the Binary Code," Risk 4 (October 1991b): 75-83.

4 - Harding, Paul C., Mastering the ISDA Master Agreement, Harlow (Great Britian), 2002, pg 39.

**Bates Documents:**

5 DOJ STOBIE 00236426-00236436
6 DOJ STOBIE 00236503-00236513
7 DOJ STOBIE 00236415-00236425
8 DOJ STOBIE 00113062-00113072
9 DOJ STOBIE 00236393-00236403
10 DOJ STOBIE 00236525-00236535
11 DOJ STOBIE 00236404-00236414
12 DOJ STOBIE 00236514-00236524
13 DOJ STOBIE 00236448-00236458
14 DOJ STOBIE 00236481-00236491
15 DOJ STOBIE 00236437-00236447
16 DOJ STOBIE 00236492-00236502
17 DOJ STOBIE 00236459-00236469
18 DOJ STOBIE 00236470-00236480
19 DOJ STOBIE 00000025-00236366
20 IRS-JG-05255-05257
21 IRS-JG-05261-05263
22 IRS-JG-05267-05269
23 IRS-JG-05273-05275
24 IRS-JG-00597-00599
25 IRS-JG-00603-00605
26 IRS-JG-04061-04063
27 IRS-JG-04067-04069
28 IRS-JG-05303-05305
29 IRS-JG-02954-02956
30 IRS-JG-01765-01767
31 IRS-JG-01771-01773
32 IRS-JG-05243-05245
33 IRS-JG-05249-05251
34 JG-NC043771 - JG-NC 043498
35 JG-NC056068 - JG-NC 056069
36 JG-NC063557 - JG-NC 065239
37 JG-NC065418 - JG-NC 065419
38 JG-NC065429 - JG-NC 065430
39 JG-STRCK-004034-JG-STRCK-004420
40 SLK 2442 - SLK 2464
41 SLK 9655 - SLK 9685
42 DOJ-Stobie-243939-243942
43 DOJ-Stobie-243967-243970
44 DOJ-Stobie-243935-243938
45 DOJ-Stobie-243971-243974
46 DOJ-Stobie-243927--243930
47 DOJ-Stobie-243979--243982
48 DOJ-Stobie-243931-243934
49 DOJ-Stobie-243975-243978
50 DOJ-Stobie-243947-243950
51 DOJ-Stobie-243959-243962
52 DOJ-Stobie-243943-243946
53 DOJ-Stobie-243963-243966
54 DOJ-Stobie-243951-243954
55 DOJ-Stobie-243955-243958
56 PLAINTIFF'S 0006865-0006871

# APPENDIX III

## 1999 AND 2000 DEUTSCHE BANK DIGITAL OPTION TRANSACTIONS WITH 1% NET PREMIUM TO LONG PREMIUM

(Compiled from DOJ-STOBIE-00009438 to DOJ-STOBIE-00009500)

| # of Transactions | Trade Date | Name of Entity | Long Premium | Net Premium | Currency | Strike 1 | Strike 2 |
|---|---|---|---|---|---|---|---|
| 1 | Nov-9-99 | JRG Homestead Partners | $32,000,000 | $320,000 | JPY | 107.17 | 107.19 |
| 2 | Nov-9-99 | Green River Partners | $13,000,000 | $130,000 | JPY | 107.17 | 107.19 |
| 3 | Nov-9-99 | Green River Partners | $13,000,000 | $130,000 | JPY | 107.17 | 107.19 |
| 4 | Nov-9-99 | Stonecrest Partners | $4,500,000 | $45,000 | JPY | 107.17 | 107.19 |
| 5 | Nov-9-99 | Stonecrest Partners | $500,000 | $5,000 | JPY | 107.17 | 107.19 |
| 6 | Nov-10-99 | Hojo Investment Partners | $2,200,000 | $22,000 | JPY | 101.37 | 101.35 |
| 7 | Nov-10-99 | Hojo Investment Partners | $5,100,000 | $51,000 | JPY | 101.37 | 101.35 |
| 8 | Nov-10-99 | Joewood Partners | $4,000,000 | $40,000 | JPY | 101.37 | 101.37 |
| 9 | Nov-10-99 | AGL Partners | $2,350,000 | $23,500 | GBP | 1.6003 | 1.6001 |
| 10 | Nov-11-99 | Blatt Partners | $2,600,000 | $26,000 | JPY | 101.03 | 101.01 |
| 11 | Nov-11-99 | Cleanmist Partners | $14,000,000 | $140,000 | JPY | 101.03 | 101.01 |
| 12 | Nov-11-99 | Cleanmist Partners | $14,000,000 | $140,000 | JPY | 101.03 | 101.01 |
| 13 | Nov-11-99 | Cleanmist Partners | $14,000,000 | $140,000 | JPY | 101.03 | 101.01 |
| 14 | Nov-11-99 | Leemel Partners | $4,000,000 | $40,000 | JPY | 101.03 | 101.01 |
| 15 | Nov-11-99 | THI Partners | $7,500,000 | $75,000 | JPY | 101.03 | 101.01 |
| 16 | Nov-15-99 | Ridgeway Partners | $1,135,000 | $11,350 | JPY | 107.66 | 107.68 |
| 17 | Nov-15-99 | Ridgeway Partners | $1,135,000 | $11,350 | JPY | 107.66 | 107.68 |
| 18 | Nov-15-99 | Ridgeway Partners | $1,135,000 | $11,350 | JPY | 107.66 | 107.68 |
| 19 | Nov-15-99 | Ridgeway Partners | $800,000 | $8,000 | JPY | 107.66 | 107.68 |
| 20 | Nov-15-99 | McGill Investment Partners | $3,300,000 | $33,000 | JPY | 107.66 | 107.68 |
| 21 | Nov-15-99 | McGill Investment Partners | $2,600,000 | $26,000 | JPY | 107.66 | 107.68 |
| 22 | Nov-15-99 | Tomlinson Partners | $21,000,000 | $210,000 | JPY | 107.66 | 107.68 |
| 23 | Nov-15-99 | Tomlinson Partners | $21,000,000 | $210,000 | JPY | 107.66 | 107.68 |
| 24 | Nov-15-99 | Addus Partners | $27,550,000 | $275,500 | EUR | 1.0586 | 1.0588 |
| 25 | Nov-15-99 | Addus Partners | $1,450,000 | $14,500 | EUR | 1.0586 | 1.0588 |
| 26 | Nov-15-99 | Snake River Partners | $22,700,000 | $227,000 | EUR | 1.0103 | 1.0101 |
| 27 | Nov-16-99 | Snake River Partners | $8,000,000 | $80,000 | JPY | 108.31 | 108.33 |
| 28 | Nov-16-99 | Shoreline Partners | $2,050,000 | $20,500 | JPY | 108.31 | 108.33 |
| 29 | Nov-16-99 | Via Cordoba Partners | $41,500,000 | $415,000 | JPY | 108.31 | 108.33 |
| 30 | Nov-16-99 | Caminito Partners | $6,700,000 | $67,000 | JPY | 108.31 | 108.33 |
| 31 | Nov-16-99 | BGA Monterey Investments LLC | $4,850,000 | $48,500 | JPY | 108.31 | 108.33 |
| 32 | Nov-16-99 | Taylor Ridge Partners | $7,000,000 | $70,000 | JPY | 108.31 | 108.33 |
| 33 | Nov-16-99 | Cobleskill Partners | $4,400,000 | $44,000 | JPY | 108.31 | 108.33 |
| 34 | Nov-16-99 | Davidson Partners | $2,150,000 | $21,500 | JPY | 108.31 | 108.33 |
| 35 | Nov-16-99 | Davidson Partners | $2,150,000 | $21,500 | JPY | 108.31 | 108.33 |
| 36 | Nov-16-99 | Davidson Partners | $2,150,000 | $21,500 | JPY | 108.31 | 108.33 |
| 37 | Nov-16-99 | BSMT Partners | $2,150,000 | $21,500 | JPY | 108.31 | 108.33 |
| 38 | Nov-16-99 | Pelican Point Partners | $12,000,000 | $120,000 | JPY | 108.31 | 108.33 |
| 39 | Nov-16-99 | KME Maggie Partners | $6,000,000 | $60,000 | JPY | 108.31 | 108.33 |
| 40 | Nov-16-99 | Sandhill Partners | $5,000,000 | $50,000 | JPY | 108.31 | 108.33 |
| 41 | Nov-16-99 | Sandhill Partners | $500,000 | $5,000 | JPY | 108.31 | 108.33 |
| 42 | Nov-16-99 | Huntleigh Fayetteville Partners | $4,300,000 | $43,000 | JPY | 108.31 | 108.33 |
| 43 | Nov-16-99 | Huntleigh Fayetteville Partners | $4,300,000 | $43,000 | JPY | 108.31 | 108.33 |
| 44 | Nov-16-99 | Huntleigh Fayetteville Partners | $2,000,000 | $20,000 | JPY | 108.31 | 108.33 |
| 45 | Nov-16-99 | Huntleigh Fayetteville Partners | $2,500,000 | $25,000 | JPY | 108.31 | 108.33 |
| 46 | Nov-16-99 | Huntleigh Fayetteville Partners | $4,300,000 | $43,000 | JPY | 108.31 | 108.33 |
| 47 | Nov-16-99 | Huntleigh Fayetteville Partners | $2,600,000 | $26,000 | JPY | 108.31 | 108.33 |
| 48 | Nov-16-99 | Huntleigh Fayetteville Partners | $6,500,000 | $65,000 | JPY | 108.31 | 108.33 |
| 49 | Nov-16-99 | Huntleigh Fayetteville Partners | $4,300,000 | $43,000 | JPY | 108.31 | 108.33 |
| 50 | Nov-16-99 | Bonnie Bras Partners | $3,000,000 | $30,000 | JPY | 102.44 | 102.42 |
| 51 | Nov-16-99 | Blythe Brothers Partners | $2,500,000 | $25,000 | JPY | 102.44 | 102.42 |
| 52 | Nov-16-99 | Blythe Brothers Partners | $2,500,000 | $25,000 | JPY | 102.44 | 102.42 |
| 53 | Nov-16-99 | BGM Thompson Partners | $6,000,000 | $60,000 | EUR | 1.0596 | 1.0598 |
| 54 | Nov-16-99 | Blott Partners | $1,250,000 | $12,500 | CAD | 1.4404 | 1.4402 |
| 55 | Nov-16-99 | BSMT Partners | $4,200,000 | $42,000 | CAD | 1.4404 | 1.4402 |
| 56 | Nov-16-99 | Brandywine Partners | $10,500,000 | $105,000 | CAD | 1.4404 | 1.4402 |
| 57 | Nov-16-99 | River Edge Partners | $10,300,000 | $103,000 | CAD | 1.4404 | 1.4402 |
| 58 | Nov-16-99 | Edison Partners | $40,000,000 | $400,000 | CAD | 1.4404 | 1.4402 |
| 59 | Nov-16-99 | D3 Investment Partners | $10,000,000 | $100,000 | CAD | 1.4404 | 1.4402 |
| 60 | Nov-16-99 | Oconlake Partners | $8,250,000 | $82,500 | CAD | 1.4404 | 1.4402 |
| 61 | Nov-16-99 | Oconlake Partners | $8,250,000 | $82,500 | CAD | 1.4404 | 1.4402 |
| 62 | Nov-16-99 | B&S Investment Partners | $9,270,000 | $92,700 | JPY | 103.19 | 103.17 |
| 63 | Nov-16-99 | B&S Investment Partners | $1,030,000 | $10,300 | JPY | 103.19 | 103.17 |
| 64 | Nov-16-99 | DWC Ocean Partners | $4,500,000 | $45,000 | JPY | 103.13 | 103.11 |

| # of Transactions | Trade Date | Name of Entity | Long Premium | Net Premium | Currency | Strike 1 | Strike 2 |
|---|---|---|---|---|---|---|---|
| 65 | Nov-16-99 | Weisman Ohio Partners | $1,500,000 | $15,000 | JPY | 103.13 | 103.11 |
| 66 | Nov-16-99 | Timberbrook Partners | $1,500,000 | $15,000 | JPY | 103.13 | 103.11 |
| 67 | Nov-16-99 | H2Q Partners | $20,000,000 | $200,000 | JPY | 103.13 | 103.11 |
| 68 | Nov-16-99 | McKinney Partners | $6,700,000 | $67,000 | EUR | 1.0088 | 1.0086 |
| 69 | Nov-22-99 | McKinney Partners | $3,750,000 | $37,500 | JPY | 102.04 | 102.02 |
| 70 | Nov-22-99 | Boulder Ridge Partners | $2,500,000 | $25,000 | JPY | 107.37 | 107.39 |
| 71 | Nov-22-99 | Sunset Blvd. Partners | $7,500,000 | $75,000 | JPY | 102.04 | 102.02 |
| 72 | Nov-22-99 | Highwood Partners | $1,900,000 | $19,000 | JPY | 107.37 | 107.39 |
| 73 | Nov-22-99 | Highwood Partners | $4,000,000 | $40,000 | JPY | 107.37 | 107.39 |
| 74 | Nov-22-99 | Highwood Partners | $2,500,000 | $25,000 | JPY | 107.37 | 107.39 |
| 75 | Nov-22-99 | MC Beverwyck Partners | $5,000,000 | $50,000 | JPY | 102.04 | 102.02 |
| 76 | Nov-22-99 | TTI Investors Partners | $4,100,000 | $41,000 | CAD | 1.4419 | 1.4417 |
| 77 | Nov-22-99 | TTI Investors Partners | $3,000,000 | $30,000 | JPY | 107.37 | 107.39 |
| 78 | Nov-22-99 | TTI Investors Partners | $2,900,000 | $29,000 | EUR | 1.0083 | 1.0081 |
| 79 | Nov-23-99 | Bryan Lane Partners | $5,500,000 | $55,000 | JPY | 101.39 | 101.37 |
| 80 | Nov-23-99 | Chester Partners | $7,200,000 | $72,000 | JPY | 101.39 | 101.37 |
| 81 | Nov-23-99 | Chester Partners | $7,200,000 | $72,000 | JPY | 101.39 | 101.37 |
| 82 | Nov-23-99 | Chester Partners | $3,700,000 | $37,000 | JPY | 101.39 | 101.37 |
| 83 | Nov-23-99 | Tiffany Circle Partners | $10,000,000 | $100,000 | JPY | 101.19 | 101.17 |
| 84 | Nov-23-99 | WGB Executive Partners | $5,000,000 | $50,000 | JPY | 101.19 | 101.17 |
| 85 | Nov-23-99 | Timber Partners | $5,000,000 | $50,000 | JPY | 101.19 | 101.17 |
| 86 | Nov-26-99 | SRK Wilshire Partners | $35,000,000 | $350,000 | JPY | 107.21 | 107.23 |
| 87 | Nov-26-99 | Fayeville Partners | $900,000 | $9,000 | JPY | 105.37 | 105.39 |
| 88 | Nov-26-99 | Fayeville Partners | $5,200,000 | $52,000 | JPY | 105.37 | 105.39 |
| 89 | Nov-29-99 | Fayeville Partners | $900,000 | $9,000 | JPY | 105.37 | 105.39 |
| 90 | Nov-26-99 | Green Hunt Partners | $5,000,000 | $50,000 | JPY | 105.37 | 105.39 |
| 91 | Nov-26-99 | Green Hunt Partners | $5,000,000 | $50,000 | JPY | 105.37 | 105.39 |
| 92 | Nov-26-99 | Garfield Court Partners | $4,500,000 | $45,000 | JPY | 105.37 | 105.39 |
| 93 | Nov-26-99 | Garfield Court Partners | $4,500,000 | $45,000 | JPY | 105.37 | 105.39 |
| 94 | Nov-29-99 | Garfield Court Partners | $1,000,000 | $10,000 | JPY | 105.37 | 105.39 |
| 95 | Nov-29-99 | Manlius Partners | $6,000,000 | $60,000 | JPY | 105.37 | 105.39 |
| 96 | Nov-29-99 | JN Columbia Partners | $5,000,000 | $50,000 | JPY | 105.37 | 105.39 |
| 97 | Nov-29-99 | DKW Partners | $1,300,000 | $13,000 | JPY | 98.33 | 98.31 |
| 98 | Nov-29-99 | DKW Partners | $2,300,000 | $23,000 | JPY | 98.33 | 98.31 |
| 99 | Nov-29-99 | DKW Partners | $1,300,000 | $13,000 | JPY | 98.33 | 98.31 |
| 100 | Nov-29-99 | ELA Partners | $3,000,000 | $30,000 | GBP | 1.5734 | 1.5732 |
| 101 | Nov-29-99 | Jordan Investment Partners | $3,000,000 | $30,000 | EUR | 0.9839 | 0.9837 |
| 102 | Nov-29-99 | Jordan Investment Partners | $1,000,000 | $10,000 | EUR | 0.9839 | 0.9837 |
| 103 | Nov-29-99 | Clarkston Partners | $3,850,000 | $38,500 | GBP | 1.5734 | 1.5732 |
| 104 | Nov-29-99 | Clarkston Partners | $600,000 | $6,000 | GBP | 1.5734 | 1.5732 |
| 105 | Nov-29-99 | Bodacious Inc. | $4,500,000 | $45,000 | JPY | 105.76 | 105.78 |
| 106 | Nov-29-99 | Mr. Windsor Partners | $20,000,000 | $200,000 | EUR | 1.0371 | 1.0373 |
| 107 | Nov-29-99 | JR Saunders Limited Partnership | $12,000,000 | $120,000 | JPY | 105.37 | 105.39 |
| 108 | Nov-29-99 | Belle Partners | $2,750,000 | $27,500 | JPY | 105.37 | 105.39 |
| 109 | Nov-29-99 | Belle Partners | $2,750,000 | $27,500 | JPY | 105.37 | 105.39 |
| 110 | Nov-29-99 | Wedge Wood Partners | $4,000,000 | $40,000 | JPY | 105.76 | 105.78 |
| 111 | Nov-29-99 | DGH Partners | $2,500,000 | $25,000 | JPY | 105.76 | 105.78 |
| 112 | Nov-29-99 | Coddle Creek Partners | $5,000,000 | $50,000 | JPY | 105.76 | 105.78 |
| 113 | Nov-29-99 | Lexington Partners | $2,825,000 | $28,250 | JPY | 105.76 | 105.78 |
| 114 | Nov-29-99 | Lexington Partners | $2,825,000 | $28,250 | JPY | 105.76 | 105.78 |
| 115 | Nov-29-99 | Lexington Partners | $1,545,000 | $15,450 | JPY | 105.76 | 105.78 |
| 116 | Nov-29-99 | Lexington Partners | $2,825,000 | $28,250 | JPY | 105.76 | 105.78 |
| 117 | Nov-29-99 | Lexington Partners | $1,545,000 | $15,450 | JPY | 105.76 | 105.78 |
| 118 | Nov-29-99 | Lexington Partners | $2,300,000 | $23,000 | EUR | 0.9839 | 0.9837 |
| 119 | Nov-29-99 | Lexington Partners | $2,300,000 | $23,000 | EUR | 0.9839 | 0.9837 |
| 120 | Nov-29-99 | Lexington Partners | $1,475,000 | $14,750 | EUR | 0.9839 | 0.9837 |
| 121 | Nov-29-99 | Lexington Partners | $2,300,000 | $23,000 | EUR | 0.9839 | 0.9837 |
| 122 | Nov-29-99 | Lexington Partners | $1,475,000 | $14,750 | EUR | 0.9839 | 0.9837 |
| 123 | Nov-30-99 | Camberly Circle Partners | $6,050,000 | $60,500 | JPY | 105.67 | 105.69 |
| 124 | Nov-30-99 | DWJ Partners | $18,000,000 | $180,000 | EUR | 0.9823 | 0.9821 |
| 125 | Nov-30-99 | Stone Canyon Partners | $17,500,000 | $175,000 | JPY | 105.46 | 105.48 |
| 126 | Nov-30-99 | Cuttler Investment Partners | $5,000,000 | $50,000 | JPY | 105.46 | 105.48 |
| 127 | Nov-30-99 | The Gilbridge Limited Partnership | $2,000,000 | $20,000 | JPY | 105.46 | 105.48 |
| 128 | Nov-30-99 | HDC 131 Circle Partners | $11,000,000 | $110,000 | JPY | 105.46 | 105.48 |

| # of Transactions | Trade Date | Name of Entity | Long Premium | Net Premium | Currency | Strike 1 | Strike 2 |
|---|---|---|---|---|---|---|---|
| 129 | Nov-30-99 | Superior Partners | $5,000,000 | $50,000 | JPY | 105.46 | 105.48 |
| 130 | Nov-30-99 | Superior Partners | $2,250,000 | $22,500 | JPY | 105.46 | 105.48 |
| 131 | Nov-30-99 | Superior Partners | $1,600,000 | $16,000 | JPY | 105.46 | 105.48 |
| 132 | Nov-30-99 | Superior Partners | $250,000 | $2,500 | JPY | 105.46 | 105.48 |
| 133 | Nov-30-99 | Shady Oak Partners | $4,500,000 | $45,000 | EUR | 0.9823 | 0.9821 |
| 134 | Nov-30-99 | Shady Oak Partners | $4,500,000 | $45,000 | CHF | 1.5414 | 1.5412 |
| 135 | Nov-30-99 | Lake Mist Partners | $4,100,000 | $41,000 | JPY | 105.67 | 105.69 |
| 136 | Nov-30-99 | TBWB Investment Partners | $11,750,000 | $117,500 | EUR | 0.9823 | 0.9821 |
| 137 | Nov-30-99 | TBWB Investment Partners | $11,750,000 | $117,500 | CHF | 1.5414 | 1.5412 |
| 138 | Nov-30-99 | JN Columbia Partners | $1,000,000 | $10,000 | JPY | 105.46 | 105.48 |
| 139 | Nov-30-99 | GNR Partners | $3,000,000 | $30,000 | JPY | 105.46 | 105.48 |
| 140 | Dec-6-99 | SR Glades Partners | $7,500,000 | $75,000 | EUR | 0.9949 | 0.9947 |
| 141 | Dec-6-99 | SR Glades Partners | $7,500,000 | $75,000 | EUR | 0.9949 | 0.9947 |
| 142 | Dec-6-99 | Eakie Partners | $21,000,000 | $210,000 | EUR | 0.9949 | 0.9947 |
| 143 | Dec-6-99 | Ellis Street Partners | $750,000 | $7,500 | EUR | 0.9949 | 0.9947 |
| 144 | Dec-6-99 | Ellis Street Partners | $4,775,000 | $47,750 | EUR | 0.9949 | 0.9947 |
| 145 | Dec-6-99 | Ellis Street Partners | $2,925,000 | $29,250 | EUR | 0.9949 | 0.9947 |
| 146 | Dec-6-99 | Ellis Street Partners | $400,000 | $4,000 | EUR | 0.9949 | 0.9947 |
| 147 | Dec-6-99 | Hidden Hills Partners | $6,800,000 | $68,000 | EUR | 0.9949 | 0.9947 |
| 148 | Dec-7-99 | Mantua Investors Partners | $4,000,000 | $40,000 | EUR | 1.0009 | 1.0007 |
| 149 | Dec-7-99 | Wynstone Partners | $21,000,000 | $210,000 | EUR | 1.0009 | 1.0007 |
| 150 | Dec-7-99 | SAB Walnut Hill Partners | $48,800,000 | $488,000 | EUR | 1.0009 | 1.0007 |
| 151 | Dec-7-99 | SAB Walnut Hill Partners | $8,700,000 | $87,000 | JPY | 104.61 | 104.63 |
| 152 | Dec-7-99 | Crossfield Partners | $11,950,000 | $119,500 | EUR | 1.0009 | 1.0007 |
| 153 | Dec-21-99 | JB Investment Partners | $4,000,000 | $40,000 | JPY | 105.67 | 105.69 |
| 154 | Dec-21-99 | JB Investment Partners | $4,000,000 | $40,000 | JPY | 105.67 | 105.69 |
| 155 | Dec-21-99 | Collins North Partners | $7,000,000 | $70,000 | JPY | 105.78 | 105.80 |
| 156 | Dec-21-99 | Swinford Partners | $10,000,000 | $100,000 | JPY | 99.44 | 99.42 |
| 157 | Dec-21-99 | Swinford Partners | $10,000,000 | $100,000 | EUR | 0.9769 | 0.9767 |
| 158 | Dec-21-99 | Lafeyette Partners | $2,000,000 | $20,000 | EUR | 0.9769 | 0.9767 |
| 159 | Feb-11-00 | Allied Partners | $4,500,000 | $45,000 | JPY | 110.78 | 110.80 |
| 160 | Feb-11-00 | Allied Partners | $1,350,000 | $13,500 | EUR | 0.9698 | 0.9696 |
| 161 | Mar-10-00 | Acacia Partners | $7,100,000 | $71,000 | JPY | 109.25 | 109.27 |
| 162 | Mar-10-00 | Acacia Partners | $7,100,000 | $71,000 | CHF | 1.6150 | 1.6148 |
| 163 | Mar-31-00 | Stobie Creek | $2,707,500 | $27,075 | EUR | 0.9912 | 0.9914 |
| 164 | Mar-31-00 | Stobie Creek | $2,707,500 | $27,075 | CHF | 1.7027 | 1.7029 |
| 165 | Mar-31-00 | Stobie Creek | $44,820,000 | $448,200 | EUR | 0.9912 | 0.9914 |
| 166 | Mar-31-00 | Stobie Creek | $44,820,000 | $448,200 | CHF | 1.7027 | 1.7029 |
| 167 | Mar-31-00 | Stobie Creek | $15,870,000 | $158,700 | EUR | 0.9912 | 0.9914 |
| 168 | Mar-31-00 | Stobie Creek | $15,870,000 | $158,700 | CHF | 1.7027 | 1.7029 |
| 169 | Mar-31-00 | Stobie Creek | $9,662,500 | $96,625 | EUR | 0.9912 | 0.9914 |
| 170 | Mar-31-00 | Stobie Creek | $9,662,500 | $96,625 | CHF | 1.7027 | 1.7029 |
| 171 | Mar-31-00 | Stobie Creek | $9,902,500 | $99,025 | EUR | 0.9912 | 0.9914 |
| 172 | Mar-31-00 | Stobie Creek | $9,902,500 | $99,025 | CHF | 1.7027 | 1.7029 |
| 173 | Mar-31-00 | Stobie Creek | $9,662,500 | $96,625 | EUR | 0.9912 | 0.9914 |
| 174 | Mar-31-00 | Stobie Creek | $9,662,500 | $96,625 | CHF | 1.7027 | 1.7029 |
| 175 | Mar-31-00 | Stobie Creek | $9,662,500 | $96,625 | EUR | 0.9912 | 0.9914 |
| 176 | Mar-31-00 | Stobie Creek | $9,662,500 | $96,625 | CHF | 1.7027 | 1.7029 |
| 177 | Mar-31-00 | Stobie Creek | $7,407,500 | $74,075 | CHF | 1.6158 | 1.6156 |
| 178 | Mar-31-00 | Stobie Creek | $7,407,500 | $74,075 | EUR | 0.9345 | 0.9343 |
| 179 | Apr-26-00 | Boyd Partners | $4,000,000 | $40,000 | EUR | 0.9485 | 0.9487 |
| 180 | Apr-26-00 | Boyd Partners | $4,000,000 | $40,000 | CHF | 1.7490 | 1.7492 |
| 181 | May-4-00 | Miraverde Partners | $2,000,000 | $20,000 | EUR | 0.9220 | 0.9222 |
| 182 | May-4-00 | Miraverde Partners | $2,000,000 | $20,000 | CHF | 1.7860 | 1.7862 |
| 183 | May-4-00 | DS-RS LLC | $3,000,000 | $30,000 | EUR | 0.9220 | 0.9222 |
| 184 | May-4-00 | DS-RS LLC | $3,000,000 | $30,000 | CHF | 1.7860 | 1.7862 |
| 185 | May-12-00 | Edgewood Partners | $2,000,000 | $20,000 | EUR | 0.8680 | 0.8678 |
| 186 | May-12-00 | Edgewood Partners | $2,000,000 | $20,000 | CHF | 1.6500 | 1.6498 |
| 187 | May-30-00 | Kempf Partners | $1,870,000 | $18,700 | EUR | 0.8960 | 0.8958 |
| 188 | May-30-00 | Kempf Partners | $1,870,000 | $18,700 | CHF | 1.6170 | 1.6168 |
| 189 | Jun-5-00 | Sumac Partners | $2,600,000 | $26,000 | EUR | 0.9130 | 0.9128 |
| 190 | Jun-5-00 | Sumac Partners | $2,600,000 | $26,000 | CHF | 1.5980 | 1.5978 |
| 191 | Jun-24-00 | Clinton Square Partners | $600,000 | $6,000 | EUR | 0.9750 | 0.9752 |

| # of Transactions | Trade Date | Name of Entity | Long Premium | Net Premium | Currency | Strike 1 | Strike 2 |
|---|---|---|---|---|---|---|---|
| 192 | Jun-24-00 | Clinton Square Partners | $600,000 | $6,000 | EUR | 0.9750 | 0.9752 |
| 193 | Jun-24-00 | Clinton Square Partners | $300,000 | $3,000 | EUR | 0.9750 | 0.9752 |
| 194 | Jun-24-00 | Clinton Square Partners | $500,000 | $5,000 | CHF | 1.7040 | 1.7042 |
| 195 | Jun-24-00 | Clinton Square Partners | $300,000 | $3,000 | CHF | 1.7040 | 1.7042 |
| 196 | Jun-24-00 | Clinton Square Partners | $700,000 | $7,000 | CHF | 1.7040 | 1.7042 |
| 197 | Jun-28-00 | Sierra Vista Partners | $2,500,000 | $25,000 | EUR | 0.9098 | 0.9096 |
| 198 | Jun-28-00 | Sierra Vista Partners | $2,500,000 | $25,000 | CHF | 1.5686 | 1.5684 |
| 199 | July-5-00 | Gailen Partners | $4,000,000 | $40,000 | EUR | 0.9960 | 0.9962 |
| 200 | July-5-00 | Gailen Partners | $4,000,000 | $40,000 | CHF | 1.6750 | 1.6752 |
| 201 | Jul-05-00 | Woodward Investment Partners | $1,400,000 | $14,000 | EUR | 0.9960 | 0.9962 |
| 202 | Jul-05-00 | Woodward Investment Partners | $5,600,000 | $56,000 | EUR | 0.9960 | 0.9962 |
| 203 | Jul-05-00 | Woodward Investment Partners | $7,000,000 | $70,000 | CHF | 1.6750 | 1.6752 |
| 204 | Jul-6-00 | Chardonnay Partners | $2,250,000 | $22,500 | EUR | 0.9950 | 0.9952 |
| 205 | Jul-6-00 | Chardonnay Partners | $2,250,000 | $22,500 | CHF | 1.6780 | 1.6782 |
| 206 | Jul-11-00 | Westbrook Partners | $2,900,000 | $29,000 | EUR | 0.9200 | 0.9198 |
| 207 | Jul-11-00 | Westbrook Partners | $1,475,000 | $14,750 | CHF | 1.5762 | 1.5760 |
| 208 | Jul-11-00 | Westbrook Partners | $1,475,000 | $14,750 | CHF | 1.5762 | 1.5760 |
| 209 | Jul-21-00 | Tapestry Partners | $1,500,000 | $15,000 | EUR | 0.9730 | 0.9732 |
| 210 | Jul-21-00 | Tapestry Partners | $1,500,000 | $15,000 | CHF | 1.7230 | 1.7232 |
| 211 | Jul-28-00 | RJP Investment Partners | $6,250,000 | $62,500 | CHF | 0.8902 | 0.8900 |
| 212 | Jul-28-00 | RJP Investment Partners | $6,250,000 | $62,500 | CHF | 1.6032 | 1.6030 |
| 213 | Jul-31-00 | ILM Investment Partners | $900,000 | $9,000 | EUR | 0.8868 | 0.8866 |
| 214 | Jul-31-00 | ILM Investment Partners | $1,900,000 | $19,000 | CHF | 1.5877 | 1.5875 |
| 215 | Jul-31-00 | ILM Investment Partners | $1,400,000 | $14,000 | CHF | 1.5877 | 1.5875 |
| 216 | Jul-31-00 | ILM Investment Partners | $2,500,000 | $25,000 | EUR | 0.8868 | 0.8866 |
| 217 | Aug-3-00 | Arrownorth Investment Partners | $3,000,000 | $30,000 | CHF | 1.6320 | 1.6318 |
| 218 | Aug-3-00 | Arrownorth Investment Partners | $2,250,000 | $22,500 | CHF | 1.6320 | 1.6318 |
| 219 | Aug-3-00 | Arrownorth Investment Partners | $750,000 | $7,500 | CHF | 1.6320 | 1.6318 |
| 220 | Aug-23-00 | JRM San Antonio Partners | $3,500,000 | $35,000 | CHF | 0.9385 | 0.9387 |
| 221 | Aug-23-00 | JRM San Antonio Partners | $3,500,000 | $35,000 | EUR | 1.7950 | 1.7952 |
| 222 | Aug-31-00 | Southby Investment Partners | $3,500,000 | $35,000 | EUR | 0.8502 | 0.8500 |
| 223 | Aug-31-00 | Southby Investment Partners | $3,500,000 | $35,000 | CHF | 1.6662 | 1.6660 |
| 224 | Sep-06-00 | Saddlewood Partners | $5,000,000 | $50,000 | CHF | 1.8472 | 1.8470 |
| 225 | Sep-06-00 | Saddlewood Partners | $5,000,000 | $50,000 | EUR | 0.9302 | 0.9304 |
| 226 | Sep-08-00 | Bishop Partners | $12,500,000 | $125,000 | CHF | 1.8250 | 1.8522 |
| 227 | Sep-08-00 | Bishop Partners | $12,500,000 | $125,000 | EUR | 0.9175 | 0.9177 |
| 228 | Sept-26-00 | TT Howard Partners | $2,400,000 | $24,000 | CHF | 0.8400 | 0.8398 |
| 229 | Sept-26-00 | TT Howard Partners | $2,400,000 | $24,000 | CHF | 0.8400 | 0.8398 |
| 230 | Oct-02-00 | Cappy Court Partners | $4,000,000 | $40,000 | CHF | 0.8420 | 0.8418 |
| 231 | Oct-02-00 | Cappy Court Partners | $4,000,000 | $40,000 | EUR | 1.6610 | 1.6608 |
| 232 | Oct-03-00 | Am Partners | $3,830,000 | $38,300 | EUR | 0.8372 | 0.8370 |
| 233 | Oct-03-00 | Am Partners | $3,830,000 | $38,300 | CHF | 1.6582 | 1.6580 |
| 234 | Oct-03-00 | Overbrook Partners | $2,429,000 | $24,290 | EUR | 0.9140 | 0.9142 |
| 235 | Oct-03-00 | Overbrook Partners | $925,000 | $9,250 | EUR | 0.9140 | 0.9142 |
| 236 | Oct-03-00 | Overbrook Partners | $3,560,000 | 35600 | EUR | 0.9140 | 0.9142 |
| 237 | Oct-03-00 | Overbrook Partners | $5,000,000 | $50,000 | CHF | 1.8000 | 1.8020 |
| 238 | Oct-03-00 | Overbrook Partners | $2,000,000 | $20,000 | CHF | 1.8000 | 1.8020 |
| 239 | Oct-4-00 | Hunters Run Partners | $5,000,000 | $50,000 | EUR | 0.9125 | 0.9127 |
| 240 | Oct-4-00 | Hunters Run Partners | $5,000,000 | $50,000 | CHF | 1.7990 | 1.7992 |
| 241 | Oct-4-00 | Hamlin Partners | $2,100,000 | $21,000 | EUR | 0.8392 | 0.8390 |
| 242 | Oct-4-00 | Hamlin Partners | $2,100,000 | $21,000 | CHF | 1.6702 | 1.6700 |
| 243 | Oct-05-00 | JTMM Investment Partners | $11,500,000 | $115,000 | EUR | 0.9115 | 0.9117 |
| 244 | Oct-05-00 | JTMM Investment Partners | $1,495,000 | $14,950 | CHF | 1.8070 | 1.8072 |
| 245 | Oct-05-00 | JTMM Investment Partners | $10,005,000 | $100,050 | CHF | 1.8070 | 1.8072 |
| 246 | Oct-06-00 | Charleston Partners | $1,300,000 | $13,000 | EUR | 0.9080 | 0.9082 |
| 247 | Oct-06-00 | Charleston Partners | $1,300,000 | $13,000 | EUR | 1.8070 | 1.8072 |
| 248 | Oct-06-00 | Williamson Partners | $2,500,000 | $25,000 | EUR | 0.9080 | 0.9082 |
| 249 | Oct-06-00 | Williamson Partners | $2,500,000 | $25,000 | CHF | 1.8070 | 1.8072 |
| 250 | Oct-10-00 | West Date Partners | $2,000,000 | $20,000 | EUR | 0.9105 | 0.9107 |
| 251 | Oct-10-00 | West Date Partners | $2,000,000 | $20,000 | CHF | 1.8025 | 1.8027 |
| 252 | Oct-11-00 | DRBD Invesment Partners | $7,337,500 | $73,375 | EUR | 0.8400 | 0.8398 |
| 253 | Oct-11-00 | DRBD Invesment Partners | $912,500 | $9,125 | EUR | 0.8400 | 0.8398 |
| 254 | Oct-11-00 | DRBD Invesment Partners | $8,250,000 | $82,500 | CHF | 1.6620 | 1.6618 |
| 255 | Oct-20-00 | Barshop & Olas Partners, L.P. | $1,127,000 | $11,270 | EUR | 0.8810 | 0.8812 |

| # of Transactions | Trade Date | Name of Entity | Long Premium | Net Premium | Currency | Strike 1 | Strike 2 |
|---|---|---|---|---|---|---|---|
| 256 | Oct-20-00 | Barshop & Olas Partners, L.P. | $1,127,000 | $11,270 | EUR | 0.8810 | 0.8812 |
| 257 | Oct-20-00 | Barshop & Olas Partners, L.P. | $791,000 | $7,910 | CHF | 1.8500 | 1.8502 |
| 258 | Oct-20-00 | Barshop & Olas Partners, L.P. | $2,250,000 | $22,500 | EUR | 0.8810 | 0.8812 |
| 259 | Oct-20-00 | Barshop & Olas Partners, L.P. | $1,115,000 | $11,150 | EUR | 0.8810 | 0.8812 |
| 260 | Oct-20-00 | Barshop & Olas Partners, L.P. | $1,115,000 | $11,150 | EUR | 0.8810 | 0.8812 |
| 261 | Oct-20-00 | Barshop & Olas Partners, L.P. | $82,000 | $820 | CHF | 1.8500 | 1.8502 |
| 262 | Oct-20-00 | Barshop & Olas Partners, L.P. | $145,000 | $1,450 | EUR | 0.8810 | 0.8812 |
| 263 | Oct-20-00 | Barshop & Olas Partners, L.P. | $884,000 | $8,840 | CHF | 1.8500 | 1.8502 |
| 264 | Oct-20-00 | Barshop & Olas Partners, L.P. | $1,203,000 | $12,030 | CHF | 1.8500 | 1.8502 |
| 265 | Oct-20-00 | Barshop & Olas Partners, L.P. | $2,506,000 | $25,060 | CHF | 1.8500 | 1.8502 |
| 266 | Oct-20-00 | Barshop & Olas Partners, L.P. | $1,325,000 | $13,250 | CHF | 1.8500 | 1.8502 |
| | **Total:** | | $1,563,844,000 | $15,638,440 | | | |

| | |
|---|---|
| # of Partnerships: | 131 |
| # of Transactions: | 266 |
| Total Long Premium: | $1,563,844,000 |
| Total Net Premium: | $15,638,440 |
| Net Premium/Long Premium: | 1% |

## APPENDIX IV

**LIST OF FORMULAS**

1 Stated Premium as a % of DeRosa's Theoretical Value
Deutsche Stated Premium/DeRosa Theoretical Value
(Deutsche Stated Premium - DeRosa Theoretical Value)/DeRosa Theoretical Value

2 Stated Premium as a % of Deutsche Theoretical Value
Deutsche Stated Premium/Deutsche Theoretical Value)/Deutsche Theoretical Value

3 1% - Net Stated Premium/Long Premium
(Long Stated Premium - Short Stated Premium)/Long Stated Premium

4 *Probability*

S = Spot Price
X = Strike Price
R = Risk-free interest rate
T = Time until expiration
D = Depo Rate
V = Volatility
mu = depo rate - risk free rate - 0.5*Vol^2)*T
Sig = V*square root of T
X=-ln(spot price/short strike)
Stnd X = (x - mu)sig
Probability: Normdist(Stnd X)

5 Expected Dollar Return
For the EUR/USD:
In-the-money probability: 11.43%
Out-of-the money probability: 88.57%

Ex: $233,829 [$0 * 88.57%} + {2,045,750 * 11.43%}

6 Expected Rate of Return

Transaction Cost - Fees = Net Transaction Cost
(Expected Dollar Return/Net Transaction Cost) - 1