IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T &** **No. 07-520-T** |
| **v.** | ) | **Judge Christine O.C. Miller** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**RESPONSE OF THE UNITED STATES TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE PATTERN EVIDENCE OR, ALTERNATIVELY, TO COMPEL**

JOHN A. DiCICCO
Deputy Assistant Attorney General

DAVID GUSTAFSON
Chief, Court of Federal Claims Section

STUART D. GIBSON
Senior Litigation Counsel
U.S. Department of Justice
Tax Division, Office of Civil Litigation
Post Office Box 403
Ben Franklin Station
Washington D.C. 20044
(202) 307-6586 (Phone)
(202) 307-2504 (Fax)

CORY A. JOHNSON
Trial Attorney, Court of Federal
Claims Section

**TABLE OF CONTENTS**

Page(s):


INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT I.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. The "Pattern" Evidence Plaintiffs Seek to Exclude is Relevant. . . . . . . . . . . . . . . . 5

B. The Summary Exhibit is Admissible Under Rule 1006.. . . . . . . . . . . . . . . . . . . . . . 8

C. Rule 404(b) of the Federal Rules of Evidence is Inapplicable.. . . . . . . . . . . . . . . . 10

D. The Court's Consideration of the Pattern Evidence Will Not Prejudice Plaintiffs or Cause Undue Delay at Trial. . . . . . . . . . . . . . . . . . . . . . . . . 10

E. The Pattern Evidence Does No Constitute "Return" or "Return Information".. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

Page(s):

## CASES

*Andantech v. Commissioner*, 331 F.3d 972 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Brannen v. Commissioner*, 78 T.C. 471 (1982),
*aff'd*, 722 F.2d 695 (11th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Brown v. Commissioner*, 85 T.C. 968 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Coltec Indust., Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . 6, 7

*Commissioner v. Clark*, 489 U.S. 726 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Conoco Inc. v. Department of Energy*, 99 F.3d 387 (Fed. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . 8

*Douglas v. United States*, 410 F. Supp. 2d 292 (S.D.N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . 7

*Fox v. Commissioner*, 82 T.C. 1001 (1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jade Trading v. United States*, 65 Fed. Cl. 188 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*Jade Trading v. United States*, 67 Fed. Cl. 608 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Karme v. Commissioner*, 673 F.2d 1062 (9th Cir. 1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956 (Fed. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . 5

*Naekel v. Department of Transport*, 782 F.2d 975 (Fed. Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . 7

*Sochin v. Commissioner*, 843 F.2d 351 (9th Cir. 1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*TIFD ILL-E Inc. v. United States*, 342 F. Supp. 2d 94 (D. Conn. 2004). . . . . . . . . . . . . . . . . . . . . 7

*United States v. Bishop*, 264 F.3d 535 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Janati*, 374 F.3d 263 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Swanquist*, 161 F.3d 1064 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Taylor*, 210 F.3d 311 (5th Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Page(s):

STATUTES & REGULATIONS

Federal Rules of Evidence
Rule 402. . . . . . . . . . 5
Rule 404(b). . . . . . . . . . 10
Rule 1006. . . . . . . . . . 2, 8, 9, 11

Internal Revenue Code of 1986 (26 U.S.C.)
§ 6103.. . . . . . . . . . 1, 2, 11, 12

IRS Notice 2000-44. . . . . . . . . . 12, 13

Rules of Court of Federal Claims
Rule 37(a)(2)(B).. . . . . . . . . . 13
Appendix A, 13(a). . . . . . . . . . 2

Treas. Reg. § 1.6662-4(d)(3)(iii). . . . . . . . . . 13

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T &** |
| | ) | **No. 07-520-T** |
| **v.** | ) | |
| | ) | **Judge Christine O.C. Miller** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**RESPONSE OF THE UNITED STATES TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE PATTERN EVIDENCE OR, ALTERNATIVELY, TO COMPEL**

Plaintiffs have moved *in limine* to prevent the United States from offering evidence that will rebut plaintiffs' repeated representations to the Court that the transactions carried out by the Welleses in this case were unique and not a "prepackaged scheme" designed to generate artificial tax benefits. In addition to serving as rebuttal, the evidence plaintiffs seek to exclude is relevant to, among other things, the objective economic substance test and the step transaction doctrine as applied to this case. Plaintiffs' other arguments, in particular the accusation that disclosure of the evidence violates 26 U.S.C. § 6103, misrepresent the facts and lack legal support, and the court should deny plaintiffs' motion *in limine*.[1]

[1] Upon receiving the motion, defendant's counsel immediately contacted plaintiffs' counsel to determine the basis on which they were alleging that the summary chart contained "tax return information" – including, as they alleged, the taxpayer identification numbers of Deutsche Bank clients – protected from disclosure by 26 U.S.C. §6103. Upon consideration, the plaintiffs' (continued...)

To the extent the plaintiffs have moved to compel production of documents, the Court should deny the motion both because it is untimely, and because the defendant produced all of the documents during the discovery phase.

**INTRODUCTION**

Plaintiffs ask the Court to find that a tax shelter they implemented in 2000 allows them to avoid paying tax on more than $200 million in capital gains that the members of the Welles family realized when they sold stock in Therma-Tru Corporation. The shelter involved the creation of partnerships and other entities and the purported purchase and sale of foreign currency options, for which plaintiffs claim to have had a valid business purpose other than tax avoidance. The evidence plaintiffs now seek to exclude, however, shows that plaintiffs, like hundreds of other taxpayers who participated in substantially identical transactions, merely purchased an off-the-shelf tax shelter that came with a predetermined outcome and was devoid of economic substance.

Plaintiffs' instant motion seeks specifically to exclude as irrelevant "pattern" evidence a summary exhibit, which the United States intends to present at trial pursuant to Rule 1006 of the Federal Rules of Evidence, and the testimony of Barbara Aprile and Stephen Bores.[2] The

---

[1](...continued)
counsel now admit that their claim that the summary discloses taxpayer identification numbers is false. Defendant's counsel further explained that all the information contained in the summary was taken from documents obtained by subpoenas issued to third parties in this case. In response, plaintiffs' counsel said that their allegations were based upon assumptions about the information in the summary, not from any evidence of wrongful disclosure. Despite repeated requests that plaintiffs' counsel withdraw their false allegations that the summary violates § 6103, they have declined to do so.

[2] In addition, plaintiffs' motion apparently seeks (at 2) to exclude "numerous transaction (continued...)

summary exhibit is a 75-page spreadsheet prepared by Barbara Aprile, an internal revenue agent, for use in this litigation. It establishes a pattern of transactions among hundreds of taxpayers who, like the Welles family, purchased and implemented the Son of BOSS tax shelter that was developed and promoted by the law firm Jenkens & Gilchrist and by Deutsche Bank in 1999 and 2000.

The spreadsheet, for example, summarizes the transactional details of other taxpayers' purchase of offsetting digital options from Deutsche Bank for a net premium that was based on a percentage of the total amount of the trade. In each instance, the strike prices of the offsetting options differed by either 0.02 or 0.0002, depending on the specific foreign currency underlying the trade. The spreadsheet indicates whether the options expired "in the money." It also indicates that the options were transferred to a "partnership" and that "partnership interests" were transferred to a separate corporation, and that the taxpayers received legal opinion letters from, and paid fees to, the law firm Jenkens & Gilchrist.

Barbara Aprile's testimony will be limited to authenticating the summary exhibit. Stephen Bores, a former CEO and shareholder of Therma-Tru, is one of the taxpayers included in the summary spreadsheet who implemented the Jenkens & Gilchrist/Deutsche Bank tax shelter. Like the Welles family, Mr. Bores was first approached about the tax shelter by David Waterman, one of the attorneys at the law firm Shumaker, Loop & Kendrick, who also assisted the Welleses in finding and buying this tax shelter. The defendant took Mr. Bores' deposition in 2006, and the Welleses paid for a lawyer to represent him at the deposition.

---

[2](...continued)
documents," which plaintiffs fail to identify. The United States objects to the motion *in limine* insofar as it fails to identify the documents to which it relates, making it impossible to respond.

The summary exhibit and both witnesses were disclosed to plaintiffs during the meeting of counsel, pursuant to RCFC, Appendix A, 13(a).[3] In accordance with Appendix A, a copy of the summary exhibit, which includes explicit references to the underlying source documents, was also provided to plaintiffs at that time.

On March 5, 2008, the plaintiffs filed a motion to compel the United States to produce documents under a subpoena issued to Revenue Agent Aprile, to assist plaintiffs' counsel in examining her as allowed in RCFC, App. A, Rule 13. By Order entered March 14, 2008, the Court granted that motion in part and denied it in part.[4] Among other things, the Court ordered the defendant to produce to plaintiffs' counsel a revised version of the Aprile summary chart that excludes the two columns dealing with income sheltered. The defendant has done so.[5]

---

[3] On January 22, 2008, counsel for the parties exchanged witness and exhibit lists in accordance with RCFC, Appendix A, 13(a). Included in the United States' witness list were Stephen Bores and Barbara Aprile, and the topics to be addressed in their testimony were ~~was~~ described respectively as "Implementation of J&G tax shelter and communications with SL&K" and "Preparation of summary exhibit concerning J&G/Deutsche Bank Son of BOSS shelters." The summary exhibit was described in the United States' exhibit list as "Spreadsheet prepared by Barbara Aprile."

[4]On p. 3 of the March 14 Order, the Court observed that, "Exhibit A, Part 1, to plaintiffs' motion to compel does not give pin-point cites to any information on the chart." This, however, does not accurately describe the chart. The Aprile summary chart was prepared using Microsoft Excel. The chart contains information in 33 separate columns, from column A through column AG. When converted to PDF format for purposes of filing, the chart requires 3 pages to display all 33 columns of information for each transaction. Columns AA through AG, which contain the pin-point references to the information displayed in Columns A through Z, are displayed on every third page. Thus, every third page in Exhibit A to plaintiff's motion contains the page references to the information displayed on the preceding two pages. All the documents referenced in Columns AA through AG were produced to the plaintiffs at least one year before the Aprile summary chart was provided at the January 22, 2008 meeting of counsel.

[5]The revised spreadsheet has removed what had previously been displayed in Columns R and S ("Type of Income Sheltered"). In reviewing the spreadsheet to comply with the March 14

(continued...)

## ARGUMENT

I.

A. *The "Pattern" Evidence Plaintiffs Seek To Exclude Is Relevant*

Under Federal Rule of Evidence 402, all relevant evidence is generally admissible. Rule 401 defines relevant evidence to be "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Trial courts have "substantial discretion in determining the evidence to be admitted," so long as the evidence is "of consequence to the determination of the action." *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 961 (Fed. Cir. 1997). The "pattern" evidence plaintiffs seek to exclude is relevant both to rebut the plaintiffs' claims that they engaged in "unique" transactions, and to support the defendant's position that the claimed tax benefits melt under the application of the economic substance and step transaction doctrines.

The United States intends to introduce the "pattern" evidence, which plaintiffs now seek to exclude, to rebut plaintiffs' repeated assertions in this case that the Welles transaction was a

---

[5](...continued)
Order, the defendant has also determined that the summary chart does not contain individual source references for information in Column X ("Other Atty Fees") and 16 entries in Column W ("J&G Fees"). Column Y ("Total Fees") also does not contain those references because it is based, in part, on the entries in Column X. This additional fee information is unnecessary to the principal purpose of the summary chart: showing the pattern of steps for the hundreds of identically-structured shelters engaged in by other clients of Jenkens, and rebutting plaintiffs' claims that their transactions were not part of a pre-packaged scheme. Accordingly, the defendant has also removed Columns X and Y from the chart, and the entries on the following 16 lines in Column W: 165, 269, 305, 434, 493, 597, 620, 657, 661, 669, 671, 719, 731, 743, 786 and 788. Notwithstanding these minor issues, all the information was obtained from the documents produced under subpoenas issued to Jenkens and Deutsche Bank, and also then produced to plaintiffs many months ago. Finally, the chart does contain pin-point references to the hundreds of other entries in Column W concerning Jenkens' fees.

unique deal that provided them with an opportunity to make a profit, and was not merely a "prepackaged scheme."[6] In fact, the "pattern" evidence shows that the tax shelter purchased by the Welles family followed a template, consisting of a series of integrated transactional steps to generate fictitious tax benefits, that hundreds of other taxpayers also purchased from the same promoters. This "pattern" evidence is relevant for rebuttal purposes.

In addition, the "pattern" evidence is relevant because it tends to show, among other things, that the Welleses' transactions, when objectively viewed under the economic substance test, had a predetermined outcome that was entirely tax motivated and devoid of economic substance. The "economic substance" doctrine recognizes that "the law does not permit the taxpayer to reap tax benefits from a transaction that lacks economic reality." *Coltec Indust., Inc. v. United States*, 454 F.3d 1340, 1355 (Fed. Cir. 2006). That hundreds of other taxpayers, who also claimed enormous tax benefits as discussed in tax opinions from Jenkens & Gilchrist, engaging in nearly identical transactions employing the identical steps as the Welles family members strongly suggests that the deals were not in fact designed to make money, but to produce artificial tax benefits. The pattern established by this evidence is also relevant to the

[6] Plaintiffs asserted in the Joint Preliminary Status Report (at 3), filed February 2, 2006, that "the transactions that they engaged in . . . were not steps in an integrated plan to increase the basis of the Therma-Tru stock." Again, in a response plaintiffs filed on March 2, 2007, plaintiffs asserted that "[t]his case is about one taxpayer . . . It is not about hundreds of other taxpayers, nor is it about a 'prepackaged scheme.'" (*See* Plaintiffs' Response to United States' Unopposed Motion to Conduct Prompt Pre-Trial Conference under RCFC 16(c)(6), at 2.) This assertion was repeated in another response, filed on March 28, 2007. (*See* Plaintiffs' Response to the United States' Motion for Leave to Enlarge the Number of Depositions and Extend Discovery Schedule, at 2.)

Court's assessment of plaintiffs' credibility in asserting a valid business purpose for the transaction.[7] *Sochin v. Comm'r*, 843 F.2d 351, 355 (9th Cir. 1988).

Courts have consistently acknowledged the relevancy of evidence of similar transactions implemented by other taxpayers in evaluating the economic substance of a transaction. *See, e.g.*, *Sochin*, 843 F.2d at 355; *Karme v. Commissioner*, 673 F.2d 1062, 1064 (9th Cir. 1982); *Brown v. Comm'r*, 85 T.C. 968, 972 n.6 (1985); *Brannen v. Comm'r*, 78 T.C. 471, 512 (1982), *aff'd*, 722 F.2d 695 (11th Cir. 1984); *see also Fox v. Comm'r*, 82 T.C. 1001, 1017 (1984) (considering the transaction details of other investors in its analysis of taxpayers' profit motive); *Jade Trading v. United States*, 65 Fed. Cl. 188, 191 (2005) (relevant for discovery purposes); *Douglas v. United States*, 410 F.Supp.2d 292, 297-98 (S.D.N.Y. 2006) (same).

Finally, the pattern evidence is relevant to application of the step transaction doctrine in this case, which provides that "interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction." *Comm'r v. Clark*, 489 U.S. 726, 738 (1989). In the partnership context, application of the doctrine can result in a conclusion that a partnership be disregarded, that a taxpayer never became a member of a partnership, or that

---

[7] Plaintiffs motion suggests (at 5) that the pattern evidence should be excluded because "[t]he subjective motivation of one taxpayer may not be proven through 'pattern' evidence of the motivations of other taxpayers." Plaintiffs' argument in this regard incorrectly assumes that the economic substance test involves only the *subjective* business purpose of a taxpayer for entering into a transaction. Just the opposite is true. In *Coltec*, the Federal Circuit made clear that the economic substance of a transaction must be viewed objectively rather than subjectively. 454 F.3d at 1356. Moreover, even the taxpayer's subjective motive must be evaluated by the Court in light of the economic facts of the transaction and other objective evidence. *TIFD ILL-E Inc. v. United States*, 342 F. Supp. 2d 94, 111 (D. Conn. 2004) ("In evaluating the economic substance of a transaction, courts are cautioned to give more weight to objective facts than self-serving testimony.") (internal citations omitted); *Naekel v. Dep't of Transp.*, 782 F.2d 975, 978 (Fed. Cir. 1986) ("circumstantial evidence must generally be relied upon to establish intent").

transactions should be attributed to a partner rather than the partnership. *See, e.g.*, *Andantech v. Comm'r*, 331 F.3d 972, 978 (D.C. Cir. 2003). Plaintiffs contend that the creation of Stobie Creek, the purchase of offsetting digital options, the transfer of those options to Stobie Creek, and the transfer of individual partnership interests from single-member LLCs to single-member subchapter S corporations were undertaken independently for business reasons. The pattern evidence – along with other evidence the United States will offer at trial – tends to prove, however, that these steps were preplanned and integrated, as part of a prepackaged scheme designed to generate tax benefits. As such, the evidence supports the defendant's position that the step transaction doctrine, among other things, compels the Court to disregard these intermediate, tax-motivated steps, as well as Stobie Creek as a valid partnership for tax purposes.

B. *The summary exhibit is admissible under Rule 1006*

The contents of voluminous records may be presented at trial as a summary if the records underlying the summary are admissible in evidence and are made available to the opposing party at a reasonable time and place. Fed. R. Evid. 1006; *Conoco Inc. v. Dep't of Energy*, 99 F.3d 387, 393 (Fed. Cir. 1996); *Jade Trading v. United States*, 67 Fed. Cl. 608, 613 (2005). The United States intends to establish the admissibility of the underlying documents at trial. And, not only were the underlying documents all produced to plaintiffs during discovery in this case, but also the specific documents relied on for the information in the summary are explicitly identified, by bates number, in the summary itself, which was exchanged at the meeting of counsel.

Plaintiffs challenge the summary as being "incomplete" and "selective."[8] While the United States disagrees with plaintiffs' characterizations, more fundamentally, these arguments misapprehend the requirements of Rule 1006. A party offering a summary of voluminous documents is not required to summarize everything contained on all documents – that would defeat the purpose of the summary. A summary needs only to accurately reflect the material that *is* selected to be summarized. *See, e.g.*, *United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004) ("a chart summarizing evidence must be an *accurate* compilation of the voluminous records sought to be summarized"); *United States v. Taylor*, 210 F.3d 311, 315-16 (5th Cir. 2000) ("A necessary precondition to the admission of summary charts is that they accurately reflect the underlying records"). Indeed, a summary can properly include only the evidence favoring one party. *United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001); *United States v. Swanquist*, 161 F.3d 1064, 1073 (7th Cir. 1998) ("A party is not obligated . . . to include within its charts or summaries its opponent's version of the facts."). The summary here accurately reflects the underlying documents that it summarizes, as will be shown when authenticated at trial.

[8] For example, plaintiffs argue (at 7) that "Defendant has only chosen to include certain trades from 1999 through 2000," and (at 8) "Defendant's summary chart includes fewer than 1,000 transactions. This simply cannot be the scope of foreign currency transactions completed by Deutsche Bank in the years 1999 and 2000," and "Defendant has not produced any tax related information, including . . . the tax returns of the investors listed on the summary chart for the relevant periods." The summary was never intended to show *all* of the foreign currency trades that Deutsche Bank engaged in, which total in the millions every week. The summary was, however, intended to show in particular the hundreds of tax-driven, tightly structured offsetting digital option transactions that followed the identical form as the plaintiffs' transactions, and were facilitated by both Deutsche Bank and Jenkens & Gilchrist during 1999 and 2000.

C. *Rule 404(b) of the Federal Rules of Evidence is inapplicable*

Rule 404(b) of the Federal Rules of Evidence has no application here. It provides, in relevant part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The "pattern" evidence at issue is not intended to prove the character or propensity of Jeff Welles, or anyone related to Stobie Creek, to behave in a particular manner. The summary exhibit does not even consist of prior acts by Jeff Welles to begin with, but relates to other taxpayers, and hence could not be, and will not be, offered to show Jeff Welles' "character" or "action in conformity therewith" on a particular occasion. Accordingly, Rule 404(b) does not provide any basis to exclude the summary from evidence.[9]

D. *The Court's Consideration of the Pattern Evidence Will Not Prejudice Plaintiffs or Cause Undue Delay at Trial*

Plaintiffs ask the Court to find that their tax shelter presented a unique investment opportunity with a valid business purpose and, at the same time, to exclude the United States' evidence that shows otherwise. The United States, and not plaintiffs, would be prejudiced by exclusion.

Plaintiffs contend (at 11) they will be prejudiced because they do not have "complete information" about the other taxpayers in the summary exhibit and, without it, they cannot "compare and contrast the non-party transactions." The fact is, plaintiffs have, and have had for

[9] Not only does the main prohibition of Rule 404(b) not apply, this evidence would clearly fall within one of the rule's numerous exceptions, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

months, all of the documents available to the United States in creating the summary exhibit.[10] They are free to use it as they choose, or to ignore it. Plaintiffs have known for months that the United States would seek to introduce the "pattern" evidence at trial.[11]

Plaintiffs raise the specter (at 11) of the Court having to conduct "mini-trials" into the individual circumstances of the other taxpayers who bought the tax shelter in order to (at 11) "ascertain whether the non-party evidence have [sic] any relevance at all." However, the relevancy of the "pattern" evidence is readily ascertainable from the summary exhibit itself, which facilitates the comparison of transactional details of hundreds of taxpayers who purchased offsetting options, with nearly identical terms, and received tax opinions from Jenkens. The purpose of the summary, under Rule 1006, is to allow the Court to review such evidence in a convenient and efficient manner. The pattern is established by the summary exhibit and the underlying documents, without need, or benefit, of further inquiries with the individuals involved.

E. *The pattern evidence does not constitute "return" or "return information"*

Plaintiffs make false assumptions and misrepresent the facts to argue that disclosure of the pattern evidence will violate 26 U.S.C. § 6103. In making this argument (at 10), plaintiffs mistake Deutsche Bank client names and account numbers for "taxpayer names" and "taxpayer identification numbers." Plaintiffs then proceed to argue that such information is "return" or

---

[10] Early during the discovery process, the plaintiffs served a document request in which they asked the United States to produce all documents obtained from third parties during discovery. As defendant's counsel obtained documents from third parties, they copied and produced those documents to plaintiffs' counsel.

[11] *See* Plaintiffs' Motion to Compel Documentary Support for "Summary Chart" Provided by Defendant, filed on March 5, 2008, at 2, and at Ex. B.

"return information" within the meaning of § 6103(a), all the while acknowledging (at 2, 8) that the underlying source documents were produced by Jenkens and Deutsche Bank during discovery – a fact that is confirmed by the bates numbers of the underlying documents identified in the summary itself. Plaintiffs' § 6103 argument is unsupported and inappropriate.

To be "return" or "return information," the source of the disclosed information must have been the IRS. 26 U.S.C. § 6103(b)(1) (defining "return" as "any tax or information return, declaration of estimated tax, or claim for refund . . . which is filed with the Secretary"); 26 U.S.C. § 6103(b)(2) (defining "return information" as information "received by, recorded by, prepared by, furnished to, or collected by the Secretary"); *see also Jade Trading*, 65 Fed. Cl. at 192-93 (citing cases). Because all of the source documents relied on in the summary were produced to defendant's counsel by the records custodians for Jenkens and/or Deutsche Bank pursuant to a subpoena, the information in the summary cannot be "return" or "return information" within the meaning of § 6103(a).

II.

Plaintiffs seek, in the alternative, to compel production of documents that were already produced to them. Plaintiffs' rendition of the United States' response to their discovery request, in support of their motion to compel, tellingly omits this portion of the United States' response:

> Without waiving these objections, the United States states that it has already produced to plaintiff documents obtained by the United States in discovery in this case from Jenkens & Gilchrist, Shumaker, Loop & Kendrick, Robert Floyd, Stephen Bores, Deutsche Bank and John Ivsan. These productions include documents that purport to contain advice regarding transactions described in 2000-44.

If plaintiffs believed this response was inadequate at the time it was served, back on June 18, 2007, they should have said so and, if necessary, filed a motion to compel then, before discovery closed in this case. Plaintiffs also could have sought additional discovery from the "country's leading law and accounting firms" described in its motion (at 14). Plaintiffs' attempt to compel now is a belated diversion, made on the eve of trial and after discovery has closed, and should be denied as untimely.

Not only is a motion to compel not timely at this stage of the case plaintiffs' motion is defective because plaintiffs failed to confer in good faith with defense counsel, either during discovery or afterward, before involving the Court, and the motion lacks a certification otherwise. *See* RCFC 37(a)(2)(B) ("The motion *must* include a certification that the movant has in good faith conferred . . .") (emphasis added).

In addition, the discovery plaintiffs seek to compel (advice from tax professionals with regard to Notice 2000-44) is, as a matter of law, irrelevant to plaintiffs' defenses against penalties in this case. But this is exactly the reason plaintiffs argue the opinions are needed. First, advice given by tax professionals is not considered authority under the substantial authority defense to a substantial underpayment penalty. Treas. Reg. § 1.6662-4(d)(3)(iii). Moreover, such advice could not be relevant to a reasonable cause defense by plaintiffs because plaintiffs do not allege that Jeff Welles ever saw the advice they now seek to compel, let alone that he relied on it.

Finally, plaintiffs also appear to demand that the Court compel production of "transcripts of any interviews" with other taxpayers or Deutsche Bank employees, notwithstanding such documents were never the subject of a document request to begin with. Clearly, a motion to compel documents that were never requested must be denied.

WHEREFORE, the Court should deny plaintiffs' motion *in limine* and, alternatively, to compel.

Respectfully submitted,

*/s/ Stuart D. Gibson*
Stuart D. Gibson
Attorney of Record
U.S. Department of Justice
Tax Division
P.O. Box 403, Ben Franklin Station
Washington D.C. 20044
(202) 307-6586

John A. DiCicco
Deputy Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section
Cory A. Johnson
Trial Attorney, Court of Federal Claims Section
Jacob E. Christensen
Trial Attorney, Court of Federal Claims Section

Dated: March 19, 2008

*/s/ David Gustafson*
Of Counsel