# In the United States Court of Federal Claims

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, and JFW ENTERPRISES, INC.,** | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | No. 05-748T & 07-520T |
| **THE UNITED STATES,** | * | (Filed Mar. 20, 2008) |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## ORDER ON MOTION *IN LIMINE* TO EXCLUDE PATTERN EVIDENCE OR, ALTERNATIVELY, TO COMPEL

Plaintiffs on February 19, 2008, filed Plaintiffs' Motion *in Limine* To Exclude Non-Party "Pattern" Evidence or in the Alternative Motion To Compel. Defendant responded on March 19, 2008. See Order entered on Dec. 10, 2007, ¶ 2 (notifying parties that, pursuant to RCFC 7.2(a), motions in limine subject to ruling without reply briefs).

This is the first evidentiary ruling requested by plaintiffs that carries the whiff of desperation. Plaintiffs cannot be allowed to introduce evidence that the Stobie Creek partnership transactions – the subject of this refund action – were designed or structured for the Welles family, or that they were unique to the Welleses, or were not marketed to many individuals to increase the basis of assets unless defendant has the correlative opportunity to rebut the evidence. The "Spreadsheet Prepared by Barbara Aprile," DX 649, see Order entered Mar. 14, 2008 (granting, in part, motion to compel), is offered pursuant to Fed. R. Evid. 1006 as a summary chart to rebut any such assertions. Either plaintiffs may abandon their arguments on point, or defendant may offer a properly authenticated exhibit that meets the foundational requirements of Rule 1006 (and defendant represents that the chart is compliant, see Def's Br. filed Mar. 19, 2008, at 4 & n.4, 4-5 n.5). If plaintiffs are changing their litigation strategy on point, they shall notify defendant as soon as possible.

Even if plaintiffs no longer intend to prove that the Stobie Creek transactions were not based on a template offered to many individuals by one law firm and implemented by one

investment bank, the summary chart, DX 649, may be offered to support defendant's case under the economic substance and step-transaction doctrines. While defendant deprecates plaintiffs' arguments that the Stobie Creek transactions were unique as "melt[ing] under the application of the economic substance and step transaction doctrine," see id. at 5, these arguments cannot prevent defendant from adducing pattern evidence in order to characterize the Stobie Creek transactions under these two doctrines.

The economic substance doctrine has been applied by courts for over seventy years, and its application has recently been reaffirmed by the Federal Circuit in Coltec Industries v. United States, 454 F.3d 1340, 1351-53 (Fed. Cir. 2006). The economic substance doctrine requires "disregarding, for tax purposes, transactions that comply with the literal terms of the tax code but lack economic reality." Coltec, 454 F.3d at 1352. Although taxpayers have "an unquestioned right to decrease or avoid [their] taxes by means which the law permits, the law does not permit the taxpayer to reap tax benefits from a transaction that lacks economic reality." Id. at 1355 (citing Gregory v. Helvering, 293 U.S. 465, 469 (1935)) (internal citation omitted). The economic substance doctrine effectuates the Congressional purpose underlying the tax code by disregarding, for the purposes of tax treatment, transactions that comply literally with statute but lack economic substance. See id. at 1354. A taxpayer claiming a deduction "bears the burden of proving that the transaction has economic substance." Id. at 1355. Moreover, the economic substance of a transaction must be viewed objectively, id. at 1356, and the transaction to be analyzed is the one that gave rise to the alleged tax benefit. Id. at 1356-57.

Mindful of the law that courts should consider the substance of transactions, rather than their form, an additional doctrine, the step-transaction doctrine, instructs courts that "interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction." Comm'r v. Clark, 489 U.S. 726, 738 (1989). The Federal Circuit continues to apply this doctrine "'by ignoring for tax purposes, steps of an integrated transaction that separately are without substance.'" Falconwood Corp. v. United States, 422 F.3d 1339 (Fed. Cir. 2005) (quoting Dietzsch v. United States, 498 F.2d 1344, 1346 (Ct. Cl. 1974)).

Defendant dispatches plaintiffs' other arguments in short order. (1) The exhibit does not implicate 26 U.S.C. § 6103(b) (2000), because it does not purport to disclose information submitted to the Internal Revenue Service. (2) The exhibit is not irrelevant or unfair or prejudicial, within the contemplation of Fed. R. Evid. 403, insofar as it does not present a full picture of all foreign currency trades during the relevant period engaged in by the Deutsche Bank, with fees paid for use of a template proprietary to Jenkins & Gilchrist. To the extent, however, that data in DX 649 are incorrect, incomplete, or slanted and are found not to accurately portray the transactions selected, the weight accorded to the exhibit will be

impacted negatively. The court will not admit the exhibit (on voir dire) or will strike it after witness examination on its substance, if the summary chart is shown to be so faulty that it does not constitute relevant evidence (Fed. R. Evid. 401) or otherwise prejudices plaintiffs (Fed. R. Evid. 403).

(3) Fed. R. Evid. 404(b), dealing with pattern evidence relating to an individual's behavior, is facially inapplicable. (4) Defendant represents that DX 649 will "facilitate[] the comparison of transactional details of hundreds of taxpayers who purchased offsetting options, with nearly identical terms, and received tax opinions from Jenkins." Def's Br. filed Mar. 19, 2008, at 11. Voir dire of the exhibit will substantiate whether this characterization is accurate. If not, the exhibit will not be admitted as evidence that tends to make less likely plaintiffs' assertion that the Stobie Creek transactions did not follow a template that was designed to result in an increase in tax basis.

Alternatively, plaintiffs have moved to compel production of documents that defendant insists were produced nine months ago and were keyed to the DX 649 entries by pin-point citations to Bates page numbers of the documents produced. See Def's Br. filed Mar. 13, 2008, at 13 (stating that response to request for production served on June 18, 2007). If plaintiffs show that defendant's representations are inaccurate, the exhibit will be excluded.

Plaintiffs also seek documents reflecting advice from "dozens of the nation's leading legal and accounting firms" given to taxpayers that certain "transactions were based upon valid interpretations and applications of the governing tax law," particularly with respect to I.R.S. Notice 2000-44. Pls.' Br. filed Feb. 19, 2008, at 13; see I.R.S. Notice 2000-4, 2000-2 C.B. 255 (describing transactions entered into for tax avoidance by generating artificially high basis and disallowing such transactions). Plaintiffs suggest that, if pattern evidence is relevant to the case, the court should order defendant to provide these documents to enable plaintiffs' presentation of rebuttal pattern evidence "that would show that many of the country's leading legal and accounting firms advised their clients that the tax positions taken by taxpayers in cases similar to the one at issue were valid." Pls.' Br. filed Feb. 19, 2008, at 14.

Defendant discounts this evidence as irrelevant to the defenses against penalties raised by plaintiffs. Defendant correctly notes that such advice "could not be relevant to a reasonable cause defense by plaintiffs because plaintiffs do not allege that [Jeffrey F. Wells] ever saw the advice they now seek to compel, let alone that he relied on it." Def.'s Br. filed Mar. 19, 2008, at 13. Defendant's point is well taken: if plaintiffs intend to use these documents as so-called rebuttal pattern evidence, such advice necessarily would consist of materials that Mr. Welles could not have seen. If Mr. Welles could not have seen this advice,

he could not have relied upon it in engaging in the transactions at issue. Defendant also is correct in asserting that advice given by tax professionals is not considered authority under the substantial authority defense to a substantial underpayment penalty. See Treas. Reg. § 1.6662-4(d)(3)(iii) ("Conclusions reached in treatises, legal periodicals, legal opinions or opinions rendered by tax professionals are not authority" for the purposes of raising the substantial authority defense.) Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

Plaintiffs's motion to exclude DX 649 and related testimony is denied, and plaintiffs' related motion to compel is denied.

s/ Christine O.C. Miller

______________________________

**Christine Odell Cook Miller**
Judge