# In the United States Court of Federal Claims

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, and JFW ENTERPRISES, INC.,** | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | No. 05-748T & 07-520T |
| **THE UNITED STATES,** | * | (Filed Mar. 21, 2008) |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## ORDER ON MOTION *IN LIMINE* TO EXCLUDE DEPOSITION TESTIMONY CONTAINING BLANKET ASSERTIONS OF THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION

Plaintiffs on February 19, 2008, filed Plaintiffs' Motion *in Limine* To Exclude Deposition Testimony Containing Blanket Assertions of the Fifth Amendment Privilege Against Self-Incrimination. Defendant responded on March 19, 2008. See Order entered on Dec. 10, 2007, ¶ 2 (notifying parties that, pursuant to RCFC 7.2(a), motions *in limine* subject to ruling without reply briefs).

Plaintiffs seek to exclude the deposition testimony of Paul Daugerdas, Donna Guerin, John Ivsan, David Parse, Perry Parker, and Craig Brubaker. */ Mr. Daugerdas and Ms. Guerin are former partners of the law firm Jenkins & Gilchrist. According to defendant, they were the two "engagement partners" for the tax opinion letters issued to the Welles family in connection with the transactions that are the subject of this case. See Def.'s Br. filed Mar. 19, 2008, at 4. Mr. Ivsan is a former partner of the law firm Shumaker, Loop & Kendrick. According to defendant, plaintiffs claim to have relied upon Mr. Ivsan in connection with the transactions that are the subject of this case. See id. Messrs. Parse, Brubaker, and Parker were employees at Deutsche Bank and involved in the design and execution of the transactions that are the subject of this case. Each of these individuals was deposed and

---

*/ Defendant's opposition erroneously states that plaintiffs' motion also includes Jason Shih. See Def.'s Br. filed Mar. 19, 2008, at 6.

refused to answer questions asked by counsel for the United States, relying upon the deponent's Fifth Amendment privilege against self-incrimination. None of these individuals is a party to this proceeding.

Plaintiffs argue that the non-party invocations of the Fifth Amendment to the U.S. Constitution should be excluded under Fed. R. Evid. 401, 402, and 403, because they do not constitute relevant evidence or because they would have an unfairly prejudicial effect. Plaintiffs rely on case law that courts should not draw negative inferences from the assertion of the Fifth Amendment privilege by non-party witnesses in some circumstances. Defendant rejoins that no bright line rule precludes a finder of fact from drawing negative inferences from the assertion by a non-party witness of the Fifth Amendment privilege to refuse to testify. Defendant also argues that the factors considered in the cases cited by plaintiffs allow the court to draw negative inferences under the circumstances present in this case.

The key case upon which plaintiffs rely is LiButti v. United States, 107 F.3d 110 (2d Cir. 1997). The United States Court of Appeals for the Second Circuit in LiButti recounted the history of drawing adverse inferences and recognized that it is permissible for courts to draw adverse influences from the refusal to testify due to the assertion of the Fifth Amendment privilege in civil cases. Congress intended to provide courts the flexibility to develop rules governing the privilege on a case-by-case basis. See id. at 121 (citing Trammel v. United States, 445 U.S. 40, 47 (1980)). Following a survey of Second Circuit case law and the case law of the other regional circuits, the court suggested a number of non-exclusive factors that should guide trial courts in considering "the admissibility of a non-party's invocation of the Fifth Amendment privilege against self-incrimination in the course of civil litigation and the concomitant drawing of adverse inferences," id. at 123, (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and the non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation, see id. at 123-24.

Regarding the first factor, the LiButti court held that the "closer the bond" between the non-party witness and the party, "the less likely the non-party witness would be to render testimony in order to damage the relationship." Id. at 123. Plaintiffs contend that the non-party witnesses do not have a "sufficiently close relationship" with plaintiffs. See Pls.' Br. filed Feb. 19, 2008, at 6. If a non-party witness's relationship is close, a court may conclude that the non-party's invocation of the privilege promotes the interest of the party or serves as a vicarious admission, especially when the non-party witness is a former employee. See LiButti, 107 F.3d at 121 (citing Brink's, Inc. v. City of New York, 717 F.2d 700 (2d Cir. 1983)). Plaintiffs emphasize that "the relationship between the Non-Party Witnesses and Plaintiffs is anything but 'close.' It is hostile and adverse." Pls.' Br. filed Feb. 19, 2008, at 7. The non-party witnesses whose deposition testimony plaintiffs move to exclude are

subject to a broad and ongoing criminal investigation and are in no way "beholden" to plaintiffs. Id.

Defendant rejoins that a special relationship, or any particular relationship, need not be present between the party and the non-party witness for a court to draw negative inferences from the non-party witness's refusal to testify. Defendant's citation to FDIC v. Fidelity & Deposit Co., 45 F.3d 969, 978 (5th Cir. 1995), is correct, but defendant misapprehends plaintiffs' argument. Plaintiffs do not argue that the absence of a special relationship ends the court's inquiry—only that the first factor weighs in plaintiffs' favor.

As to the second factor, plaintiffs have no control over the six non-party witnesses. Defendant does not dispute this point.

Respecting the third factor, plaintiffs argue that the non-party witnesses' assertions of their Fifth Amendment rights do not advance the interests of plaintiffs. Plaintiffs contend that "the truthful testimony of the Non-Party witnesses could significantly advance Plaintiffs' argument that penalties are not appropriate, as several of the Non-Party Witnesses provided legal advice upon which Plaintiffs reasonably relied in filing their income tax returns." Pls.' Br. filed Feb. 19, 2008, at 8. Defendant counters by arguing that

> the appropriate question is not whether the witness has an incentive to help the party against whom an adverse inference is sought. The proper question is whether the witness who assets the Fifth Amendment has an incentive to tell the truth, and whether a truthful answer would tend to incriminate the witness. If telling the truth would tend to incriminate the witness, and hurt the party against whom an adverse inference is sought, then the case law suggests that the court should draw the adverse inference.

Def.'s Br. filed Mar. 19, 2008, at 8 n.6 (citing RAD Services, Inc. v. Aetna Cas. & Surety Co., 808 F.2d 271, 275, 276 (3d Cir. 1986)).

In RAD Services the United States Court of Appeals for the Third Circuit commented on the relaxed vigilance concerning the Fifth Amendment privilege in civil cases when a party seeks to introduce non-party deposition testimony invoking the Fifth Amendment against the opposing party. See 808 F.2d at 274-75. That case involved an issue of vicarious liability; the court upheld the district court's admission of deposition testimony wherein two former employee-deponents of a business refused to testify that they were employed by the business charged with corporate wrongdoing. Given the ongoing and broad criminal investigation involving the non-party witnesses in the case at bar, testifying truthfully would tend to incriminate them, but would not hurt plaintiffs. As plaintiffs contend, such testimony

could bolster plaintiffs' defense that Jeffrey F. Welles reasonably relied on their advice. Under these circumstances the third factor also favors plaintiffs.

The fourth LiButti factor is concerned with "[w]hether the non-party witness was a key figure in the litigation and played a controlling role in respect to any of its underlying aspects." LiButti, 107 F.3d at 123-24. Defendant presses that each of the non-party witnesses is a "key figure" in the events underlying this litigation, both as understood by the Second Circuit in LiButti and the Eighth Circuit in Cerro Gordo Charity v. Fireman's Fund American Life Insurance Co., 819 F.2d 1471, 1482 (8th Cir. 1987). The United States Court of Appeals for the Eighth Circuit in Cerro Gordo held that a non-party witness was "'a key figure' since his actions form[ed] the very basis for the affirmative defense of fraud" in issue. Id. Defendant views each of the non-party witnesses in this case as a key figure based on the witness's extensive involvement in designing and implementing the transactions at issue and in the decision of the Welles family members to seek, select, and implement these transactions. Plaintiffs do not comment substantially on the "key figure" factor, noting only that "[s]ome courts have also considered whether the non-party witness is a key figure in the litigation," citing to LiButti, but urging that, because the other factors favor plaintiffs, "drawing an adverse inference would be inappropriate." Pls.' Br. filed Feb. 19, 2008, at 9 n.1.

These non-party witnesses were key figures in the design and implementation of the transactions at issue. Nonetheless, the court must consider all four factors in order to gauge the impact of this evidence in this civil tax refund litigation against the admonition of Fed. R. Civ. P. 403 that the danger of unfair prejudice counsels for exclusion of otherwise relevant evidence.

In the instant case, plaintiffs seek to prove that Jeffrey F. Welles relied on opinion evidence – both oral and written. The deposition transcripts of these six witnesses manifest declination to testify, based on the Fifth Amendment, about dealings with Mr. Welles and others who played a role in the Stobie Creek transactions. The inference to be drawn is either (1) the advice was not sought nor given or, (2) if it was, that it was fraudulent advice. The negative inference that defendant would ask the court to draw relates to the second proposition. Plaintiffs' case that they acted with reasonable cause and in good faith, see 26 U.S.C. § 6664(d) (2000), would implode.

The court determines that, because three of the four factors favor exclusion, it would be inappropriate to draw an adverse inference from the non-party witnesses' refusal to testify. For this reason, their deposition transcripts must be excluded, and plaintiffs' motion *in limine* is granted.

The extent to which plaintiffs' motion *in limine* should be granted, however, is not without qualification. Defendant notes in its Memorandum of Contentions of Fact and Law that "Jeff[rey F.] Welles stated in an interrogatory answer that 'David Parse . . . performed analysis, estimate or calculation of, or gave advice regarding the potential return from or risks of the Foreign Exchange Digital Option Transaction.'" Def.'s Memo. filed Mar. 12, 2008, at 12 (quoting plaintiffs' interrogatory response). If plaintiffs elicit testimony from Jeffrey F. Welles or any other witness concerning the conversations that Mr. Welles had with any of the non-party witnesses who are the subject of this motion *in limine*, it would be unfair to disallow defendant from introducing the deposition testimony of that witness. Plaintiffs cannot use this motion *in limine* as both a sword and a shield. In addition, if plaintiffs introduce an opinion letter, it will be subject to introduction of evidence that the author(s) of the advice disavows its reliability. Accordingly,

**IT IS ORDERED**, as follows:

1. Plaintiffs' motion to exclude the testimony and deposition designations of Paul Daugerdas, Donna Guerin, John Ivsan, David Parse, Perry Parker, and Craig Brubaker is granted, insofar as plaintiffs do not adduce testimony as to the substance of conversations that Mr. Welles had with any of these third parties. If plaintiffs adduce such testimony, defendant may introduce the deposition testimony of that third party. This ruling does not apply to the introduction of opinion letters and related documents constituting information or advice.

2. This ruling is dispositive of the United States' Motion for Leave To File Deposition Transcripts, filed March 12, 2008, except insofar as it seeks admission of the deposition transcripts of Stephen J. Bores and Jason Shih. Briefing shall continue.

s/ Christine O.C. Miller

________________________________

**Christine Odell Cook Miller**
Judge