# In the United States Court of Federal Claims

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, and JFW ENTERPRISES, INC.,** | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | No. 05-748T & 07-520T |
| **THE UNITED STATES,** | * | (Filed Mar. 25, 2008) |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## ORDER ON MOTION *IN LIMINE* TO EXCLUDE REPORTS AND TESTIMONY OF DR. DAVID F. DeROSA

Plaintiffs on February 19, 2008, filed Plaintiffs' Motion *in Limine* To Exclude the Expert Report, Rebuttal Report, Amendment to Expert Report and Testimony of Dr. David F. DeRosa and Memorandum of Law. Defendant responded on March 19, 2008. See Order entered on Dec. 10, 2007, ¶ 2 (notifying parties that, pursuant to RCFC 7.2(a), motions *in limine* subject to ruling without reply briefs).

Plaintiffs narrow their sights on the expert testimony of Dr. David F. DeRosa and his expert reports (defendant's proposed Exhibit Nos. 438, 515, 516). Defendant proffers Dr. DeRosa variously as an expert "in foreign currency option trading" or "foreign exchange." See Def.'s Br. filed Mar. 19, 2008, at 3, 4. Defendant's indignation that plaintiffs would question a recognized exemplar in the world of finance belittles plaintiffs' legitimate concerns that the expert has become a member of the Government's litigation team on the Son of Boss cases, that his identification with the Government's position diminishes the value of any opinions that the witness may offer, and that his opinions are the product of a superficial analysis. All these objections go to the weight that the court will accord Dr. DeRosa's testimony. They are legitimate points that can be fleshed out in both voir dire as to the expert's putative objectivity and cross-examination as to the soundness of his characterizations.

Plaintiffs have posed their objections under the leading cases of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

The court reprises its analysis in Manville v. Dept. Health & Human Servs., 63 Fed. Cl. 482, 489-90 (2004). In Daubert the Supreme Court determined the standard for the admissibility of scientific expert testimony in a federal trial. Initially, Daubert posed the issue broadly:

> [T]he trial judge must determine at the outset, pursuant to [Fed. R. Evid.] Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

Id. at 592-93, (footnotes omitted). In essence, the Supreme Court ordained federal trial court judges with a gatekeeping function so as to "exclude expert testimony that is irrelevant or does not result from the application of reliable methodologies or theories to the facts of the case." Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1391 (Fed. Cir. 2003) (citing Daubert, 509 U.S. at 589-92); see also Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc., 249 F.3d 1341, 1349 (Fed. Cir. 2001) (requiring that court assure that scientific or technologic evidence be relevant and of appropriate scientific validity, according to standards of discipline). Kumho instructs that reliability is the cornerstone of admissible expert testimony that is non-scientific in nature. See Libas, Ltd. v. United States, 193 F.3d 1361, 1366 (Fed. Cir. 1999) ("If a trial court relies upon expert testimony, it should determine that the expert testimony is reliable."); Perreira v. Dept. of Health & Human Servs., 33 F.3d 1375, 1377 n.6 (Fed. Cir. 1994) ("An expert opinion is no better than the soundness of the reasons supporting it.") (citations omitted).

In prescribing the court's gatekeeping function, Daubert "set forth a non-exclusive list of factors that district courts may use in evaluating expert testimony" under Rule 702 of the Federal Rules of Evidence. Micro Chem., 317 F.3d at 1391. These factors are (1) whether the theory or technique offered for scientific knowledge can be or has been tested; (2) whether the theory or technique has undergone peer review and. publication; (3) the known or potential rate of error of the particular scientific technique; and (4) the degree of acceptance, or the "general acceptance" of a theory or technique within the scientific community. Daubert, 509 U.S. at 593-94. The Court emphasized that the "inquiry envisioned by Rule 702 is . . . a flexible one. Its overarching subject is the scientific

validity—and thus the evidentiary relevance and reliability — of the principles that underlie a proposed submission." Daubert, 509 U.S. at 594-95 (footnote omitted).

Subsequently, in Kumho, 526 U.S. at 149, the Supreme Court explained that "the principles of Daubert apply not only to scientific testimony, but to all expert testimony." Micro Chem., 317 F.3d at 1391 (citing Kumho, 526 U.S. at 149). Kumho again highlighted the flexible nature of the Daubert factors when ruling a trial court may consider several factors other than those listed in Daubert. Kumho, 526 U.S. at 149-50. The Court stated that

> we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in Daubert, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue.

Id. at 150. Indeed, Daubert itself established that its list of factors was a "helpful, not definitive[,]" list and that all of those factors might not apply in every instance where the admissibility of scientific testimony is at issue. Id. at 151. Based on Daubert and Kumho, Rule 702 was amended in 2000, Micro Chem., 317 F.3d at 1391-92, to allow an expert with "scientific, technical, or other specialized knowledge" to give opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

The United States Court of Appeals for the Federal Circuit has emphasized that the Daubert standards of relevance and reliability must be satisfied in a bench trial. Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1301-02 (Fed. Cir. 2002) (ruling no abuse of discretion in admitting forecasting methodology of Government damages expert).

Plaintiffs' real dispute with Dr. DeRosa is that he propounds a theory–"component pieces of a single transaction structure," see Pls.' Br. filed Feb. 19, 2008, at 5-6 – that is not associated with a methodology recognized in the financial community. The theory or methodology is faulted as a construct to advance defendant's litigation position. See id. at 6 (charging that methodology "was invented strictly for this litigation"). Plaintiffs meld their objection to Dr. DeRosa's "component pieces of a single transaction structure conclusion," see id. at 5, with the test of Fed. R. Evid. 702 that expert testimony should assist the court, because, plaintiffs argue, it applies neither a reliable nor accepted methodology to the facts of the case.

Defendant advises that it will solicit opinions from Dr. De Rosa on the following questions:

> 1. Whether the prices that the Welles family members and Deutsche Bank paid for the foreign currency options at issue in these cases reflected fair market prices determined in accordance with standard option pricing methodology;
>
> 2. Whether the offsetting long and short foreign currency options at issue in this case could be exercised separately (*i.e.*, whether it was realistically possible to hit the "sweet spot");
>
> 3. Whether the offsetting foreign currency options at issue in this case provided the Welles family members with a reasonable opportunity to earn a profit;
>
> 4. Whether, in the real world of foreign currency option trading, the offsetting long and short foreign currency options at issue in this case [can] be effectively separated into two parts, or whether they were inextricably linked as component parts of one integrated transaction; and
>
> 5. Whether any business purpose existed for contributing the foreign currency options to Stobie Creek Investments, LLC.

Def.'s Br. filed Mar. 19, 2008, at 3-4.

It would appear that Dr. De Rosa is not offering a theory based on a methodology recognized and applied by the financial community; rather, he is analyzing component parts of transactions to gauge their relationship to each other and to assess their viability as an investment vehicle to realize a positive return, *i.e.*, a genuine business or profit-motivated purpose. Dr. DeRosa is applying concepts of finance—both theoretical and real-world–to explain how the various transactions operate. This is not an approach that must be validated as a recognized and reliable methodology. To the extent that Dr. DeRosa departs from recognized standards used in the financial community or is out of tune with recognized principles and practice in the world of finance, his opinions may be entitled to little or no weight. However, plaintiffs' case involves complex financial transactions, and Dr. De Rosa will be providing the court assistance in understanding them.

His opinion that the transactions at issue are component pieces of a single structure is a characterization; it is not a methodology or a financial theory. See Comm'r v. Clark, 489 U.S. 726, 738 (1989) ("[I]nterrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction.") (quoted in The Falconwood Corp. v. United States, 422 F.3d 1339, 1349 (Fed. Cir. 2005). To the extent that plaintiffs

contend that the financial community does not recognize Dr. DeRosa's approach, *i.e.*, how he analyzes an investment plan in terms of its component steps or parts, that will be a matter for cross-examination to impeach reliability. See Order entered Mar. 20, 2008, at 2 (order denying exclusion of pattern evidence).

The gatekeeper function mandated by Daubert assures that the expert and his analytical approach are recognized in the discipline claimed as the expertise. Dr. DeRosa appears to have the academic credentials and background to testify as an expert in the structure of complex financial transactions, and he will be applying that expertise in analyzing the investment plan in question. The court does not see that an analytic construct has been utilized; to the contrary, it appears that the opinions offered are based on a transactional analysis that defendant must show complies with the academic discipline of finance and the real-world practice of finance.

The court does not rule that Dr. DeRosa will be allowed to offer opinions on all five questions that defendant has listed. However, plaintiffs have not excluded his testimony or reports as speculative and unreliable or groundless by this motion *in limine*. They have previewed objections that go to the weight to be accorded the testimony. See Libas, 193 F.3d at 1366-67 (proposition that expert testimony must be reliable under Daubert and Kumho goes to weight accorded to evidence). Accordingly,

**IT IS ORDERED**, as follows:

Plaintiffs' motion *in limine* to exclude the testimony and exhibits of Dr. DeRosa is denied.

s/ Christine O.C. Miller

________________________________

**Christine Odell Cook Miller**
Judge