**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STOBIE CREEK INVESTMENTS LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 05-748T |
| STOBIE CREEK INVESTMENTS LLC, by and through JFW INVESTMENTS LLC, Tax Matters and Notice Partner,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 07-520 T<br>Consolidated with 05-748T<br><br>Judge Christine O.C. Miller |

**PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION**

Robert E. Kolek
Thomas R. Wechter
Matthew C. Crowl
Colleen M. Feeney
Ayad P. Jacob
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Phone: 312-258-5500
Fax: 312-258-5600
*ATTORNEYS FOR PLAINTIFFS*

Plaintiffs respectfully move this Court for partial reconsideration of its March 21, 2008 Order, a copy of which is attached hereto as Exhibit A, in which the Court granted Plaintiffs' motion *in limine* to exclude the deposition designations and testimony of certain non-party witnesses who invoked their Fifth Amendment right against self incrimination. In support of this motion, Plaintiffs state as follows.

## I. INTRODUCTION

On February 19, 2008, Plaintiffs filed a motion *in limine* requesting that the Court exclude testimony, either offered at trial or through deposition designations, that contain non-party invocations of the Fifth Amendment privilege against self-incrimination. Plaintiffs' motion *in limine* sought to preclude the government from offering into evidence, invocations of the Fifth Amendment by Paul Daugerdas and Donna Guerin, former attorneys of Jenkens & Gilchrest ("J&G"), John Ivsan, formerly an associate with Shumaker, Loop and Kendrick ("SLK"), and David Parse, Perry Parker, and Craig Brubaker, current and/or former employees of Deutsch Bank Alex Brown ("DB") (collectively the "Non-Party Witnesses"). The government sought to offer the testimony of these Non-Party Witnesses in an effort to elicit adverse inferences against Plaintiffs based on the mere fact that the Non-Party Witnesses made blanket assertions of their Fifth Amendment rights.

Plaintiffs, in their motion *in limine*, argued that any testimony by the Non-Party Witnesses invoking their Fifth Amendment privilege against self incrimination should be excluded under Federal Rules of Evidence 401, 402 and 403. Such testimony would not be relevant, particularly in light of each witness' refusal to answer any question, whether substantive or nominal. Moreover, even if there were some minimal relevance to the assertion of the privilege, it would be substantially outweighed by the danger of unfair prejudice to Plaintiffs.

Plaintiffs established that those strictly limited circumstances where the invocation of the Fifth Amendment by a non-party is appropriately admitted into evidence and could give rise to adverse inferences were not present in the instant case.

The Court agreed. In its March 21, 2008 Order (the "Order"), the Court determined that the relationship between Plaintiffs and the Non-Party Witnesses was not sufficiently close to warrant an adverse inference against Plaintiffs based on the witnesses' assertion of the Fifth Amendment. (Order at 3.) Plaintiffs do not control the Non-Party Witnesses and any assertion by them of their Fifth Amendment rights could not advance the interests of Plaintiffs. *Id.* Accordingly, the Court concluded "it would be inappropriate to draw an adverse inference from the non-party witnesses' refusal to testify." (Order at 4.)

Despite this holding, the Court went on to state that if "plaintiffs elicit testimony from Jeffrey F. Welles or any other witness concerning the conversations that Mr. Welles had with any of the non-party witnesses who are the subject of this motion *in limine*, it would be unfair to disallow defendant from introducing the deposition testimony of that witness." *Id.* The Court also stated that "if plaintiffs introduce an opinion letter, it will be subject to introduction of evidence that the author(s) of the advice disavows its reliability." *Id.*

The parties, in briefing Plaintiffs' motion *in limine*, did not address the question the Court reached in its Order, i.e., would the introduction of the substance of conversations with the Non-Party Witnesses and certain documentary evidence affect the admissibility of the Non-Party Witnesses invocation of their Fifth Amendment rights. We seek to do that now in an effort to have the Court reconsider the language of its Order that addresses these issues. We respectfully submit that, under the circumstances of this case, the introduction of evidence concerning these conversations and certain opinion letters referenced by the Court does not alter the Court's

principal ruling that testimony regarding the invocation of the Fifth Amendment by the Non-Party Witnesses is inadmissible.

## II. ARGUMENT

### a. The Admission of Evidence By Plaintiffs Should Not Render Admissible the Non-Party Witnesses' Inadmissible Invocation of Their Fifth Amendment Rights

The Court's ruling concerning the inadmissibility of the witnesses' invocation of their Fifth Amendment rights is sound and based on well-settled legal precedent. The factors relied upon by the courts, and this Court, do not depend upon the surrounding evidence in the case. They depend upon the relationship of the parties to the invoking witnesses and the incentives those witnesses had at the time they testified. That analysis is unaltered by other evidence admitted at trial. For example, the witnesses become no more closely related to the Plaintiffs, a key factor in the analysis of admissibility, when the testimony about conversations they had with Jeffrey Welles and others are offered into evidence. There is no support in legal precedent for conditioning the adverse inference from the invocation of the right against self-incrimination on the admission of other evidence.

Nor are the interests of justice and fairness furthered by drawing these adverse inferences if certain evidence is admitted. There is little question, as the Court indicated, that had the Plaintiffs sought to manipulate the unavailability of the witnesses to their own benefit, that would have been unfair. Indeed, it is that idea that seemed to motivate the portion of the Court's Order that is the subject of this Motion. When the circumstances of the Non-Party Witnesses invocation of their Fifth Amendment rights are examined, however, it becomes clear that fairness requires the exclusion of their testimony and any adverse inferences. Indeed, when the circumstances of this case are examined, it becomes clear that it is the government that has control over whether the Non-Party Witnesses testify and has the ability to manipulate these

circumstances to its advantage, not the Plaintiffs. The government has the sole discretion to determine whether the remaining participants give testimony at this trial. The government may grant use immunity to the Non-Party Witnesses and compel their testimony.[1] The government, therefore, should not be heard to complain that the Court's ruling is being used as a sword. Plaintiffs can only attempt to elicit the facts concerning the pertinent conversation; the government has the power to make those witnesses available for testimony. Further, as explored below, the government had the sole power to shape the questions asked of the Non-Party Witnesses – who asserted their privilege for literally every question – and thus, had the sole power to shape any inference to be drawn. Under these circumstances, the exclusion of blanket assertions by the Non-Party Witnesses of their Fifth Amendment rights is the correct ruling and should not be made conditional.

In addition to the law and issues of fairness, logic dictates that the invocation of blanket assertions of the Fifth Amendment be excluded as irrelevant. Plaintiffs intend to place into evidence conversations that Jeffrey Welles and others had with certain Non-Party Witnesses as well as documentary evidence that goes to Plaintiffs' reasonable reliance defense. When subpoenaed and deposed by the government's counsel, who were informed in advance that the Non-Party Witnesses intended to assert their Fifth Amendment rights, each witness refused to answer any question other than their name and address. Under these circumstances, the invocation of the Fifth Amendment privilege as to specific questions lacks any probative value and is meaningless. The J&G lawyers and certain employees of DB have been under investigation for activities involving hundreds of clients. There is no reason to believe that the

---

[1] Plaintiffs have attempted to secure the testimony of the Non-Party Witnesses and specifically requested that the government grant use immunity to the Non-Party Witnesses. (*See* October 3, 2007 letter from Robert Kolek to Stuart Gibson, attached hereto as Exhibit B.)

invocation of their Fifth Amendment right even pertains to the Welles family, let alone the specific conversations in question.

As set forth in Plaintiffs' motion *in limine*, the admission of calculated questioning by which counsel for the government effectively testifies for the invoking witnesses throughout their depositions lacks any indicia of reliability and is particularly held in disdain by the courts. *See In re Worldcom, Inc. Sees. Litig.*, No. 02 Civ. 3288, 2005 WL 375315, *4 (S.D.N.Y. Feb. 17, 2005); *Ullman-Briggs, Inc. v. Salton/Maxim Housewares, Inc.*, Nos. 92C680, 92C2394, 1996 WL 535083 (N.D. Ill. Sept. 17, 1996); *Cavalier Clothes, Inc. v. Major Coat Co.*, No. 89-3325, 1995 WL 314511, at *6 (E.D. Pa. Apr. 6, 1995) (*quoting RAD Services, Inc. v. Aetna Casualty and Surety Co.*, 808 F.2d 271, 278 (3rd Cir. 1986)); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, No. 91-C-6103, 1994 WL 502955, at *6 (N.D. Ill. Sept. 13, 1994); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 (5th Cir. 1990); *In re Citric Acid Antitrust Litig.*, 996 F. Supp. 951, 961 (N.D. Cal. 1998). Plaintiffs, under these circumstances, are also deprived of their opportunity to cross-examine the Non-Party Witnesses. In contrast, the government has the ability to cross-examine Jeffrey Welles and all other participants in those conversations. Jeffrey Welles and other third-parties privy to those conversations, that are available to Plaintiffs will testify and be confronted by the government at trial.

**b. Any Adverse Inference is Limited to a Factual Matter**

Should the Court be inclined to allow the deposition testimony of the Non-Party Witnesses to be utilized at trial, any adverse inference drawn would be extremely limited.[2] For

[2] The Court in its Order noted that the "inference to be drawn is either (1) the advice was not sought nor given or, (2) if it was, that it was fraudulent advice." (Order at 4.) The Court's ruling went on to imply that negative inference that the government would have this Court apply, which relates to the second proposition, would be devastating to Plaintiffs' case. *Id.* The Court did not have the benefit of legal briefing and argumentation on this issue. As set forth above, the

example, adverse inferences drawn from a witnesses' testimonial silence requires a finding that the witness had personal knowledge of the particular fact from which the adverse inference is to be drawn. *See United States v. Custer Battles,* LLC, 415 F.Supp.2d 628, 635 (E.D. Va. 2006). A conclusion as to the reliability of an inference cannot be bootstrapped from a blanket invocation of the privilege against self incrimination. *Id.*

An adverse inference is appropriate only as it pertains to a particular fact and then is permissible only when independent evidence exists of the fact to which the party refuses to answer. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000). This requirement seeks to avoid allowing speculation as to what the adverse inference should be. The Ninth Circuit in the case of *Doe ex rel. Rudy-Glanzer v. Glanzer,* explained this point.

> Within a civil suit, a defendant is asked the question "did you ever pick up the gun?" The defendant refuses to answer asserting his Fifth Amendment privilege. The plaintiff then introduces into evidence the fact that defendant's fingerprints were found on the gun. The jury then may be instructed that from defendant's silence, it can infer that defendant picked up the gun. However, it cannot be instructed that it can infer from defendant's refusal to answer that particular question, that the defendant fired the gun, or that he disposed of the gun at the crime scene. That would be constructing an inference on another inference. These other inferences could only come into play if the specific questions pertaining to such inferences are asked, are met with a Fifth Amendment privilege response, and are corroborated by other evidence to the specific fact being questioned.

232 F.3d at 1266, f. 2.

In the instant case, there can be no blanket inference, therefore, that the non-party witnesses spoke of unlawful conduct. Rather, any inference would be about a particular fact about which there is independent evidence. An example may shed light on this principle.

---

probative value of any such assertion is small, at best. Moreover, whether the advice was fraudulent isn't an "inference" of fact at all, it is a conclusion of law that is to be drawn from facts. As such, whether the advice was fraudulent is not an appropriate subject upon which an adverse inference can be drawn.

Defense counsel could have asked Ms. Guerin during her deposition whether, during a conversation with Mr. Welles, he said "I wish to commit tax fraud." It would be beyond cavil for the government to argue that the inference the Court should draw from Ms. Guerin's blanket invocation of the privilege is that Mr. Welles said he wished to commit tax fraud. The invocation of the privilege adds nothing to the case, and any inference, divorced from independent evidence, is inscrutable.

Even if the Court were to conclude, we believe wrongfully, that the inference was that the non-party witness engaged in conversation that they believed to be incriminating leads the government nowhere. Again, an example may help. Assume Ms. Guerin said the following during a conversation with Jeffrey Welles: "We have researched the legal issues and we believe the transactions at issue and the resulting tax consequences are completely appropriate and lawful." If she were asked if she said this and invoked her privilege, the inference would **not** be that the conversation never happened, but rather that the statements therein somehow incriminated her. The inference would depend upon the independent evidence. If there were evidence that she had not researched the legal issues, then the Court may infer from the invocation of the privilege that Ms. Guerin in fact had not conducted that research. But that inference is not adverse to Mr. Welles. There would be no inference that Mr. Welles **knew** Ms. Guerin had not conducted the research. In each case, the inference would depend upon the independent evidence and the facts referenced in the question.

We respectfully suggest that the portion of the Court's Order which provides that the government "may introduce the deposition testimony" of the Non-Party Witnesses if and when Plaintiffs adduce testimony as to the substance of conversations that Mr. Welles had with any of these third parties, cannot be applied as a blanket statement. Rather, it must be analyzed on a

question-by-question basis. The independent evidence supporting an adverse inference must be examined. And then the Court must rule on whether that inference – adverse to the witness testifying – has any relevance whatsoever.

Similarly, the invocation of the privilege with regard to the opinion letter does not in any way support an inference that the author(s) of the advice disavows its reliability. There are myriad reasons why the authors of that letter might invoke their Fifth Amendment rights. Absent independent evidence that the authors disavowed its reliability, such an inference is directly contrary to the case law. Absent evidence that the Plaintiffs knew about any such disavowal, even this improper inference is without relevance.

Plaintiffs request that the Court, having already recognized that "it would be inappropriate to draw an adverse inference from the non-party witnesses' refusal to testify," reconsider the conditions it imposed upon Plaintiffs - conditions that effectively restrict their ability to assert a reasonable cause defense without subjecting themselves to undue prejudice. Alternatively, Plaintiffs request that the Court provide clarification regarding the manner in which adverse inferences are to be admitted in light of the evidentiary rules that apply to such inferences.

## III. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to reconsider.

Dated: March 28, 2008

Respectfully Submitted

SCHIFF HARDIN LLP

/s/ Robert E. Kolek

Attorneys for Plaintiffs
Robert E. Kolek
Thomas R. Wechter
Matthew C. Crowl
Colleen M. Feeney
Ayad P. Jacob
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Phone: 312-258-5500
Fax: 312-258-5600

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 28th of March, 2008, the undersigned counsel caused to be electronically filed *Plaintiffs' Motion For Partial Reconsideration* using the CM/ECF system, which will send notification of such filing to the following named counsel of record:

Stuart D. Gibson, Esq.
Cory A. Johnson, Esq.
Trial Attorney
Tax Division
U. S. Department of Justice
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044

/s/ Colleen M. Feeney