**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T &** **No. 07-520-T** |
| **v.** | ) | **Judge Christine O.C. Miller** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**RESPONSE OF THE UNITED STATES**
**TO PLAINTIFFS' MOTION**
**FOR PARTIAL RECONSIDERATION**

The United States opposed plaintiffs' motion *in limine* to completely exclude from evidence at trial the deposition testimony of Paul Daugerdas, Donna Guerin, David Parse, Perry Parker, Craig Brubaker, and John Ivsan. These are the former Jenkens & Gilchrist and Shumaker, Loop & Kendrick lawyers and Deutsche Bank employees who designed the BEDS tax shelter and purportedly provided advice and assistance to Stobie Creek and the Welleses in implementing the shelter, and claiming $40 million in tax benefits from the tax shelter. Although the Court granted plaintiffs' motion, it ruled that the United States would be allowed to introduce the testimony of these witnesses if plaintiffs introduce evidence of information or advice Stobie Creek or the Welleses purportedly received from these witnesses. Additionally, the Court held that if plaintiffs introduce into evidence an opinion letter from Jenkens & Gilchrist, the defendant would be able to introduce testimony of these witnesses, or other evidence that the authors of the opinion have disavowed the advice.

Plaintiffs now ask the Court to reconsider its ruling, and allow the Welleses to testify about information and advice they purportedly received from these witnesses, and introduce an opinion letter allegedly authored by two of these witnesses. At the same time, they seek to prevent the United States from even introducing into evidence the testimony of these same individuals – testimony that would, along with other documentary and testimonial evidence, assist the Court in evaluating plaintiffs' claims.[1]

The Court should not reconsider its ruling of March 21, 2008 – to the extent it permits the United States to introduce into evidence the testimony of these central witnesses – for several reasons. First, it cannot be disputed that, if plaintiffs offer evidence – either through testimony, an opinion letter or other documentary evidence – about these witnesses to support their claims, *the actual testimony of these witnesses themselves* is relevant and admissible under Rules 401 and 402 of the Federal Rules of Evidence. For example, the United States expects that plaintiffs may attempt to offer an opinion letter provided by Jenkens & Gilchrist, the promoter of the BEDS shelter, and elicit testimony from Jeff Welles that he made certain representations of fact upon which the opinion is based. The United States should be allowed to introduce the testimony of the Jenkens' lawyers to whom these representations were allegedly made, including Donna Guerin. During her deposition, Ms. Guerin was asked specifically about the representations listed in the opinion letter addressed to Jeff Welles:

> Q: On page 7 of the letter that's at the first part of the exhibit, there is a section called "representations." Do you see that?

---

[1] As addressed below, and in its original response, the United States believes the Court should admit the testimony and then, based on its review of the testimony and other evidence at trial, determine what inferences to draw from the witnesses' refusal to testify based on their Fifth Amendment rights.

A: I do.
Q: And there is a listing of five representations, or at least the representations are grouped into five paragraphs, subparagraphs. Do you know if those presentations were made to anybody at Jenkens?
A: I assert the privilege.
Q: Were any representations made to you by Mr. Welles?
A: I assert the privilege.
Q: Were they made by anybody else to you?
A: I assert the privilege.
Q: Do you know whether or not the representations in there, set forth in there are accurate?
A: I assert the privilege.
Q: Do you know if before this letter was sent, assuming it was, whether anybody at Jenkens did anything to verify whether those representations set forth here were true and accurate?
A: I assert the privilege. (Donna Guerin Dep. pp. 34 - 35)[2]

The testimony of Paul Daugerdas, David Parse, Craig Brubaker, Perry Parker, and John Ivsan is similarly relevant to plaintiffs' claims. The Court can evaluate their testimony, and any inferences that are appropriate, once the testimony is admitted.[3]

---

[2] The United States does not view this testimony as the result of "calculated questioning" that is "held in disdain by the courts," as plaintiffs argue. (Motion for Reconsideration, p. 5) Additionally, this excerpt of testimony belies plaintiffs' claim that there is "no reason" to believe that the witnesses refusal to testify relates to the Welleses. (Motion for Reconsideration, p. 5) Finally, the United States also believes that this excerpt shows that, contrary to plaintiffs' claims, the interests of plaintiffs and the witnesses are not necessarily always "hostile and adverse." (See March 21, 2008, Order, p. 2) Indeed, Ms. Guerin has every incentive to testify that the representations – described in the opinion letter as being made to Jenkens – were in fact made to Jenkens, if that were true.

[3] If the United States had not deposed these witnesses, but instead simply called them as witnesses at trial, and asked them the same questions, their testimony certainly would be admitted as evidence, including any refusals to testify based on their Fifth Amendment rights. A witness must appear to testify, and must invoke the privilege on a question-by-question basis. (See August 29, 2007, Order.) In this bench trial, the result should not be different simply because the United States is seeking to introduce deposition testimony rather than live testimony.

Second, plaintiff's claim of unfair prejudice, and any exclusion of the evidence under Rule 403 of the Federal Rules of Evidence for that reason, are misplaced here. As the Fifth Circuit explained:

> This portion of Rule 403 has no logical application to bench trials. Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power, but excluding relevant evidence on the basis of "unfair prejudice" is a useless procedure. Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision.

*Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981). *See also Schultz v. Butcher,* 24 F.3d 626, 632 (4th Cir. 1994) (In a bench trial, evidence should not be excluded under Rule 403 on the ground it is unfairly prejudicial. The court should hear relevant evidence, weigh its probative value, and reject any improper inferences.) The court in *Libutti v. United States,* 107 F.3d 110 (2nd Cir. 1997), specifically recognized (at p. 124) the inapplicability of Rule 403 in a bench trial in connection with the admission of Fifth Amendment invocations: "many of the management problems which a trial court invariably has to wrestle with in order to guard against unfair prejudice when one takes the proverbial Fifth simply do not exist in the context of a bench trial."[4]

[4] The United States also does not believe that the deposition testimony, and the inferences that can be drawn from it, are "unfairly prejudicial." The "prejudice against which the law guards is ... unfair prejudice... prejudice of the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found. Prejudice does not simply mean damage to the opponent's cause." *Hussey v. Chase Manhattan Bank,* 2005 WL 2203146 at 3 (E.D. Pa. 2005)

Third, plaintiffs' argument that there must be independent evidence supporting any adverse inference actually supports the United States position that the Court should admit the testimony, and then consider it along with all the other evidence presented at trial. The Court should not exclude the evidence before trial based on plaintiffs' claims of what the evidence may or may not be concerning these witnesses, or may or may not be concerning the events these witnesses were allegedly involved in. As the court in *LiButti* stated (at p. 124), the circumstances unique to each particular case must be considered. Here, the adverse inferences that the court can draw from the deposition testimony of the former Jenkens lawyers and Deutsche Bank employees who designed and promoted the BEDS tax shelter – and sold the shelter to Jeff Welles and his family, and implemented the shelter on their behalf – will be just part of the evidence supporting the factual findings that defeat plaintiffs' claims. As in *LiButti*, which was also a bench trial, the Court should allow the United States to offer this deposition testimony, along with the other evidence it expects to offer at trial.[5]

Finally, plaintiffs' argument that the United States is not entitled to rebut their evidence by asking the Court to draw adverse inferences from invocations of the Fifth Amendment, lacks any basis in law or in fairness. As a matter of law, the court in *LiButti* held that even when the government is a party in a civil case, and will benefit from the inference, the trier of fact may draw a negative inference when a witness refuses to testify. *LiButti,* 107 F.3d at 121. The fact that the government may be investigating the witness who refuses to testify is irrelevant –

[5] Significantly, the cases that the *LiButti* court discusses were all jury cases – where the unfair prejudice concerns of Rule 403 are applicable – and the admission of Fifth Amendment invocations were upheld.

fundamental fairness requires that a party be able to use a witness' invocation of the Fifth Amendment to rebut a party's claim to have relied on that witness.[6]

At bottom, plaintiffs seek to testify with impunity about their contacts with third party witnesses, free in the knowledge that, because the witnesses refuse to testify, the United States cannot elicit answers from the witnesses to rebut plaintiffs' testimony. This is why the Court's initial ruling was correct, and why the Court should allow the United States to introduce the testimony of these witnesses, under the conditions set out in the ruling. Introduction of the testimony will give the Court the ability to consider their specific invocations of the Fifth Amendment, to rebut any specific testimony that the plaintiffs may offer during trial.

Respectfully submitted,

*/s/ Stuart D. Gibson*
Stuart D. Gibson
Attorney of Record
U.S. Department of Justice
Tax Division
P.O. Box 403, Ben Franklin Station
Washington D.C. 20044
(202) 307-6586

John A. DiCicco
Deputy Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section
Cory A. Johnson
Trial Attorney, Court of Federal
Claims Section

[6] As the court stated in *RAD Services, Inc. v. Aetna Casualty and Surety Co.*, 808 F.2d 271, 279 (1986), it is also "instructive" to remember that plaintiff pressed this case knowing that a criminal investigation was ongoing, and never sought to stay the proceedings until the investigation was over. Additionally, plaintiffs have never challenged, as unfounded, the witnesses' refusal to testify on the grounds that they might incriminate themselves.

Jacob E. Christensen
Trial Attorney, Court of Federal
Claims Section

Dated: April 2, 2008

*/s/ David Gustafson*
Of Counsel