**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T &**<br>**No. 07-520-T** |
| **v.** | ) | **Judge Christine O.C. Miller** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

---

**THE UNITED STATES' POST-TRIAL MEMORANDUM CONCERNING THE VALIDITY OF TREAS. REG. §1.752-6**

---

JOHN A. DICICCO
Acting Assistant Attorney General

DAVID GUSTAFSON
Chief, Court of Federal Claims Section

STUART D. GIBSON
Senior Litigation Counsel
U.S. Department of Justice
Tax Division, Office of Civil Litigation
Post Office Box 403
Ben Franklin Station
Washington D.C. 20044
(202) 307-6586 (Phone)
(202) 307-2504 (Fax)

CORY A. JOHNSON
JACOB E. CHRISTENSEN
Trial Attorneys, Court of Federal Claims Section

# TABLE OF CONTENTS

Page(s):

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

I. Treas. Reg. § 1.752-6 is Expressly Authorized Under I.R.C. § 7805(b)(6), Which Provides That the Secretary May Promulgate Retroactive Regulations Pursuant to a Specific Grant of Authority From Congress. . . . . . . . . . . . . . . . . . . . . 3

A. The Secretary Promulgated Treas. Reg. § 1.752-6 Pursuant to the Congressional Grant of Authority Set Forth in Section 309 of the Community Renewal Tax Relief Act of 2000. . . . . . . . . . . . . . . . . . . . 4

1. Legislative Evolution of Section 309 of the 2000 Act.. . . . . . . . . . . . . 4

2. Promulgation of Treas. Reg. § 1.752-6. . . . . . . . . . . . . . . . . . . . . . . . 7

B. Because It Was Promulgated Pursuant to a Specific Delegation of Authority, §1.752-6 is Entitled to the Highest Degree of Deference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II. The *Klamath* Court Erred in Finding That Treas. Reg. § 1.752-6 Could Not Be Applied Retroactively Pursuant to § 7805(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . 9

III. The Decision in *Sala* is Similarly Flawed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV. The Seventh Circuit Got It Right in *Cemco*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V. The Retroactive Effective Date of Treas. Reg. § 1.752-6 is Also Authorized Under I.R.C. § 7805(b)(3), Which Provides That the Secretary May Promulgate Retroactive Regulations in Order to Prevent Abuse.. . . . . . . . . . . . . . . . 16

A. The contribution-assumption transactions targeted by Treas. Reg. § 1.752-6, as exemplified by the BEDS shelter, are abusive. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

B. The *Klamath* and *Sala* Court's § 7805(b)(3) Analyses Are Flawed. . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

Page(s):

CASES

*ACM Partnership v. Commissioner*, 157 F.3d 231 (3d Cir. 1998). . . . . . . . . . . . . . . . . . . . 16

*A. Tarricone, Inc. v. United Sates*, 4 F. Supp. 2d 323 (S.D.N.Y. 1998). . . . . . . . . . . . . . . . . 10

*Busse v. Commissioner*, 479 F.2d 1147 (7th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*CEMCO Investors LLC v. United States*, 515 F.3d 749 (7th Cir. 2008). . . . . . . . . 1, 14-16, 19

*Chevron USA, Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984). . . . . . 8

*Gehl Co. v. Commissioner*, 795 F.2d 1324 (7th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Jade Trading LLC v. United States*, 80 Fed. Cl.11 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Kandi v. United States*, 97 A.F.T.R.2d 2006-721 (W.D. Wash. 2006),
*appeal docketed*, No. 06-35209 (9th Cir. Mar. 14, 2006).. . . . . . . . . . . . . . . . . . . . . . . . . 17

*Klamath Strategic Investment Fund LLC v. United States*,
440 F. Supp. 2d 608 (E.D. Texas 2006). . . . . . . . . . . . . . . . . . . . . . . . . 1, 9-12, 15, 17, 18

*Paxton v. Commissioner*, 53 T.C. 202 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sala v. United States*, 2008 WL 1836693 (D. Colo., April 22, 2008). . . . . . . . . 1, 12-14, 16-18

*Snap-Drape Inc. v. Commissioner*, 98 F.3d 194 (5th Cir. 1996).. . . . . . . . . . . . . . . . . . . . . 17

*Tate & Lyle, Inc. v. .Commissioner*, 87 F.3d 99 (3d Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Carlton*, 512 U.S. 26 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

STATUTES

Internal Revenue Code of 1986 (26 U.S.C.):

§ 357.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
§ 358.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5-8, 12
§ 1059(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
§ 7805(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 8, 12, 15-17

Treasury Regulations:

§ 1.358-7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
§ 1.701-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
§ 1.705-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
§ 1.725-6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
§ 1.752-6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
§ 1.752-7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

LEGISLATIVE MATERIALS

145 Cong. Rec. 27,547 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

145 Cong. Rec. 27,553 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

145 Cong. Rec. 27,554 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Community Renewal Tax Relief Act of 2000, Pub. L. No. 106-554, § 309, 114 Stat. 2763A-587, 638 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 11, 15

H.R. Conf. Rep. No. 105-220, at 525 n.8 (1997), *reprinted in* 1997-4 (Vol. 2) C.B. 1457, 1995.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

H.R. Rep. No. 106-1036, at 5 (2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Staff of the Joint Comm. on Taxation, 106th Cong., *General Explanation of Tax Legislation Enacted in the 106th Congress* 153 n.174 (Comm. Print 2001) (JCS-2-01), *reprinted in* 2000-3 C.B. 565, 651.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Taxpayer Refund and Relief Act of 1999, H.R. Conf. Rep. No. 106-289, at 537 (1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 11

Ticket to Work and Work Incentives Improvement Act of 1999, Pub. L. No. 106-170, 113 Stat. 1860 (1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Treasury Decision 9062, 2003-2 C.B. 46.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

Treasury Decision 9062, 2003-2 C.B. 47.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STOBIE CREEK INVESTMENTS, LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-748 T &** **No. 07-520-T** |
| **v.** | ) | **Judge Christine O.C. Miller** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**THE UNITED STATES' POST-TRIAL MEMORANDUM ON TREAS. REG. § 1.752-6**

## Introduction

By Order entered April 30, 2008, the Court directed the parties to file post-trial briefs addressing the validity of the retroactive application of Treas. Reg. § 1.752- 6, in light of three recent decisions, one of which affirmed the validity of the regulation – *CEMCO Investors LLC v. United States*, 515 F.3d 749 (7th Cir. 2008) – and two of which determined that the regulation, as applied retroactively, is invalid – *Klamath Strategic Investment Fund LLC v. United States*, 440 F.Supp.2d 608 (E.D. Texas 2006) (appeal pending) and *Sala v. United States*, 2008 WL 1836693 (D. Colo., April 22, 2008). For the reasons discussed below, the Secretary of the Treasury promulgated the regulation, and made it retroactive to partnership assumptions of certain liabilities occurring after October 18, 1999, in accordance with an express delegation of authority from Congress. Accordingly, the regulation, as applied retroactively to the transactions at issue in this case, is valid.[1]

[1]Plaintiffs agree that if Treas. Reg. § 1.752-6 is applicable to the contribution of the options to Stobie Creek, it precludes the claimed $204 million increase of the Therma-Tru

As a threshold matter, the United States observes that the Court can and should determine the proper tax treatment of the plaintiffs' Foreign Exchange Digital Option Transactions (FXDOTs) without regard to the retroactive application of this particular regulation, for two separate reasons.

First, the United States clearly established at trial that the FXDOTs at issue here were artificial transactions – based on a template specifically designed for the BEDS tax shelter – totally devoid of economic substance. The FXDOTs were entered into simply because they were part of the series of pre-planned, integrated steps in the BEDS shelter, through which the Welleses hoped to claim a predetermined artificial basis boost to their Therma-Tru stock. Because the FXDOTs lacked economic substance and because the Court should refuse to respect each of the intermediate steps of the shelter – including the purported transfer of the FXDOTs to Stobie Creek – under the step transaction doctrine, the Court can and should rule for the United States without reaching the issue of whether the Secretary acted within his authority when he promulgated Treas. Reg. §1.752-6, and made it applicable to transactions occurring after October 18, 1999.

Second, the United States also clearly established at trial – consistent with Judge Williams' findings of fact in *Jade Trading LLC v. United States,* 80 Fed. Cl.11, 51 (2007) – that the offsetting long and short option pairs that comprised each of the 14 FXDOTs were

---

stock's cost basis. Under this regulation, the outside basis of a partner is decreased in the amount of any contingent or fixed liability contributed to the partnership. *See* Treas. Reg. § 1.752-6(a) and Code § 358(h)(3). Thus, *if* the option components are treated as separate transactions – a proposition that contravenes the weight of the evidence adduced at trial – a $204,575,000 increase in outside basis based on the stated premium of the long option components is simultaneously off-set by a $202,529,250 million decrease based on the stated amount of the obligation under the short option components contributed to Stobie Creek. The outside basis increase (and inside basis increase under §754) would be only a net $2,045,750.

component parts of a single transaction. Accordingly, under no circumstances could the short option components be considered separate "contingent liabilities" for purposes of calculating a partner's outside basis in Stobie Creek. Because the basis for each of the FXDOTs, could only be the net premium actually paid – that is, the difference between the stated premium for the long options and the stated premium for the short options – the Court need not decide in this case whether §1.752-6 can be applied retroactively.

## ARGUMENT

### I. TREAS. REG. § 1.752-6 IS EXPRESSLY AUTHORIZED UNDER I.R.C. § 7805(b)(6), WHICH PROVIDES THAT THE SECRETARY MAY PROMULGATE RETROACTIVE REGULATIONS PURSUANT TO A SPECIFIC GRANT OF AUTHORITY FROM CONGRESS

Treas. Reg. §1.752-6, issued in June 2003, contains a basis reduction rule applicable to partnership assumptions of certain partner obligations occurring after October 18, 1999, and before June 24, 2003.[2] Under the regulation, if a partnership assumed a contributing partner's "fixed or contingent obligation to make payment" during the relevant time period, *see* I.R.C. § 358(h)(3), then Treas. Reg. § 1.752-6(a) generally effects a corresponding reduction in the contributing partner's basis in his partnership interest *(i.e.* "outside basis") to the extent such obligation is not otherwise taken into account under § 752.

#### A. The Secretary Promulgated Treas. Reg. § 1.752-6 Pursuant to the Congressional Grant of Authority Set Forth in Section 309 of the Community Renewal Tax Relief Act of 2000

##### 1. Legislative Evolution of Section 309 of the 2000 Act

On July 23, 1999, the Senate Committee on Finance favorably reported S. 1429, 106th Cong. (1999), the Taxpayer Refund Act of 1999. S. Rep. No. 106-120 (1999). S. 1429

[2] A much more detailed set of rules applies to assumptions of such obligations occurring on or after June 24, 2003. *See* Treas. Reg. § 1.752-7.

included a provision broadening the scope of I.R.C. § 357(b), the anti-abuse rule related to assumptions of liabilities in connection with transfers to controlled corporations, effective July 15, 1999. *Id*. at 214-15. The Committee explained why it was enacting this provision:

> As one example of a transaction that concerns the Committee, a transferor corporation may transfer assets with a fair market value basis … in exchange for preferred stock of the transferee corporation, plus the transferee's assumption of a contingent liability … The transferor claims a high basis for the stock of the transferee held with respect to this transfer, because the basis of the assets is taken into account, while the taxpayer contends that the assumed liability does not reduce stock basis under current law. However, the value of the transferee stock in the hands of the transferor is nominal, because of the liability that offsets virtually all the value of the assets. … [*Id*. at 214-15.]

Section 1318 of S. 1429 survived the reconciliation with H.R. 2488, 106th Cong. (1999) (as passed by the House, the Financial Freedom Act of 1999), to become section 1512 of the conference version of H.R. 2488, the Taxpayer Refund and Relief Act of 1999. H.R. Conf. Rep. No. 106-289, at 537 (1999). The Conference Committee added:

> It is also expected that the Treasury Department will promptly examine the use of partnerships and apply similar rules (for example, with respect to *adjustments to the basis of a partnership interest with respect to certain contingent liabilities*) where there is a principal purpose of avoiding Federal income tax through the use of a transaction that includes the *assumption of liabilities by a partnership*. The conferees note that pursuant to section 7805(b)(3), if necessary to prevent abuse, the Secretary could determine that any regulations applying such rules should be effective on the same date as this provision, i.e., July 15, 1999.

*Id*. at 538 (emphasis added). Although Congress passed the legislation (of which section 1512 was but a tiny part) on August 5, 1999, the President vetoed it on September 23, 1999. H.R. Rep. No. 106-1036, at 5 (2000).

On October 19, 1999, the Chairman of the Senate Committee on Finance released his mark of a bill that would be introduced a week later as S. 1792, 106th Cong. (1999), the Tax Relief Extension Act of 1999. Staff of the Joint Comm. on Taxation, 106th Cong., *General*

*Explanation of Tax Legislation Enacted in the 106th Congress* 153 n.174 (Comm. Print 2001) (JCS-2-01), *reprinted in* 2000-3 C.B. 565, 651. S. 1792 took a different approach to the contribution-assumption problem described in S. Rep. No. 106-120, *supra*, the committee report that had accompanied S. 1429. Instead of altering the general anti-abuse provision of I.R.C. § 357(b), S. 1792 contained a provision (section 213) specifically aimed at arrangements whereby a taxpayer transfers assets to a corporation in connection with the corporation's assumption of the transferor's contingent liability. 145 Cong. Rec. 27,547, 27,553-54 (1999). As it had with the vetoed legislation, the Finance Committee again recognized the potential for abuse: "The transferor claims a basis for the stock equal to the basis of the transferred assets [without reduction for the liability assumption] … [but] the value of the stock is reduced by the amount of the liability, creating a potential loss." S. Rep. No. 106-201, at 47 (1999).

Section 213(a) of S. 1792, *supra*, would have added a basis reduction rule to I.R.C. § 358 applicable to stock received in "contribution-assumption of liability" transactions where § 358(d)(1) (the corporate analog of § 752(b)) did not apply to the liability assumption. *See* 145 Cong. Rec. at 27,553. The provision defined "liability" for these purposes to include "any obligation to make payment, without regard to whether the obligation is fixed or contingent or otherwise taken into account for purposes of this title." *Ibid*. Section 213(b) of the bill ("Application of Comparable Rules to Partnerships") directed the IRS to prescribe similar rules for transactions involving partnerships, and § 213(c)(2) of the bill authorized the IRS to apply those rules retroactively to liability assumptions occurring after October 18, 1999 (the day preceding the release of the Chairman's markup). *Id*. at 27,554. Although several of the bill's provisions were eventually included in Title V of the Ticket to Work and Work Incentives Improvement Act

of 1999, Pub. L. No. 106-170, 113 Stat. 1860 (1999), section 213 of the bill was not among them.

In December 2000, Congress finally enacted the basis reduction rule of I.R.C. § 358(h), in a form that is substantially similar to section 213 of S. 1792, discussed above. *See* Community Renewal Tax Relief Act of 2000, Pub. L. No. 106-554, § 309, 114 Stat. 2763A-587, 638 (2000) (the "2000 Act"); *General Explanation of Tax Legislation Enacted in the 106th Congress, supra* at 153 n.174 (discussing the provenance of 2000 Act § 309). The rule as enacted applies to a transferee corporation's assumption of "any fixed or contingent obligation to make payment, without regard to whether the obligation is otherwise taken into account for purposes of this title." I.R.C. § 358(h)(3) (defining "liability" for purposes of § 358(h)). Moreover, 2000 Act section 309(c) ("Application of Comparable Rules to Partnerships and S Corporations") directed the IRS to prescribe similar rules providing for adjustments "under subchapter K of chapter 1" (*i.e.* §§ 701 - 777) of the Code for transactions involving partnerships and under "subchapter S of chapter 1" (i.e. §§ 1361 - 1379) for transactions involving S corporations. 2000 Act section 309(d)(2) authorized the Secretary to apply those rules retroactively to liability assumptions occurring after October 18, 1999. 114 Stat. at 2763A-638.

In short, Congress enacted legislation aimed at abuses related to corporate assumptions of contingent liabilities under §358(h). At the same time, Congress directed the Secretary of the Treasury to prescribe rules precluding similar abuses involving partnership assumptions of contingent liabilities, that are governed by the corresponding partnership provision in subchapter K – § 752. In directing the Secretary to prescribe those rules, Congress expressly authorized the Secretary to make them effective retroactively to October 19, 1999.

**2. Promulgation of Treas. Reg. § 1.752-6.**

Under the express congressional directive discussed above, the IRS issued Treas. Reg. § 1.752-6 in June 2003, and made the regulation applicable to liability assumptions by partnerships occurring after October 18, 1999, and before June 24, 2003. *See* T.D. 9062, 2003-2 C.B. 46, 47. Also pursuant to the Congressional authorization, and consistent with the concerns set forth in the legislative history, the approach of Treas. Reg. § 1.752-6 is similar to that of I.R.C. § 358(h). That is: (i) both provisions effect a decrease in the basis of the property (*i.e.* a partner's partnership interest or stockholder's stock) received in an exchange involving a contingent liability; (ii) both apply to liabilities that are not taken into account by the respective subchapter K and subchapter C provisions (*i.e.* § 752(a) and (b) and §358(d)(1)) that are otherwise applicable to assumptions of liabilities by partnerships and corporations; (iii) both use the definition of "liability" from § 358(h)(3); (iv) both set the actual fair market value of the property received in the exchanges – a partner's partnership interest and a shareholder's stock interest – as a floor to any adjustment to the tax basis of the property due to the assumption of contingent liabilities; (v) neither § 1.752-6 nor § 358, by its terms, is restricted in its application to any particular species of abusive transactions (*e.g.* an acceleration or duplication of losses), but instead simply prescribes that the basis of property received in the exchange must be reduced by the amount of any fixed or contingent liability; and (vi) both provide for exceptions to the adjustments they require when a trade or business or substantially all the assets with which the liability is associated are also transferred in the exchange, along with the liability.

In short, Treas. Reg. § 1.752-6 carries out the mandate of Congress by precluding the artificial inflation of a partner's partnership interest (outside basis) through the contribution

of contingent liabilities, just as § 358 precludes an artificial inflation of the basis in stock through the contribution of contingent liabilities to a corporation.

### B. Because It Was Promulgated Pursuant to a Specific Delegation of Authority, §1.752-6 Is Entitled to the Highest Degree of Deference

Under *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 - 44 (1984), a regulation issued pursuant to a specific delegation of authority from Congress must be given controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute. Section 309(c) of the 2000 Act authorized the Secretary to issue regulations addressing the assumption of I.R.C. § 358(h)(3)-type liabilities by partnerships, and Treas. Reg. § 1.752-6 clearly relies upon this grant of authority. The rules in Treas. Reg. § 1.752-6 are substantially similar to those in § 358, and apply to "adjustments under subchapter K" (*i.e.*, § 752), as Congress directed. Section 309(d) of the 2000 Act expressly authorized the Secretary to make these regulations effective as of October 18, 1999. Accordingly, the regulation is entitled to the highest degree of deference under *Chevron*, and is validly applied retroactively pursuant to I.R.C. § 7805(b)(6).

## II. THE *KLAMATH* COURT ERRED IN FINDING THAT TREAS. REG. § 1.752-6 COULD NOT BE APPLIED RETROACTIVELY PURSUANT TO § 7805(b)(6)

The district court in *Klamath* concluded that Treas. Reg. §1.358-7 – but not §1.752-6 – falls within the congressional grant of authority set forth in section 309(c)(1) of the 2000 Act.[3] The two reasons offered by the court in support of its conclusion do not withstand analysis.

The district court's first reason for concluding that section 309(c)(1) did not authorize the Secretary to promulgate regulations under § 752 was that, "the [2000] Act and its legislative history do not mention Section 752." However, section 309(c)(1) directs the Secretary to adopt rules to prevent taxpayers from abusing the Code by prescribing rules that provide for "appropriate adjustments under subchapter K" of the Code. Thus, Congress clearly expected the Secretary to adopt rules under the partnership provisions of the Code that mirrored the corporate provision in § 358. This could mean only one thing: Congress authorized the Secretary to address partnership abuses with regulations under §752. The *Klamath* court erred by failing to acknowledge this clear Congressional mandate.

Moreover, the court's reasoning in *Klamath* clearly proves too much. After all, the 2000 Act and its legislative history similarly do not mention § 705 ("Determination of Basis of Partner's Interest"), and yet Treas. Reg. § 1.358-7(b) contains a substantive rule relating to § 705 as well.[4] Under the *Klamath* court's reasoning, then, § 1.358-7(b), no less than

---

[3] The IRS issued Treas. Reg. § 1.358-7 (in proposed form) as part of the same package of regulations that included § 1.752-6 (in temporary form). *See* REG-106736-00, 2003-2 C.B. 60. Section 1.358-7 provides rules relating to (1) transfers of partnership interests to corporations, and (2) contribution-assumption transactions where the shareholder is a partnership.

[4] Indeed, Treas. Reg. § 1.705-1(a)(8), included (in proposed form) in the same package of regulations, cross-references § 1.358-7(b).

§1.752-6, falls outside the scope of section 309(c)(1) of the 2000 Act. Yet the *Klamath* court considered §1.358-7(b) to fall within the scope of that same congressional grant of authority.

The *Klamath* court's second reason for holding that §1.752-6 was not adopted pursuant to an express grant of legislative authority is that, because the legislation that became section 309 of the 2000 Act was initially proposed on October 19, 1999 (*i.e.*, as section 213 of S. 1792, *supra*), Congress could not have been aware of the transactions described in Notice 2000-44 at that time. But this reasoning is flawed as well, because it suggests that Treas. Reg. § 1.752-6 is somehow limited to the particular transactions in Notice 2000-44. This is clearly not the case.

Indeed, the history of the enactment of section 309(c) shows that Congress had been concerned since mid-1999 about abuses involving the contribution of so-called "contingent" liabilities to corporations and to partnerships. In enacting section 309(c), Congress made it clear to the public that it would no longer tolerate such abuses, regardless of whether the liability had been transferred to a corporation or to a partnership. Thus it gave the Secretary the express direction to issue rules – retroactive to October 19, 1999 – to prevent these abuses in the partnership arena.[5] The issuance of Notice 2000-44 – which placed taxpayers and tax shelter promoters on notice that the transactions it described would be scrutinized and penalized – did not diminish or negate Congress' express direction that the Secretary

[5] The Supreme Court "repeatedly has upheld retroactive tax legislation against a due process challenge." *United States v. Carlton*, 512 U.S. 26, 30 (1994) (citing cases). *See also, Tate & Lyle, Inc. v. .Comm'r,* 87 F.3d 99, 107 (3d Cir. 1996) (holding that a six year retroactive application of a regulation did not violate due process); and *A. Tarricone, Inc. v. United Sates*, 4 F.Supp. 2d 323, 327 (S.D.N.Y. 1998).

adopt rules, retroactive to October 19, 1999, to prevent abuses involving contributions to partnerships.

Perhaps the court in *Klamath* was suggesting that, because neither section 213 of S. 1792 (section 309 of the 2000 Act), nor the corresponding legislative history specifically mentions assumptions of liabilities *by partnerships* in transactions that have nothing to do with §358, Congress must not have been aware of the potential for abuse inherent in such transactions. But this suggested unawareness is belied by the Conference Report to H.R. 2488, *supra* (the Taxpayer Refund and Relief Act of 1999), issued less than three months prior to the introduction of S. 1792. As discussed above, in that Report the Conference Committee urged the Treasury Department to "promptly examine the use of partnerships and apply similar rules (for example, with respect to *adjustments to the basis of a partnership interest* with respect to certain contingent liabilities) where there is a principal purpose of avoiding Federal income tax through the use of a transaction that includes the assumption of liabilities by a partnership." H.R. Conf. Rep. No. 106-289, *supra* at 538 (emphasis added). That Congress decided to draft and enact the subsequent grants of authority in S. 1792 and section 309(c) of the 2000 Act as broadly as possible – limiting them neither to partnership assumptions of liabilities nor to transactions described in § 358, but instead referring to "transactions involving partnerships" – is hardly surprising. The court in *Klamath* did not account for this unequivocal concern about assumptions of contingent liabilities by partnerships expressed in the legislative history, or the broad grant of authority in the 2000 Act that resulted from it.

In short, contrary to the *Klamath* court's findings, the Secretary, in issuing a regulation retroactive to October 1999 to combat tax avoidance resulting from the assumption by partnerships of purportedly contingent liabilities, did precisely what Congress

directed it to do in section 309 of the 2000 Act. And, the Secretary's issuance of the regulation was cannot be said to be arbitrary, capricious or manifestly contrary to law in light of the broad grant of authority in section 309(c). It therefore follows that I.R.C. §7805(b)(6) clearly authorized the Secretary to promulgate this regulation and make it retroactive to October 18, 1999.

## III. THE DECISION IN *SALA* IS SIMILARLY FLAWED.

The court in *Sala* cited three reasons for concluding that Treas. Reg. § 1.752-6 was not authorized by section 309(c) of the 2000 Act, and therefore could not be applied retroactively pursuant to I.R.C. § 7805(b)(6). Each is unsupportable.

The Sala court's first reason – that the rules in Treas. Reg. § 1.752-6 and I.R.C. § 358(h) are not "comparable" because the regulation includes an "exception to the exceptions" for Notice 2000-44 transactions – fails to take into account the authority expressly granted the Secretary in § 358 to make such exceptions. Both Treas. Reg. § 1.752-6 and § 358(h) provide for exceptions to their respective basis adjustment rules: no adjustment is made if the liability is transferred with a trade or business or with substantially all the assets with which it is associated. The regulation, however, also explicitly provides that these exceptions do not apply to the assumption of a liability by a partnership as part of a transaction substantially similar to those described in Notice 2000-44. Treas. Reg. § 1.752(b)(2). It is because of this "exception to the exceptions" that the *Sala* court determined that the rules in the regulation were not "comparable" to those in § 358(h) (despite their patent similarity otherwise), and that the Secretary, therefore, exceeded his grant of authority.[6]

---

[6] In deciding that the "exception to the exception" makes the two rules different, the *Sala* court assumed that the short option liability is "associated" with the long option. That, of course, is inconsistent with plaintiff's position in this case that they are separate and

The "exception to the exceptions" for Notice 2000-44 transactions in Treas. Reg. § 1.752-6, however, is entirely consistent with § 358(h). Section 358(h)(2) expressly provides that its trade and business/ transfer of assets exceptions to the basis adjustment rules apply "Except as provided by the Secretary." In promulgating Treas. Reg. § 1.752-6, and establishing rules for partnerships similar to those in section 358(h) for corporations, the Secretary invoked this provision, and explicitly included an exception to the exceptions. As the Secretary stated when he issued the regulation, "The exceptions to section 358(h) were intended to exclude from the application of § 358(h) ordinary business transactions." *See* T.D. 9062, 2003-2 C.B. 46. Because Notice 2000-44 was issued in August 2000, and notified taxpayers that the contribution of paired long and short options to partnerships in order to artificially increase outside basis were abusive, and would not be allowed, the Secretary's exclusion of these transactions from the exceptions in Treas. Reg. § 1.752-6(b) could not have been a surprise. And, because § 358(h) – which Congress told the Secretary to follow for purposes of promulgating similar rules for partnerships – expressly gave the Secretary discretion to provide for "exceptions to the exceptions," the Secretary's use of that authority for Notice 2000-44 transactions was not arbitrary, capricious or manifestly contrary to law.

The *Sala* court's second reason for finding that Treas. Reg. § 1.752-6 exceeded Congress's grant of authority was that, as applied in that case, the regulation disallowed an artificial loss that was not "accelerated" or "duplicative" of another loss. The regulation, however, contains rules almost identical to those in § 358(h), and precludes an artificial inflation of outside basis in the partnership context, just as § 358(h) precludes an inflation of stock basis in the corporate context. The Secretary, therefore, promulgated the precise rules

---

independent options.

Congress directed it to. The fact that these similar sets of rules disallow single fictitious losses, as well as the acceleration or duplication of losses, does not invalidate the regulation. As the court in *Cemco* noted (at 751), the purpose of such regulations is to "avoid the need to litigate, one tax shelter at a time, whether any real economic transaction is inside the box."

The *Sala* court's third basis for invalidating the regulation – that section 309(c) of the 2000 Act directed the Secretary to issue rules regarding only the assumption of liabilities by corporations – does not withstand scrutiny. Section 309(c) directed the Secretary to issue rules regarding the assumption of "liabilities described" in § 358(h)(3) in "transactions involving partnerships." The *Sala* court's attempt to broaden that specific reference to § 358(h)(3) to a conclusion that Congress intended to restrict the forthcoming regulations to corporate exchanges governed by §§ 351, 354, 355, 356 and 361, is not supported by the text of the statute or the legislative history.[7] In particular, the introductory clause of § 358(h)(3) – "For purposes of this subsection" – serves to specify the applicability of the definition of liability contained in that subsection; it does not effect the change in the plain meaning of section 309(c) that the *Sala* court ascribed to it. In fact, section 309(c) simply directs the Secretary to also use the definition of liability in § 358(h)(3) – "any fixed or contingent obligation to make a payment" – for purposes of the new regulations under subchapter K. And, section 309(c) does not refer to liabilities to which section 358(h) *applies* – rather it refers only to liabilities *described* in section 358(h)(3).[8]

---

[7] As discussed above, the legislative history expressly evidences Congress's concern with assumptions of contingent liabilities by partnerships.

[8] *See Busse v. Comm'r,* 479 F.2d 1147 (7th Cir. 1973) (exception in former § 483(f)(4) for transfers "described in section 1235(a)" did not require that the transfer so described also be a transfer to which the capital gain rule of section 1235 applied); *see also Paxton v. Comm'r*, 53 T.C. 202 (1969) (same).

## IV. THE SEVENTH CIRCUIT GOT IT RIGHT IN *CEMCO*.

In *Cemco Investors, LLC v. United States*, 515 F.3d 749 (7th Cir. 2008), the Seventh Circuit (Easterbrook, C.J.) held that, in accordance with I.R.C. § 7805(b)(6), the retroactive effective date of Treas. Reg. § 1.752-6 is valid because the Secretary promulgated the regulation pursuant to the congressional grant of authority set forth in section 309 of the 2000 Act. *Id.* at 752. The Court of Appeals reasoned that –

> although regulations generally do not apply to transactions that occur before the initial publication date of a draft regulation, see 26 U.S.C. § 7805(b)(1)(C), the norm of prospective application "may be superseded by a legislative grant from Congress authorizing the Secretary to prescribe the effective date with respect to any regulation." 26 U.S.C. § 7805(b)(6). Section 309 of the Community Renewal Tax Relief Act of 2000, Pub. L. 106-554, 114 Stat. 2763A-587, 638 (2000), enacts basis-reduction rules for many transactions and authorizes the IRS to adopt regulations prescribing similar rules for partnerships and S corporations. Section 309(d)(2) of the 2000 Act adds that those regulations may be retroactive to October 18, 1999. That's the power the Commissioner used when promulgating Treas. Reg. § 1.752-6.

*Id*. Moreover, the Court of Appeals expressly rejected the contrary holding of the court in *Klamath*.. *Id*. Specifically, the Court of Appeals was baffled by the *Klamath* court's conclusion that §1.752-6 was not promulgated pursuant to section 309 of the 2000 Act, since the regulation clearly "applies to partnerships (and LLCs treated as partnerships) a rule 'similar' to the approach that Congress adopted for other business entities" in the 2000 legislation. *Id*. The Seventh Circuit's decision in *Cemco* thus confirms that the *Klamath* and *Sala* courts erred in holding that the Secretary's decision to make § 1.752-6 retroactive to October 19, 1999 was not authorized under I.R.C. § 7805(b)(6).

## V. THE RETROACTIVE EFFECTIVE DATE OF TREAS. REG. § 1.752-6 IS ALSO AUTHORIZED UNDER I.R.C. §7805(b)(3), WHICH PROVIDES THAT THE SECRETARY MAY PROMULGATE RETROACTIVE REGULATIONS IN ORDER TO PREVENT ABUSE.

### A. The contribution-assumption transactions targeted by Treas. Reg. § 1.752-6, as exemplified by the BEDS shelter, are abusive.

Neither § 7805(b)(3) nor its legislative history defines the word "abuse." It is not unreasonable, however, to assume that Congress's perception of that concept, at least as applied to partnerships, would have been informed by Treas. Reg. § 1.701-2 (the "anti-abuse" regulation), which was adopted approximately 18 months prior to the 1996 enactment of § 7805(b)(3). *Cf.* H.R. Conf. Rep. No. 105-220, at 525 n.8 (1997), *reprinted in* 1997-4 (Vol. 2) C.B. 1457, 1995 (referencing § 1.701-2(f), ex. 2, in connection with amendment of I.R.C. § 1059(e)(1)). Treas. Reg. § 1.701-2(b) refers to the use of a partnership in connection with a tax-motivated transaction "in a manner that is inconsistent with the intent of Subchapter K … even though the transaction may fall within the literal words of a particular statutory or regulatory provision … ." One of the relevant concerns identified in that regulation is whether the partners' tax liability is substantially less as a result of the use of a partnership entity. Treas. Reg. § 1.701-2(c)(1). The BEDS shelter, and the other variants of tax shelters addressed by Notice 2000-44, clearly represent an egregious assault on the Treasury through the generation of entirely artificial, *i.e.*, non-economic, losses and basis increases, and are abusive under this or any other reasonable definition of the word. *See ACM P'ship v. Comm'r*, 157 F.3d 231, 252 (3d Cir. 1998); *cf. Cemco* 515 F.3d at 752 ("all [§ 1.752-6] does is instantiate the pre-existing norm that transactions with no economic substance don't reduce people's taxes"). Accordingly, the Treasury's promulgation of retroactive regulations to combat abusive transactions, such as the BEDS shelter involved here, was authorized by § 7805(b)(3), as well as by § 7805(b)(6).

**B. The *Klamath* and *Sala* Court's § 7805(b)(3) Analyses Are Flawed**.

Before 1996, no statute expressly authorized the Secretary to promulgate retroactive regulations in order to prevent abuse. Instead, the Secretary was generally authorized to issue retroactive regulations, subject to judicial review for abuse of discretion. *See* I.R.C. § 7805(b) (1994); *Gehl Co. v. Comm'r*, 795 F.2d 1324, 1332 (7th Cir. 1986).

Presumably, the Secretary's specific authority under § 7805(b)(3) to issue retroactive regulations in order to prevent abuse – an exception to the general prohibition against retroactive regulations effected by the 1996 amendment of § 7805(b) – is subject to judicial review for abuse of discretion as well. It would be a mistake, however, to assume, as the *Klamath* court apparently did, that the considerations underlying the application of that standard in the context of an otherwise unlimited grant of authority such as former §7805(b), on the one hand, and in the context of a "specific purpose" grant of authority such as §7805(b)(3), on the other, are identical. Thus, the Klamath court's application of the four-factor analysis of *Snap-Drape Inc. v. Comm'r*, 98 F.3d 194, 202 (5th Cir. 1996), which involved the issuance of a retroactive regulation pursuant to the general grant of authority under pre-1996 § 7805(b), is misplaced. *Cf. Kandi v. United States*, 97 A.F.T.R. 2d 2006-721, 724 (W.D. Wash. 2006), *appeal docketed*, No. 06-35209 (9th Cir. Mar. 14, 2006) ("Petitioner's reliance on case law interpreting the pre-1996 version of § 7805 is inapposite."). At the very least, the *Klamath* court erred by failing to take into account the abusive nature of the particular shelter in determining whether the Secretary, in retroactively applying Treas. Reg. § 1.752-6, overstepped his bounds under § 7805(b)(3). The court simply ignored the specific statutory authority granted to the Secretary in § 7805(b)(3) to issue retroactive regulations to prevent abuse, analyzing § 1.752-6 instead, as if the

applicable authority were the supplanted former § 7805(b). In that respect, the *Klamath* decision was also wrong.

The *Sala* court essentially cut short any analysis under section § 7805(b)(3) because of its erroneous premise that Treas. Reg. § 1.752-6 contradicted § 358(h) (instead of complimenting it by extending its rules to the partnership arena, as Congress directed). The court thus found that the regulation could not qualify as one to "prevent abuse." As discussed above, however, the "exception to the exceptions" for Notice 2000-44 transactions in Treas. Reg. § 1.752-6 does not take the regulation outside the grant of authority in section 309(c) of the 2000 Act, or create a conflict with § 358(h). Section 358(h) specifically gave the Secretary authority to make exceptions for abusive transactions. And the regulation at issue did just that.

**CONCLUSION**

For all the above reasons – should the Court find it necessary to reach this issue – the Court should follow the well-considered decision in *Cemco* and affirm the validity and retroactive application of Treas. Reg. §1.725-6.

Respectfully submitted,

*s/ Stuart D. Gibson*
Stuart D. Gibson
Attorney of Record
U.S. Department of Justice
Tax Division
Office of Civil Litigation
Post Office Box 403
Ben Franklin Station
Washington D.C. 20044
(202) 307-6586

John A. DiCicco
Acting Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section
Cory A. Johnson
Trial Attorney, Court of Federal
Jacob E. Christensen
Trial Attorney Court of Federal
Claims Section

*s/ David Gustafson*
Of Counsel

Dated: May 15, 2008