**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STOBIE CREEK INVESTMENTS LLC, JFW ENTERPRISES, INC., Tax Matters and Notice Partner,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 05-748T |
| STOBIE CREEK INVESTMENTS LLC, by and through JFW INVESTMENTS LLC, Tax Matters and Notice Partner,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 07-520 T<br>Consolidated with 05-748T<br><br>Judge Christine O.C. Miller |

**Plaintiffs' Post-Trial Memorandum**
**Concerning the Validity of Treas. Reg. §1.752-6**

Robert E. Kolek
Thomas R. Wechter
Matthew C. Crowl
Colleen M. Feeney
Ayad P. Jacob
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Phone: 312-258-5500
Fax: 312-258-5600
*ATTORNEYS FOR PLAINTIFFS*

## TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. The Government's Treatment of Contingent Liabilities Under §752 Prior to Adoption of Treas. Reg. §1.752-6 ........ 2

B. Treasury Attempted To Change The Law In 2003. ........ 2

III. ARGUMENT ........ 3

A. Congress Did Not Authorize Treasury to Adopt Treas. Reg. §1.752-6 ........ 3

1. Treas. Reg. §1.752-6 Does Not Apply "Comparable Rules" To Partnerships. ........ 6

2. The Contingent Liabilities At Issue Do Not Cause Any "Acceleration Or Duplication" Of Loss. ........ 9

3. Treas. Reg. §1.752-6 Purports To Deal With Liabilities Beyond Those Described in §358(h)(3). ........ 11

4. Treasury Adopted The Regulations Congress Authorized. ........ 12

B. Treas. Reg. §1.752-6 Is Not Authorized Under §7805. ........ 13

C. Cemco Is Not Persuasive Authority To Uphold Treas. Reg. §1.752-6. ........ 17

D. The Transaction Has Economic Substance. ........ 19

IV. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

## CASES

*Am. Std., Inc. v. United States*, 602 F.2d 256 (Ct. Cl. 1979) .................................................. 10

*Bankers Life and Cas. Co. v. United States*, 142 F.3d 973 (7th Cir. 1998)..................................................................................................... 8

*Bowen v. Georgetown Univ. Hosp*., 488 U.S. 204 (1988) ........................................................... 8

*Cemco Investors LLC v. United States*, 515 F.3d 749 (7th Cir. 2008) .......................... 1, 17, 18, 19

*Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984)................................ 14, 15

*Chock Full O Nuts Corp. v. United States*, 453 F.2d 300 (2d Cir. 1971)...................................................................................................... 8

*Comm'r. v. Court Holding Co*., 324 U.S. 331 (1945)................................................................ 19

*Frank Lyon Co. v. United States.*, 435 U.S. 561 (1978) ............................................................ 19

*Gibson Prods. Co. v. United States*, 637 F.2d 1041 (5th Cir. 1981) ............................................ 2

*Helmer v. Comm'r,* T.C. Memo. 1975-160........................................................................ 2, 3, 11

*Klamath Strategic Investment Fund LLC v. United States*, 440 F. Supp. 2d 608 (E.D. Texas 2006)........................................................................................................ passim

*La Rue v. Comm'r,* 90 T.C. 465, 479 (1988) ................................................................................ 2

*Long v. Comm'r*, 71 T.C. l, 8 (1978), *motion for reconsideration,* 71 T.C. 724 (1979), *aff'd and remanded,* 660 F.2d 416 (10th Cir. 1981)................................................................... 2

*Manhattan Gen. Equip. Co. v. Comm'r,* 297 U.S. 129 (1936) ................................................... 14

*Rite Aid Corp. v. United States*, 255 F.3d 1357 (Fed. Cir. 2001) ............................................... 10

*Rowan Companies v. U.S*., 452 U.S. 247 (1981) ........................................................................ 14

*Sala v. United States*, 2008 WL 1836693 (D. Colo., April 22, 2008) ................................. passim

*Salina Partnership, LLC v. Comm'r,* T.C. Memo 2000-352 ........................................................ 2

*Samonds v. Comm'r,* 66 T.C.M. (CCH) 235 (1993).................................................................... 8

*Union Carbide Corp. v United States,* 612 F.2d 558 (Ct. Cl. 1979)............................................ 16

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*United States v. Cumberland Public Service Co.*, 338 U.S. 451 (1950).................................... 19

*United States v. Vogel Fertilizer*, 455 U.S. 16 (1982) ............................................................ 13

*Webb v. Hodel*, 878 F.2d 1252 (10th Cir. 1989)........................................................................ 14

**STATUTES**

Internal Revenue Code of 1986 (26 U.S.C.):

§351 ........................................................................................................................ 11
§354 ........................................................................................................................ 11
§355 ........................................................................................................................ 11
§356 ........................................................................................................................ 11
§358 ................................................................................................................. passim
§704(b) ................................................................................................................... 13
§705(a)..................................................................................................................... 13
§721 ........................................................................................................................ 12
§722 .......................................................................................................................... 2
§752 ................................................................................................................. passim
§7805 .................................................................................................................. 1, 13

**TREASURY REGULATIONS**

Treasury Regulations:

§ 1.358-7...................................................................................... 10, 12, 13, 17
§1.752 .................................................................................................................. 7, 15
§1.752-6........................................................................................................... passim

**LEGISLATIVE MATERIALS**

Assumption of Partner Liabilities, 68 Fed. Reg. 37434 (June 24, 2003)...................................... 3

Section 309 of the Community Renewal Tax Relief Act of 2000
(Pub. L. 106-554 Stat. 2763A-587 (2000) ........................................................... passim

Staff Jt. Comm. on Tax'n, 106th Long., *General Explanation Of Tax Leg. Enacted In The 107th Congress*, 154 (Jt. Comm., Print 2001)......................................... 5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**MISCELLANEOUS**

Letter from Fred Goldberg, Jr. (former IRS Chief Counsel, Commissioner of IRS, and Assistant Secretary of the Treasury for Tax Policy) to IRS, reprinted in *Goldberg Suggests Son of Boss Regs. Will Diminish Settlement Prospects*, 2003 Tax Notes Today 219-47 (Nov. 13, 2003) .......... 9

Letter from Philip F. Postlewaite to IRS, re: Temporary and Proposed Regulations, reprinted in *Tax Analysts* at Document No. 2003-21409 (Sept. 22, 2003) .......... 6, 9

Letter from the American Institute of Certified Public Accountants to Commissioner Mark Everson, reprinted in *AICPA Comments on Proposed and Temporary Regulations on Assumption of Partner Liabilities Under I.R.C Section 752*, 83 DTR G-7 (April 30, 2004) .......... 8

McKee and Nelson, FEDERAL INCOME TAXATION OF PARTNERSHIPS AND PARTNERS (4th Ed.), § 7.04[2] .......... 13

Notice 2000-44 .......... passim

## I. INTRODUCTION

The Court has directed the parties to brief the validity of the retroactive application of Treas. Reg. §1.752-6 and the applicability of Code §358(h)(3), noting that courts are divided on this issue. Docket No. 120 (citing *Cemco Investors LLC v. United States*, 515 F.3d 749 (7th Cir. 2008); *Klamath Strategic Investment Fund LLC v. United States*, 440 F. Supp. 2d 608 (E.D. Texas 2006) (appeal pending); and *Sala v. United States*, 2008 WL 1836693 (D. Colo. 2008)). Section 752 of the Internal Revenue Code ("Code") addresses the treatment of certain partnership liabilities. Specifically, §752 provides that: "any increase in a partner's share of liabilities of the partnership. . . shall be considered as a contribution of money by such partner to the partnership" (§752(a)) and any decrease as a distribution. §752(b). Treasury Reg. §1.752-6 purports to interpret §752 by defining liabilities to include contingent liabilities. As is discussed below, this "interpretation" of §752 reverses settled law concerning the treatment of contingent liabilities under that Section. The United States Treasury Department ("Treasury") adopted Treas. Reg. §1.752-6 in 2003. Defendant contends that the regulation applies retroactively to bar the Plaintiffs' claimed stepped up in basis in 2000.

In its brief, the Defendant in essence makes two arguments in favor of the retroactive application of Treas. Reg. §1.752-6: (1) Congress expressly authorized Treasury to promulgate the regulation in Section 309 of the Community Renewal Tax Relief Act of 2000 (Pub. L. 106-554, 114 Stat. 2763A-587, 638 (2000)) (the "2000 Act" or "Section 309") which amended the corporate tax provisions of Section 358 and (2) even absent a specific delegation of authority, the regulation is proper under §7805. Neither of these arguments have merit.

## II. BACKGROUND

### A. The Government's Treatment of Contingent Liabilities Under §752 Prior to Adoption of Treas. Reg. §1.752-6

Over a period of many years prior to its adoption of Treas. Reg. §1.752-6, the government successfully argued that contingent obligations do not constitute "liabilities" for purposes of Section 752. In 1975, the government prevailed on that argument in *Helmer v. Comm'r*, T.C. Memo. 1975-160. *Helmer* involved a partnership that sold an option to acquire property owned by the partnership. One of the partners treated the option as a "liability" which increased his basis in his partnership interest under §§752(a) and §722, thus permitting him to recognize no gain on the distribution of option proceeds to him by the partnership. However, the court agreed with the IRS that the option was *not* a liability for purposes of §752 because the obligation of the partnership was *contingent* upon the option being exercised.[1]

Subsequent to *Helmer*, the IRS continued to argue that contingent obligations were not "liabilities" within the meaning of §752. *Long v. Comm'r*, 71 T.C. l, 8 (1978), *motion for reconsid.*, 71 T.C. 724 (1979), *aff'd and remanded*, 660 F.2d 416 (10th Cir. 1981); *Gibson Prods. Co. v. United States*, 637 F.2d 1041 (5th Cir. 1981); *La Rue v. Comm'r*, 90 T.C. 465, 479 (1988). In *Helmer*, *Long*, *Gibson*, and *La Rue*, the courts unanimously agreed with the government's contention that a contingent obligation does not constitute a "liability" within the meaning of §752, finding no ambiguity in the statutory term "liability."

### B. Treasury Attempted To Change The Law In 2003.

The rule of law articulated in *Helmer* applied when Jeffrey Welles filed his 2000 tax return. Three years after the transactions involved in this case were concluded, however,

---

[1] The Tax Court confirmed that *Helmer* was still good law in 2000 in *Salina Partnership, LLC v. Comm'r*, T.C. Memo 2000-352. *See also Klamath*, 440 F. Supp. 2d 608.

Treasury attempted to change the definition of the term "liability" to include a contingent liability by adopting a new, purportedly retroactive regulation under §752. Treasury understood that it was attempting to change the law retroactively:

> The definition of a liability contained in these proposed regulations does not follow *Helmer v. Commissioner*, TC Memo 1975-160. (The Tax Court, in *Helmer*, held that a partnership's issuance of an option to acquire property did not create a partnership liability for purposes of Section 752.)

*See* Assumption of Partner Liabilities, 68 Fed. Reg. 37434, 37436 (June 24, 2003).

## III. ARGUMENT

### A. Congress Did Not Authorize Treasury to Adopt Treas. Reg. §1.752-6

Contrary to Defendant's contention, Congress did not specifically grant authority to Treasury to promulgate Treas. Reg. §1.752-6. Defendant relies upon the "legislative evolution of Section 309 of the 2000 Act." Def. Br. at 3. However, nothing in Section 309 or its legislative history suggest that Congress granted Treasury the authority to enact Treasury Regulation §1.752-6. *See Sala,* 2008 WL 1836693 at *28; *Klamath,* F. Supp.2d at 622.

Section 309(c) provides that Treasury is authorized to prescribe rules making "appropriate adjustments" to prevent the "acceleration or duplication of losses" through the assumption of liabilities in corporate exchanges with partnerships and S corporations:

> (c) Application of Comparable Rules to Partnerships and S Corporations - The Secretary of the Treasury or his delegate –
>
> (1) *shall prescribe rules which provide appropriate adjustments under subchapter K* of chapter 1 of the Internal Revenue Code of 1986 *to prevent the acceleration or duplication of losses* through the assumption of (or transfer of assets subject to) *liabilities described in section 358(h)(3) of such Code* (as added by subsection(a)) in transactions involving partnerships
>
> ***

Defendant argues that Congress expressly authorized Treasury to promulgate Treas. Reg. §1.752-6 through the language: "appropriate adjustments under subchapter K," but misleads this Court by not citing the remaining language of Section 309(c). Def. Br. at 9. That language expressly states that the adjustments to be made under subchapter K are to *prevent the acceleration or duplication of losses* with respect to liabilities described in section 358(h)(3). Neither Section 309 nor its legislative history even mentions §752. In an attempt to find some kind of express justification for the regulation, Defendant quotes to the legislative history of changes proposed to yet another Code Section, §357, *changes that were vetoed by the President and never became law*. At the same time, Defendant cites Notice 2000-44 as support for the regulation when, as the court in *Klamath* noted, the legislation that ripened into Section 309 was proposed on October 19, 1999—long before the IRS issued Notice 2000-44 in August 2000. *See Klamath*, 440 F. Supp.2d at 622. Defendant's citation to these sources, which cannot bear on Congressional intent with respect to the changes proposed to Section 358 in October of 1999, underscores the difficulty inherent justifying retroactive application of the regulation to October 1999 in this case.

The 2000 Act enacted new §358(h) of the Code, as part of the rules governing tax free contributions to the capital of corporations. Section 358(d)(1) provides that shareholders must treat any assumption of a liability by the corporation in connection with a transfer by the shareholder of property to the corporation in exchange for the corporation's stock as "money received by the taxpayer on the exchange," which would reduce the shareholder's stock basis under §358(a)(1)(ii). Before the enactment of §358(h), the tax law provided that a contingent liability was not a liability for purposes of §358(d)(1). Therefore, its assumption by the corporation would not reduce a shareholder's stock basis.

Section 358(h) changed the law regarding contingent liabilities in the corporate context, requiring, in some circumstances, that contingent liabilities be taken into account to reduce shareholder basis in corporate stock. The law remained the same under §358(h)(2)(B), where substantially all of the assets are transferred to the corporation, i.e., in the context of this case, the long options are transferred along with the short options.

To understand the narrow application of Section 309, it is important to understand the purpose and operation of §358(h). The Joint Committee on Taxation's General Explanation of §358(h) described the purpose of the new provision:

> The Congress was concerned about a type of transaction in which taxpayers seek to *accelerate*, and potentially *duplicate*, deductions involving certain liabilities. ... [A]ssume a transferor corporation transfers assets with a fair market value basis in exchange for preferred stock of the transferee corporation, plus the transferee's assumption of a contingent liability that is deductible in the future. The transferor claims a basis in the stock received equal to the basis of the assets. However, the value of the stock is reduced by the amount of the liability, creating a potential loss. The transferor may then attempt to accelerate the deduction that would be attributable to the liability by selling or exchanging the stock. Furthermore, the transferee might take the position that it is entitled to deduct the payments on the liability, effectively duplicating the deduction attributable to the liability.

*Sala*, 2008 WL 1836693 at *26 (quoting Staff Jt. Comm. on Tax'n, 106th Long., *General Explanation Of Tax Leg. Enacted In The 107th Congress*, 154 (Jt. Comm., Print 2001)) (emphasis in original).

Succinctly stated, Congress was concerned that a shareholder would transfer assets to a corporation, and the corporation would assume a contingent liability, giving rise to a deduction in a future taxable period. *Id*. The shareholder could declare a basis in the stock equal to basis of the assets transferred to the corporation, unreduced by the contingent liability. *Id.* The shareholder then could sell the stock for an amount reflecting the contingent liability. *Id.* Hence,

the shareholder would acquire an immediate loss deduction on the sale of the stock before the corporation ever paid the contingent liability. *Id.* Additionally, the corporation could claim a deduction if it did pay the liability, giving rise to both the "acceleration" and "duplication" of the deduction in the corporate tax context. *Id.* Neither the plain language of Section 309, nor the "authorities" relied on by defendant can credibly be read to justify adoption of the regulation under Section 752.

In addition to the plain language of Section 309 and its legislative history, Treas. Reg. §1.752-6 is not authorized by the 2000 Act because: (a) the rules set out for partnerships in Treas. Reg. §1.752-6 are not "comparable" to the rules for corporations described in §358(h), (b) Treas. Reg. §1.752-6 does not address the "acceleration or duplication of deductions," the focus of and the guidepost for any rules regarding partnerships adopted under the aegis of the 2000 Act; (c) Treas. Reg. §1.752-6 does not apply to "liabilities described in section 358(h)(3)"; and (d) the regulations contemplated by the 2000 Act were regulations covering "appropriate adjustments" for partnerships involved *as shareholders* in corporate exchanges, not involving transactions between partners and their partnerships. Each of these issues is addressed below[2].

**1. Treas. Reg. §1.752-6 Does Not Apply "Comparable Rules" To Partnerships.**

Section 309(c)(1) authorizes the Treasury to issue rules to be applied to transactions involving transfers from partnerships to corporations *comparable* to the general rules provided for transactions involving corporations and their shareholders under §358(h). "Even a cursory

---

[2] Professor Philip F. Postlewaite, Professor of Law and Director of the Graduate Tax Program at Northwestern University School of Law, submitted extensive comments on Treas. Reg. §1.752-6 on behalf of the Coalition Against Regulatory Excess, citing the many reasons that Treas. Reg. §1.752 should be withdrawn, reprinted by Tax Analysts at Doc. 2003-21409. Attached hereto as Exhibit A.

look at the authorizing statute demonstrates §1.752-6 is not a 'comparable rule,'" departing from the legislative grant of authority.[3] *Sala*, 2008 WL 1836693 at *27.

When Treas. Reg. §1.752-6 was proposed, commentators recognized that it exceeded the scope of Congressional authority. *See, e.g.*, Letter from the American Institute of Certified Public Accountants to Commissioner Mark Everson, reprinted in *AICPA Comments on Proposed and Temporary Regulations on Assumption of Partner Liabilities Under I.R.C. Section 752*, 83 DTR G-7 (April 30, 2004) ("[T]he AICPA is concerned that these regulations appear to exceed the underlying statutory authority."); Letter from the New York State Society of Certified Public Accountants to Mr. Horace Howells at IRS, reprinted in *CPA's Comment on Proposed Definition of Partnership Liabilities*, 2003 Tax Notes Today 195-16 (Sept. 15, 2003) (noting that Treas. Reg. §1.752 cannot be reconciled with existing precedent and expressing concern about the ability of taxpayers to rely on settled law); Letter from Fred Goldberg, Jr. (former IRS Chief Counsel, Commissioner of IRS, and Assistant Secretary of the Treasury for Tax Policy) to IRS, reprinted in *Goldberg Suggests Son of Boss Regs. Will Diminish Settlement Prospects*, 2003 Tax Notes Today 219-47 (Nov. 13, 2003) ("the IRS has significant litigation risks respecting the validity of the Temporary Regulation.").

The rule that Treasury attempted to legislate for partners and partnerships could hardly be less comparable to and less consistent with the rule Congress provided generally to be applied to corporations and their shareholders. Treasury's attempt to legislate an exception to the statutory exception to be applied only in Notice 2000-44 transactions was clearly an effort to bootstrap the

[3] In connection with a 1999 bill, which did not become law, and which would have amended a different corporate statute (§357), the Conference Committee report suggested that Treasury might enact regulations under its general rule making power to address assumptions of liabilities by a partnership. H.R. Conf. Rep. No. 106-289, at 537 (1999). When §358(h) was ultimately enacted, Treasury's authorization to enact regulations pertaining to partnerships was specifically restricted in Section 309(c), as discussed *infra*.

government's litigation position with respect to so-called "Son of Boss" cases. *Sala*, 2008 WL 1836693 at *30. Indeed, the day following the promulgation of the regulations, Treasury told its attorneys to use the newly enacted regulation as a principal ground to challenge taxpayers' claimed losses in so-called "Son of Boss" transactions. *Id.* (citing Chief Counsel Notice CC-2003-020, released June 25, 2003). Such a procedure is patently improper, and such regulations are appropriately disregarded by the Courts. *See, e.g.*, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); see also *Chock Full O Nuts Corp. v. United States*, 453 F.2d 300, 303 (2d Cir. 1971) ("[T]he Commissioner may not take advantage of his power to promulgate retroactive regulations during the course of a litigation for the purpose of providing himself with a defense based on the presumption of validity accorded to such regulation.").

The Defendant argues that because Notice 2000-44 "notified taxpayers that the contribution of paired long and short options to partnerships in order to artificially increase outside basis were abusive, and would not be allowed, the Secretary's exclusion of these transactions from the exceptions in Treas. Reg. §1.752-6(b) could not have been a surprise." Def. Br. at 13. Notice 2000-44, like other IRS notices, is merely a press release stating the IRS's position on an issue that is of interest to the IRS. *See Samonds v. Comm'r*, 66 T.C.M. (CCH) 235 (1993) (noting that an IRS Notice "is an administrative pronouncement which like a revenue ruling or revenue procedure does not constitute authority for deciding a case in this Court"). An IRS Notice does not go through a notice-and-comment period—the process which imbues Treasury Regulations with their presumed validity and weight. *Bankers Life and Cas. Co. v. United States*, 142 F.3d 973, 979-982 (7th Cir. 1998). The Government cannot insinuate that the issuance of the Notice was an initial step in the process of issuing the regulation—three years

later. Notice 2000-44 makes no reference to any intention by the IRS to issue or request the issuance of regulations. The process of issuing a regulation begins with the issuance of a proposed or temporary regulation, published in the Federal Register.

In promulgating Treas. Reg. §1.752-6, Treasury ignored the statutory exception for transfers of substantially all of the assets with which a liability is associated, and extended the regulations completely beyond the scope of the statute in an effort to bolster the litigating position set forth in Notice 2000-44. *See* Postlewaite, *Written Comments on Temporary Regulation 1.752-6T*, attached hereto as Exhibit A.

**2. The Contingent Liabilities At Issue Do Not Cause Any "Acceleration Or Duplication" Of Loss.**

The transfers to Stobie Creek and the resulting basis increase do not cause any acceleration or duplication of deductions. Treasury is authorized by Section 309 to make "appropriate adjustments" under Subchapter K (the partnership provisions of the Code) only to the extent necessary "to prevent the acceleration or duplication of losses through the assumption of . . . liabilities described in section 358(h)(3)." 2000 Act, Section 309(c) (1). As set out in the Joint Committee Report, quoted above, the term "accelerate" was used to refer to a corporate transaction whereby the stock in a transferee corporation was (following the exchange) sold by the shareholder *before* the time that the deduction related to the contingent liability was otherwise allowable (on the later payment of the expense).

This case does not involve the necessary conditions precedent for the promulgation of the regulation. The investments described in Notice 2000-44, at which Treas. Reg. §1.752-6 is

targeted, do not accelerate or duplicate any loss. Transactions described in Notice 2000-44 result in only a single tax loss and that loss is not accelerated.[4] *See Sala*, 2008 WL 1836693 at *27.

In *Rite Aid Corp. v. United States*, 255 F.3d 1357 (Fed. Cir. 2001), the Federal Circuit considered a case where Treasury adopted legislative regulations concerning duplication of losses that exceeded the statutory grant of authority. Pursuant to § 1502, Treasury was granted "the power to conform the applicable income tax law of the Code to the special, myriad problems resulting from the filing of consolidated returns." *Am. Std., Inc. v. United States*, 602 F.2d 256, 261 (Ct. Cl. 1979); *Rite Aid*, 255 F.3d at 1359-60 ("[I]n the absence of *a problem* created from the filing of consolidated returns," the Treasury lacked general authority to change the tax rules for consolidated corporations) (emphasis supplied). Because the issue addressed by Treasury was not one of "the problems resulting from the filing of consolidated returns" over which the authorizing statute had granted Treasury authority (but rather a more general feature of the income tax laws), the *Rite Aid* court ruled that the duplicate loss rule exceeded the authority granted by Congress. *Rite Aid*, 255 F.3d at 1360.

In Section 309(c), Congress authorized Treasury to "prescribe rules which provide appropriate adjustments under subchapter K to prevent the acceleration or duplication of losses through the assumption of . . . liabilities described in section 358(h)(3) of [the] Code." However, Treasury has identified no "acceleration or duplication of losses" that generally result from the treatment of contingent liabilities under §752 in a transaction between a partner and the

---

[4] On the other hand, a partnership's contribution of a contingent obligation to a corporation in which it is a shareholder does present the potential for accelerating and duplicating losses. A partner in a partnership which transferred a contingent liability to a corporation could have claimed a high tax basis in the partnership (unreduced by the contingent liability), and claimed a loss (or reduced gain) on the sale of his or her partnership interest. Subsequently, when the corporation satisfied the liability, the corporation might have duplicated the deduction. Section (b) of Treas. Reg. § 1.358-7 effectively requires partners to reduce their partnership basis in order to eliminate this acceleration/duplication problem.

partnership. In some cases, the treatment of contingent liabilities favors the government (e.g., *Helmer)*, and in other cases, the treatment favors the taxpayer. The option strategy discussed in Notice 2000-44 did not involve a claimed loss by both the partner and the partnership; only the partner claimed any loss. Nor is the loss "accelerated" by the assumption of contingent liabilities to obtain the loss any earlier than the Code otherwise allows. "Acceleration" and/or "duplication" are simply not an issue.[5] Thus, the regulation exceeds the authority granted under the statute.

**3. Treas. Reg. §1.752-6 Purports To Deal With Liabilities Beyond Those Described in §358(h)(3).**

Section 309(c) provides Treasury with the authority to promulgate a rule of application to "the assumption of liabilities described in section 358(h)(3)" in corporate transactions involving partnerships. However, Treas. Reg. §1.752-6 purports to apply only to liabilities that are not described in the specified subsection. The Government takes the position that Congress gave the Treasury carte blanche to revise the treatment of contingent liabilities generally in transactions between partners and their partnerships. Section 358 by its own terms applies only to liabilities that are assumed in connection with certain corporate exchanges. Section 358(h)(3) provides that "for purposes of this subsection," the term "liability" shall include certain contingent obligations. The specific "subsection" referenced by §358(h)(3) is §358(a). Subsection 358(a) has application solely to liabilities assumed in "an exchange or series of exchanges" to which "section 351, 354, 355, 356 or 361 applies" (§§358(h)(1) and 358(a)) - all sections involving

---

[5] *See* McKee and Nelson, FEDERAL INCOME TAXATION OF PARTNERSHIPS AND PARTNERS (4th Ed.), § 7.04[2], footnote 79 ("The Treasury was authorized to issue Regulations preventing the duplication or acceleration of losses through the assumption of liabilities described in §358(h)(3). Pub.L. 106-554, § 309(c). Treasury Reg. §1.752-6 prevents deduction of losses that have not been duplicated or accelerated."). A copy of this portion of the McKee and Nelson Treatise is attached as Exhibit B to this brief.

corporate exchanges. Thus, the language authorizing Treasury to issue regulations relating to "the assumption of liabilities described in section 358(h)(3)" can only be interpreted to relate to contingent liabilities assumed in a corporate exchange.

Because §358(h)(3) has application to liabilities that are assumed in an exchange or series of exchanges between a corporation and its shareholders, the language in Section 309(c)(1) authorizing Treasury to issue regulations relating to "the assumption of liabilities described in section 358(h)(3) in transactions involving partnership" requires that the regulations only apply when an exchange transaction between a corporation and a partnership (as the shareholder) takes place. Yet, the regulation at issue applies to any transaction where a partner contributes property to a partnership in exchange for an interest in that partnership (a transaction governed by §721), and the partnership assumes a contingent liability of the partner. This regulation, attempting to legislate rules for partner-partnership exchanges, is patently beyond the authority granted by Section 309(c)(1), especially in light of the fact that §358(h) is a *corporate* provision. *Sala*, 2008 WL 1836693 at *28. Congress certainly would not have authorized Treasury to adopt a legislative regulation changing settled law under Section 752, without even mentioning that section. *Id.*

**4. Treasury Adopted The Regulations Congress Authorized.**

Treasury in fact promulgated a rule governing partnership transactions in accordance with the requirement of Section 309(c) of the Community Renewal Tax Relief Act when it issued Treas. Reg. § 1.358-7. This regulation, titled "Transfers by partners and partnerships to corporations," addresses contributions of assets and liabilities by partnerships to corporations in which they are shareholders, the implications of such transfers under §358(h), and the "appropriate adjustments" (in the language of Section 309(c)) required at the partnership level.

This regulation was exactly the type of regulation contemplated by Congress in the 2000 Act. *Klamath*, 440 F.Supp.2d at 621.

Treasury Reg. §1.358-7 describes many of the "appropriate adjustments" that must be made under Subchapter K when a partnership is involved as a shareholder in a transaction covered by §358(h). For example, any reduction in stock basis under §358(h) is treated as an expenditure of the partnership under §705(a) (2)(B) that must be allocated among the partners in accordance with the rules of §704(b) and (c). Treas. Reg. §1.358-7(b). The regulation also provides an example where a partner's basis in her partnership interest is reduced by the amount of contingent liability assumed by the corporation. Treas. Reg. §1.358-7(e) (Example 1). Having the partners reduce their partnership basis eliminates the possibility of "accelerated" or "duplicated" deductions. Otherwise, the partner could sell his high basis partnership interest and recognize a loss, and then the corporation might later satisfy the assumed contingent obligation and claim a deduction.

Treasury Reg. §1.358-7 provides comparable rules and makes appropriate adjustments in transactions applicable where partnerships transfer property to a corporation and the corporation assumes contingent liabilities. That regulation is in stark contrast to §1.752-6, which attempts to adopt contrary rules to be applied in the transactions between partners and their partnerships. While the former regulation is clearly within Congress' grant in Section 309(c), the latter is not. *Klamath*, 440 F.Supp. 2d at 622.

**B. Treas. Reg. §1.752-6 Is Not Authorized Under §7805.**

Under §7805, the Treasury also has the *general* power to promulgate regulations to interpret the Internal Revenue Code. *United States v. Vogel Fertilizer*, 455 U.S. 16, 24 (1982). In *Vogel*, the Court, in considering a regulation promulgated under §7805, stated:

> The Commissioner has promulgated Treas. Reg. §1.563-1(a)(3) interpreting this statute only under his general authority to

> "prescribe all needful rules and regulations." 26 U.S.C. §7805(a). Accordingly, "we owe the interpretation less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision."

*Id*. at 24 (*quoting*, *Rowan Companies v. U.S*., 452 U.S. 247, 253 (1981)).

In *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984) (internal citations omitted), the Supreme Court announced a two-step analysis for determining whether deference should be accorded an administrative interpretation:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear ... the court as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous, the question for the court is whether the agency's answer is based upon a permissible construction of the statute.

"Regulations are entitled to no deference . . . if they are inconsistent with congressional intent or if there are compelling indications that the regulations are wrong." *Sala*, 2008 WL 1836693 at *25 (citing *Webb v. Hodel*, 878 F.2d 1252, 1255 (10th Cir. 1989)).[6]

As set forth above, the regulation is plainly inconsistent with the statutory grant of authority and therefore fails as a legislative regulation. "If a regulation is not 'promulgated pursuant to authority Congress has delegated,' it is considered an interpretive regulation and 'the interpretation is 'entitled to respect' only to the extent it has the 'power to persuade.''" *Sala*, 2008 WL 1836693 (internal citation omitted). Because the regulation also attempts to amend

[6] It is fundamental that Congress makes the tax law. *Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134-135 (1936) (the authority to issue regulations is not the power to make law, it is only the power to carry into effect the will of Congress as expressed in the statutes).

§752 and adopt a rule admittedly inconsistent with that section[7], it likewise fails as an interpretive regulation.[8]

In the case of the corporate tax provisions governing shareholder basis in tax-free exchanges, prior to the enactment of §358(h) in 2000, contingent liabilities were not treated as "liabilities" for purposes of §358(d)(1). Section 358(d)(1) treats any liability assumed as "money *received* by the taxpayer on the exchange," which *receipt* reduces shareholder basis pursuant to §358(a)(1)(A)(ii). Section 358(d)(1). With the enactment of §358(h), Congress provided a specific set of rules governing contingent liabilities, i.e. liabilities "with respect to which subsection (d)(1) does not apply to the assumption." Section 358(h)(1)(B). Section 358(h)(3) includes "contingent liabilities" within the ambit of the term "liability" only "for purposes of this subsection [§358(h)]." Section 358(h)(3).

In the words of the *Chevron* court, Congress "has directly spoken to the precise question at issue." *See Chevron*, 467 U.S. at 842-43. In unambiguous terms, Congress changed the rules governing transactions involving corporate exchanges where contingent liabilities were assumed. There is not even a hint in the corporate statute that §358 was also intended to change the law governing all transactions between partners and their partnerships involving a partnership assumption of contingent liabilities.

---

[7] The regulation applies only to a liability "other than a liability to which section 752(a) and (b) apply." Treas. Reg. §1.752-6 (a). It can hardly be said to be "interpreting" §752(a) and (b).

[8] The *Klamath* court noted that the transaction before it took place before Notice 2000-44 was issued, and left open the issue of whether the same analysis of Treas. Reg. §1.752 as an interpretive regulation would apply to transactions taking place after the publication of Notice 2000-44. *Klamath*, 440 F. Supp. 2d at 625. Because Notice 2000-44 was only the announcement of a government litigating position, and did not even hint that changes might be made to the underlying law, it can hardly be viewed as "notice" to taxpayers that the law had or would be altered to their detriment.

Further, while Congress provided special basis rules for contingent liabilities in the corporate context, it did not make a comparable change to the partnership basis rules of §752. Using language similar to that of §358(d)(1), §752(b) provides (both before and after the enactment of §358(h)) that any assumption of a partner's liability by the partnership is treated as "a distribution of money to the partner," which distribution reduces basis pursuant to §733(1). As noted above, the term "liability" for purposes of §752 has consistently been applied to exclude contingent liabilities. In contrast to the change in law on the corporate side to include contingent liabilities made by §358(h), Congress left §752(b) intact and unmodified. Subsequently, Treasury attempted to effect a change in the law itself, without express authority, through the promulgation of Treas. Reg. §1.752-6.

Treasury Reg. §1.752-6 itself expressly acknowledges the attempted amendment. In Treas. Reg. §1.752-6(a), Treasury purports to bring into effect the new rules governing corporate contingent liabilities in situations where the ordinary rules of §752(b) do not apply, i.e., the assumption of a partner's contingent liability by a partnership. Treasury was not defining a statutory term. *Sala*, 2008 WL 1836693 at *30. Instead, Treasury attempted to create a rule contrary to the statute. *Id.* It is fundamental that Congress, not Treasury, makes the law. *Union Carbide Corp. v United States*, 612 F.2d 558, 563 (Ct. Cl. 1979) (legislative regulations invalid where they conflict with the language of the statute). Treasury, in an effort to salvage its litigating position, cast aside this fundamental rule.

As set out above, the statutory authorization granted to Treasury to make "appropriate adjustments" under Subchapter K to prevent "acceleration or duplication" resulting from the assumption of liabilities described in §358(h)(3) (liabilities assumed in certain corporate exchanges) did not authorize Treasury to make wholesale changes to the general definition of

"liability" for purposes of §752, and anticipated regulatory action of a much more limited scope, such as the changes made by Treas. Reg. § 1.358-7.

**C. Cemco Is Not Persuasive Authority To Uphold Treas. Reg. §1.752-6.**

The government has cited the Seventh Circuit opinion in *Cemco Investors, LLC v. United States*, 515 F.3d 749 (7th Cir. 2008) as authority for upholding the validity of Treas. Reg. §1.752-6. However, the validity of the transaction at issue in *Cemco* did not turn solely on the application of the regulations. The *Cemco* court considered the lack of "economic substance" in that case to be the core reason for its decision. *Cemco*, 515 F.3d at 751 ("The Commissioner has a statutory power to disregard transactions that lack economic substance.").

Before the Seventh Circuit, the *Cemco* taxpayer did not argue that the Treasury had exceeded its statutory authority in promulgating Treas. Reg. §1.752-6. Instead, the *Cemco* taxpayer argued only that the retroactive effect of the regulation was impermissible. *See id.* at 752; Appellant's Br. at 18-20; Appellee's Br. at 23. In advancing that narrow argument, the taxpayer in *Cemco* did not discuss the limited scope of the rulemaking authority granted by Section 309(c) and did not address whether the Treas. Reg. §1.752-6 was a permissible exercise of that authority.

Without having the issue placed before it, the *Cemco* court concluded, completely without analysis, that Section 309 broadly gave the Treasury the power to enact regulations governing basis:

> Section 309 enacts basis-reduction rules for many transactions and authorizes the IRS to adopt regulations prescribing similar rules for partnerships and S corporations. Section 309(d)(2) of the 2000 Act adds that the regulations may be retroactive to October 18, 1999. That's the power the Commissioner used when promulgating Treas. Reg. §1.752-6.

*Cemco*, 515 F.3d at 752. The *Cemco* court did not analyze whether or not Treas. Reg. §1.752-6 was consistent with the specific directives of the authorizing statute.

The *Cemco* court failed to acknowledge the *Klamath* court's reasons for concluding that the regulation was not authorized by the statute:

> The district court in *Klamath* did not doubt that the retroactivity *could rest on the 2000 Act*; Treas. Reg. §1.752-6 applies to partnership (and LLCs treated as partnerships) a rule "similar to the approach" that Congress adopted for other business entities. *Klamath* held, however, that when promulgating Treas. Reg. §1.752-6, the IRS had not availed itself of that power. But if the IRS was not using that authority, why in the world does the regulation reach back to October 18, 1999? Retroactivity requires justification: to make a rule retroactive is to invoke one of the available justifications; and the choice of date tells us that the justification is the one supplied by the 2000 Act (in conjunction with §7805(b)(6)). A regulation's legal effect does not depend on reiterating the obvious.

*Id.* at 752 (emphasis supplied).

The Court in *Cemco* completely misinterpreted the *Klamath* decision. The *Klamath* court did not conclude that "retroactivity *could rest* on the 2000 Act." To the contrary, *Klamath* concluded that Treas. Reg. §1.752-6 was not within the authority granted by the 2000 Act. *Cemco* did not address the legislative authorization issue (which was the focus of *Klamath*); for *Cemco*, it was sufficient that the IRS *claimed* it had the authority under the 2000 Act.

If the regulations are not legislative, and are merely interpretive, they are clearly inconsistent with the established law. Before the promulgation of Treas. Reg. §1.752-6, courts had consistently held that contingent liabilities were not to be taken into account in determining basis under §752. Application of that rule required taxpayers to pay more tax than they would have if the contingent liability had been disregarded. Both the IRS and the courts in those cases had no problem concluding that disregard of contingent liabilities did not violate the long-standing economic substance rule. The law clearly does not permit the Treasury to adopt inconsistent positions, depending on "whose ox is being gored." *Klamath,* 440 F. Supp.2d at 619. Moreover, the regulation itself only provides a rule for liabilities "other than a liability to

which section 752(a) and (b) apply." Treas. Reg. §1.752-6(a). To the extent this regulation purports to be interpreting §752, it affirmatively disavows its statutory anchor.

Likewise, the court in *Cemco* concluded that the regulation requiring contingent liabilities to be taken into account in Notice 2000-44 transaction merely "instantiate[d] the pre-existing norm that transactions without economic substance don't reduce people's taxes." *Cemco*, 515 F.3d at 752. But the court ignored altogether the fact that, despite the existence of a "pre-existing economic substance rule," the IRS was permitted to ignore contingent liabilities when to do so resulted in partners paying more in taxes.

**D. The Transaction Has Economic Substance.**

In its brief, Defendant repeated its template argument that a transaction that follows a particular form or accomplished in a particular series of steps is *per se* artificial and therefore devoid of economic substance. However, simply because a transaction follows a particular format does not mean it lacks economic substance. *Frank Lyon Co. v. United States.*, 435 U.S. 561 (1978); *Sala*, 2008 WL 1936693. In fact, the Supreme Court has recognized that the form and timing of a particular transaction can affect the economic impact of a transaction. Compare *Comm'r. v. Court Holding Co*., 324 U.S. 331 (1945) with *United States v. Cumberland Public Service Co*., 338 U.S. 451 (1950). Moreover, the Code and regulations are replete with situations where the particular form and timing of a transaction is given deference by the Defendant. Examples include the numerous "safe harbors" embedded into the regulations and the various Revenue Procedures promulgated to facilitate the private letter ruling process. *See* e.g. Treas. Reg. §1.704-1; Rev. Proc. 96-30 1996-1 C.B. 696.

Second, the Defendant urges that the long and short foreign exchange options transferred to Stobie Creek should be considered as component parts of a single transaction. As this Court

recognized during the trial, the sale of a short option and the use of the proceeds to purchase a long position is a common financing technique and should be respected as separate transactions.

The record is clear, Stobie Creek had a reasonable opportunity to double its investment in the foreign exchange options; accordingly, the transactions bore the requisite economic profit potential to satisfy their economic viability and validity.

## IV. CONCLUSION

The regulation at issue involves a blatant attempt by Treasury to make a change in the law that it believed was necessary in order to advance its litigating position in cases involving a tax result with which it disagreed. Rather than urging Congress to change the relevant partnership provisions of the Code, Treasury improperly relied on a statute that plainly does not authorize the changes it made. Plaintiffs respectfully request that this Court hold that Treas. Reg. §1.752-6 does not apply to this case.

Dated: May 30, 2008 Respectfully Submitted

SCHIFF HARDIN LLP

/s/ Robert E. Kolek
Attorneys for Plaintiffs
Robert E. Kolek
6600 Sears Tower
Chicago, IL 60606
Phone: 312-258-5500
Fax: 312-258-5600

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th of May, 2008, the undersigned counsel caused to be electronically filed *Plaintiffs' Post-Trial Memorandum Concerning the Invalidity of Treas. Reg. §1.752-6* using the CM/ECF system, which will send notification of such filing to the following named counsel of record:

Stuart D. Gibson, Esq.
Cory A. Johnson, Esq.
Trial Attorney
Tax Division
U. S. Department of Justice
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044

/s/ Colleen M. Feeney